IN THE
UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| *John C. Flood of Virginia, Inc.,* | } | |
| | } | |
| *Plaintiff,* | } | |
| | } | **Case No. 1:06CV01311** |
| v. | } | **Judge:  Richard J. Leon** |
| | } | **Deck:  General Civil** |
| *John C. Flood, Inc.,* | } | |
| | } | |
| *Defendant.* | } | |
| _____ | } | |
| | } | |
| *John C. Flood, Inc.,* | } | |
| | } | |
| *Counterclaim Plaintiff,* | } | |
| | } | |
| v. | } | |
| | } | |
| *John C. Flood of Virginia, Inc.,* | } | |
| | } | |
| *John C. Flood, Inc.* | } | |
| (*a Virginia corporation*) | } | |
| 6430 General Green Way | } | |
| Alexandria, VA  22312 | } | |
| | } | |
| **SERVE: Lynn Johnson, Registered Agent** | } | |
| **1413 K Street, N.W.** | } | |
| **Washington, D.C.  20005,** | } | |
| | } | |
| *John C. Flood Contractors, Inc.* | } | |
| (*a Maryland corporation*) | } | |
| 4200 Bladensburg Road | } | |
| Cottage City, MD  20722 | } | |
| | } | |
| **SERVE:  Clinton Haislip, Registered  Agent** | } | |
| **4200 Bladensburg Road** | } | |
| **Cottage City, MD  20722,** | } | |
| | } | |
| *Clinton Haislip* | } | |
| 7413 Rocky Ravine Drive | } | |
| Fairfax Station, VA  22039 | } | |
| | } | |
| *and* | } | |
| | } | |
| *James L. Seltzer, Jr.* | } | |
| 15412 Kentwell Circle | } | |
| Centreville, VA  20120, | } | |
| | } | |
| *Counterclaim Defendants.* | } | |
| _____ | } | |

## ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS
## OF JOHN C. FLOOD, INC.

Pursuant to Rules 8 (b), 12, 18, and 19 of the Federal Rules of Civil Procedure, Defendant and Counterclaim Plaintiff, John C. Flood, Inc. ("Flood"), by and through its undersigned counsel, hereby answers the Complaint for Trademark Infringement and Unfair Competition of Plaintiff, John C. Flood of Virginia, Inc. ("Flood of Virginia"), and asserts the following affirmative defenses and counterclaims.

### ANSWER

In response to the separately-numbered averments of the Complaint, Defendant and Counterclaim Plaintiff Flood, states as follows:

### I. PARTIES

1.    Flood admits the averments of Paragraph 1.

2.    Flood admits the averments of Paragraph 2.

3.    Flood admits the averments of Paragraph 3.

4.    Flood admits the averments of Paragraph 4.

### II. VENUE AND JURISDICTION

5.    Flood admits that this Court has subject matter jurisdiction of Plaintiff's action on the grounds averred in Paragraph 5.

6.    Flood states that Paragraph 6 contains legal conclusions to which no response is required, but admits that this Court may lawfully exercise personal jurisdiction over Flood, and that Flood has had substantial, continuous and systematic contacts with the District of Columbia, Flood denies the remaining averments of Paragraph 6.

7.    Flood states that Paragraph 7 contains legal conclusions as to which no response is required, but admits this Court may lawfully exercise personal jurisdiction over Flood, and that Flood has performed specific acts in this district and purposefully availed itself of the privileges of conducting activities in this district.  Flood denies the remaining averments of Paragraph 7.

8.    Flood denies the averments of Paragraph 8.

9.    Flood admits the averments of Paragraph 9.

### III. FACTS

10.    Flood admits the averments of Paragraph 10.

11.    Flood admits that Davis and Crooks incorporated Flood of Virginia in 1989 in Virginia, and that Flood of Virginia at that time began using a variation similar to JOHN C. FLOOD, to identify and distinguish from competitors (other than John C. Flood, Inc., the Maryland corporation then also controlled by Davis and Crooks), the plumbing, heating, and air conditioning business conducted by the then-related companies John C. Flood, Inc. and John C. Flood of Virginia, Inc., under the common ownership and control of Davis and Crooks.  The remainder of the averments of Paragraph 11 are denied.

12.    Flood admits that Davis and Crooks owned a controlling 51% interest in Flood of Virginia, and that Counterclaim Defendants Haislip and Seltzer owned a non-controlling 49% interest therein, from November 1989 to about March 1995.

13.    Flood denies that Flood of Virginia has continuously used JOHN C. FLOOD since its inception in 1989 to identify its plumbing, heating, air conditioning business, and denies that it so used those terms to distinguish its business from the business of its then-affiliate, John C. Flood, Inc.  Flood admits that Flood of Virginia in 1989 used a similar variation of that term to

identify and distinguish Flood of Virginia's business from businesses other than the affiliated John C. Flood, Inc., and related companies, then under Davis' and Crooks' common control.

14.  Flood admits the averments of Paragraph 14.

15.  Flood admits that a Trustee was appointed on March 23, 1993, and that the case was converted to a Chapter 7 case on September 21, 1993, but denies the remainder of the averments of Paragraph 15.

16.  Flood lacks present knowledge and information as to the truth of the averments of Paragraph 16, and, accordingly denies the same.  Although they are alleged in a subheading, and not a separately-number paragraph, Flood further denies that John C. Flood, Inc. abandoned use of JOHN C. FLOOD and/or similar variations thereof on March 29, 1995, or at any other time.

17.  Flood admits the averments of Paragraph 17.

18.  Flood admits that from and after March 29, 1995, Haislip and Seltzer, not Crooks and Davis, owned the controlling interest in Flood of Virginia, but denies the remaining averments of Paragraph 18.

19.  Flood denies that Flood of Virginia has continuously used JOHN C. FLOOD and similar variations since March 29, 1995, to and including the present to identify its plumbing, heating, and air conditioning business and to distinguish it from others, as averred in Paragraph 19.

20.  Flood denies the averments of Paragraph 20.

21.  Flood admits the averments of Paragraph 21.

22.  Flood denies the averments of Paragraph 22.

23.  Flood denies the averments of Paragraph 23.

24. Flood admits that it and the Smileys obtained a Bill of Sale for JOHN C. FLOOD and FLOOD, INC. and any goodwill symbolized thereby on or about February 20, 1996, but denies the remaining averments of Paragraph 24.

25. Flood admits that the Smileys incorporated Flood under the laws of Maryland in or about 1996, and that this was after Haislip and Seltzer obtained a controlling interest in Flood of Virginia, but denies the remaining averments of Paragraph 25.

26. Flood denies the averments of Paragraph 26. Although alleged in a subheading, and not a separately-number paragraph, Flood further denies that Flood of Virginia is entitled to use and register JOHN C. FLOOD and similar variations thereof.

27. Flood denies the averments of Paragraph 27.

28. Flood denies the averments of Paragraph 28.

29. Flood denies the averments of Paragraph 29 as to the belief of Flood of Virginia at the time it submitted the referenced application.

30. Flood denies the averments of Paragraph 30 as to the belief of Flood of Virginia at the time it submitted the referenced application.

31. Flood admits the averments of Paragraph 31.

32. Flood admits that the term JOHN C. FLOOD is not merely descriptive or generic when used to identify and distinguish plumbing, heating, and air conditioning services. The remaining averments of Paragraph 32 are denied.

33. Flood lacks knowledge or information as to the truth of the averments of Paragraph 33, and accordingly, denies the same.

