## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **JOHN C. FLOOD OF VIRGINIA, INC., et al.** ) | |
| ) | |
| **Plaintiffs and Counter-Defendants,** ) | |
| ) | |
| **v.** ) | **Judge Richard J. Leon** |
| ) | **Case No.: 1:06CV01311** |
| **JOHN C. FLOOD, INC., et al.** ) | **Deck Type: General Civil** |
| ) | |
| **Defendants and Counter-Plaintiffs.** ) | |

## MOTION FOR PROTECTIVE ORDER OF DEFENDANT/COUNTERCLAIM-PLAINTIFF AND DEFENDANTS

Pursuant to Federal Rule of Civil Procedure 26(c), Defendant/Counterclaim-Plaintiff John C. Flood, Inc., and Defendants John C. Flood of D.C., Inc., Robert Smiley, Joanne Smiley, Mark Crooks, Mel Davis and J.C. Flood, Inc., J.C. Flood Company, and JCF, Inc., (collectively, "Defendants") hereby respectfully move this Court for the entry of a protective order protecting in the manner requested herein, each and every one of the Defendants from certain of the discovery requests of Plaintiff/Counterclaim-Defendant John C. Flood of Virginia ("Virginia Flood"), John C. Flood, Inc., John C. Flood Contractors, Inc., Clinton Haislip and James L. Seltzer, Jr. (collectively, the "Virginia Flood Parties").

Defendants respectfully request an Order:

(i) denying and protecting Defendants from certain overbroad and vague production requests that call for irrelevant and confidential business and private information and documents, and/or are calculated to oppress, harass or intimidate, and that call for tax returns and tax-related communications, including First Production Requests Nos. 7, 34, 35, 39, 40, and 45, and Second Production Requests Nos. 3, 4, 6 and 7;

(ii) deferring the disclosure of competitively sensitive confidential financial documents and information pertaining to Virginia Flood's claims for monetary relief, including (to the extent not already denied) documents requested in each of First Production Requests Nos. 6, 7, 34, 35, 39, 40, and 45, and Second Production Requests Nos. 3, 4, 6 and 7, until after the Court determines whether Virginia Flood is entitled to such remedies, and, at least, until a ruling on the Defendants' Motion for Partial Summary Judgment, filed on even date herewith, which may have the effect of obviating any need for such discovery entirely. If the Court grants the Motion for Partial Summary Judgment, and Virginia Flood is determined not to be entitled to such remedies, then we request that such discovery be denied. To permit such intrusive and oppressive discovery at this time when the issue of the propounding party's right to assert the very claim providing the basis for relevance of the requested information has been presented to the Court, and is ripe for resolution on a dispositive motion, would be inefficient, and would unfairly prejudice Defendants;

(iii) In the alternative, in the event the Court denies the relief requested in part (ii) hereof or if the Motion for Partial Summary Judgment is denied, we ask the Court to enter a protective order establishing conditions to: protect the confidentiality and to prevent disclosure of such documents and the information in them to the public generally and specifically preventing such disclosure to Virginia Flood Parties and their principals, employees, contractors and affiliates; restrict disclosure of such records and information in them only to outside counsel of record appearing in this case, expert witnesses unaffiliated with the Virginia Flood Parties or their principals, employees, contractors, and affiliates who agree to be bound by the confidentiality restrictions in the order, and the Court; restrict use of such records and information only for purposes of trial and appeal in this action; and require that any such documents or information in

2

them filed with or used in connection with proceedings before the Court be received and kept under seal, with such order to be in a form agreed to by counsel for the parties, or in the event they cannot agree, prepared by the Court.

The factual and legal grounds for the requested relief are set forth in the attached Memorandum of Points and Authorities and attachments thereto, and, as set forth therein, good cause exists and the interests of justice would be served by the granting of the requested relief.

Undersigned counsel hereby certifies that, in a series of correspondence and subsequent telephone conferences movants have conferred in good faith with counsel for the Virginia Flood Parties in an effort to resolve the matters raised by this motion without court action, but were unable to reach agreement on such matters. Undersigned counsel states that counsel for the Virginia Flood Parties opposes the requested relief.

Respectfully submitted,

**COUNTERCLAIM PLAINTIFF/DEFENDANT
JOHN C. FLOOD, INC., & DEFENDANTS
JOHN C. FLOOD OF D.C., INC., ROBERT
SMILEY, JOANNE SMILEY, MARK
CROOKS AND MEL DAVIS, J.C. FLOOD,
INC., J.C. FLOOD COMPANY, & JCF, INC.**

By their attorneys:    /s/ Benjamin J. Lambiotte
Benjamin J. Lambiotte
D.C. Bar No. 421288
blambiotte@gsblaw.com
Steve Varholik
D.C. Bar No. 497315
svarholik@gsblaw.com
**GARVEY SCHUBERT BARER**
1000 Potomac Street, Fifth Floor
Washington, D.C. 20007
(202) 965-7880

## CERTIFICATE OF SERVICE

I certify that I served a copy of this MOTION FOR PROTECTIVE ORDER upon counsel for the Virginia Flood Parties via ECF and electronic mail, on this 18th day of July, 2007.