34. Flood denies the averments of Paragraph 34.

35. Flood admits the averments of Paragraph 35.

36. Flood denies the averments of Paragraph 36. Although alleged in a subheading, and not a separately-number paragraph, Flood further denies that it has acted unlawfully.

37. Flood denies the averments of Paragraph 37.

38. Flood denies the averments of Paragraph 38.

39. Flood denies the averments of Paragraph 39.

40. Flood denies the averments of Paragraph 40.

41. Flood denies the averments of Paragraph 41.

42. Flood admits that, in 2005, it filed a Petition for Cancellation of the registrations referenced in Paragraph 42 before the United States Patent and Trademark Office Trademark Trial and Appeal Board. Flood denies the remaining averments of Paragraph 42.

## IV. CAUSES OF ACTION

### A. Trademark Infringement in Violation of 15 U.S.C. § 1114(1)

43. Flood incorporates its responses to the averments of Paragraphs 1 through 42 as if set forth here in their entirety.

44. Flood denies the averments of Paragraph 44.

45. Flood denies the averments of Paragraph 45.

46. Flood denies the averments of Paragraph 46.

47. Flood denies the averments of Paragraph 47.

48. Flood denies the averments of Paragraph 48.

49. Flood denies the averments of Paragraph 49.

50. Flood denies the averments of Paragraph 50.

B.  **Unfair Competition in Violation of 15 U.S.C. § 1125(A)**

51.  Flood incorporates its responses to the averments of Paragraphs 1 through 50 as if set forth here in their entirety.

52.  Flood denies the averments of Paragraph 52.

53.  Flood denies the averments of Paragraph 53.

54.  Flood denies the averments of Paragraph 54.

55.  Flood denies the averments of Paragraph 55.

56.  Flood denies the averments of Paragraph 56.

## AFFIRMATIVE DEFENSES

Flood hereby asserts the following affirmative defenses:

### FIRST AFFIRMATIVE DEFENSE

1.  Flood of Virginia's Complaint fails to state a claim upon which relief may be granted

### SECOND AFFIRMATIVE DEFENSE

2.  Flood of Virginia is not entitled to maintain this suit or to assert the claims herein for monetary and injunctive relief by reason of estoppel by laches, and acquiesence.  With the full knowledge of Flood of Virginia, Flood and its assignors and predecessors in interest have openly and continuously used and traded under the JOHN C. FLOOD name and marks, and various similar names and marks, never ceasing use with the intention to permanently discontinue such use, since 1984, five years before Flood of Virginia was formed, more than twenty years before this suit was filed, and for more than eleven years after the March 1995 date Flood of Virginia herein claims it acquired priority, with no attempt until now to obtain any judicial determination of its alleged rights with respect to Flood or any predecessor in interest's use of the disputed names and marks.  Flood outbid Flood of Virginia in *In re John C. Flood, Inc.,* Case No. 91-

43011-SD (MD Bankr.), and purchased for value the names and marks JOHN C. FLOOD, INC. and FLOOD, INC., and has invested considerable sums in advertising and promoting of such names and marks, and has acquired substantial goodwill as a result. Flood has relied to its detriment on Flood of Virginia's acquiescence and delay.

### THIRD AFFIRMATIVE DEFENSE

3. Flood of Virginia is barred by waiver and estoppel from: (a) asserting that the Debtor, receiver, and/or Trustee in *In re John C. Flood, Inc.,* Case No. 91-43011-SD (MD Bankr.) abandoned the right to use of JOHN C. FLOOD and similar variations thereof; and (b) from denying that the bankrupt's estate in that bankruptcy case owned the valid and subsisting tradenames and marks JOHN C. FLOOD, INC. and FLOOD, INC., together with all associated goodwill and exclusive rights to use such names and marks, that the Trustee in that case validly sold, and that Flood and the Smileys validly purchased, those names and marks, together with all goodwill associated therewith, and the exclusive rights to use such names and marks.

Flood of Virginia was an active participant in various proceedings in the foregoing bankruptcy case, and a competing bidder for the rights to JOHN C. FLOOD, INC. and FLOOD, INC. and associated goodwill. At no time in such case prior to the purchase and sale of the JOHN C. FLOOD, INC. and FLOOD, INC., names, marks and goodwill in February 1996, did Flood of Virginia assert, as it does here some ten years later, that the estate had abandoned its rights in those names and marks, and that Flood of Virginia had exclusive rights to use and register JOHN C. FLOOD and similar marks. Instead of claiming exclusive ownership contesting the bankrupt's estate's ownership of and ability to sell those assets, Flood of Virginia submitted an unsuccessful bid to acquire the rights to the names, marks and goodwill from the

8

estate. The estate, the Smileys, and Flood all relied on the absence of such claims and assertions in effecting the sale and purchase of those assets.

## FOURTH AFFIRMATIVE DEFENSE

4. Flood of Virginia is not entitled to maintain this suit or to assert the claims herein for monetary and injunctive relief by reason of its own unclean hands and illegal and inequitable conduct.

## FIFTH AFFIRMATIVE DEFENSE

5. Flood of Virginia is not entitled to maintain the claims or to receive the monetary and equitable relief sought herein because it is not the true owner of the name and mark JOHN C. FLOOD and similar variations thereof, and does not have priority of usage, or the exclusive rights to usage, thereof over Flood.

## SIXTH AFFIRMATIVE DEFENSE

6. United States Trademark Registration Numbers 2,345,161 and 2,355,004 are invalid, and were improperly issued, and Flood of Virginia cannot rely on them in connection with its claims or the remedies it seeks herein, for the reasons stated in the foregoing Affirmative Defenses and in the Counterclaims filed herewith.

## SEVENTH AFFIRMATIVE DEFENSE

7. United States Trademark Registration Numbers 2,345,161 and 2,355,004 are invalid, null, void, and of no effect because they were granted by the United States Patent and Trademark Office on the basis of fraudulent representations and certifications by Flood of Virginia, made with the intent to induce the Office to issue such registrations, as set forth in Counterclaim filed

herewith. Flood of Virginia cannot rely on such Registrations in connection with its claims or the remedies it seeks herein, and its claims are barred by its own unclean hands and illegal and inequitable conduct before the Office.

## EIGHTH AFFIRMATIVE DEFENSE

United States Trademark Registration Numbers 2,345,161 and 2,355,004 are invalid, null, void, and of no effect because, on information and belief, Flood of Virginia has been using its registered marks so as to systematically and deliberately engender confusion with Flood for the express purpose of eroding or arrogating unto itself the goodwill of Flood's business associated with Flood's names and marks, thereby deliberately injuring and competing unfairly with Flood, as set forth in Counterclaim filed herewith. Flood of Virginia cannot rely on such Registrations in connection with its claims or the remedies it seeks herein, and its claims are barred by its own unclean hands and illegal and inequitable conduct.

## COUNTERCLAIMS

### I. *Nature of Case, Parties, Jurisdiction and Venue*

1. Counterclaim Plaintiff, John C. Flood, Inc., by and through its undersigned counsel, brings this counterclaim praying for permanent injunctive and declaratory relief, damages, and attorneys' fees against Counterclaim Defendants:  (a) against Counterclaim Defendants Flood of Virginia, John C. Flood, Inc., and John C. Flood Contractors, Inc., for false designation of origin and unfair competition under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); (b) against Counterclaim Defendant John C. Flood of Virginia, Inc., for cancellation of federal servicemark Registrations Nos. Nos. 2,345,161 and 2,355,004 and for damages on the under Sections 37 and 38 of the Lanham Act, 15 U.S.C. §§ 1119 & 1120; (c) against all Counterclaim Defendants for a

10

declaration of the parties' rights under the federal Declaratory Judgment Act, 28 U.S.C. §

2201(a); and (d) against Counterclaim Defendants of Flood of Virginia, John C. Flood, Inc., and

John C. Flood Contractors, Inc., for common law service mark infringement and unfair

competition.