Stephen J. Zralek, *appearing pro hac vice*
BONE McALLESTER NORTON PLLC
511 Union Street, Suite 1600
Nashville, TN 37219
Tel: (615) 238-6300
Fax: (615) 238-6391
szraleck@bonelaw.com

Lisa Dunner, DC Bar #452004
DUNNER LAW
1010 Wisconsin Avenue, N.W.
Washington, DC 20007
Tel: (202) 298-2002
Fax: (202) 403-3030
ldunner@dunnerlaw.com

/s/ Benjamin J. Lambiotte

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

JOHN C. FLOOD OF VIRGINIA, INC., et al.   )
                                     )
     Plaintiffs and Counter-Defendants,   )
                                     )
v.                                    )    **Judge Richard J. Leon**
                                   )    **Case No.: 1:06CV01311**
JOHN C. FLOOD, INC., et al.         )    **Deck Type:  General Civil**
                                   )
     Defendants and Counter-Plaintiffs.   )

---

## MEMORANDUM IN SUPPORT OF
## DEFENDANTS' MOTION FOR A PROTECTIVE ORDER
## (WITH EXHIBITS A-C)

---

Pursuant to Federal Rules of Civil Procedure 26(c), and Local Rule of Civil Procedure 7(a), Defendant/Counterclaim-Plaintiff John C. Flood, Inc., and Defendants John C. Flood of D.C., Inc., Robert Smiley, Joanne Smiley, Mark Crooks, Mel Davis and J.C. Flood, Inc., J.C. Flood Company, and JCF, Inc., (collectively, "Defendants") hereby respectfully submit the following Memorandum of Points and Authorities in support of its Motion for Protective Order.

## I. INTRODUCTION

In essence, this is a servicemark and tradename priority dispute. As framed by the pleadings, the dispute involves two groups of business entities, one controlled by Joanne and Robert Smiley ("the Smileys"), and the other controlled by Clinton Haislip ("Haislip") and James Seltzer ("Seltzer").  Each operate, plumbing, heating and air conditioning services businesses under the tradenames and service marks JOHN C. FLOOD in the Washington, D.C. metropolitan area.

The Plaintiff and Counterclaim Defendants include John C. Flood of Virginia, Inc. ("Flood of Virginia"), and other corporations, owned and controlled by Clinton Haislip and

James Seltzer (collectively, the "Virginia Flood Parties." Movants here, the Defendants and Counterclaim-Plaintiff include John C. Flood, Inc. (a Maryland corporation), and John C. Flood of D.C., Inc. (a D.C. corporation) ("1996 Flood"), are businesses owned and operated by the Smileys.[1]

In early 1996, the Smileys and 1996 Flood purchased the trade names and associated goodwill in and to JOHN C. FLOOD and FLOOD for $425,000 from the Chapter 7 Trustee of the consolidated bankruptcy estates of a Maryland corporation also called John C. Flood, Inc., and its principals, Mel Davis[2] ("Davis") and Mark Crooks ("Crooks"), and their wives, in a sale conducted under Section 363 of the U.S. Bankruptcy Code, in a consolidated case styled *John C. Flood, Inc., et alia*, 91-4-3011SD (Bankr. Md).  Defendants trace their priority in the trade names and goodwill they acquired in that sale back to 1984, when the corporate debtor-in-bankruptcy, John C. Flood, Inc. ("1984 Flood") first began using the mark.  At all times since the purchase in February 1996, they have used JOHN C. FLOOD

The central question in the case is whether the Plaintiff, Flood of Virginia, operated by Haislip and Seltzer, and other corporations they control, have priority rights to the JOHN C. FLOOD marks and trade names, superior to the rights of the Smileys and the corporations they operate and control to use the trade names and marks they bought from the Trustee, and have

---

[1] Defendant JCF, Inc., no longer exists as a separate corporation, but was a corporation established and operated during the bankruptcy case of 1996 Flood's predecessors in interest. "Defendants" J.C. Flood, Inc. and J.C. Flood Company were trade names of that corporation, one of several entities brought under the control of a receiver appointed by the United States Bankruptcy Court for the District of Maryland in October 1995, and now has been effectively merged into the 1996 Flood corporations. *See Defendant's Answer to First Amended Complaint*, filed May 21, 2007, ¶ 6, and Additional Affirmative Defenses 9-12. Maryland corporation public records reveal evidence of an existing "J.C. Flood, Inc." This entity, a Virginia corporation registered to do business in the State of Maryland in 2001, identified Third party Counterclaim Defendant Clinton Haislip as its registered agent, and appears to be the Maryland alias of Plaintiff, John C. Flood of Virginia, Inc.  Defendants believe Plaintiff has misaligned this entity as a Defendant.

[2] Joanne Smiley is Mr. Davis' daughter.

paid for in full. Virginia Flood asserts claims against the corporate Defendants, including 1996

Flood, for infringement of a registered trademark under 15 U.S.C. § 1114, false designation of

origin under 15 U.S.C. § 1125(c), and common law trademark infringement and unfair

competition. Virginia Flood seeks monetary relief in the nature of an accounting and damages

pursuant to 15 U.S.C. § 1117, and permanent injunctive relief against the corporate Defendants,

but declaratory relief only against the Smileys, Crooks and Davis.

Virginia Flood does not dispute that in 1984, Davis and Crooks formed 1984 Flood, and

at that time began engaging in the plumbing heating, and air conditioning business in the

Washington, D.C. metropolitan area, trading and advertising under various companies having in

their names the terms JOHN C. FLOOD and FLOOD. One of these was Virginia Flood itself.

Before they filed bankruptcies, in 1989, Davis and Crooks formed and operated Virginia Flood.

Virginia Flood's use of the FLOOD name and mark by Virginia Flood commenced in 1989

under Davis' and Crooks' control. Indeed, prior to and through much of the bankruptcy – from

Virginia Flood's inception in 1989 through March 1995, Davis and Crooks owned a 50% interest

in Virginia Flood. Pursuant to a March 1995, agreement approved by the bankruptcy court in

April 1995, in October 1995, Haislip and Seltzer purchased from the Trustee the 50% of the

stock in Virginia Flood owned by Davis and Crooks.

Thus, it is undisputed that Crooks, Davis and 1984 Flood -- the debtors in bankruptcy

from whose estates the Smileys and 1996 Flood purchased the tradenames and goodwill in 1996

-- used the name and mark for plumbing, heating and air conditioning services in the relevant

geographical market several years *before* Virginia Flood began any use.