2.  Counterclaim Plaintiff John C. Flood, Inc. is a corporation organized and existing

under the laws of the State of Maryland, having its principal place of business in Capitol Heights,

Maryland ("Flood").

3.  On information and belief Counterclaim Defendant, John C. Flood of Virginia, Inc.,

is a corporation organized and existing under the laws of Virginia, maintaining its principal

business office at 6430 General Green Way, Alexandria, VA, 22312 ("Flood of Virginia"),

engaged in the plumbing, heating and air conditioning services business throughout the

Washington, D.C. metropolitan area, including the District of Columbia. On information and

belief, Flood of Virginia maintains a registered agent and registered office in the District of

Columbia, is duly authorized to transact, and, in fact, does regularly solicit and transact, business

in the District of Columbia.   On information and belief, Flood of Virginia, or other entities

controlled by or under the same ownership and/or management as it, maintain one or more

District of Columbia telephone numbers and business premises in the District of Columbia.

4.  On information and belief Counterclaim Defendant, John C. Flood, Inc., is a

corporation organized and existing under the laws of Virginia, maintaining its principal business

office at 6430 General Green Way, Alexandria, VA, 22312 ("Virginia Flood"), engaged in the

plumbing, heating and air conditioning services business throughout the Washington, D.C.

metropolitan area, including the District of Columbia.  On information and belief, Virginia Flood

maintains a registered agent and registered office in the District of Columbia, and is duly

authorized to transact, and, in fact, does regularly solicit and transact, business in the District of Columbia. On information and belief, Virginia Flood, or other entities controlled by or under the same ownership and/or management as it, maintains one or more District of Columbia telephone numbers and business premises in the District of Columbia.

5. On information and belief, Counterclaim Defendant, John C. Flood Contractors, Inc. ("Flood Contractors") is a Maryland corporation, maintaining its principal business office at 4200 Bladensburg Road, Cottage City, MD 20722, engaged in the plumbing, heating and air conditioning services business in the Washington, D.C. metropolitan area. On information and belief, Flood Contractors, or other entities controlled by, or under the same ownership and/or management as it, maintain one or more District of Columbia telephone numbers and business premises in the District of Columbia. On information and belief, Flood Contractors is owned and controlled by the same persons who own and control Countclaim Defendants Flood of Virginia and Virginia Flood.

6. On information and belief, Counterclaim Defendant Clinton Haislip ("Haislip") is an individual citizen of the Commonwealth of Virginia, having his domicile at 7413 Rocky Ravine Drive, Fairfax Station, VA 22039, who, together with Counterclaim Defendant James L. Seltzer, Jr., owns and/or controls a number of corporations and entities engaged in the plumbing, heating and air conditioning services business in the Washington, D.C. metropolitan area, including the District of Columbia, under various names incorporating the terms JOHN C. FLOOD, including, without limitation Counterclaim Defendants Flood of Virginia, Virginia Flood, and Flood Contractors.

7. On information and belief, Counterclaim Defendant James L. Seltzer, Jr. ("Seltzer") is an individual citizen of the Commonwealth of Virginia, having his domicile at 15412 Kentwell

Circle, Centreville, VA 20120, who, together with Counterclaim Defendant Haislip, owns and/or controls a number of corporations and entities engaged in the plumbing, heating and air conditioning services business in the Washington, D.C. metropolitan area, including the District of Columbia, under various names incorporating the terms JOHN C. FLOOD, including, without limitation Counterclaim Defendants Flood of Virginia, Virginia Flood, and Flood Contractors.

8. This Court has jurisdiction over the subject matter of this action pursuant to 15 U.S.C. § 1121; 28 U.S.C. §§ 1331, 1338(a) and 1338(b); and 28 U.S.C. § 2201(a). This Court has supplemental jurisdiction over the subject matter of the common law claims pursuant to 28 U.S.C. § 1367(a).

9. The Court may exercise personal jurisdiction over the Counterclaim Defendants because: (a) each of the corporate Counterclaim Defendants: (i) is a foreign corporation duly authorized to transact business in the District of Columbia, maintains a place of business in the District of Columbia, and is subject to service of process in the District of Columbia; (ii) regularly transacts business in the District of Columbia; (iii) regularly contracts to supply goods and services in the District of Columbia; or (iv) caused tortious injury to Counterclaim Plaintiff by acts and omissions in and outside of the District of Columbia, and regularly does or solicits business, engages in a persistent course of conduct, and derives substantial revenues from goods used or services rendered, in the District of Columbia; and (b) each of the individual Counterclaim Defendants caused tortious injury to Counterclaim Plaintiff by acts and omissions in and outside of the District of Columbia, and regularly does or solicits business, engages in a persistent course of conduct, and derives substantial revenues from goods used or services rendered, in the District of Columbia.

10.  Venue lies properly in this judicial district pursuant to 28 U.S.C. § 1391(b) and (c), because some of the Counterclaim Defendants reside in this judicial district for purposes of the referenced venue statute, the Counterclaim Defendants who do not reside in this district are under common ownership and control with Counterclaim Defendants who do reside in this district for purposes of venue, and because a substantial part of the events giving rise to the claims asserted in this action occurred in this judicial district.

**II.**    ***Facts Common to All Counts***

      **A.** ***History of Use of JOHN C. FLOOD and Similar Marks***

11.  In 1984, Mel Davis and Mark Crooks formed a Maryland corporation called John C. Flood, Inc., and began engaging in the plumbing, heating, and air conditioning business in the Washington, D.C. metropolitan area, trading under various names including JOHN C. FLOOD, INC., and other variations containing the dominant term JOHN C. FLOOD, INC., and FLOOD.

12.  Between 1984 and 1996, various entities owned and/or controlled by Davis and Crooks (and, later, under the administration of the U.S. Bankruptcy Court) used JOHN C. FLOOD, INC., and similar variations containing as their dominant element the terms JOHN C. FLOOD and FLOOD, as tradenames and service marks in the Washington, D.C. metropolitan area, including in Maryland, Virginia, and the District of Columbia, in connection with plumbing, heating, and air conditioning services, including the Maryland corporation, John C. Flood, Inc.  During this period, these entities displayed continuously the JOHN C. FLOOD, INC. name and mark, and similar names and marks, on service trucks, on contracts, invoices, and in mass market advertising, including, without limitation, in the Washington Post TV Week, contracts, invoices, brochures, and the like.

      **B.** ***Flood of Virginia and Its 1993 Agreement not to Trade in Maryland as JOHN C. FLOOD***

14

13.    In 1989, Davis and Crooks formed Flood of Virginia, in which they owned a controlling interest.  From 1989 to about March 1995, Clinton Haislip and James Seltzer owned a minority, non-controlling interest, of Flood of Virginia.  Davis and Crooks caused to be formed the Virginia company to expand the operations of their JOHN C. FLOOD business in the Commonwealth of Virginia.

14.    In or about September 1993, in a writing seeking to qualify to transact business as a foreign corporation in the State of Maryland, Flood of Virginia agreed that Flood of Virginia would transact business in Maryland only under the assumed name of John C. Flood of Virginia, Inc.  Otherwise, the State of Maryland refused to qualify Flood of Virginia to transact business in the State due to a confusing similarity with the name of Davis and Crooks' Maryland Corporation, John C. Flood, Inc.