Virginia Flood stakes its case for monetary, injunctive and declaratory relief against

Defendants entirely on the central contention, raised in this case eleven years after the

bankruptcy court approved the Trustee's sale, that the Trustee lacked any interest in those names and goodwill, and had no rights to sell to the Defendants. *Plaintiff's First Amended Complaint,* ¶¶ 24, 25; 31-35. Virginia Flood alleges that the debtors in bankruptcy and their estates had abandoned by non-use the tradenames JOHN C. FLOOD and FLOOD by the time the Trustee sold to Haislip and Seltzer Davis' and Crooks' ½ stock ownership interest in Virginia Flood, and that ownership and control of all goodwill around the names became vested exclusively in Haislip, Seltzer and Virginia Flood at that time. *Id.*

In 1999, Virginia Flood filed applications with the U.S. Patent and Trademark Office to secure two federal registrations – one for JOHN C. FLOOD and another for a stylized logo incorporating JOHN C. FLOOD as the dominant word element of the mark, and obtained registrations on those applications in 2000. In 2005, following attempts to persuade Virginia Flood to trade under a variation that would help to distinguish Virginia Flood from 1996 Flood, 1996 Flood filed a petition to cancel Virginia Flood's registrations in the Trademark Trial and Appeal Board of the U.S. Patent and Trademark Office ("TTAB Case"). After answering the cancellation petition, Virginia Flood essentially failed and refused to defend the TTAB case. It failed to respond first to a Motion to Compel filed by 1996 Flood, then to an Order compelling discovery issued by the TTAB, and finally, to 1996 Flood's Motion for Sanctions, which, if granted, would have resulted in cancellation of Virginia Flood's registrations. Virginia Flood did not file an opposition to the Motion for Sanctions, but, instead, on July 25, 2006, Virginia Flood filed simultaneously a motion to suspend the TTAB cancellation proceeding on the grounds that a pending federal court action would have a bearing on the registrability issues before the TTAB, and a complaint in this Court, commencing this action. *See* Virginia Flood's Answer to Counterclaim ¶¶ 44-48.

4

As we demonstrate in connection with Defendants Motion for Partial Summary Judgment, filed on even date herewith (which we incorporate herein, and to which supporting papers we invite the Court's attention in ruling on this motion for protective order) under the undisputable facts of this case, all Defendants are entitled to judgment as a matter of law on Virginia Flood's monetary relief and other claims, for two reasons.

First, Virginia Flood is not entitled to enjoin any Defendants' use of JOHN C. FLOOD and similar marks, to any monetary remedy against corporate Defendants, or to a declaration of priority in its favor because Virginia Flood cannot establish the threshold requirement of ownership and priority of use in the disputed mark. On the undisputed facts of record, Virginia Flood cannot demonstrate by the requisite clear and convincing evidence that the Trustee of bankruptcy estates from whom 1996 Flood purchased the names and goodwill in 1996 had nothing to sell, because he had previously abandoned by non-use the rights to those names, marks and goodwill as Virginia Flood claims. Nor can Virginia Flood establish its contention that Haislip and Seltzer's purchase from the same Trustee of the individual debtors' Davis and Crooks 50% in Virginia Flood in 1995 somehow vested Virginia Flood with the exclusive rights to JOHN C. FLOOD and all similar variants. Memorandum in Support of Defendants' Motion for Partial Summary Judgment, filed July 18, 2007 ("PSJ Memo"), Section III(B).

Far from abandoning the names and goodwill, the undisputed facts demonstrate clearly that the Trustee considered them to be the single most valuable assets of the estate and took affirmative steps to control their use and to protect them against infringement. Further, it cannot be disputed that from the inception of the bankruptcy case, to and including the sale in 1996, there was an unbroken continuity of use of the names and marks by or for the benefit of the estate -- first by the individual debtors in possession, then by the individual debtors and entities

5

they formed and operated which the Bankruptcy Court, at the instance of the Trustee, brought under the control of a receiver appointed by the Court, and ultimately, by the entities in receivership under the control of the Court-appointed receiver, the stock of two of which were sold to Defendants, along with the FLOOD trade names and goodwill. *Id.*

Second, and in any event, Virginia Flood is barred by laches, waiver, estoppel, and release from disputing in this case, eleven years after the bankruptcy court authorized the sale, and a decade after it was consummated, the validity of the bankruptcy Trustee's sale of the JOHN C. FLOOD and FLOOD tradenames and goodwill to Defendants. PSJ Memo, Section III(C). There is no question that Virginia Flood's principals knew that the corporate Defendants were trading as JOHN C. FLOOD since at least early 1996, and that Virginia Flood did not seek any judicial recourse for monetary, injunctive, and declaratory relief against the Defendants until it filed this action in July 2006. It is also undisputed that, over ten years ago, the Virginia Flood Parties were active participants in the Trustee's adversary proceeding which led to the sale of the names and goodwill they challenge here. They were witnesses to the use of the Flood names and marks by the entities the Trustee sought to bring under the control of the Court. They received formal notice that the Trustee proposed to sell the assets *free and clear* of competing claims and adverse interests of the very type they waited over ten years to assert here, under Bankruptcy Code Section 363. In the bankruptcy proceedings in 1995 and 1996, they were represented by counsel, appeared at hearings, filed an objection, and even submitted a counteroffer proposing to purchase from the Trustee for $225,000 the very trade names they now claim they owned, and that the Trustee had no right to sell, at the time they offered to purchase them. *Id.* Section III(C)(1).