### C.    *The Bankruptcy*

15.    On or about June 21, 1991, John C. Flood, Inc., its principals, Mel Davis and Mark Crooks, and their wives, filed a petition for relief under Chapter 11 of the U.S. Bankruptcy Code in the U.S. Bankruptcy Court for the District of Maryland, in a consolidated case styled *In re John C. Flood, Inc.,* Case No. 91-43011-SD.  A Trustee was appointed on March 22, 1993, and the case was converted to a proceeding under Chapter 7 on September 21, 1993.

16.    Among the valuable assets subject to administration as part of the Davis, Crooks and John C. Flood, Inc. bankruptcy estate were the tradenames and service marks JOHN C. FLOOD, INC., FLOOD, INC., and associated goodwill.  Among other things, the Court appointed a receiver, and expressly authorized the receiver to protect the value of such tradenames and goodwill to the bankruptcy estate by pursuing remedies to prohibit confusingly similar uses.  The bankruptcy estate never abandoned use of the names, marks and goodwill with

15

the intention to permanently discontinue their use, but regarded them as important, valuable

assets of the estate.

17.    On or about March 29, 1995, the bankruptcy Trustee reached an agreement with

Flood of Virginia, Haislip, and Seltzer whereby the Trustee sold Crooks' and Davis' controlling

interest in Flood of Virginia to Haislip and Seltzer. By the same agreement, Haislip, Seltzer and

Flood of Virginia released and assigned to the Trustee all claims, causes of action, and disputes

they had with respect to the consolidated bankruptcy cases. From and after March 29, 1995,

Haislip and Seltzer, not Davis and Crooks, owned and controlled Flood of Virginia.

18.    On October 11, 1995, the Trustee and receiver filed a motion authorizing the

private sale of the stock and certain assets of John C. Flood, Inc. Specifically included among

the assets to be sold were the tradenames JOHN C. FLOOD, INC. and FLOOD, INC., and any

goodwill and phone numbers related thereto. The Trustee/receiver's motion sought approval of

the sale of the stock and tradename assets to Robert and Joanna Smiley (the "Smileys"), the

present owners of , for the sum of $300,000, payable on terms.

**D.    *Purchase and Sale of JOHN C. FLOOD, and FLOOD, INC., and
Goodwill in Bankruptcy, and Flood of Virginia's Actions***

19.    Sometime after assuming control of Flood of Virginia in March 1995, and without

the authority or consent of the bankruptcy Trustee or receiver, Flood of Virginia, at that time

owned and controlled by Clinton Haislip and James Seltzer, used the name JOHN C. FLOOD,

INC., in telephone directories, and advertising, in a deliberate attempt to engender confusion and

trade on the valuable goodwill of John C. Flood, Inc., assets then under the administration of the

Trustee and receiver.

20.    Several times in September and October 1995, counsel for the debtors and the

receiver, notified the Trustee in writing that Flood of Virginia was using JOHN C. FLOOD in

advertising, and otherwise engendering deliberately confusion with the Flood companies in receivership. Debtor's counsel demanded that the Trustee take action to preserve the value of the tradename and goodwill to the potential purchasers of those assets from the bankrupts' estate, by advising Flood of Virginia to cease and desist use of JOHN C. FLOOD.

21.    On information and belief, the Trustee communicated to Flood of Virginia's counsel objections to Flood of Virginia's use of JOHN C. FLOOD, and demanded that it cease and desist such use.

22.    On or about October 20, 1995, Flood of Virginia, and its principals Haislip and Seltzer filed written objections to the sale of the Flood assets including the tradenames and goodwill, to Crooks, Davis, and the Smileys. The motion referenced a counteroffer made by Haislip and Seltzer on or about October 16, 1995. None of Flood of Virginia, Haislip or Seltzer, in that objection, or in any other connection in the bankruptcy case, ever objected to the Trustee's rights to sell the names and goodwill, or asserted any superior or exclusive rights to use JOHN C. FLOOD and similar terms, or that the estate had abandoned, through non-use or otherwise, its rights the names and goodwill.

23.    To the contrary, Haislip and Seltzer offered $225,000 for the tradenames, goodwill and phone number assets only, on terms, but were unwilling to assume the liabilities that came with purchasing the stock.

24.    At the time they filed their objections, and themselves bid to acquire the rights to use JOHN C. FLOOD, INC. and FLOOD, INC., and associated goodwill, Flood of Virginia, Haislip and Seltzer were deliberately undermining the value of those rights to anyone but themselves and companies they controlled, by continuing to cause Flood of Virginia to use

17

JOHN C. FLOOD in advertising, promotional material, and signage, and refusing demands to cease such use.

25.     In response to Haislip and Seltzer's counteroffer and objections, the Smileys increased their offer for the stock, and tradenames and associated goodwill to $425,000.

26.     Ultimately, on October 28, 1995, after considering objections and other bids, including the Haislip/Seltzer objections and counteroffer, the Court entered an Order approving the sale of the Flood stock and tradename assets, including the tradenames JOHN C. FLOOD, INC. and FLOOD, INC., and associated goodwill, to the Smileys, for the sum of $425,000 on terms. Haislip/Seltzer's bid for the tradenames and associated goodwill was rejected, and the Smileys won the auction for those particular assets, receiving a Bill of Sale therefore, dated February 20, 1996.

**E.     *Flood and Its Use of the Name and Marks Following the Purchase in Bankruptcy***

27.     Pursuant to the Bankruptcy Court's October 28, 1995, order, and a Settlement and Forbearance Agreement executed thereafter, the Smileys were to form, and consolidate the operations of the former Flood companies into, a new corporation, to be called John C. Flood, Inc.

28.     The Smileys caused to be formed the Counterclaim Plaintiff, John C. Flood, Inc., a Maryland corporation, in or about February 1996.

29.     At all times thereafter, to and including the present date, Flood has been controlled by the Smileys, and, subject to their control, has been trading as JOHN C. FLOOD, INC., and advertising and promoting its plumbing, heating and air conditioning services throughout the metropolitan Washington D.C. area, including in Maryland, D.C. and Virginia, using the terms JOHN C. FLOOD, INC., or similar variants thereof, and displaying the name and

18

mark on trucks, signage, on contracts and in advertising. The entire purchase price of $425,000

for the tradenames JOHN C. FLOOD, INC. and FLOOD, INC., and associated goodwill, has

been, as of the date hereof, paid in full.

**F.**     ***Flood of Virginia's 1996 Agreement to Use "Of Virginia" to Avoid Confusion***

30.     In 1996, notwithstanding Haislip and Seltzer's unsuccessful attempt to acquire the

rights to the JOHN C. FLOOD tradenames and goodwill out of bankruptcy, the Trustee's,

receiver's and debtor's counsel's previous demands, Flood of Virginia continued to advertise as

JOHN C. FLOOD, INC. in telephone directories, on service trucks, and to otherwise engender

confusion between it and Flood.  Flood's counsel again wrote to Flood of Virginia's counsel to

object, and to demand that Flood of Virginia, Haislip and Seltzer cease such use.

31.     In a meeting with Flood's counsel in July 1996, Flood of Virginia, by its counsel,

in order to avoid confusion and to distinguish the services of Flood from those of Flood of

Virginia, agreed to use, in advertising and on signage, JOHN C. FLOOD OF VIRGINIA, and to

cease use of JOHN C. FLOOD, INC.