Virginia Flood admits that none of Flood of Virginia, Haislip or Seltzer, in their objection in those proceedings, or in any other connection with the bankruptcy case, ever objected to the Trustee's rights to sell the names and goodwill, or asserted any superior or exclusive rights to use JOHN C. FLOOD and similar terms, or that the estate had abandoned, by non-use or otherwise, its rights in the names and goodwill. Accordingly, the Court, Trustee and the Defendants who purchased the trade names and goodwill all closed the sale without notice of the Virginia Flood Parties' adverse, but undisclosed, claim that the Trustee had nothing to sell, and in reliance on the Trustee's good title and absence of adverse claims and interests. *Id.* It is undisputable that, despite notice of and active participation in the proceedings that led to the bankruptcy court's authorizing the sale to 1996 Flood, they took no action to set aside, vacate or appeal that order until they filed this case, many years after the expiration of the time to collaterally attack an order entered under Bankruptcy Code Section 363 cutting off adverse claims, as prescribed by the Bankruptcy Code and Rules. *Id.* Section III(C)(2).

During the entire period between the Defendants' 1996 purchase and the commencement of this case in 2006, Defendants continued to trade, advertise and promote their services under the names and marks JOHN C. FLOOD and FLOOD, and to develop further the goodwill that they purchased. The bargained-for purchase price of $425,000 was paid off in full in early 2001. Only now, in this case filed in July 2006, some eleven years after the sale was approved, does Plaintiff attempt to invalidate the Trustee's rights in the particular names and goodwill sold to the Defendants, and only now, some ten years after Defendants purchased and continued trading, advertising, and building good will around those names and marks, does Plaintiff seek monetary and injunctive relief against any of the Defendants.

Whatever else equity may require in this case, it cannot suffer Virginia Flood to sleep on its purported rights for over ten years, all the while allowing 1996 Flood to operate its business, to earn revenues and derive goodwill from use of the assets it bought and paid for, without notice of Virginia Flood's claim the sale was invalid, and now, a decade later, allow Virginia Flood to prosecute a claim to recover 1996 Flood's profits and other damages and wield such a claim as the basis for discovery of highly confidential and sensitive business and personal information.

## III.    GROUNDS OF AND NATURE OF RELIEF REQUESTED AND AUTHORITIES

Initially, the parties and their counsel pledged to try to settle this messy and complicated case, and if that was not possible, to work together to attempt to streamline and simplify the case as much as possible for presentation to the court for a decision on the merits of the core priority of rights issue.  The parties' Joint Rule 26(f) Report and Supplemental Report reflects this early focus on efficiency, economy, early attempts to settle, and on preparing the case for a decision on the core merits issues if settlement was not possible, as befits litigation between two local businesses with limited resources. *See Joint Rule 26(f) Report*, October 11, 2006, and *Supplemental Joint Rule 26(f) Report and Proposed Case Management Order*, dated January 29, 2007, in particular, Section 2 thereof.

But as discovery has developed, it has become clear that the Virginia Flood Parties are using it as a tool of oppression and intrusion, propounding vague, burdensome, and egregiously overbroad requests, and insisting upon receiving highly confidential, competitively sensitive personal and commercial financial information concerning, among other things, the assets, price lists, tax returns and correspondence with tax authorities, personal and business income, compensation of employees, distributions to shareholders, sales revenues, and permitting and

8

licensing affairs of the Defendants. Attached hereto as Exhibits A and B, respectively, are true

and correct copies of *Responses to Virginia Flood Parties' First Set of Requests for the*

*Production of Documents by Defendant/Counterclaim Plaintiff John C. Flood, Inc. and*

*Defendants John C. Flood of D.C., Inc., Robert Smiley, Joanne Smiley, Mark Crooks and Mel*

*Davis,* served on June 1, 2007 ("Ex. A First Request Response"), and *Responses to Virginia*

*Flood Parties' Second Set of Requests for the Production of Documents by*

*Defendant/Counterclaim Plaintiff John C. Flood, Inc. and Defendants John C. Flood of D.C.,*

*Inc., Robert Smiley, Joanne Smiley, Mark Crooks and Mel Davis,* served on July 9, 2007 ("Ex. B

Second Request Response"), which set forth the requests and the responsive objections which are

the subject of this Motion.

The standard for protective orders is set forth in Federal Rule of Civil Procedure 26(c),

which provides in part that "[u]pon motion by a party . . . and for good cause shown, the court in

which the action is pending . . . may make any order which justice requires to protect a party . . .

from annoyance, embarrassment, oppression, or undue burden or expense." The Rule further

authorizes the Court to direct:

> (1) that disclosure not be had; (2) that the disclosure or discovery may be had only on
> specified terms and conditions, including a designation of time or place; (3) that the
> discovery may be had only by a method of discovery other than that selected by the party
> seeking discovery; (4) that certain matters not be inquired into, or that the scope of the
> disclosure or discovery be limited to certain matters . . .

Fed. R. Civ. Pro. 26(c).

The party moving for a protective order bears the burden of making a showing of good

cause required by Rule 26(c). *Alexander* v. *FBI,* 186 F.R.D. 60, 64 (D.D.C. 1998). The Court

possesses broad discretion in issuing a protective order and determining what degree of

protection is required. *Seattle Times Co.* v. *Rhinehart,* 467 U.S. 20, 36 (1984); *United States* v.

9

*Microsoft Corp.,* 165 F.3d 952, 959 (D.C. Cir. 1999). In deciding the scope of discovery of a

Rule 26 protective order, the court must balance "the requestor's need for the information from

this particular source, its relevance to the litigation at hand, the burden of producing the sought-

after material, and the harm which disclosure would cause to the party seeking to protect the

information." *Burka* v. *Dep't. of Health and Human Servs.,* 87 F.3d 508, 517 (D.C. Cir. 1996);

*Amfac Resorts, L.L.C.* v. *Dep't of the Interior*, 143 F. Supp.2d 7, 14 (D.D.C. 2001).

There are three, at times overlapping, categories of objectionable requests as to which

Defendants seek protection from the Court by this Motion. We discuss each in turn below.