32.     In a letter dated August 21, 1996, sent in response to a further inquiry from

Flood's counsel, Flood of Virginia's counsel stated that Flood of Virginia's advertisements going

into new telephone directories had been changed to say JOHN C. FLOOD OF VIRGINIA, and

expressly agreed to change the signage on buildings and service vehicles to JOHN C. FLOOD

OF VIRGINIA, within a reasonable time after the date of the letter.

**G.**     ***Flood of Virginia's Applications to Register JOHN C. FLOOD Marks***

33.     On March 23, 1999, Flood of Virginia filed an application with the United States

Patent and Trademark Office, pursuant to Section 1(a) of the Trademark Act, for federal

registration of the words-only mark JOHN C. FLOOD, INC. as a service mark for services in the

nature of Plumbing; Installation, Repair and Maintenance of Heating Equipment, Installation and

Repair of Air Conditioning Apparatus, and Electrical Contracting, known and designated as

Application Serial Number 75/665434 (the "Word Mark Application").

34.    Also on March 23, 1999, Flood of Virginia filed with the U.S. Patent and

Trademark Office a separate application, also pursuant to Section 1(a) of the Trademark Act, for

federal registration of a mark which included an oval-shaped design in which the words JOHN

C. FLOOD are the dominant element, also for the services recited in the foregoing paragraph,

known and designated as Application Serial Number 75/665433 (the "Logo Mark Application").

35.    At the time Flood of Virginia executed both the Word Mark Application and the

Logo Mark Application (collectively, the "Applications," it had actual knowledge that:

(a)    Its principals had bid unsuccessfully to acquire the rights to use the JOHN C.

FLOOD, INC. and FLOOD, INC., names and goodwill in the bankruptcy case, and lost those

rights to the Smileys, who outbid Flood of Virginias' principals;

(b)    The Flood entities from and through which the Smileys acquired those rights,

and Flood (under the direction and control of the Smileys) thereafter, made continuous use of

JOHN C. FLOOD, INC. and similar variants containing as their dominant element the terms

JOHN C. FLOOD and FLOOD in interstate commerce as tradenames and service marks, without

abandonment, since approximately 1984 in connection with services virtually identical or similar

to those described in the Applications, and that such use was prior and senior to any use of

similar terms made by Flood of Virginia; and

(c)    Flood of Virginia agreed in 1993 with the State of Maryland and in 1996 with

the Flood's counsel and the bankruptcy Trustee to cease use of JOHN C. FLOOD, INC., and to

use the "of Virginia" distinguishing designator to avoid confusion and mistake with Flood; and

(d)  There had occurred past incidents of actual confusion and mistake between Flood and Flood of Virginia among vendors, customers and potential customers, in the Washington metropolitan region, resulting from Flood of Virginia's use of JOHN C. FLOOD, INC.

36.     Notwithstanding such knowledge, Flood of Virginia averred, under penalties of perjury, in both the Word Mark Application, and the Logo Mark Application, that to the best of its knowledge and belief: "no other person, firm, corporation, or association has the right to use the above identified mark in commerce, either in the identical form thereof or in such near resemblance thereto as may be likely, when used on or in connection with the goods/services of such other person, to cause confusion, or to cause mistake, or to deceive. . . ."

37.     Further, in both the Word Mark Application and the Logo Mark Application, Flood of Virginia averred under penalties of perjury, that it first began using both marks in November of 1989 and in interstate commerce in January of 1990.

38.      On information and belief, Flood of Virginia did not, in fact, first use one or more of the marks applied for in the Word Mark Application and/or the Logo Mark Application as servicemarks on one or more of the dates averred.

39.     Each of the averments set forth in the preceding three paragraphs were knowingly false and misleading when made, and made with the deliberate intention of deceiving the Patent and Trademark Office, and procuring a registration which, but for the misrepresentations, would not have been granted.

40.     On the basis of Flood of Virginia's false and misleading oaths and affirmations in the Word Mark Application and the Logo Mark Application, the Patent and Trademark Office granted registration of both Applications.

41.    On April 25, 2000, the mark that was the subject of the Word Mark Application was registered to Flood of Virginia as U.S. Trademark Registration No. 2,345,161.  On June 6, 2000, the mark that was the subject of the Logo Mark Application was registered to Flood of Virginia as U.S. Trademark Registration No. 2,355,004.

42.    In or about 2004, Flood became aware of default judgments that had been entered against it by the District of Columbia Superior Court, in cases brought by Flood customers or vendors, of which Flood was unaware because the process in such cases had been mistakenly served on Flood of Virginia.  Rather than forwarding the process to Flood upon realizing the confusion of the plaintiffs, Flood of Virginia instead maliciously discarded the process, with the object of depriving Flood of the ability to attempt to resolve the disputes consensually, or to defend the actions.  In other instances Flood customers, intending to engage Flood, were confused or deceived by Flood of Virginia's confusing use of JOHN C. FLOOD, and throughout the job, were led to believe that they were working with Flood.

**H.    *Flood's Petition to Cancel Flood of Virginia's Registrations; Flood of Virginia's Refusal to Make Discovery, and Flood's Motion to Compel and Motion for Sanctions; Flood of Virginia's Commencement of This Action***

43.  In November 2004, Flood, by its counsel, wrote to Flood of Virginia, notifying it that Flood considered its continued use of JOHN C. FLOOD without the "of Virginia" designator as an infringement of Flood's rights, and demanding, *inter alia,* that it cease and desist use of JOHN C. FLOOD, and that it adhere to its previous agreements to use the full designator JOHN C. FLOOD OF VIRGINIA in identifying and distinguishing its services.  Flood of Virginia failed and refused to accede to Flood's demands, and continued its infringing uses of JOHN C. FLOOD.

44. Prior to the fifth year anniversary of those registrations, on March 21, 2005, Flood filed in the Trademark Trial and Appeal Board of the United States Patent and Trademark Office ("TTAB") a Consolidated Petition for Cancellation of Flood of Virginia's registrations, commencing TTAB Consolidated Case No. 92044261 and 92044278. The grounds from cancellation were substantially the same as those asserted in these Counterclaims.

45. On August 11, 2006, Flood served on Flood of Virginia Interrogatories and Document Production Requests. Flood of Virginia served no written response, and made available no documents. After multiple attempts to resolve Flood of Virginia's defalcation, on December 6, 2005, Flood filed a Motion to Compel. Due to the pendency of the discovery motion, the TTAB suspended further proceedings in the case until the motion was resolved. Flood of Virginia filed and served no response to the Motion.

46. On June 9, 2006, the TTAB entered an Order granting Flood's Motion to Compel, ordering Flood of Virginia to serve discovery responses, without objections, and to make available for inspection all document requested by Flood, on or before June 30, 2006. The TTAB indicated that it would entertain a motion for sanctions if Flood of Virginia did not comply.

47. Once again, Flood of Virginia failed to serve any responses or to make available for inspection any documents, as ordered by the TTAB. On July 11, 2006, nearly a full year after initially propounding the discovery requests and receiving nothing in response, Flood filed a Motion for Sanctions, seeking, *inter alia,* striking Flood of Virginia's Answer, and entering judgment in Flood's favor, or, in the alternative, striking from its Answer Flood of Virginia's denials of the Petition's allegations and its affirmative defenses.

48. Flood of Virginia, once again, did not respond to this Motion. Instead, on July 25, 2006, it filed before the TTAB a Motion to Suspend Action Pending Disposition of Civil Action, indicating that had that day filed the Complaint commencing this action.