A.    ***Vague and Overbroad Requests Seeking Irrelevant and
      Confidential or Private Financial and Business Records, or Records Which Do
      Not Presently Exist***

In many instances, the challenged requests fail Rule 34's basic requirement that the

records sought be described with "reasonable particularity." Also, they are oppressively

overbroad, seeking entire categories of confidential or private financial and business documents

or information concerning the corporate and individual Defendants, or pertaining to defunct

corporations, which are simply not relevant to the trademark claims and defenses framed by the

pleadings, or which do not presently exist or are not presently in the possession custody or

control of Defendants. Nor is such a sweeping fishing expedition into such records and matters

likely to lead to discovery of admissible evidence on relevant issues.

With respect to these Requests, we objected to most on general and specific grounds to

production altogether, and ask the Court to uphold those objections and to deny discovery into

such irrelevant and collateral matters.

The following Requests fall into this category:

10

- **First Production Request No. 7 (Ex. A)**, calling for pricing and/or intended pricing of 1996 Flood's goods or services.

We objected on the grounds of overbreadth, vagueness and ambiguity, relevance and materiality, and that the request called for confidential proprietary commercial and trade secret information, disclosure of which would compromise Defendants' proprietary rights and would confer on the Virginia Flood parties an unfair competitive advantage. Ex. A First Production Response ¶ 7.

Requests for disclosure of existing or intended pricing represents an unabashed attempt to obtain highly competitively sensitive information, disclosure of which would greatly prejudice Defendants. Sharing such information with a competitor would also hardly promote the Lanham Act's overall objective of fair competition. Such information is irrelevant to any of the claims and defenses in the case, even to the measure of monetary relief, which, if available, is calculated based on profits and sales. To the extent that it calls for production of projections which do not exist, it is objectionable on that basis as well. Federal Rule of Civil Procedure 34 requires production of existing records, and does not require parties to create compilations of data. Virginia Flood Parties have articulated no legitimate basis for discovery of such information, even under the most highly restrictive confidentiality protective order. Discovery of this information, in production requests, interrogatories and depositions, should be denied altogether.

- **First Production Request No. 39 and 40 (Ex. A)**, calling for "[a]ll documents that the 1996 Flood Corporations [John C. Flood, Inc. and John C. Flood of D.C., Inc.] and 1984 Flood [the original bankrupt debtor John C. Flood] filed with, and all correspondence between or regarding it [sic] and the IRS and governmental departments in Washington, D.C., Virginia and Maryland."

11

We objected on the basis of overbreadth, vagueness, ambiguity, relevance, and that the request called for confidential and proprietary information. Subject to those objections, we did agree to produce relevant corporate formation, maintenance and authority to transact business filings, and relevant correspondence with government corporation authorities and departments, to the extent they exist, are within the possession, custody and control of the Defendants and may be located without undue burden.  Ex. A, First Production Response, ¶¶ 39 & 40.

Here, the requests are, on their face, impermissibly vague and expansively overbroad, encompassing every conceivable type of record of any communication with or relating to any local or state governmental agency in each of the three jurisdictions cited, as well as with the federal Internal Revenue Service.  They call for irrelevant communications and records of long defunct companies, including 1984 Flood, itself, which went into bankruptcy in 1991.  As we argue below, tax returns are relevant only in connection with the measure of monetary relief, and are highly confidential and generally not discoverable if the relevant financial information in them is available from other sources.  Correspondence with or regarding the IRS is relevant to no issue in the case, and the requests for this information are obviously calculated to oppress, intimidate and harass, and are objectionable for the reasons set forth in Section B hereof, *supra*.

We are uncertain following our conferences whether the Virginia Flood Parties will accept the limitations on discovery under these requests we have placed in our responses.  We ask the Court to put the matter to rest by endorsing those limitations explicitly, and upholding our objections.

- **Second Production Request No. 3 (Ex. B)**.  As we understand it, according to the Second Requests, they call for information pertaining to the J.C. Flood Company (which we believe was an old "d/b/a" of J.C.F., Inc. a corporation, as

12

set forth in Defendants' Answer to Virginia Flood's First Amended Complaint, at

¶ 6), which has essentially been defunct since the bankruptcy and merged *de facto*

into the existing 1996 Flood corporations), and John C. Flood Plumbing and

Heating, Inc., which is presently the Virginia "d/b/a" of the existing corporate

Defendant, John C. Flood, Inc.  Thus, as we understand them, to the extent that

they do not relate to defunct corporations, each of the Second Requests call for

information relating to the same corporation, Defendant/Counterclaim Plaintiff

John C. Flood, Inc.  This particular request calls for "[a]ny and all documents

evidencing income generated by each entity, including balance sheets and other

financial statements, up to and including dissolution, forefeiture, registration

revocation, and/or liquidation of each entity."  Ex. B, Second Production

Response, ¶ 3.

We objected on the grounds that the request called for documents relating to non-existent

corporations, overbreadth, vagueness and ambiguity, relevance, non-existent documents, and (to

the extent that that the request calls for documents pertaining to the income of existing

Defendant corporations), confidential  and proprietary information.  *Id.*

The request is vague in its reference to the entities from which discovery is sought, and it

fails Rule 34's "reasonable particularity" test.  To the extent we understand it, it assumes by its

terms that the entities referenced therein are defunct and dissolved, and calls for income

statements, balance sheets and other financial information concerning them prior to their demise.

To the extent that the request call for documents showing the income of old, defunct and

dissolved corporations, their income prior to dissolution, forfeiture, revocation, purging or

liquidation is irrelevant to the claims and defenses in the case, which seeks remedies for the

13

present operations of the Defendants. If this is what the Virginia Flood Parties are seeking, we ask the Court to deny the discovery requested.