I.    *Flood's Use of JOHN C. FLOOD and FLOOD Names and Marks*

49. The Smileys, through their company, Flood, and, before them, the Smileys' assignors and/or predecessors in interest, have continuously used tradenames and service marks containing as their dominant element the terms JOHN C. FLOOD and FLOOD since 1984 in interstate commerce, in connection with residential plumbing, heating and air conditioning services in the metropolitan Washington D.C. area. Such use of such names and marks predates the filing date of the Word Mark Application and the Logo Mark Application, and the dates of first use and first use in commerce recited in those Applications, and the date Flood of Virginia actually commenced use of the same or similar marks. At the time it executed and filed those applications, Flood of Virginia's officers and principals had actual knowledge of each of the foregoing facts recited in this paragraph.

50. Continuously since 1984, before the dates of first use and first use in commerce recited in Flood of Virginias' the Applications, and before the filing dates of those Applications, the Smileys, through Flood, their company, and, before them, their assignors and/or predecessors in interest, have, without abandonment, used and displayed the JOHN C. FLOOD, INC. name and mark, or similar variants thereof containing the dominant terms JOHN C. FLOOD and FLOOD, on service trucks, on contracts, invoices, and letterhead, and in other mass market advertising, including, without limitation, in the Washington Post TV Week, brochures, and the

like, in connection with business and services virtually identical to those recited in the Applications.

51.    As result of use of such continuous use of JOHN C. FLOOD, INC. and similar terms containing the dominant elements, JOHN C. FLOOD and FLOOD, as tradenames and service marks by the Smileys' assignors and/or predecessors in interest, and by Flood, substantial goodwill of the business has become associated with the names and marks JOHN C. FLOOD, INC. and FLOOD in the Washington, D.C. metropolitan area, including in Maryland and the District of Columbia, in Flood's favor.

52.    Such trade names and service marks are and have been inherently distinctive for the services in the nature of plumbing, heating, and air conditioning offered by the Smileys through their company, Flood, and their assignors and/or predecessors in interest, and not merely descriptive or generic therefore. JOHN C. FLOOD is not the name of a living person.

53.    Flood and Flood of Virginia compete directly for the same customers in the same geographic region in the same lines of trade and business, and advertise and promote their businesses in the same channels of trade.

**COUNT I:**
**FEDERAL FALSE DESIGNATION OF ORIGIN, SOURCE, OR SPONSORSHIP**
**(AGAINST FLOOD OF VIRGINIA, VIRGINIA FLOOD, AND FLOOD**
**CONTRACTORS)**
<u>**Lanham Act Section 43(a)) (15 U.S.C. § 1125(a)**</u>

54.    Flood hereby realleges and incorporates by reference each of Paragraphs 1 through 53, inclusive, as if the same were set forth herein in their entirety.

55.    Since 1984 and through and including the present date, Flood, under the control of the Smileys, and/or the Smileys' assignors and/or predecessors in interest, whose use inures to Flood's benefit, have continuously used tradenames and service marks containing as their

dominant element the terms JOHN C. FLOOD and FLOOD in interstate commerce, in connection with residential plumbing, heating and air conditioning services in the metropolitan Washington D.C. area. Said use is and has been valid and continuous since said date of first use, and has not been abandoned. Said tradenames and marks are symbolic of extensive good will and consumer recognition built up by Flood and its assignors and predecessors in interest through whom Flood acquired the rights to use such names and marks for valuable consideration.

56. Such use of such names and marks predates and is senior to use of JOHN C. FLOOD, FLOOD, and similar names and marks of each of the Counterclaim Defendants Flood of Virginia, Virginia Flood, and Flood Contractors, and Flood enjoys priority of usage over each of them.

57. Each of the Counterclaim Defendants Flood of Virginia, Virginia Flood, and Flood Contractors has offered and sold plumbing, heating, electrical, air conditioning and related services in interstate commerce with the designations and representations JOHN C. FLOOD, FLOOD and designations and representations confusingly similar thereto. Such uses are false designations of origin, source, and/or sponsorship which are likely to cause, and which have caused, confusion and mistake, and to deceive consumers as to the affiliation, connection, or association of those Counterclaim Defendants with Flood, and as to the origin, sponsorship, or approval of such services by Flood.

58. The foregoing acts are in violation of 15 U.S.C. § 1125(a) in that each of the Counterclaim Defendants Flood of Virginia, Virginia Flood, and Flood Contractors has used and is using in connection with services a false designation of origin, a false and misleading representation of fact which is likely to cause, and which has caused, confusion and mistake, and to deceive consumers as to the affiliation, connection, sponsorship, and approval of their services

26

and commercial activities by Flood. Such violations are an infringement of Flood's rights in and to its trade name and service marks, and unfair competition, which infringement was and is willful, deliberate, intentional, and/or in bad faith.

59. By using the terms JOHN C. FLOOD to identify, distinguish and promote their goods and services, each of Counterclaim Defendants Flood of Virginia, Virginia Flood, and Flood Contractors is intentionally seeking to benefit from the reputation and goodwill Flood has derived over years of continuous prior use of its name and marks.

60. Each of Counterclaim Defendants Flood of Virginia, Virginia Flood, and Flood Contractors used and is using JOHN C. FLOOD to identify, distinguish and promote their goods and services, willfully and deliberately and/or in bad faith, with the intention to mislead the public into believing, falsely, that consumers are purchasing, or interested in purchasing, services developed, sold, sponsored, endorsed or approved by Flood, and/or to improperly trade upon the goodwill, reputation, and the association in the marketplace now enjoyed by Flood, or with the intent to manufacture or create confusion in the marketplace.

61. By reason of each of the Counterclaim Defendants Flood of Virginia, Virginia Flood, and Flood Contractors acts alleged herein, Flood has suffered and will suffer damage to its business, reputation, and good will and the loss of sales and profits which it would have derived but for their acts.

62. Unless enjoined and restrained, each of Counterclaim Defendants Flood of Virginia, Virginia Flood, and Flood Contractors will continue to do the acts complained of herein, unless enjoined and restrained, all to Flood's irreparable damage and harm, for which Flood has no adequate remedy at law.

**COUNT II:**
**FOR CANCELLATION OF**
**U.S. TRADEMARK REGISTRATION NUMBERS. 2,345,161. & 2,355,004.**
**ON GROUNDS OF FLOOD'S PRIOR USE AND LIKELIHOOD OF CONFUSION**
**(AGAINST FLOOD OF VIRGINIA)**
**Trademark Act Section 2(d); 15 U.S.C. § 1052(d)**

63. Flood hereby realleges and incorporates by reference each of Paragraphs 1
through 62, inclusive, as if the same were set forth herein in their entirety.

64. In light of Flood's priority of usage, and the confusing and deceptive similarity
between Flood's names and marks, Flood is damaged by the continued registration or Flood of
Virginia's registrations, and likely to be damaged by the incontestability status thereof, in that
the *prima facie* effect thereof tends to impair Flood's right to use and register its trade names and
marks.

**COUNT III:**
**FOR CANCELLATION OF**
**U.S. TRADEMARK REGISTRATION NUMBERS. 2,345,161. & 2,355,004**
**AND FOR DAMAGES**
**ON GROUNDS THAT THEY WERE OBTAINED BY FRAUD**
**(AGAINST FLOOD OF VIRGINIA)**
**Trademark Act Sections 14(3) & 38; 15 U.S.C. §§ 1064(3) & 1120**

65. Flood hereby realleges and incorporates by reference each of Paragraphs 1
through 64, inclusive, as if the same were set forth herein in their entirety.