To the extent that it relates to the income of existing Defendant/Counterclaim Plaintiff John C. Flood trading under the fictitious name John C. Flood Plumbing and Heating, and existing Defendant John C. Flood of DC, Inc., then its call for documents showing their income falls into the third category of objectionable requests, as set forth below in subsection C, and we refer the Court to the relief requested there.

- **Second Production Requests Nos. 6 and 7 (Ex. B)**. This request calls for "[a]ny and all documents showing financial or stock distributions to each entity's creditors" and "[a]ny and all documents showing financial and/or stock distributions." Again, this requests seeks information pertaining to the J.C. Flood Company (which we believe was an old "d/b/a" of J.C.F., Inc. a corporation, as set forth in Defendants' Answer to Virginia Flood's First Amended Complaint, at ¶ 6), a corporation which has essentially been defunct since the bankruptcy and merged *de facto* into the existing 1996 Flood corporations) and John C. Flood Plumbing and Heating, Inc. which is presently the Virginia "d/b/a" of the existing corporate Defendant, John C. Flood, Inc.

We objected on the grounds that the request called for documents relating to non-existent corporations, overbreadth, vagueness and ambiguity, relevance, non-existent documents, and (to the extent that that the request calls for documents pertaining to the business affairs and income of existing Defendant corporations), confidential and proprietary information. Ex. B, Second Production Response, ¶¶ 6 & 7.

Again, the particular entities to which the request relates are vague and ambiguous, but, fairly read, the request's call for documents showing all payments or distributions to each of the entities' creditors is patently overbroad and oppressive, encompassing all payments or distributions to any creditors made at any time, for any reason. It also calls for proprietary and confidential business information, which is, in any event, irrelevant to any issue in the case. In the case of documents showing distributions to all shareholders, it is again overbroad, and calls for highly confidential and private information not relevant to any claim or defense. In sum, the request amounts to an oppressive, vastly overbroad "fishing expedition" without legitimate relevance to the claims or defenses in this case. We request that discovery of these documents and this information in any manner be denied.

### B. *Requests Seeking Tax Records*

In this category are overbroad and vague requests calling for tax returns, tax-related documents and correspondence with the IRS and other tax authorities. The requests include requests calling for the tax returns of the individual defendants, the Smileys, Crooks and Davis, and those filed by the corporate Defendants on behalf of all their employees (presumably seeking payroll tax records amounting to records of employee compensation), although no claims for monetary relief are pending against any of them. These highly objectionable requests include:

- **First Production Request Nos. 34 and 35 (Ex. A)**, which calls for "[C]opies of tax returns for the years in which the Defendants filed on behalf of their named companies and employees," and "[C]opies of all franchise tax returns that each of the 1996 Flood Corporate Defendants have filed in Washington, D.C., Virginia and Maryland."

15

- **First Production Request No. 39 and 40 (Ex. A)**, calling for "[a]ll documents
  that the 1996 Flood Corporations [John C. Flood, Inc. and John C. Flood of D.C.,
  Inc.] and 1984 Flood (the original bankrupt debtor John C. Flood) filed with, and
  all correspondence between or regarding it [sic] and the IRS and governmental
  departments in Washington, D.C., Virginia and Maryland."

- **First Production Request No. 45 (Ex. A)**, calling for "[t]ax returns for all
  Individual Defendants:  from 1989 for Crooks and Davis and from 1994 for each
  of the Smileys."

- **Second Production Request No. 4 (Ex. B)**, calling for "[C]opies of tax returns
  for the years in which each entity filed on behalf of their named companies and
  employees."

We objected to production of tax returns and tax related communications, *inter alia,* on
the grounds of overbreadth, vagueness, relevance, confidentiality, and invasion of the privacy
interests of individuals, including employees who are not parties to this action.  Ex. A, First
Production Responses ¶¶ 34, 35, 39, 40 & 45; Ex. B. Second Production Responses ¶ 4.

The only specific grounds for production of tax returns articulated by opposing counsel in
the course of conferring about our objections is that they are relevant to damages.  *See June 7,
2007 e-mail from Erica-Stiff Coopwood, Esq. to Benjamin J. Lambiotte, Esq., re Request No. 34,*
attached hereto as **Exhibit C**.

A strong federal public policy, followed in this jurisdiction, disfavors disclosure of tax
returns, and Courts should not require their disclosure if relevant information sought through
them is available from another source.  *Payne* v. *Howard*, 75 F.R.D. 465, 469 (D.D.C. 1997).
The policy is founded on Internal Revenue Code provisions designed to protect and promote the

confidentiality of communications between the government and taxpayers, to encourage open and honest reporting by taxpayers. *Id. citing* 26 U.S.C. §§ 6103 and 7213(a).  Logically, the policy applies with equal force to communications with the IRS, because they, too, are confidential communications between the taxpayer and the IRS.

Whether or not the tax returns and records sought here are relevant to issues of monetary relief, the requests cited above are unconscionably and oppressively overbroad.  On their face, they call for the tax records of individual parties against whom monetary relief is not sought, and employees who are strangers to this action.

This is the starkest example of the Virginia Flood Parties' use of discovery in this case as an instrument of intimidation and harassment, not for the purpose of illuminating legitimate issues, but to cause a needless expenditure of resources and to deflect attention away from their untenable position on the merits of the case. A generalized desire on the Virginia Flood Parties' part to "follow the money" is no basis to expose the Defendants and their employees to dubious claims of relevance asserted "as a pretext for discovery of unknown wrongs." *Peskoff* v. *Faber*, 230 F.R.D. 25, 28 (D.D.C. 2005), *quoting Kowal* v. *MCI Communications Corp.,* 16 F.3d 1271, 1279 n.3 (D.C. Cir. 1994)

To the extent Virginia Flood can establish a right to any monetary relief (*see* Section III(C), *supra*), relevant, carefully calibrated information concerning the corporate Defendants' profits, sales and expenses is available through alternate means.  Accordingly, discovery of the specific documents sought in the foregoing requests, as well as all information concerning taxes and communications with tax authorities, whether by production request, interrogatory, or deposition, should be denied outright.