66. Flood of Virginia's registrations were obtained fraudulently, in that the formal
application papers filed by Flood of Virginia under the oath required by 18 U.S.C. Section 1001
were deliberately false and misleading in the respects particularized herein in Paragraphs 36
through 38 hereof, which Paragraphs Flood hereby realleges and incorporates by reference,
inclusive, as if the same were set forth herein in their entirety.

67.    Flood of Virginia's averments referenced in Paragraphs 36 through 38 hereof were made by an authorized agent of Flood of Virginia with the knowledge and belief that each such averment was false.

68.    Said false statements were made with the intent to induce authorized agents of the U.S. Patent and Trademark Office to grant said registrations, and, reasonably relying on the truth of such statements, the U.S. Patent and Trademark Office did, in fact, grant said registrations to Flood of Virginias.

69.    Flood is damaged by the continued registration of Flood of Virginia's registrations on the basis of Flood of Virginia's fraudulent statements, and is likely to be damaged by the incontestability status of Flood of Virginia's registrations, in that the *prima facie* effect thereof tends to impair Flood's right to use and register its trade names and marks.    Flood has been further damaged by Flood of Virginia's false and fraudulent statements and the registrations issued in reliance thereupon in that Flood is forced to incur substantial expenses and costs in defense of the present suit, and otherwise to seek cancellation of the fraudulent registrations before the TTAB and in this case.

**COUNT IV:**
**FOR CANCELLATION OF**
**U.S. TRADEMARK REGISTRATION NUMBERS. 2,345,161. & 2,355,004.**
**ON GROUNDS OF MISREPRESENTATION OF SOURCE OR SPONSORSHIP**
**(AGAINST FLOOD OF VIRGINIA)**
**Trademark Act Sections 14(3) and 43(a); 15 U.S.C. § 1064(3)**

70.    Flood hereby realleges and incorporates by reference each of Paragraphs 1 through 69, inclusive, as if the same were set forth herein in their entirety.

71.    On information and belief, Flood of Virginia has deliberately performed the same type of services offered by Floods for customers who trying to reach "John C. Flood," and who believe they are reaching Floods, thereby passing off Flood of Virginia's services as Flood's.

29

72.     On information and belief, Flood of Virginia has one more than one occasion,
deliberately discarded civil summons issued in civil actions mistakenly served on Flood of
Virginia by process servers believing they were serving Flood, thereby depriving Flood of the
ability to defend or settle such cases, resulting in default judgments being entered against Flood.

73.     On information and belief, Flood of Virginia has been using its registered marks
in bad faith, so as to systematically and deliberately engender confusion with Flood, for the
express purpose of eroding or arrogating unto itself the goodwill of Flood's business associated
with Flood's names and marks, thereby deliberately injuring and competing unfairly with Flood.

74.     Through the foregoing means, Flood of Virginia is using its registered marks so as
to misrepresent the true source of the services in connection with the marks are being used, and
to imply or suggest that Flood is the source or, or sponsors or endorses the services offered by
Flood of Virginia.

75.     Flood is damaged by the continued registration of Flood of Virginia's
registrations, and likely to be damaged by the incontestability status of Flood of Virginia's
registrations, in that the *prima facie* effect thereof tends to impair Flood's right to use and
register its trade names and marks.

### COUNT V:
### DECLARATION OF FLOOD'S PRIORITY OVER ALL COUNTERCLAIM
### DEFENDANTS AND THEIR LACK OF RIGHTS TO REGISTRATION
### (AGAINST ALL COUNTERCLAIM DEFENDANTS)
### (Federal Declaratory Judgment Act; 28 U.S.C. § 2201(a))

76. Plaintiff hereby realleges and restates paragraphs 1 through 75, as if set forth herein
in their entirety.

77. Each of Counterclaim Defendants Flood of Virginia, Virginia Flood, and Flood
Contractors, on information and belief under the direction and control of Counterclaim

Defendants Haislip and Seltzer, are continuing to promote and advertise goods and services

under the disputed name and marks. Further, Counterclaim Defendants Haislip and Seltzer have

established and control multiple entities incorporating in their names the terms JOHN C.

FLOOD, which offer services identical or similar to those offered by Flood.

78. Declaration of the parties' rights in respect of priority and exclusivity of rights of

usage, and rights to registration, will avoid continuing uncertainty and irreparable harm that

would result to Flood from the Counterclaim Defendants' continuing use and registration of the

disputed name and marks in competition with Flood.

**COUNT VI:**
**COMMON LAW SERVICE MARK INFRINGEMENT**
**AND UNFAIR COMPETITION**
**(AGAINST FLOOD OF VIRGINIA, VIRGINIA FLOOD, AND FLOOD**
**CONTRACTORS)**

79. Flood hereby realleges and incorporates by reference each of Paragraphs 1 through

78, inclusive, as if the same were set forth herein in their entirety.

80. Since 1984 and through and including the present date, Flood, under the control of

the Smileys, and/or the Smileys' assignors and/or predecessors in interest, whose use inures to

Flood's benefit, have continuously used trade names and service marks containing as their

dominant element the terms JOHN C. FLOOD and FLOOD, in connection with residential

plumbing, heating and air conditioning services in the metropolitan Washington D.C. area. Said

use is and has been valid and continuous since said date of first use, and has not been abandoned.

Said tradenames and marks are symbolic of extensive good will and consumer recognition built

up by Flood and its assignors and predecessors in interest through whom Flood acquired the

rights to use such names and marks for valuable consideration.

81.  Such use of such names and marks predates and is senior to use of JOHN C. FLOOD, FLOOD, and similar names and marks of each of the Counterclaim Defendants Flood of Virginia, Virginia Flood, and Flood Contractors, and Flood enjoys priority of usage over each of them.

82.  Each of the Counterclaim Defendants Flood of Virginia, Virginia Flood, and Flood Contractors has offered and sold plumbing, heating, electrical, air conditioning and related services in interstate commerce with the designations and representations JOHN C. FLOOD, FLOOD and designations and representations confusingly similar thereto.  Such uses are likely to cause, and have caused, confusion and mistake, and to deceive consumers as to the affiliation, connection, or association of those Counterclaim Defendants with Flood, and as to the origin, source, sponsorship, or approval of such services by Flood.

83.  By using the terms JOHN C. FLOOD to identify, distinguish and promote their goods and services, each of  Counterclaim Defendants Flood of Virginia, Virginia Flood, and Flood Contractors is intentionally seeking to benefit from the reputation and goodwill Flood has derived over years of continuous prior use of its name and marks.

84.  On information and belief, each of Counterclaim Defendants Flood of Virginia, Virginia Flood, and Flood Contractors used JOHN C. FLOOD to identify, distinguish and promote their goods and services with the intent to mislead the public into believing, falsely, that consumers are purchasing, or interested in purchasing, services developed, sold, sponsored, endorsed or approved by Flood, and/or to improperly trade upon the goodwill, reputation, and the association in the marketplace now enjoyed by Flood, or with the intent to manufacture or create confusion in the marketplace.  Such conduct constitutes an infringement of Flood's common law rights in its JOHN C. FLOOD service mark, and unfair competition, which

infringement and unfair competition is and was willful, deliberate, intentional, and/or in bad faith.