17

C.    ***Requests Seeking Confidential Financial and Business Records
      of Corporate Defendants Other Than Tax Documents Relevant, If at All, Only
      to The Measure of Monetary Recovery***

A third category of objectionable requests, which partially overlap with the first and

second categories (in that they are overbroad, vague, and call for non-existent documents to be

created), involves confidential financial information of the corporate Defendants, which may be

relevant to the monetary relief sought by Virginia Flood under Section 1117 of the Lanham Act.

If relevant at all, certain narrowly-tailored aspects of the corporate Defendants' financial

information may be discoverable, but only as to the measure of monetary recovery, which would

be necessary to determine only if Plaintiff is entitled to the accounting for profits and damages it

seeks against the corporate Defendants in this case.[3] Because the parties are arch-competitors,

and long-time bitter rivals, there is a clear, present and grave risk of harm and competitive

disadvantage in disclosing such highly sensitive and confidential financial information.

To the extent discovery requested thereby is not denied for other reasons, requests in this

category also include those requests cited in Sections III(A) and (B) hereto (First Production

Requests Nos. 7, 34, 35, 39, 40, and 45, and Second Production Requests Nos. 3, 4, 6 and 7),

that, if appropriately narrowed, may call for documents relevant to the measure of Plaintiff's

monetary recovery, if any is available, and:

- **First Production Request No. 6 (Ex. A):** This Request calls for "[a]ll documents
  evidencing income 1996 Flood has received each of the past five years from
  the sale of 1996's Flood goods and/or services under the JOHN C. FLOOD
  Marks, and 1996 Flood's projected annual income from the sale.."

---

[3] Again, because there are no monetary relief claims against the individual Defendants, evidence
of their income and compensation is intrusive, oppressive, irrelevant and undiscoverable.

We objected on the grounds that the request calls for confidential proprietary and trade

secret information, disclosure of which would confer an unfair competitive advantage on the

Virginia, and that it calls for documents which do not exist. To the extent that this Request calls

for production of revenue projections which do not exist, it is objectionable on that basis,

because a party is not required to create documents or data compilations which do not presently

exist to satisfy its obligations under Federal Rule of Civil Procedure 34.

### 1. *Attempts to Resolve Confidentiality Issues*

Counsel for the parties have conferred several times concerning the issues raised in this

section of the motion. In the course of those discussions, we have considered several alternate

means of mitigating the harm of disclosure of such competitively sensitive and confidential

financial information, proposed by the undersigned. These included: (a) deferral of discovery of

information related to monetary relief until after it was determined whether such relief were

available; (b) stipulating that discovery of information relating to monetary relief be deferred

until such time as the Court determines either party is entitled to it, whereupon the matter will be

referred to a court-appointed Special Master for determination of the amount due, and the parties

would file with the Master such information and documents as he or she requested, and exchange

under an appropriate protective order designed to protect the confidentiality of such information;

and (c) not deferring discovery of confidential financial information, and entering into a

Stipulated Protective Order providing multiple tiers of confidentiality protection, including one

limiting disclosure to counsel and expert witnesses only, and the parties have exchanged drafts of

alternate forms of such an Stipulated Protective Order. Virginia Flood Parties counsel has

rejected options (a) and (b), and undersigned counsel is disinclined to rely solely on a stipulated

protective order for the reasons set forth herein.

19

These discussions occurred against the backdrop of the parties' counsels' mutual view, reflected in the *Supplemental Joint Rule 26(f) Report and Proposed Case Management Order*, dated January 29, 2007, that dispositive motions on the availability of monetary relief would likely be filed, and that such issues would fall away before trial.   The parties reported to the Court:

> It is not yet clear whether monetary relief will be an issue at trial . . . . To the extent that any requests for monetary relief remain at issue as of the date of the Pre-trial conference, the parties propose organizing the trial in phases, so that liability issues will be tried first, and, if in light of the Court's judgment on liability issues, such proof is necessary, proof relating to and the amount(s) of any monetary relief shall be presented and established thereafter.

Thus, both parties have already recognized that it very well be may be unnecessary for the Court to receive this type of evidence, because the claims for monetary relief may very well be barred or otherwise not triable.

### 2.   *Request to Defer Discovery of Financial Information*

In our pleadings, Defendants assert in various defenses that Virginia Flood's claims for both monetary and injunctive relief are barred by waiver, estoppel, and laches.  Because of certain conduct of Haislip, Seltzer, and Virginia Flood in connection with prior bankruptcy proceedings involving the same marks, and Virginia Flood's decade-long delay in seeking monetary relief in the face of knowledge of Defendants' uses of the disputed names and marks, during which period the Defendants have continuously engaged in business and built good will under those marks, Defendants believe that they are entitled to summary judgment that, at the very least, Plaintiff's monetary claims are barred as a matter of law.

Accordingly, we are today filing our Motion for Partial Summary Judgment, seeking judgment on, *inter alia,* certain of those defenses.  If successful, that Motion would remove from the case Plaintiff's claims for monetary relief (and the Motion may perhaps may be dispositive of

20

all of Virginia Flood's claims).  That outcome would have a profound effect on the scope of permissible discovery in this case and the propriety of the requests addressed in this part of this motion.