85. By reason of each of the Counterclaim Defendants Flood of Virginia, Virginia Flood, and Flood Contractors acts alleged herein, Flood has suffered and will suffer damage to its business, reputation, and good will and the loss of sales and profits which it would have derived but for their acts.

86. Unless enjoined and restrained, each of Counterclaim Defendants Flood of Virginia, Virginia Flood, and Flood Contractors will continue to do the acts complained of herein, unless enjoined and restrained, all to Flood's irreparable damage and harm, for which Flood has no adequate remedy at law.

## PRAYER FOR RELIEF

**WHEREFORE,** Defendant and Counterclaim Plaintiff John C. Flood, Inc. hereby respectfully requests this Honorable Court to enter judgment in its favor, adjudging, decreeing, and ordering that:

(1) Each and every count of the Plaintiff and Counterclaim Defendant John C. Flood of Virginia, Inc.'s Complaint be dismissed with prejudice, or that judgment thereupon be granted in favor of Defendant and Counterclaim Plaintiff John C. Flood, Inc.; and

(2) FURTHER declaring, adjudging and decreeing that Flood has priority of usage over each and every of the Counterclaim Defendants, and the exclusive right to use and register in connection with plumbing, heating, electrical, air conditioning, or remodeling or construction services, the trade name and service mark JOHN C. FLOOD, and all other names and marks similar to JOHN C. FLOOD, which, by colorable imitation or otherwise, are likely to cause confusion, mistake, or to deceive, and that no Counterclaim Defendant has the right to use or

register, and enjoining each of them from so using, registering, or attempting to register, any of the same, and from interfering with or obstructing Flood's use and registration of the same; and

(3) FURTHER ordering, adjudging and decreeing that each of the Counterclaim Defendants, and all of their subsidiaries, affiliates, licensees, successors, assigns, divisions, agents, servants, and employees, and all those in active concert or participation with the Counterclaim Defendants who receive actual notice of such judgment directly or otherwise, and each of them, be preliminarily and permanently enjoined and restrained from infringing Flood's tradenames and service marks JOHN C. FLOOD and other marks derived therefrom, whether registered or not, and specifically from:

(A) Directly or indirectly using or displaying, throughout the United States and the world, the terms JOHN C. FLOOD, JOHN C. FLOOD CONTRACTORS, www.johncflood.com, or any other mark, words, Uniform Resource Locator or Internet address, name or device, similar to the JOHN C. FLOOD name and marks, which, by colorable imitation or otherwise, are likely to cause confusion, mistake, or to deceive, in connection with plumbing, heating, electrical, air conditioning, or remodeling or construction services in the Washington, D.C. metropolitan area, or in connection with any goods or services related to the goods and services now offered or to be offered by Flood;

(B) Promoting, advertising, marketing, distributing, selling, or offering for sale, throughout the United States and the world, any plumbing, heating, electrical, air conditioning, or remodeling or construction services in the Washington, D.C. metropolitan area, using or displaying the terms JOHN C. FLOOD, JOHN C. FLOOD CONTRACTORS, www.johncflood.com, or any other mark, words, Uniform Resource

Locator or Internet address, name or device similar to Flood's name and mark, which, by colorable imitation or otherwise, is likely to cause confusion, mistake, or to deceive, in any manner; and

(4)   FURTHER, ordering, adjudging and decreeing that the Counterclaim Defendants, at their expense, place advertisements in all publications in any and all media in which it has placed advertising promoting awareness of JOHN C. FLOOD, and post on all World Wide Web sites which any and all of the Counterclaim Defendants operate, control or on which it advertises, a statement acknowledging Flood's rights in and to the JOHN C. FLOOD name and marks, disclaiming any affiliation, source or sponsorship by Flood of any goods or services offered or advertised by any of them, and announcing that the Counterclaim Defendants are changing their name; and that the Counterclaim Defendants, at their expense, conduct such remedial advertising, in such nature, form, frequency, and media outlets, as the Court may deem necessary and sufficient to redress the harm caused to Flood by and as a result of the Counterclaim Defendants' illegal acts herein alleged; and

(5)   FURTHER, ordering, adjudging and decreeing that the Counterclaim Defendants, and all subsidiaries, affiliates, licensees, successors, assigns, divisions, agents, servants, and employees, and all those in active concert or participation with Counterclaim Defendants who receives actual notice of such judgment directly or otherwise, and each of them, account for and deliver up for destruction all materials which use or display the term JOHN C. FLOOD, or any other mark, words, name or device, similar to the JOHN C. FLOOD name and mark, which, by colorable imitation or otherwise, is likely to cause confusion, mistake, or to deceive, in any manner; and

(6) FURTHER, ordering, adjudging and decreeing that the Counterclaim Defendants,
jointly and severally, pay over to Flood a sum of money equal to:

        (A)  A sum equal to all of the profits, gains and advantages derived by the
Counterclaim Defendants, and their subsidiaries, affiliates, licensees, successors,
assigns, and divisions, by reason of their infringement of Flood's trade names and
service marks, in an amount to be determined at trial, plus an additional amount,
not exceed three times such sum, as provided by Section 35(a) of the Lanham Act
(15 U.S.C. § 1117(a)); and/or

        (B) Any and all damage and loss sustained by Flood as a result of their
infringement of Flood's trade names and service marks, in an amount to be
determined at trial, plus an additional amount, not exceed three times such sum, as
provided by Section 35(a) of the Lanham Act (15 U.S.C. § 1117(a)); and/or

        (C)  The costs of remedial advertising;

        (D) Costs of this action, as allowed by law; and

        (E)  Reasonable attorneys' fees incurred by Flood; and

        (F) Prejudgment interest on all amounts awarded at the lawful rate from the date
of the infringing use to the date of judgment; and

(7) FURTHER, ordering, adjudging and decreeing that the Commissioner of Patents and
Trademarks forthwith cancel Counterclaim Defendant Flood of Virginia's U.S. Trademark
Registration Numbers 2,345,161 & 2,355,004, and awarding Flood a sum equal to the damage
and loss sustained by Flood as a result of Flood of Virginia's false and fraudulent declarations
and false means in connection with procuring the foregoing registrations, in an amount to be
established at trial, together with Flood's attorneys' fees and costs; and

36

(8)  FURTHER, ordering, adjudging and decreeing such other and further relief in favor

of Flood as the court may deem appropriate in the circumstances of this case.

Respectfully submitted,

**DEFENDANT AND COUNTERCLAIM PLAINTIFF
JOHN C. FLOOD, INC.**

By its attorneys:          _____/s/_____

Benjamin J. Lambiotte
D.C. Bar 421288
**GARVEY SCHUBERT BARER**
1000 Potomac Street, Fifth Floor
Washington, D.C. 20007
(202) 965-7880
e-mail:  blambiotte@gsblaw.com

<u>CERTIFICATE OF SERVICE</u>

I, Benjamin J. Lambiotte, hereby certify that, on this 28th day of August, 2006, I caused

the foregoing Answer, Affirmative Defenses, and Counterclaims to be served, via first-class,

postage prepaid mail, and via electronic mail, on counsel for the Plaintiff and Counterclaim

Defendant John C. Flood of Virginia, Inc., as follows:

Lisa Dunner, Esquire
Dunner Law
1010 Wisconsin Avenues, N.W.
Washington, D.C.  20007
ldunner@dunnerlaw.com

Stephen J. Zralek, Esquire
Bone, McAllester Norton PLLC
511 Union Street, Suite 1600
Nashville, TN  37219
szralek@bonelaw.com

_____/s/_____
Benjamin J. Lambiotte

37