We urge the Court to review the Motion for Partial Summary Judgment, and to consider the extraordinary sensitivity of the type of confidential financial information, and the gravity of the intrusiveness and potential harm to the 1996 Flood Corporations that could attend its disclosure, especially in light of the substantial possibility that it may be rendered entirely irrelevant, as a result of the pending Motion.  Accordingly, we respectfully suggest that the best way to balance Virginia Flood's and the Defendants' legitimate interests would be for the Court to exercise its discretion under Federal Rule of Civil Procedure 26(c)(2) to control the timing and terms of discovery, and order that disclosure of financial information (including, to the extent not denied for other reasons, documents and information sought by First Production Requests Nos. 6, 7, 34, 35, 39, 40, and 45, and Second Production Requests Nos. 3, 4, 6 and 7) be precluded until Virginia Flood is determined to be entitled to recover monetary relief.   In the interest of efficiency, Defendants are presenting that issue directly to the Court for resolution in connection via the Motion for Partial Summary Judgment filed on even date herewith.

Further, if discoverable at any time, such information should be disclosed only under appropriately narrowly-tailored requests, and a two-tiered stipulated protective order, protecting the information from disclosure to the public and Virginia Flood Parties' principals, employees and affiliates, and restricting access only to outside counsel of record in this case, unaffiliated expert witnesses who agree to be bound by the confidentiality restrictions in the order, and the Court, and directing that all such documents and information submitted to or used in connection with proceedings before the Court be filed and maintained under seal.  Again, the parties are

21

already working on agreeing to such a form of stipulated protective order to be used in connection with other matters as to which the parties have reached agreement, which could be used in this context, if and when necessary.

In essence, our proposed course of action respecting this category of documents would merely import into the discovery context the understanding regarding timing and sequence of trial of monetary relief issues already reflected in the parties' Supplemental Joint 26(f) Report, and would not otherwise preclude discovery into other issues. Deferring discovery of this type of information in this way would be analogous to precluding discovery of a defendant's financial status until after proof of liability for punitive damages, for which there is precedent in this Court. *See, e.g., Peskoff* v. *Faber*, 230 F.R.D. 25, 30 (D.D.C. 2005); *John Does I-VI* v. *Yogi*, 110 F.R.D. 629, 633 (D.D.C. 1986).

## IV. <u>CONCLUSION AND PRAYER FOR RELIEF</u>

**WHEREFORE**, Defendants respectfully request this Motion for a Protective Order sustaining Defendants' objections and controlling the timing and sequence of discovery, by entering an Order:

(i) denying and protecting Defendants from certain overbroad and vague production requests that call for irrelevant and confidential business and private information and documents, and/or are calculated to oppress, harass or intimidate, and for tax returns and tax-related communications, including First Production Requests Nos. 7, 34, 35, 39, 40, and 45, and Second Production Requests Nos. 3, 4, 6 and 7;

(ii) deferring the disclosure of competitively sensitive confidential financial documents and information pertaining to Virginia Flood's claims for monetary relief, including (to the extent not already denied for other reasons) documents requested in each of First Production

Requests Nos. 6, 7, 34, 35, 39, 40, and 45, and Second Production Requests Nos. 3, 4, 6 and 7, until after it is determined whether Virginia Flood is entitled to such remedies, and, at least, until a ruling on the Defendants' Motion for Partial Summary Judgment, which may have the effect of obviating any need for such discovery entirely. If the Court grants the Motion for Partial Summary Judgment, and Virginia Flood is determined not to be entitled to such remedies, we request that such discovery be denied. To permit such intrusive and oppressive discovery when the issue of the propounding party's right to assert the very claim providing the basis for relevance of the requested information has been presented to the Court, and is ripe for resolution on a dispositive motion, would be inefficient, and would unfairly prejudice Defendants;

(iii) In the alternative, in the event the Court denies the relief we requested in part (ii) hereof or the Motion for Partial Summary Judgment is denied, we ask the Court to enter a protective order establishing conditions: protect the confidentiality and to prevent disclosure of such documents and the information in them to the public generally and specifically to Virginia Flood Parties and their principals, employees, contractors and affiliates; to restrict disclosure of such records and information in them only to outside counsel of record appearing in this case, expert witnesses unaffiliated with the Virginia Flood Parties or their principals, employees, contractors, and affiliates who agree to be bound by the confidentiality restrictions in the order, and the Court; to restrict use of such records and information only for purposes of trial and appeal in this action; and to require that any such documents or information in them filed with or used in connection with proceedings before the Court be received and kept under seal, with such order to be in a form agreed to by counsel for the parties, or in the event they cannot agree, prepared by the Court.

23

Respectfully submitted,

**COUNTERCLAIM PLAINTIFF/DEFENDANT
JOHN C. FLOOD, INC., & DEFENDANTS
JOHN C. FLOOD OF D.C., INC., ROBERT
SMILEY, JOANNE SMILEY, MARK
CROOKS AND MEL DAVIS, J.C. FLOOD,
INC., J.C. FLOOD COMPANY, & JCF, INC.**

By their attorneys:    /s/ Benjamin J. Lambiotte
                       Benjamin J. Lambiotte
                       D.C. Bar No. 421288
                       blambiotte@gsblaw.com
                       Steve Varholik
                       D.C. Bar No. 497315
                       svarholik@gsblaw.com
                       **GARVEY SCHUBERT BARER**
                       1000 Potomac Street, Fifth Floor
                       Washington, D.C. 20007
                       (202) 965-7880

## CERTIFICATE OF SERVICE

I certify that I served a copy of this MEMORANDUM IN SUPPORT OF MOTION FOR PROTECTIVE ORDER upon counsel for the Virginia Flood Parties via ECF and electronic mail, on this 18th day of July, 2007.

Stephen J. Zralek, *appearing pro hac vice*
BONE McALLESTER NORTON PLLC
511 Union Street, Suite 1600
Nashville, TN 37219
Tel: (615) 238-6300
Fax: (615) 238-6391
szraleck@bonelaw.com

Lisa Dunner, DC Bar #452004
DUNNER LAW
1010 Wisconsin Avenue, N.W.
Washington, DC 20007
Tel: (202) 298-2002
Fax: (202) 403-3030
ldunner@dunnerlaw.com

/s/ Benjamin J. Lambiotte