## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **JOHN C. FLOOD OF VIRGINIA, INC., et al.** | ) | |
| | ) | |
| **Plaintiffs and Counter-Defendants,** | ) | |
| | ) | |
| **v.** | ) | **Judge Richard J. Leon** |
| | ) | **Case No.: 1:06CV01311** |
| **JOHN C. FLOOD, INC., et al.** | ) | **Deck Type: General Civil** |
| | ) | |
| **Defendants and Counter-Plaintiffs.** | ) | |

---

## DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

---

Pursuant to Rule 56 of the Federal Rules of Civil Procedure and LCvR 7(a), (b) and (c) and LCvR 56.1, Defendant/Counterclaim-Plaintiff John C. Flood, Inc., and Defendants John C. Flood of D.C., Inc., Robert Smiley, Joanne Smiley (collectively, "the Smileys"), Mark Crooks ("Crooks"), Mel Davis ("Davis") and J.C. Flood, Inc., J.C. Flood Company, and JCF, Inc., (all collectively, "Defendants"), for the reasons set forth in detail in the Memorandum of Points and Authorities filed herewith, hereby respectfully request the Court to grant summary judgment in favor of the Defendants on all claims and causes of action asserted against them by Plaintiff, John C. Flood of Virginia, Inc., leaving only the Defendant/Counterclaim Plaintiff John C. Flood, Inc.'s Counterclaims to be determined.

As we demonstrate in the supporting Memorandum of Points and Authorities, and on the basis of the Statement of Material Facts Not in Dispute and accompanying declarations and attachments thereto, filed herewith, on the undisputed facts of this case, Defendants are entitled to judgment as a matter of law on each and every one of Plaintiff's claims for relief.

**WHEREFORE,** for the foregoing reasons, Defendants respectfully request the Court to enter summary judgment in their favor on each of the Plaintiff's claims against each of the

Defendants, including all claims asserted in Plaintiff's First Amended Complaint for monetary and injunctive relief, and for a declaration of its priority over the Defendants, on Plaintiff's causes of action for trademark infringement under 15 U.S.C. § 1114(1), unfair competition under 15 U.S.C. § 1125(a) and common law servicemark infringement and unfair competition;

**OR**, in the alternative, in the event the Court concludes that judgment should not be rendered for all the relief requested by this Motion, then, pursuant to Federal Rule of Civil Procedure 56(d), Defendants respectfully request this Court to enter an Order specifying the facts that appear without substantial controversy and deeming them established for purposes of trial, and specifically stating the extent to which monetary and other relief requested by Plaintiff is not in controversy, and directing such further proceedings as are just;

And the Court grant Defendants such other or further relief as the Court may deem just in circumstances.

Respectfully submitted,

**COUNTERCLAIM PLAINTIFF/DEFENDANT JOHN C. FLOOD, INC., & DEFENDANTS JOHN C. FLOOD OF D.C., INC., ROBERT SMILEY, JOANNE SMILEY, MARK CROOKS AND MEL DAVIS, J.C. FLOOD, INC., J.C. FLOOD COMPANY, & JCF, INC.**

By their attorneys:

/s/ Benjamin J. Lambiotte
Benjamin J. Lambiotte
D.C. Bar No. 421288
blambiotte@gsblaw.com
Steve Varholik
D.C. Bar No. 497315
svarholik@gsblaw.com
**GARVEY SCHUBERT BARER**
1000 Potomac Street, Fifth Floor
Washington, D.C. 20007
(202) 965-7880

2

## CERTIFICATE OF SERVICE

I certify that I served a copy of this DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT upon counsel for the Virginia Flood Parties via ECF and electronic mail, on this 18th day of July, 2007.

Stephen J. Zralek, *appearing pro hac vice*
BONE McALLESTER NORTON PLLC
511 Union Street, Suite 1600
Nashville, TN 37219
Tel: (615) 238-6300
Fax: (615) 238-6391
szraleck@bonelaw.com

Lisa Dunner, DC Bar #452004
DUNNER LAW
1010 Wisconsin Avenue, N.W.
Washington, DC 20007
Tel: (202) 298-2002
Fax: (202) 403-3030
ldunner@dunnerlaw.com

/s/ Benjamin J. Lambiotte

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| JOHN C. FLOOD OF VIRGINIA, INC., et al.   ) | |
|        ) | |
|     **Plaintiffs and Counter-Defendants,**   ) | |
|        ) | |
| **v.**   ) | **Judge Richard J. Leon** |
|        ) | **Case No.: 1:06CV01311** |
| **JOHN C. FLOOD, INC., et al.**   ) | **Deck Type: General Civil** |
|        ) | |
|     **Defendants and Counter-Plaintiffs.**   ) | |

---

**MEMORANDUM OF POINTS AND AUTHORITIES**
**IN SUPPORT OF DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

---

Pursuant to LCvR 7(a), Defendant/Counterclaim-Plaintiff John C. Flood, Inc., and Defendants John C. Flood of D.C., Inc., Robert Smiley, Joanne Smiley (collectively, "the Smileys"), Mark Crooks ("Crooks"), Mel Davis ("Davis") and J.C. Flood, Inc., J.C. Flood Company, and JCF, Inc., (all collectively, "Defendants") hereby respectfully submit the following Memorandum of Points and Authorities in Support of their Motion for Partial Summary Judgment.

## I. INTRODUCTION AND SUMMARY

### A. *Background*

In essence, this is a servicemark and tradename priority dispute. As framed by the pleadings, the dispute involves two groups of business entities, one controlled by Joanne and Robert Smiley ("the Smileys"), and the other controlled by Clinton Haislip ("Haislip") and James Seltzer ("Seltzer"). Each operate plumbing, heating and air conditioning services businesses under the tradenames and service marks JOHN C. FLOOD in the Washington, D.C. metropolitan area.

The Plaintiff and Counterclaim Defendants include John C. Flood of Virginia, Inc. ("Flood of Virginia"), and other corporations, owned and controlled by Clinton Haislip and James Seltzer (collectively, the "Virginia Flood Parties").  The Defendants and Counterclaim-Plaintiff John C. Flood, Inc. (a Maryland corporation), and John C. Flood of D.C., Inc. (a D.C. corporation) ("1996 Flood"), movants here, are businesses owned and operated by the Smileys.[1]

In early 1996, the Smileys and 1996 Flood purchased the trade names and associated goodwill in and to JOHN C. FLOOD and FLOOD for $425,000 from the Chapter 7 Trustee of the consolidated bankruptcy estates of a Maryland corporation, also called John C. Flood, Inc. ("1984 Flood"), and its principals, Davis[2] and Crooks, and their wives.  The Trustee conducted the sale under Section 363 of the U.S. Bankruptcy Code, in a consolidated case styled *John C. Flood, Inc., et alia,* 91-4-3011SD (Bankr. Md).   Defendants trace their priority in the trade names and goodwill they acquired in that sale back to 1984, when 1984 Flood, the corporate debtor-in-bankruptcy, first began using the mark.  At all times since the purchase in February 1996, the Smileys and 1996 Flood has used JOHN C. FLOOD and variations of FLOOD as trade names and servicemarks to promote and advertise their plumbing, heating and air conditioning business in the Washington D.C. metropolitan area, including in D.C., Maryland, and Virginia.

---

[1] Defendant JCF, Inc., no longer exists as a separate corporation, but was a corporation established and operated during the bankruptcy case of 1996 Flood's predecessors in interest, and Defendants J.C. Flood, Inc., J.C. Flood Company were trade names of that corporation, which was one of several entities brought under the control of a receiver appointed by the United States Bankruptcy Court for the District of Maryland in October 1995, and now have been effectively merged into the 1996 Flood corporations.  *See Defendant's Answer to First Amended Complaint,* filed May 21, 2007, ¶ 6, and Additional Affirmative Defenses 9-12. Maryland corporation public records reveal evidence of an existing "J.C. Flood, Inc."  This entity, a Virginia corporation registered to do business in the State of Maryland in 2001, identified Third party Counterclaim Defendant Clinton Haislip as its registered agent, and appears to be the Maryland alias of Plaintiff, John C. Flood of Virginia, Inc.  Defendants believe Plaintiff has misaligned this entity as a Defendant.

[2] Joanne Smiley is Mr. Davis' daughter.

The central question in the case is whether the Plaintiff, Flood of Virginia, operated by Haislip and Seltzer, and other corporations they control, have priority rights to the JOHN C. FLOOD marks and trade names, superior to the rights of the Smileys and the corporations they operate and control, which rights they purchased for value out of bankruptcy, for which the have paid in full. Virginia Flood asserts claims against the corporate Defendants, including 1996 Flood, for infringement of a registered trademark under 15 U.S.C. § 1114, false designation of origin under 15 U.S.C. § 1125(c), and common law trademark infringement and unfair competition. Virginia Flood seeks monetary relief in the nature of an accounting and damages pursuant to 15 U.S.C. 1117, and permanent injunctive relief against the corporate Defendants, but declaratory relief only against the Smileys, Crooks and Davis.

Virginia Flood does not dispute that in 1984, Davis and Crooks formed 1984 Flood, and at that time began engaging in the plumbing heating, and air conditioning business in the Washington, D.C. metropolitan area, trading and advertising under various companies having in their names the terms JOHN C. FLOOD and FLOOD. One of these was Virginia Flood itself. In 1989, Davis and Crooks formed and began operating Virginia Flood.

Indeed, prior to and through much of the bankruptcy – from Virginia Flood's inception in 1989 through October 1995, Davis and Crooks owned a 50% interest in Virginia Flood. Pursuant to a March 1995 agreement approved by the bankruptcy court in April 1995, in October 1995, Haislip and Seltzer purchased from the Trustee of Davis and Crooks the 50% of the stock in Virginia Flood formerly owned by Davis and Crooks.

Thus, it is undisputed that Crooks, Davis and 1984 Flood -- the debtors in bankruptcy from whose estates the Smileys 1996 Flood purchased the tradenames and goodwill in 1996

-- used the name and mark for plumbing, heating and air conditioning services in the relevant geographical market several years *before* Virginia Flood began any use.

Virginia Flood stakes its case for monetary, injunctive and declaratory relief against Defendants entirely on one central contention, raised in this case eleven years after the bankruptcy court approved the Trustee's sale -- that the Trustee lacked any interest in those names and goodwill, and had no rights to sell to the Defendants. Plaintiff's First Amended Complaint, ¶¶ 24, 25; 31-35.  Virginia Flood alleges that the debtors in bankruptcy and their estates had abandoned by non-use the tradenames JOHN C. FLOOD and FLOOD by the time the Trustee sold to Haislip and Seltzer Davis' and Crooks' ½ stock ownership interest in Virginia Flood, and that ownership and control of all goodwill then vested exclusively in Haislip, Seltzer and Virginia Flood.  *Id.*[3]

In 1999, Virginia Flood filed applications with the U.S. Patent and Trademark Office to secure two federal registrations – one for JOHN C. FLOOD and another for a stylized logo incorporating JOHN C. FLOOD as the dominant word element of the mark, and obtained registrations on those applications in 2000.  In the applications, knowing full well that 1996 Flood had purchased those very rights in 1996, Virginia Flood falsely averred that no other person, firm or corporation, had the right to use the marks in commerce.  In 2005, following attempts to persuade Virginia Flood to trade under a variation that would help to distinguish Virginia Flood from 1996 Flood, 1996 Flood filed a petition to cancel Virginia Flood's registrations in the Trademark Trial and Appeal Board of the U.S. Patent and Trademark Office ("TTAB Case").

---

[3]  In fact, as contemporaneous documents establish conclusively, even though the Trustee and Haislip/Seltzer reached agreement on the terms and conditions of the stock sale in March 1995, the execution and delivery of the Stock Purchase Agreement effectuating the actual transfer did not occur until months later, in mid-October 1995.  *See* Section II, *supra* ¶ 13.

After answering the cancellation petition, Virginia Flood essentially failed and refused to defend the TTAB case. It failed to respond first to a Motion to Compel filed by 1996 Flood, then to an Order compelling discovery issued by the TTAB, and finally, to 1996 Flood's Motion for Sanctions, which, if granted, would have resulted in cancellation of Virginia Flood's registrations. Virginia Flood did not file an opposition to the Motion for Sanctions, but, instead, on July 25, 2006, filed a complaint in this Court, commencing this action, and simultaneously, a motion to suspend the TTAB cancellation proceeding on the grounds that a pending federal court action would have a bearing on the registrability issues before the TTAB. *See* Virginia Flood's Answer to Counterclaim ¶¶ 44-48.

B.   ***Summary of Argument***

As we demonstrate below, under the undisputable facts of this case, all Defendants are entitled to judgment as a matter of law on Virginia Flood's claims for monetary, injunctive and declaratory relief. The Court must enter judgment for Defendants for two reasons, either of which is sufficient independently to dispose of each of the causes of action Virginia Flood asserts here.

First, Virginia Flood is not entitled to enjoin any Defendants' use of JOHN C. FLOOD and similar marks, to any monetary remedy against corporate Defendants, or to a declaration of priority in its favor, because Virginia Flood cannot establish the threshold requirement of ownership and priority of use in the disputed mark. On the undisputed facts of record, Virginia Flood cannot demonstrate by the requisite clear and convincing evidence that the Trustee of bankruptcy estates from whom 1996 Flood purchased the names and goodwill in 1996 had nothing to sell, because he had previously abandoned by non-use the rights to those names, marks and goodwill as Virginia Flood claims. Nor can Virginia Flood establish its contention

- 5 -

that Haislip and Seltzer's purchase from the same Trustee of the individual debtors' Davis' and

Crooks' 50% in Virginia Flood in 1995 somehow vested Virginia Flood with the exclusive rights

to JOHN C. FLOOD and all similar variants.

Far from abandoning the names and goodwill, the undisputed facts demonstrate clearly

that the Trustee considered them to be the single most valuable assets of the estate and took

affirmative steps to control their use and to protect them against infringement.  It cannot be

disputed that from the inception of the bankruptcy case, to and including the sale in 1996, there

was an unbroken continuity of use of the names and marks by or for the benefit of the estate  --

first by the individual debtors in possession in Chapter 11; then, after appointment of a Trustee

and conversion to a Chapter 7 case, by the individual debtors and certain entities they formed

and operated during the bankruptcy (which entities the Bankruptcy Court, at the instance of the

Chapter 7 Trustee brought under the control of a Court-appointed receiver); and ultimately, by

the entities in receivership under the control of the receiver appointed by the Bankruptcy Court.

Second, and in any event, Virginia Flood is barred by laches, waiver, estoppel, and

release from disputing in this case, eleven years after the bankruptcy court authorized the sale,

and a decade after it was consummated, the validity of the bankruptcy Trustee's sale of the

JOHN C. FLOOD and FLOOD tradenames and goodwill to Defendants.  As the materials

offered in support of this Motion show, there is no question that Virginia Flood and its principals

knew that the corporate Defendants were trading as JOHN C. FLOOD since at least early 1996,

and that Virginia Flood did not seek any judicial recourse for monetary, injunctive, or

declaratory relief against the Defendants until it filed this action in July 2006.  Eleven years ago,

the Virginia Flood Parties were active participants in the Trustee's adversary proceeding which

led to the Trustee's sale of the names and goodwill they challenge here.  They were witnesses to

the use of the Flood names and marks by entities formed and operated by the individual debtors the Trustee sought to bring under the control of the Court.  They received formal notice that the Trustee proposed to sell the assets *free and clear* of competing claims and adverse interests of the very type they waited over ten years to assert here, under Bankruptcy Code Section 363.  In the bankruptcy proceedings in 1995 and 1996, they were represented by counsel, appeared at hearings, filed an objection, and even submitted a counteroffer proposing to purchase from the Trustee for $225,000 the very trade names they now claim they owned, and that the Trustee had no right to sell, at the time they offered to purchase them.

Virginia Flood admits that none of Flood of Virginia, Haislip or Seltzer, in its objection in those proceedings, or in any other connection with the bankruptcy case, ever challenged the Trustee's rights to sell the names and goodwill, or asserted any superior or exclusive rights to use JOHN C. FLOOD and similar terms, or that the estate had abandoned, by non-use or otherwise, its rights in the names and goodwill.  Accordingly, the Court, Trustee and the Defendants who purchased the trade names and goodwill all closed the sale without notice of the Virginia Flood Parties' adverse, but undisclosed, claim that the Trustee had nothing to sell, and in reliance on the Trustee's good title and absence of adverse claims and interests.

It is also undisputable that, despite notice of and active participation in the proceedings that led to the bankruptcy court's authorizing the sale to 1996 Flood, Virginia Flood, Haislip and Seltzer took no action to set aside, vacate, or appeal the Bankruptcy Court's October 1995 order authorizing the sale, until they filed this action.  That was in July 2006, many years after the expiration of the time prescribed by the Bankruptcy Code and Bankruptcy Rules to collaterally attack an order cutting off adverse claims entered under Bankruptcy Code Section 363.

During the entire period between the Defendants' 1996 purchase and the commencement of this case in 2006, Defendants continued to trade, advertise and promote their services under the names and marks JOHN C. FLOOD and FLOOD, and to develop further the goodwill that they purchased.  The bargained-for purchase price of $425,000 was paid off in full in early 2001.

For either reason independently, or for both of the foregoing reasons, Defendants are entitled to judgment on each of Virginia Flood's claims.  Certainly, Virginia Flood's claims for monetary relief are barred with such undeniable clarity as to render them frivolous and oppressive. Whatever else equity may require in this case, it cannot suffer Virginia Flood to sleep on its purported rights for over ten years, all the while lying in wait as 1996 Flood operated its competitive business, earned revenue and derived goodwill from use of the assets 1996 Flood bought and paid for, and then, a decade later, permit Virginia Flood to prosecute a claim to recover 1996 Flood's profits and other damages, and to wield such a claim as the basis for discovery of highly confidential and competitively sensitive business and personal information. *See* Defendants' Motion for Protective Order, filed on even date herewith.

## II.  <u>STATEMENT OF MATERIAL FACTS NOT IN DISPUTE</u>

The following separately-numbered statements of fact correspond to the separately-numbered paragraphs set forth in Statement of Material Facts Not in Dispute filed herewith ("SMF").  Each such statement is supported by the materials cited in the corresponding paragraph of the SMF, including admissions, pleadings, declarations attached to the SMF as Exhibits "A" through "C," and documents attached to those declarations, which are referred to as "Attachments."  In this Memorandum, a citation to a particular paragraph of the SMF should be understood to also cite to the materials cited in the SMF in support of the proposition.

### _Use of JOHN C. FLOOD From 1984-1996_

**A.    _First Use of JOHN C. FLOOD By Companies Owned and Controlled by Davis/Crooks_**

1.  In 1984, Davis and Crooks formed a Maryland corporation called "John C. Flood, Inc." ("1984 Flood") and at that time began engaging in the plumbing heating, and air conditioning business in the Washington, D.C. metropolitan area, trading under various names containing the dominant term JOHN C. FLOOD and FLOOD.  SMF ¶ 1.

2.  Between 1984 and June 1991, 1984 Flood, owned and controlled by Davis and Crooks, continuously traded under and used the name JOHN C. FLOOD INC. and other variations containing the dominant element JOHN C. FLOOD and FLOOD as trade names and service marks, in the Washington, D.C. metropolitan area, including in Maryland, Virginia and the District of Columbia in connection with plumbing, heating and air conditioning services. During this period, 1984 Flood displayed continuously the name and mark JOHN C. FLOOD and similar names and marks, and the phrase WE DO IT ALL, on service trucks, on contracts, invoices, in telephone directory listings and ads, and/or in mass market advertising.  SMF ¶ 2.

**B.    _Formation of Virginia Flood in 1989; Common Ownership of Davis/Crooks_**

3.  In late 1989, some four years after they and 1984 Flood began using JOHN C. FLOOD and similar variants, and WE DO IT ALL, Davis and Crooks formed John C. Flood of Virginia, Inc., now the Plaintiff in this case ("Virginia Flood"). Davis and Crooks formed the company for the purpose of expanding in Northern Virginia the operations of 1984 Flood's JOHN C. FLOOD plumbing, heating and air conditioning business they already owned and controlled.  SMF ¶ 3.

4.  Davis and Crooks invited Third Party Counterclaim Defendants Clinton Haislip ("Haislip") and James Seltzer ("Seltzer") to join Virginia Flood as shareholders.  From the

inception of the company in 1989, up to and including March 1995, Haislip and Seltzer owned a non-controlling equity interest in Virginia Flood. From some point in 1989, up to some point in 1995, Davis and Crooks owned a 50% interest collectively, and Haislip and Seltzer owned collectively the other 50% interest. SMF ¶ 4.

5. From about 1990 through and including June 1991, 1984 Flood and Virginia Flood were related companies, in which Davis and Crooks had substantial ownership interests, and controlled the use of the FLOOD marks. During this period, 1984 Flood used JOHN C. FLOOD and similar variants as tradenames and servicemarks on trucks, business forms, and in advertising and promotional materials, subject to Davis' and Crooks' control and approval. SMF ¶ 5.

**C.** ***1991-1993 – The Chapter 11 - Davis and Crooks Continue to Operate 1984 Flood, Trade and Use JOHN C. FLOOD, and to Hold Stock in 1984 Flood and Virginia Flood***

6. On June 21, 1991, 1984 Flood, Davis, Crooks and their wives each filed petitions for relief and reorganization under Chapter 11 of the U.S. Bankruptcy Code in the U.S. Bankruptcy Court for the District of Maryland. They intended to reorganize and to continue the JOHN C. FLOOD business. SMF ¶ 6.

7. From June 21, 1991 through and including March 1993, Davis and Crooks continued to control and operate 1984 Flood, which continued to conduct business and trade under and use JOHN C. FLOOD names and marks, and Davis and Crooks continued to hold their stock in 1984 Flood and Virginia Flood, as debtors-in-possession for the Chapter 11 bankruptcy estate. SMF ¶ 7.

8. During this period, 1984 Flood, under Davis' and Crooks' day to day direction and control as Chapter 11 debtors-in-possession, continued to use JOHN C. FLOOD and FLOOD to

advertise and promote plumbing, heating and air conditioning business in the Washington, D.C. metropolitan area. They continued to display JOHN C. FLOOD on service trucks, signage, business forms, brochures and advertising. SMF ¶ 8.

9.   On March 22, 1993, a Chapter 11 Trustee was appointed for 1984 Flood, Davis and Crooks, and Davis and Crooks ceased to be debtors-in-possession. On September 21, 1993, each 1984 Flood's, Davis', Crooks' and their wives' cases were converted to proceedings under Chapter 7 of the Bankruptcy Code, and all of the cases were consolidated and administered under the Chapter 7 case styled *John C. Flood, Inc, et alia*, 91-4-3011SD. SMF ¶ 9.

> **D.**   *The Chapter 7 1993-1995: Debtors Crooks and Davis and Their Relatives Continue 1984 Flood Business Under Various Entities Trading and Advertising Under Variations of the JOHN C. FLOOD Name*

10.   After the Chapter 11 receiver was appointed for 1984 Flood in March 1993, the individual debtors, Davis and Crooks, and the Smileys (who were members of Davis' family) continued to carry on the plumbing, heating and air conditioning business of 1984 Flood in the Washington, D.C. metropolitan area. They traded and advertised under various corporations and trade names, using variations of JOHN C. FLOOD and FLOOD, including J.C.F., Inc., J.C. Flood, John C. Flood of D.C, Inc., and John C. Flood of MD, Inc. These entities displayed FLOOD names and marks and on service trucks, signage, business forms, brochures and advertising, continuously, through and after June 1995, when a receiver was appointed by the Bankruptcy Court to take control of the entities. SMF ¶ 10.

> **E.**   *March 1995 Trustee Rinn's Sale of Davis/Crooks' Interest in Virginia Flood to Haislip and Seltzer*

11.   As of March 1995, Haislip and Seltzer had filed certain claims against the estates of 1984 Flood, Davis and Crooks. First Amended Complaint ¶ 12; SMF ¶ 11.

12.   Haislip and Seltzer had knowledge of the bankrupt debtors' use of the FLOOD name, and documentation of their advertising under those names.  Michael G. Rinn, Esquire, by then the Chapter 7 Trustee of 1984 Flood, Davis and Crooks' bankruptcy estates ("Rinn," or "Trustee") planned to elicit their testimony and introduce such documentation in proceedings against the debtors arising from such use. SMF ¶ 12.

13.   In or about March 1995, Haislip and Seltzer, and the Trustee reached a settlement of Haislip and Seltzer's claims.  The Trustee agreed to sell to them Davis and Crooks' 50% interest in Virginia Flood stock held by the estates, for $55,000.  As part of the consideration for the sale, the Trustee agreed to release Haislip, Seltzer and Virginia Flood from claims, causes of action or disputes the Trustee may hold against them, and Virginia Flood agreed to release the bankruptcy debtors and their estates, and assign to the Trustee any claims, causes of action or disputes it had with respect to the consolidated bankruptcy cases.  Notice of the settlement was given to creditors on March 28, 1995, and the deadline for objections to the settlement described in the Notice ran without any being filed on April 20, 1995. However, the formal Stock Purchase Agreement transferring the stock was not fully executed until October 1995, as Rinn signed it in September, and Haislip and Seltzer in mid-October, 1995.  SMF ¶ 13.

**F.**      ***May 1995 Trustee Rinn's Adversary Proceeding Seeking Control of Successors to 1984 Flood's Business Operated by Debtors Davis and Crooks, to Preserve and Protect Value of Estate's JOHN C. FLOOD and FLOOD Tradenames and Goodwill; Appointment of Receiver and Charge to Continue Operating Business and to Protect Names and  Goodwill for Sale***

14.  On May 17, 1995, Rinn, Trustee of the consolidated bankruptcy estates of 1984 Flood, Davis and Crooks, commenced an adversary proceeding in the bankruptcy case (the "Adversary Proceeding") against JCF, Inc. t/a J.C. Flood, John C. Flood of MD, Inc., John C.

Flood of DC, Inc., MDMC, Inc., a/k/a Mel Davis and Mark Crooks, Inc., and the persons operating and controlling those entities, namely Davis, Crooks and the Smileys. SMF ¶ 14.

15. In the Adversary Proceeding, the Trustee exercised his powers to avoid fraudulent transfers and compel turnover of estate assets to the Trustee pursuant to the Bankruptcy Code. Among his grounds was that foregoing "New Flood" entities (as he called them) were the successors of 1984 Flood. He sought to compel the defendants to deliver to the estate, account for, refrain from further use, and to have the Court appoint of a receiver to take control of, assets rightfully belonging to the estate, to preserve them for the creditors of the estate. He also sought appointment of a receiver immediately, *ex parte*, to take control of the assets and administer them for the benefit of the bankruptcy estate. The assets specifically included the FLOOD trade names and goodwill, which the Trustee alleged were being infringed and misappropriated by the individual debtors and their family members. SMF ¶ 15.

16. On or about June 5, 1995, the Bankruptcy Court entered a Stipulated and Consent Order for a preliminary injunction and temporary appointment of a receiver. Roman Fedirka, still the temporary receiver, was appointed to serve as temporary receiver to operate, preserve and protect the New Flood assets, including the JOHN C. FLOOD and FLOOD names and related goodwill during the bankruptcy proceeding. Among the powers and duties the Court expressly conferred on the receiver were to: "take immediate possession and charge of the right title and interest of all tangible and intangible property of New Flood, wherever located . . . . and assets of every kind a nature (collectively the "Assets") and to manage, operate, secure, and control same so as to protect and preserve New Flood as ongoing business entities until further Order of the Court." *Id.* On August 17, 1995, the Court entered a Second Stipulated and

- 13 -

Consent Order continuing the receivership under Mr. Fedirka, and charging him with the identical powers and duties. SMF ¶ 16.

> **G.**     ***Motion for Approval of Settlement of Adversary Proceeding; Section 363 Sale; Notice to Va. Flood; Active Participation of Va. Flood and Haislip/Seltzer; Competing Bid; Failure to Assert Claim of Exclusive Ownership of JOHN C. FLOOD***

17.  By September 7, 1995, after lengthy negotiations, Rinn and the Adversary Proceeding defendants reached a settlement agreement in principal whereby the estate would, after due notice to all creditors, sell the stock in certain of the New Flood corporations and the JOHN C. FLOOD, INC. and FLOOD, INC. trade names and goodwill, to Davis, Crooks, and Joanne and Robert Smiley on certain terms, including a release of the claims against them. Pending resolution of the details, grant or denial of the motion approving the sale after an opportunity for creditors to object or to submit higher and better bids, and a sale of the assets, the parties consented that Mr. Fedirka would be appointed permanent receiver, with powers similar to those granted in the previous Temporary Receivership Orders.  SMF ¶ 17.

18.  A hearing on the consent motion for permanent appointment of a receiver before the Bankruptcy Court was held on September 7, 1995, at which a court reporter was present.  The transcript summarizes the details of the contemplated settlement as proposed at the time.  A lawyer, Mr. Gary Weltmann, appeared for John C. Flood of Virginia, Inc., and attended the hearing. SMF ¶ 18.

19.  On September 7, 1995, the Bankruptcy Court entered a Consent Order Appointing Permanent Receiver and Granting Permanent Injunctive Relief.  Among the powers and duties the Court expressly conferred on the receiver were to:  "take immediate possession and charge of the right title and interest of all tangible and intangible property of New Flood, wherever located . . . . and assets of every kind a nature (collectively the "Assets") and to manage, operate, secure,

and control same so as to protect and preserve New Flood as ongoing business entities until consummation of sale to a purchaser, subject to further Order of this Court." He was also charged expressly "[t]o prohibit any confusingly similar or otherwise infringing uses of the common law tradename JOHN C. FLOOD, INC., by any individual or entity. . . ." SMF ¶ 19.

20. During the entire period of the temporary and permanent receiverships, from June 1995 through and after the sale of the names and goodwill in 1996, the businesses in receivership never ceased trading and advertising under the JOHN C. FLOOD and FLOOD names and marks. The companies continued to perform plumbing, heating and air conditioning services throughout the Metropolitan Washington, D.C. area, and to use variations of JOHN C. FLOOD and FLOOD, on service trucks, on business forms, and in advertisements, and the like. The Smileys continued to work in the business, under the supervision of the receiver. SMF ¶ 20.

21. The Adversary Proceeding settlement proposal contemplated that the ultimate asset sale would be pursuant to 15 U.S.C. § 363, which permits the Trustee to sell estate assets free and clear of all adverse liens, claims, and encumbrances, after due notice to all creditors and parties in interest and an opportunity to object and submit higher and better bids. On September 15, 1995, the Trustee gave formal notice of the appointment of a permanent receiver, to all creditors and parties in interest. The Notice provided that: "all creditors will receive additional notice prior to any sale and the notice of the sale will provide for a period of time for creditors and parties in interest to respond and also provide for a hearing to be held." SMF ¶ 21.

22. Early in October, 1995, Rinn reached a settlement with the Adversary Proceeding parties, whereby the trade names and goodwill in and to JOHN C. FLOOD, INC. and FLOOD, INC., and the stock of John C. Flood of MD, Inc. and John C. Flood of DC, Inc. were to be sold, along with the operating assets and liabilities of those companies, pursuant to 15 U.S.C. § 363,

free and clear of all adverse liens, claims and interests, to Davis, Crooks, and the Smileys, for $300,000 on terms. To effectuate the settlement, on October 5, 1995, Rinn filed in the Bankruptcy Court a Motion for Entry of Order Authorizing Private Sale of Stock and Other Assets Free and Clear of Liens and For Approval of Settlement. SMF ¶ 22.

23.  On October 6, 1995, Rinn caused to be served all creditors and parties in interest with a Notice of the Motion for Approval of Sale Free and Clear of Liens, to which was attached the Motion, and exhibits thereto identifying the operating assets and liabilities of the New Flood entities whose stock was be sold. Gary Weltmann, counsel to Haislip, Seltzer and John C. Flood of Virginia, Inc., was served with a copy. SMF ¶ 23.

24.  On October 20, 1995, Haislip and Seltzer, through their counsel, Mr. Weltmann, filed an objection to the Motion to Approve Sale Free and Clear of Liens. They objected on the grounds that the Trustee should not settle the case or sell the assets to the proposed purchasers, Davis, Crooks and Joanne and Robert Smiley, because they had engaged in fraud, and diverted and concealed assets of the estate. SMF ¶ 24.

25.  As part of their Objection to Sale, Haislip and Seltzer made an offer to purchase the only the tradenames JOHN C. FLOOD, INC. and FLOOD, INC. for $225,000, on terms, but not the stock of the New Flood entities. They noted that, according to the proposed terms of sale, the purchasers' operation of the business had to be monitored by the Trustee until the purchase price was paid due to their past history, causing an expense that would cause the estate to derive a lower net recovery than under Haslip/Seltzer's counteroffer. SMF ¶ 25.

26.  Haislip and Seltzer's objection did not claim or assert that the estate lacked the right to sell, or lacked title and interest in and to the JOHN C. FLOOD, INC. and FLOOD, INC., trade names and associated goodwill. Nor did their objection claim or assert that the sale was invalid

because, previously, in or about March 1995, the Trustee had settled their claim against the estates of Davis and Crooks by agreeing to sell to Haislip and Seltzer the 50% Virginia Flood interests owned by debtors Davis and Crooks, as Virginia Flood claims here. Virginia Flood's Answer to Counterclaim, ¶ 22; SMF ¶ 26.

27.  In response to the issues that were raised in the objection, Davis and Crooks withdrew from the proposed bid, and the Smileys increased their offer from $300,000 to $425,000, on terms.  SMF ¶ 27.

28.  A hearing was held before Judge Keir on October 26, 1995.  Mr. Weltmann appeared at the hearing. On October 28, 1995, after considering Haislip and Seltzer's objections and counteroffer, the Court entered an Order approving the sale of the Flood stock and trade name including the trade names JOHN C. FLOOD, INC. and FLOOD, INC. and goodwill, to the Smileys and the corporations they were to operate, for the sum of $425,000, on the terms set forth in the Order and the instruments recited therein.  SMF ¶ 28.

### *October 1995 Trustee Demands that Virginia Flood Trade Desist Use of JOHN C. FLOOD Without Distinguishing Geographic Designator*

29.  On October 5, 1995, the day before he filed the Motion for Approval of Sale Free and Clear of Liens, the Trustee sent a letter to Mr. Weltmann demanding that his clients cease and desist using JOHN C. FLOOD in certain telephone directory advertising without the distinguishing designator "of Virginia."   Rinn wrote: "[w]ithout belaboring the point, I consider your client's use of the name without the clarification as John C. Flood of Virginia in the same category as the issues which led to litigation of the received entities."   SMF ¶ 29.

30.  At no time during or after the sale approval process did Mr. Weltmann, Haislip, Seltzer, or anyone else acting for or on behalf of John C. Flood of Virginia, Inc., ever claim or assert before or in connection with the bankruptcy case that the estate lacked the right to sell, or

lacked title and interest in and to the JOHN C. FLOOD, INC. and FLOOD, INC., trade names and associated goodwill, despite notice and opportunity to do so.  Nor did they ever claim or assert there that the sale was invalid because, previously, in or about March 1995, the Trustee had settled their claim against the estates of Davis and Crooks by agreeing to sell to Haislip and Seltzer the 50% ownership interest Davis and Crooks had in John C. Flood of Virginia, Inc. Insofar as the Receiver is concerned, they acted in a manner contrary to such contentions in offering $225,000 for the very same assets. SMF ¶ 30.

> ### *Sale to 1996 Flood; Continuation of Operation of JOHN C. FLOOD Businesses for Ten Years Prior to Virginia Flood's Filing of This Case*

31.  In or about February 1996, the Smileys, John C. Flood, Inc., a newly-formed Maryland corporation (Defendant and Counterclaim Plaintiff here), and the "New Flood" entities in receivership (collectively, "1996 Flood") entered into a Settlement and Forbearance Agreement. Certain of them executed and delivered a number of associated debt and security instruments with the Trustee (including a Bill of Sale) effectuating, and memorializing the terms of, the court-approved purchase of the JOHN C. FLOOD, INC. and FLOOD, INC. tradenames and goodwill, and the stock of the New Flood entities John C. Flood of DC, Inc. and John C. Flood of MD, Inc.  The instruments obliged each of the Smileys and those entities to pay the estate the purchase price of $425,000, in monthly installments of $6,666.66 each, and a balloon payment at maturity in December 2000.  SMF ¶ 31.

32.  The Smileys and 1996 Flood entered into the Settlement and Forbearance Agreement, and executed and delivered the associated debt and security instruments, in reliance on the Court's approval of the purchase – as modified in response to the issues which Haislip and Seltzer had raised in their objection to the original proposal.  They also relied on the Trustee's right to sell the FLOOD trade names and goodwill free and clear of any and all adverse claims,

- 18 -

encumbrances and interests, including any claims and interests which could have been asserted and litigated before the Bankruptcy Court by parties in interest who had received notice of the proposed sale. *Id.* Their expectation in agreeing to buy the assets was that there were no such claims or adverse interests that had not been resolved by the Court. SMF ¶ 32.

33. They agreed to buy the assets with the understanding that no one, including Haislip and Seltzer or Virginia Flood, had objected on the grounds that the Trustee lacked the right to sell or did not own the trade names and goodwill and that they would acquire the trade names and goodwill free and clear of adverse claims and interests other than those set forth in the purchase documents. SMF ¶ 33.

34. After execution and delivery of the Settlement and Forbearance Agreement and associated debt and security instruments, Defendants continued engaging in the plumbing, heating and air conditioning business in the Washington D.C. metropolitan area under the JOHN C. FLOOD and FLOOD tradenames substantially as it had been conducted under the auspices of the receiver. As required in the settlement, until the purchase price was paid in full, Defendants' operations were monitored by and conducted under the supervision of the receiver, Roman Fedirka. SMF ¶ 34.

35. From 1996 through early 2001, 1996 Flood made the monthly payments as required, and, in January 2001, had paid the $425,000 purchase price in full. SMF ¶ 35.

36. From 1996 to and including the present date, 1996 Flood has at all times actively traded under and used JOHN C. FLOOD and variations of FLOOD as trade names and servicemarks to promote their business, through a variety of means, including on service trucks, signage, business forms, in telephone directory ads and listings, in periodical and cable television ads, and on the Internet, and Virginia Flood is and has been aware of these facts. SMF ¶ 36.

37.  1996 Flood spends substantial sums for advertising using the JOHN C. FLOOD and FLOOD marks, and advertised continuously since 1996. SMF ¶ 37.

38.  Virginia Flood was aware in 1996 that the Smileys and 1996 Flood purchased the JOHN C. FLOOD and FLOOD tradenames and goodwill in a sale approved by the Bankruptcy Court, and planned to use them, because Virginia Flood participated actively in the proceedings. SMF ¶ 38.

39.  On June 11, 1996, John P. Morrissey, counsel for 1996 Flood wrote to Haislip and Seltzer complaining that Virginia Flood was infringing the tradenames 1996 Flood had purchased from the Trustee, by using "John C. Flood" in telephone directory advertising, on service trucks, on signage, and in other advertising.  He demanded, as the Trustee had in October 1995 before him (*see* ¶ 27, *supra*), that Virginia Flood stop using "John C. Flood" without the distinguishing designator "of Virginia," to avoid confusion.  On August 21, 1996, Virginia Flood, through Mr. Weltmann, wrote a letter to Mr. Morrissey essentially acceding to Mr. Morrissey's demands.  In particular, Weltmann wrote that he had personally seen the newest telephone directory ads, and "they contain the words 'of Virginia, Inc.' after 'John C. Flood.'" He also agreed that his client would have the words "of Virginia, Inc.,"  added to building and service truck signage.  Weltmann did not in this letter, or in any other communication with 1996 Flood about the issue at this time, take the position that 1996 Flood's use infringed Virginia Flood's rights.  SMF ¶ 39.

40.  Since 1996, Virginia Flood has been aware that 1996 Flood has used and continues to use those names and marks in connection with directly competitive services in the same geographic in the same lines of trade and business as those offered by Virginia Flood. Plaintiff's First Amended Complaint, ¶¶ 43, 59; SMF ¶ 40.

41.   Virginia Flood did not commence or file any suit or action at law or in equity against any of Defendants seeking injunctive, monetary or declaratory relief arising from their allegedly infringing use of JOHN C. FLOOD and/or FLOOD until it commenced this action, on July 25, 2006.  Complaint for Trademark Infringement and Unfair Competition, Case No. 1:06CV01311, dated July 25, 2006. SMF ¶ 41.

## III.  ARGUMENT AND AUTHORITIES

### A.   *Summary Judgment Standard: Movant's Burden*

A party is entitled to summary judgment if the pleadings, depositions, and affidavits demonstrate that there is no genuine issue of material fact in dispute and that the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Tao v. Freeh*, 27 F.3d 635, 638 (D.C. Cir. 1994). Under the summary judgment standard, Defendants, as the moving party, bear the "initial responsibility of informing the district court of the basis for [its] motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits which [it] believe[s] demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

In this case, Virginia Flood brings three claims for injunctive and monetary relief against the corporate Defendants:  (1) infringement of a registered trademark under 15 U.S.C. § 1114(1) (Plaintiff's First Amended Complaint ¶¶ 54-63); (2) unfair competition in violation of 15 U.S.C. § 1125(a) (*Id.* ¶¶ 64); and (3) common law servicemark infringement and unfair competition.   It also seeks a declaration of its priority rights to JOHN C. FLOOD and similar names and marks against all Defendants.  *Id.* ¶¶  80, 81 & Prayer for Relief ¶¶ 2 & 4.  Each one of Virginia Flood's causes of action depends on the following allegation: "Virginia Flood's use of such names and

marks predates and is senior to use of JOHN C. FLOOD and similar names and marks by each of the Corporate Defendants."  ¶¶ 56 & 72.

As we demonstrate in this motion and supporting materials, under the undisputable facts of this case, all Defendants are entitled to judgment as a matter of law on all Virginia Flood's claims, for two reasons. First, Virginia Flood is not entitled to enjoin any Defendants' use of JOHN C. FLOOD and similar marks, to any monetary remedy against corporate Defendants, or to a declaration of priority in its favor because Virginia Flood cannot establish the threshold requirement of ownership and priority of use in the disputed mark.  Second, Virginia Flood is barred by laches, waiver, estoppel, and release from disputing in this case, eleven years after the fact, the validity of the bankruptcy Trustee's sale of the JOHN C. FLOOD and FLOOD tradenames and goodwill to Defendants.

> **B.**     ***Defendants Are Entitled to Judgment as A Matter of Law On Virginia Flood's Claim that it Owns and Has Priority of Use of the JOHN C. FLOOD Names and Marks Because the Names and Marks Were Not Abandoned in 1984 Flood's Bankruptcy***

As threshold matter and an essential element, to prevail on a claim of trademark infringement in the D.C. Circuit, "the plaintiff must show . . . that it owns a valid trademark." *Globalaw Ltd.* v. *Carmon & Carmon Law Offices,* 452 F.Supp. 2d 1, 27-28 (D.D.C. 2006), *citing Malarkey-Taylor Assocs., Inc. v. Cellular Telecomm. Indus. Ass'n*, 929 F. Supp. 473, 476 (D.D.C. 1996) (citing *Sears, Roebuck and Co. v. Sears Fin. Network*, 576 F. Supp. 857, 861 (D.D.C. 1983)); *see Partido Revolucionario Dominicano (PRD) Seccional Metropolitana de Washington-DC, Maryland y Virginia v. "Partido Revolucionario Dominicano, Seccional de Maryland y Virginia,"* 312 F. Supp. 2d 1, 11 (D.D.C. 2004) (same); *Duggal*, 554 F. Supp. at 1044 (same); *Hearst*, 498 F. Supp. at 254 (same).  Courts have announced that the elements of unfair competition under 15 U.S.C. 1125(a) and common law infringement and unfair

competition mirror those for a claim of trademark infringement. *See Globalaw,* 452 F.Supp.2d. at 25, *citing PRD,* 312 F. Supp. 2d at 11("The analysis for unfair competition under Section 43(a) of the Lanham Act is essentially the same as the analysis for trademark infringement"); *Am. Ass'n for Advancement of Science v. Hearst Corp.*, 498 F. Supp. 244, 261-62 (D.D.C. 1980) (noting that "the essential elements are the same for either a trademark infringement or unfair competition action" and "the remedy for unfair competition, injunctive relief, is the same as that provided by the infringement law"); *see also Tommy Hilfiger Licensing, Inc. v. Goody's Family Clothing, Inc.*, 2003 U.S. Dist. LEXIS 8788 at *78, Civ. A. No. 00-1934 (BBM), 2003 WL 22331254, at *30 n.5 (N.D. Ga. May 9, 2003) ("the standards for the federal claims of false designation of origin and unfair competition are the same as those for trademark infringement") (citations omitted).

1. ***Virginia Flood's Federal Registrations Do Not Establish Its Priority; Even Without Relying on 1984 Flood's First Use, Defendants' Use is Senior to the Constructive Priority Date Conferred by Virginia Flood's Registrations***

Virginia Flood is the holder of registered trademarks, which, if properly admitted, would be prima facie evidence (and confer a presumption) of validity and ownership of the registered marks, and their exclusive right to use them.  15 U.S.C. §§ 1057(b), and 1115(a).  *See* also First Amended Complaint, ¶ 42 (Virginia Flood alleges *prima facie* evidentiary effect of registration). However, that presumption is not conclusive, but rebuttable, and for the reasons explained below, has no practical significance in the context of this motion.

The very section of the Lanham Act conferring the evidentiary presumption concludes by providing that a registration "shall not preclude another person from proving any legal or equitable defense or defect, including those set forth in subsection (b), which might have been

asserted had the mark not been registered." 15 U.S.C. § 1115(a). According to McCarthy, a

leading commentator on trademarks and unfair competition:

> [A]ny common law defense can be raised to attack the validity of the mark, and any
> equitable defense can be interposed. Thus, the validity of the mark and its registration
> may be collaterally attacked by a defendant who is charged with infringement. This
> 'collateral attack' can take the form of both (1) an affirmative defense to infringement;
> and (2) a counterclaim for cancellation of the registration.

5 J.T. McCarthy, *McCarthy on Trademarks,* § 3:139, at 32-257 -58 (4th Ed. 2007).

Defendants, in their Answer and Counterclaim, challenge directly the validity of Virginia

Flood's registrations, seeking cancellation, and raise a number of affirmative defenses

cognizable under the Lanham Act, including the equitable laches and estoppel, and the legal

waiver and release, defenses discussed in this motion. In connection with this motion, we also

present affirmative proof of the invalidity of the claims of trademark ownership underpinning the

registrations. The net effect is that the presumptions are pierced and evaporate:

> [t]he presumption of validity that federal registration confers . . . evaporates as
> soon as evidence of invalidity is presented. . . Its only function is to serve as
> evidence and when that function has been performed the presumption drops out of
> the case.

*Door Systems, Inc.* v. *Pro-Line Door Systems, Inc.*, 83 F.3d 169, 172 (7th Cir. 1996).

Further, as a matter of law, any statutory priority conferred by Virginia Flood's federal

trademark registrations relates back only to the filing date of the applications for registration.

*See* 15 U.S.C. § 1057(c) ("Contingent on the registration of a mark . . . the filing of an

application to register shall constitute constructive use conferring a right of priority . . . ."); 4 J.T.

McCarthy, *supra*, § 26.38 (constructive priority accorded registration dates from application

date). The registration *per se* is proof of use only as of the filing date, not the date of first use

claimed in the application. 2 J.T. McCarthy, *supra,* § 16:19, at 16-37 & n.4.

Virginia Flood filed its applications in 1999, First Amended Complaint at ¶¶ 39 & 40.  It expressly asserts that 1996 Flood's use commenced in 1996, some three years before Virginia Flood even filed its applications. *Id.* ¶ 57.  Thus, it is beyond cavil that Defendants' use of the JOHN C. FLOOD mark is senior to the statutory constructive priority date conferred by Virginia Flood's federal registrations. By its terms, Section 7(c) of the Lanham Act provides that constructive priority conferred by the filing of a federal trademark registration *does not* confer a right of priority over a person who used the mark prior to such application.  15 U.S.C. § 1057(c).  Thus, Plaintiff's claim to ownership of the JOHN C. FLOOD name and mark must rest on some basis other than "constructive use" priority.

> **2.    *1984 Flood, Davis and Crooks Were the Senior Users and Owners of the JOHN C. FLOOD Names, Marks and Goodwill, and Ownership of Those Assets Passed to Their Bankruptcy Estates Pursuant to 15 U.S.C. § 541***

"[O]wnership is governed by priority of use . . . . the first to use a designation as a mark in the sale of goods or services is the 'owner' and 'senior user.'"  2. J.T. McCarthy, *supra,* at 16:4, at 16-6-16-7.  As this Court stated the rule in *Globalaw*:  "[i]n the ordinary case of parties competing under the same mark in the same market, it is correct to say that prior appropriation settles the initial question of ownership, and that the service mark rights of the senior user trump those of the junior user." 452 F.Supp.2d at 27.

Virginia Flood does not dispute that 1984 Flood's use of JOHN C. FLOOD in connection with plumbing, heating and air conditioning services in the Washington, D.C. geographic market was senior to Virginia Flood's, and that 1984 Flood began using the mark nearly four years before Virginia Flood was even formed.  SMF ¶¶ 1-4.  Virginia Flood asserts that 1984 Flood's and its principals' filing of a petition for relief under Chapter 11 of the Bankruptcy Code in 1991, and the appointment of a Trustee upon the conversion of the case to a proceeding under Chapter

7 means that 1984 Flood ceased to be a "going concern," causing an abandonment of 1984 Flood's prior and senior rights in and to JOHN C. FLOOD and similar variations thereof. Plaintiff's First Amended Complaint, ¶¶ 24-25.

A party asserting that a name or mark has been abandoned must prove more than mere non-use. It must prove *both* that the party asserting rights in the designation has ceased to use the designation *and* that it intends *not to resume use. See* Lanham Act, § 45, 15 U.S.C. § 1127; *see also Restatement (Third) of Unfair Competition* § 30(2) (1995) (emphasis added).

Because abandonment results in a forfeiture of rights, which is disfavored in law and equity, courts are reluctant to find it. A party arguing abandonment is obliged to prove all of its elements by clear and convincing evidence. 2 J.T. McCarthy, *supra*, § 17:12, at 17-20, and cases cited therein. *Cash Processing Servs.* v. *Ambient Entertainment*, 418 F.Supp2d 1227, 1231-33 (D. Nev. 2006) (strict proof; proponent of abandonment must bear burden of persuasion by clear and convincing evidence); *EH Yacht LLC* v. *Egg Harbor LLC,* 84 F.Supp 556, 564 (D. N.J. 2000) ("strict proof" standard means that each element of abandonment must be proven by clear and convincing evidence); *Seidelmann Yachts, Inc.* v. *Pace Yacht Corp.*, 14 U.S.P.Q.2d 1497, 1501 (D. MD 1989), *aff'd* 898 F.2d 147 (4th Cir. 1990) ("Because abandonment constitutes a forfeiture of a property interest, both non-use and intent not to resume use must be strictly proved."). In reviewing a motion for summary judgment, the District Court must consider the materials marshaled in support and in opposition in the light of the appropriate standard of proof, here, clear and convincing evidence. *Anderson* v. *Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

Contrary to the core premise of Virginia Flood's abandonment argument, filing of a bankruptcy petition – and even one looking toward liquidation of the business – does not automatically extinguish or cause abandonment of a trade name, mark and associated goodwill.

The commencement of a bankruptcy case creates a bankruptcy estate comprised generally of all legal and equitable interests of the debtor as of the commencement of the case, wherever located and by whomever held, except for some enumerated exceptions not pertinent here.  11 U.S.C. § 541(a).  It also includes property recovered from others by the Trustee for the estate.  11 U.S.C. § 541(a)(3) & (4).

It is well settled that the mere fact that an entity files for bankruptcy protection does not cause forfeiture and abandonment of the rights it has in its tradenames, servicemarks and associated goodwill. 2 J.T. McCarthy, *supra,* 17:16, at 17-30 & n.4 and cases cited therein. Tradenames, servicemarks and associated goodwill are valuable estate assets, which can be validly sold, assigned or transferred by the estate, provided the goodwill is not separated from the names and marks.  *American Sleek Craft, Inc.* v. *Nescher,* 131 Bankr. 991, 996-97 (D. Az. 1991)(noting that when ownership of business is conveyed, its tradename and goodwill are also conveyed; enjoining use of bankrupt business' trademark); *EC Yachts,* 84 F.Supp at 567-78 (Trustee in bankruptcy has power to sell the goodwill and symbolic trademarks); *Impact Distributors, Inc*. v. *Cuzcatlan Beverages, Inc.,* 260 Bankr. 48, 56 (Bankr. S.D. Fla. 2001)(Court ruled that trademark and goodwill were property of estate and subject to sale under Section 363); *Merry Hull & Co.* v. *Hi-Line Co.,* 243 F.Supp 45, 52 (S.D.N.Y 1965)(court concludes "defendant became the owner of the mark "Merry Mites" by purchase from the Trustee in Bankruptcy; and that its title was confirmed by long continued and public use).  After a valid assignment of trademarks and their good will, the assignee succeeds to all the rights and priorities of the assignor.  2 J.T. McCarthy, *supra*, § 18:15, at 18-33 n.2; *Johanna Farms, Inc.* v. *Citrus Bowl*, 468 F.Supp. 866,    (E.D.N.Y. 1978) (purchaser "becomes transfixed to the position of his predecessor")

Among the most valuable assets subject to administration as part of the 1984 Flood, Davis and Crooks bankruptcy estates were the trade names JOHN C. FLOOD, INC., FLOOD, INC. and associated goodwill.  At the moment the debtors filed petitions seeking relief in bankruptcy, ownership of all of their properties, including the intangible trade names and goodwill, passed to their bankruptcy estates.

**3.**    *Virginia Flood's Claims of Abandonment by Non-Use Are Belied By the Undisputed Facts of This Case*

Recognizing, as it must, that the bankruptcy Trustee is the conduit through which priority of rights passed to the Defendants, Virginia Flood's claim to priority over 1996 Flood is based on an asserted loss of the Trustee's rights prior to the of sale.  Virginia Flood contends: "[a]t the time the Trustee and Receiver attempted to sell JOHN C. FLOOD, INC. and FLOOD, INC., to 1996 Flood, 1984 Flood had no interest or control in the use of JOHN C. FLOOD and/or similar variations thereof," because "1984 Flood was no longer using JOHN C. FLOOD and or similar variations thereof, and, as a consequence, any goodwill that may have been symbolized thereby had been destroyed by 1984 Flood's abandonment and non-use thereof."   Plaintiff's First Amended Complaint ¶¶ 32 & 33.   Specifically, Virginia Flood claims, abandonment and non-use occurred in March 1993, the date Davis, Crooks and 1984 Flood's Chapter 11 bankruptcy cases were converted to a Chapter 7.  *Id.* ¶¶ 24-25.  Accordingly, Virginia Flood claims, the Bill of Sale they admit 1996 Flood and the Smileys received from the Trustee for JOHN C. FLOOD and FLOOD, INC. and the goodwill symbolized thereby was invalid and of no effect, because the Trustee's sale of Davis' and Crooks' 50% interest in Virginia Flood to Haislip and Seltzer in March 1995 had vested them with the "exclusive right" to use JOHN C. FLOOD and/or similar variations thereof.  *Id.*  ¶ 34.

As contemporaneous documents produced in discovery now prove conclusively, Haislip and Seltzer actually acquired the remaining ½ interest in Virginia Flood's stock in October 1995, not March 1995.[4]  Of course, by October 2005, the Trustee had forcefully asserted his rights in the JOHN C. FLOOD marks, by seizing control and placing in receivership the "New Flood" entities who had been using them, and, significantly, even against Virginia Flood itself, to whom the Trustee wrote a letter on October 5, 1995, objecting to Virginia Flood's confusing use of JOHN C. FLOOD in certain advertising.  Rinn Dec. SMF Ex. B ¶ 25 and Att. B-16.

In any event, Virginia Flood' conclusory pronouncement as to the effect of the Chapter 7 conversion simply falls far short of the demanding factual burden it must bear to establish abandonment by the 1984 Flood bankruptcy estate by clear and convincing evidence.  To the contrary, the undisputed facts show that the there was never any hiatus in the debtors' estates' use, much less any evidence of an intention by the Trustee to abandon the JOHN C. FLOOD name and goodwill during the 1984 Flood bankruptcy.

Indeed, the facts overwhelmingly show that the Trustee intended to preserve them to be sold along with other business assets.  They show further that the Trustee acted on that intention, by operating 1984 Flood's business and continuing to trade under the FLOOD names and marks under the stewardship of a receiver appointed by order of the Bankruptcy Court, until 1984

---

[4] The Trustee and Haislip/Seltzer's counsel reached an agreement on the terms and conditions of the stock sale and purchase which was memorialized in a letter dated March 16, 1995, but notice to creditors and interested parties in the bankruptcy was not given until March 28, 1995, and the Clerk's Certification of No Objections was not issued until April 20, 1995.  Rinn Dec. Ex. B ¶ 24 & Att. B-14 (March 16, 1995, Letter from Sweeney to Weltmann re terms of Sale of Virginia Flood stock, Bates No. DCDC 2437-38, 2442-43 ); B-15 (April 20, 1995, Clerk's Certificate of No Objections and March 25, 1995, Notice of Settlement).  The stock itself was not actually transferred until October 1995, when a formal Stock Purchase Agreement was fully executed and delivered, which agreement Rinn signed on September 18, 1995, and which Haislip and Seltzer signed in mid-October 1995.  Rinn Dec. Ex. B ¶ 24 & Att. B-14 (signed and notarized Stock Purchase Agreement, Bates Nos. Flood DCDC 2132-36).

Flood's names and goodwill, and stock of certain successor entities to 1984 Flood, were sold to Defendants.

        **a.**        ***There Was No Cessation of Use of the JOHN C. FLOOD and FLOOD Names and Marks By or for the Benefit of the Bankrupts' Estates, During the Chapter 11 or After Conversion to a Chapter 7***

       From 1991 until 1993, 1984 Flood, Davis and Seltzer, as Chapter 11 debtors-in-possession, continued trading and advertising under JOHN C. FLOOD. SMF ¶¶ 6-8. After the Chapter 11 receiver was appointed for 1984 Flood in March 1993, and even after the conversion of the case to a proceeding under Chapter 7 thereafter, Davis and Crooks, the individual debtors still in bankruptcy, and members of Davis' family, continued to carry on the plumbing heating and air conditioning business of 1984 Flood in the Washington D.C. metropolitan area under the FLOOD banner. *Id.* ¶ 10. They traded and advertised under various corporations and trade names, using variations of JOHN C. FLOOD and FLOOD, including J.C.F., Inc., J.C. Flood, John C. Flood of D.C, Inc., and John C. Flood of MD, Inc. These "New Flood" entities (as the Trustee called them) displayed FLOOD names and marks and on service trucks, signage, business forms, brochures and advertising, continuously, from and after March 1993, and through and after June 1995. *Id.*

       Indeed, their carrying on of the 1984 Flood business led directly to the Trustee's filing in May 1995 of an adversary proceeding in the Bankruptcy Court, seeking appointment of a receiver to assume control over the "New Flood" entities. These entities, the Trustee expressly claimed, were successors to 1984 Flood and were trading on, infringing and misappropriating the estate's JOHN C. FLOOD trade names and marks. SMF ¶ 15. The gravamen of the Trustee's complaint was that these entities were essentially continuing the business of 1984 Flood without

interruption, using variations of the JOHN C. FLOOD and FLOOD trade names, goodwill and other assets owned by the bankruptcy estate. SMF ¶¶ 14-15 *and see* Rinn Dec. SMF Ex. B ¶¶ 5-8 & Att. B-1 (Verified Complaint) *and* B-2 (Memorandum in Support of Verified Motion for Ex Parte Appointment of Receiver).

In June and August 1995, the Bankruptcy Court entered orders appointing and renewing the appointment of a receiver to take control over these entities on a temporary basis, and specifically charged him to:

> [t]ake immediate possession and charge of the right title and interest of all tangible and intangible property of New Flood, wherever located . . . . and assets of every kind and nature (collectively the "Assets") and to manage, operate, secure, and control same so as to protect and preserve New Flood as ***ongoing business entities*** until further Order of the Court"

In September 1995, the Bankruptcy Court entered an order appointing the receiver on a permanent basis, and specifically charged him to:

> take immediate possession and charge of the right title and interest of all tangible and intangible property of New Flood, wherever located . . . . and assets of every kind and nature (collectively the "Assets") and to manage, operate, secure, and control same so as to protect and preserve New Flood ***as ongoing business entities until consummation of sale to a purchaser***, subject to further Order of this Court" and "[t]o prohibit any confusingly similar or otherwise infringing uses of the common law tradename JOHN C. FLOOD, INC., by any individual or entity. . . ."

Rinn Dec. SMF Ex. B ¶¶ 10, 12 and Att. B-4 & B-6.

These explicit judicial charges from the Bankruptcy Court, directing the receiver to operate and manage the entities the Trustee regarded as the successors to 1984 Flood as "***ongoing business entities'' until sale to a purchaser***, conclusively belies Virginia Flood's core contention that, upon the appointment of a Trustee upon the conversion of the case to a proceeding under Chapter 7, 1984 Flood ceased to be a "going concern" and abandoned JOHN C. FLOOD and FLOOD.

- 31 -

During the entire period of the temporary and permanent receiverships, from June 1995 through and after the sale of the names and goodwill in 1996, the businesses in receivership never ceased trading and advertising under the JOHN C. FLOOD and FLOOD names and marks. The companies continued to perform plumbing, heating and air conditioning services throughout the Metropolitan Washington, D.C. area, and to use variations of JOHN C. FLOOD and FLOOD, on service trucks, on business forms, and in advertisements, and the like.  SMF ¶ 20.

> **b.    *The Trustee Evinced No Intention to Abandon the Goodwill of the Business Symbolized By the JOHN C. FLOOD and FLOOD Names and Marks, and It Remained Intact Upon the Sale in 1996***

Far from evincing any intention to abandon them, the Trustee, in fact, took extraordinary measures to protect the JOHN C. FLOOD and FLOOD names and marks and associated goodwill, and obviously regarded them as valuable and important assets of the 1984 Flood estate. In support of his May 17, 1995, motion for appointment of a receiver, the Trustee wrote:

> Debtor, under its common law tradename JOHN C. FLOOD, INC., has spent large sums of money since 1984 in advertising (since the business' inception), and has built up considerable good will over that time.  The public in the metropolitan Baltimore and Washington D.C. area has come to recognize that the heating and cooling services offered by by JOHN C. FLOOD emanate from a particular source, and that the JOHN C. FLOOD INC.'s name is synonymous with high quality work by skilled technicians.  In other words, consumers could likely turn to "J.C. Flood Inc." for its services while wrongfully depriving the creditors of JOHN C. FLOOD, INC., of much needed funds.

Rinn Dec. SMF Ex. B Att. B-2, Memorandum in Support of Verified Motion for Ex Parte Appointment of Receiver, etc., at 12.

The clearest objective evidence of the Trustee's intent is the adversary proceeding itself. In that case, the Trustee seized control of those assets from the individual debtors and their relatives, and forced them to operate and use them under the stewardship of a Court-appointed receiver.  *See* Rinn Dec. SMF Ex. B ¶¶ 5-10.

During the receivership, the Trustee continued to enforce and defend those trade names and goodwill, *even against Virginia Flood itself*, *and even after March 1995,* when Virginia Flood purportedly gained the "exclusive" rights to JOHN C. FLOOD and all similar names by virtue of the Trustee's agreement to sell Davis/Crooks' ½ interest in Virginia Flood to Haislip and Seltzer. On October 5, 1995, *seven months after* the Trustee agreed to sell the Virginia Flood stock to Haislip and Seltzer, *over a week before* Haislip and Seltzer executed the Stock Purchase Agreement effectuating the transfer, and *one day* before the Trustee filed a motion to approve the sale of the names and goodwill to the Defendants, the Trustee wrote a letter to Haslip, Seltzer and Virginia Flood's bankruptcy counsel, demanding that Virginia Flood *itself* cease and desist advertising in Maryland/DC telephone directories under JOHN C. FLOOD, without use of the distinguishing designator "of Virginia, saying that "I consider your client's use of the Flood name, without clarification as John C. Flood of Virginia, in the same category of issues which led to litigation of the received entities." Rinn Dec. SMF Ex. B ¶ 25 and Att. B-16.

On October 20, 1995, Haislip and Seltzer submitted a competing bid of $225,000 for the trade name assets. SMF ¶ 25. This itself stands as powerful evidence that the names had not lost their significance through non-use, but remained valuable property symbolizing goodwill. *See, e.g., Seidelmann Yachts, supra* (buyer's willingness to pay $5,000 for PACEMAKER mark for yachts indicated that goodwill has not wholly dissipated);

In the end, the Trustee sold not only the tradenames and associated goodwill in JOHN C. FLOOD and FLOOD to 1996 Flood and the Smileys, but also stock in two of the "New Flood" corporations, John C. Flood of MD, Inc. and John C. Flood of DC, Inc., which passed to the buyers title to certain operating assets used in the business, including a number of service trucks. Rinn Dec. SMF Ex. ¶ 18 & Att. B-10 (Motion For Approval of Sale Free and Clear), Exhibits A

and B thereto (listing operating assets and liabilities that passed with the corporate stock)  Thus,
the names and goodwill were sold together with operating assets used to continue 1984 Flood's
business substantially as it had been conducted before the bankruptcy case commenced. *Cf.
Impact Distributors,* 260 Bankr. at 53-559 (discussing effect of purported assignment of mark
apart from goodwill or assets permitting continuation of assignor's business).

Accordingly, Virginia Flood's entire case for priority as a result of abandonment by non-
use is fatally and fundamentally flawed.  As a matter of law, it cannot establish that: (i) it was
entitled to register the mark JOHN C. FLOOD and that its registration is valid; (ii) it owns and
has the exclusive right to use and priority over Defendants in their use of, JOHN C. FLOOD, and
the other variants thereof; (iii) in using and trading as JOHN C. FLOOD, that Defendants
infringed Virginia Flood registered trademarks, or violated Section 1125(c) of the Lanham Act,
or unfairly competed with Plaintiff by trading under the names and marks purchased out of
bankruptcy, willfully or otherwise.  Defendants are entitled to summary judgment on all Virginia
Flood's claims.

### B.  *Virginia Flood's Claims Against the Defendants Are Barred By Laches, Estoppel, Waiver and Release*

In any event, even though Virginia Flood's recently-concocted abandonment theory
would have never had merit, no matter when asserted, Virginia Flood is certainly barred from
asserting it now.  There is no question that Virginia Flood's principals knew that the corporate
Defendants were trading as JOHN C. FLOOD since at least early 1996, and that Virginia Flood
did not seek recourse until it filed this action in July 2006.  SMF ¶¶ 36, 38-41.  The Court,
Trustee and the Defendants who purchased of the trade names and goodwill all closed the sale
without notice of the Virginia Flood Parties' adverse, but undisclosed, claim that the Trustee had
nothing to sell, and in reliance on the Trustee's good title.  *Id.* ¶¶ 30, 32-33.  During the entire

period between 1996 and the commencement of this case in 2006, Defendants continued to trade, advertise and promote their services under the names and marks JOHN C. FLOOD and FLOOD, and to develop further the goodwill that they purchased. *Id.* ¶ 36. The bargained-for purchase price of $425,000 was paid in full in 2001. *Id.* ¶ 35.

      1.      ***Virginia Flood's Claims, Particularly its Claims for Monetary Relief, Are Barred by Laches and Estoppel***

In  this case, filed a decade after the purchase, Virginia Flood has the temerity to claim that, not only does it have the right to stop 1996 Flood from using the marks for which it paid nearly half a million dollars, but to reach into 1996 Flood's pockets for profits and damages, as well. As set forth in Defendants Motion for Protective Order, filed on even date herewith, the Virginia Flood Parties rely on these claims to justify a campaign of oppressive and intrusive discovery, which is consuming the parties' resources and deflecting attention from Virginia Flood's patently untenable position on the core priority and ownership issues.

Virginia Flood seeks monetary relief exclusively under the Lanham Act, 15 U.S.C. § 1117(a), which provides, in part:

> When a violation of any right of the registrant of a mark registered in the Patent and Trademark Office . . . . or a willful violation under section 1125(c) of this title, shall have been established in any civil action arising under this chapter, the plaintiff shall be entitled . . . *subject to the principles of equity,* to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of this action.

15 U.S.C. § 1117(a).

Monetary remedies under Section 1117 are not automatically available in every case, even where infringement is proven.  The remedy of an accounting for profits is discretionary, rare, and severe.  *Champion Spark Plug Co.* v. *Sanders*, 331 U.S. 125, 131 (1947).  In order to recover any damages, the plaintiff must prove a violation of its trademark rights, damage, and

that the violation was the cause of damage, and where it cannot establish that it has the rights in the mark it claims, it cannot recover either an accounting or damages.  *See Globalaw,* 452 F.Supp.2d at 61 ("[b]ecause C&C has not -- and cannot -- succeed on the merits of its claims, it is simply not entitled to damages, or an accounting relating to those damages."). By its terms, the statute expressly makes recovery of any monetary relief is subject to the principles of equity.

As the U.S. Supreme Court recognized long ago, "[c]ases frequently arise where a court of equity will refuse the prayer of the complainant for an account of gains and profits, on the ground of delay in asserting his rights.  . ."  *McLean* v. *Fleming,* 96 U.S. 245, 257 (1878).  This principle is recognized in this Circuit.  In the D.C. Circuit held in *NAACP* v. *NAACP Legal Defense and Educational Fund, Inc.*:

> The essential elements of laches are well-defined by common law. There are three affirmative requirements: (1) a substantial delay by a plaintiff prior to filing suit; (2) a plaintiff's awareness that the disputed trademark was being infringed; and (3) a reliance interest resulting from the defendant's continued development of good-will during this period of delay.

753 F.2d 131, 137-38 & n. 65 (D.C. Cir. 1985).

The reason why a delay in asserting rights to monetary recovery bars such recovery, even in a case of alleged willful infringement, is the inherent "inequity of a plaintiff waiting for a defendant to build up its business and profits and years later files suit and demands an accounting of those profits." 5 J.T. McCarthy, *supra*, § 31:4, at 31-21.

According to the case law, Virginia Flood's sleeping on its purported "rights" to profits and damages while Defendants traded under the names and marks they purchased for over ten years is more than enough delay and prejudice to Defendants to bar monetary recovery, even if, as it alleges, Defendants' purported infringement was willful and in bad faith.  *See e.g., Grotrian, Helfferich, Schuclz, Th. Steinweg Nachf.* v. *Steinway & Sons*, 523 F.2d 1331 (2d. Cir. 1975) (ten

- 36 -

year delay bars accounting and damages remedies).  *See also Skippy, Inc.* v. *CPC Int'l Inc.,* 674

F.2d 209 (4th Cir. 1982) *cert. denied* 450 U.S. 969 (1982) (laches for decade bars monetary

claims for bad faith infringement).

The Virginia Flood Parties were very active participants in the Trustee's adversary

proceeding which led to the sale of the names and goodwill they seek to challenge here.  Haislip

and Seltzer were witnesses the Trustee subpoened twice to testify about the "New Flood"

companies' use of the names and marks.  Rinn Dec. SMF Ex. B ¶¶  9, 11 & Att. B-3 & B-5

thereto.  Months before the Trustee even commenced the adversary proceeding, as part of their

negotiations to obtain Davis' and Crooks' ½ interest in Virginia Flood, they offered information

to the Trustee concerning Davis' and Crooks' use of estate assets.  In a December 29, 1994, letter

to the Trustee's counsel, Haislip/Seltzers' counsel prefaced his offer with the bold statement:

"my clients possess a good deal of information concerning the Debtors' post-petition actions

which could lead the estate to additional funds."  Rinn Dec. SMF Ex. B ¶ 24 Att. B-14

(December 29, 1994 Letter from Weltmann to Sweeney) Bates No. Flood DCDC 1848-49.

Their counsel attended a hearing concerning the settlement of the adversary proceeding

and the appointment of a receiver.  Rinn Dec. SMF Ex. B ¶ 14 & Att. B-7 (transcript cover,

showing appearance by Weltmann).  They received formal notice of the Trustee's motion for

approval of the sale of the names, goodwill, and operating assets to Defendants free and clear of

all liens, claims and interests, and a copy of the moving papers  Rinn Dec. SMF Ex. B ¶¶ 17, 18

& Att. B-10 & B-11.  On October 20, 1995, they filed an objection complaining of the proposed

purchasers' fraud, unclean hands and diversion of estate assets.  Rinn Dec. SMF Ex. B ¶¶ 19-20

& Att. B-12 (Objection to Sale).

It is undisputed that none of Flood of Virginia, Haislip or Seltzer, in their October 20, 1995, objection, or in any other connection with the bankruptcy case, ever objected to the Trustee's rights to sell the names and goodwill, or asserted any superior or exclusive rights to use JOHN C. FLOOD and similar terms, or that the estate had abandoned, by non-use or otherwise, its rights in the names and goodwill.   SMF ¶¶ 30, 33.  To the contrary, that objection was filed just a few days *after* Haislip and Seltzer executed the Stock Purchase Agreement effectuating the purchase from the Trustee of Davis' and Crooks' Virginia Flood stock (which purchase it now claims caused Virginia Flood to gain "exclusive rights" to JOHN C. FLOOD and all similar variants).  In the objection, Haislip and Seltzer expressly acknowledged the Trustee's rights to sell the names and goodwill by offering a competing bid of $225,000 for them. Rinn Dec. SMF Ex. B ¶¶ 20, 22 & Att. B-12.   They thereby affirmatively acted in a manner consistent with the Trustee's right to sell, and diametrically inconsistent with the position that they had exclusive rights they assert here, eleven years later.  *Id.*

Such conduct amounts to more than just standing mute before the Trustee, the Court and competing bidders in the face of the Trustee's claim of ownership of the JOHN C. FLOOD names and goodwill.  Their conduct actively induced action by the Defendants and the Trustee The purchasers restructured and increased their bid in response to the Virginia Flood Parties' objection. Rinn Dec. SMF Ex. B ¶ 21; Smiley Dec. SMF Ex. C ¶¶ 7-8.   The Trustee approved and the buyers consummated the sale without notice of a challenge by Virginia Flood to the Trustee's rights to sell validly the JOHN C. FLOOD and FLOOD names and goodwill  – reliance actively promoted by the competing bid and Haislip, Seltzer and Virginia Flood's failure to object on that basis prior to the sale.  *Id.*

In *American Sleekcraft,* the Court confronted very similar conduct on the part of a former owner of a bankrupt corporation who failed to assert his claim that the marks sold out of bankruptcy were not the company's, but his. In holding him equitably estopped from asserting his "the company only had an implied license" theory, the court had no difficulty concluding:

> [h]is subsequent conduct after SSBN went into bankruptcy lead[s] this court to conclude that Nescher, believing he could use the names regardless of what the bankruptcy court did, was content to allow American to pay $335,000 for the benefit of the creditors of Nescher's bankrupt corporation without mentioning that part of what American was buying was, in Nescher's view, really his. Thus, the court finds that Nescher's failure to object to the sale of the trade names when he was identifying his objections to the proposed sale is inconsistent with the position he now attempts to take. American relied to its detriment upon Nescher's failure to object under circumstances when any objection should reasonably have been voiced. Therefore, Nescher is estopped from claiming individual ownership of the trade names in question.

131 Bankr. at 1000.

Like Mr. Nescher in *American Sleekcraft,* before and even after they were outbid, and an order of sale was approved by the Court, Haislip, Seltzer and Virginia Flood said nothing, sought no recourse, nor took any steps to assert their secret alleged exclusive rights. Indeed, the striking inequity of their position here exceeds even that of Mr. Nescher's, in that they not only kept to themselves their claim to exclusive ownership in the face of the Trustee's sale of the names they now assert the Trustee did not own, *they bid over $200,000* for them!

Haislip and Seltzer had ample notice and a full and fair opportunity to challenge the Trustee's title and to raise their abandonment theories before the Bankruptcy Court, or to appeal or collaterally attack the order approving the sale in a timely manner in an appropriate forum. They did none of these things. They pressed before no one, including the Court, Trustee, or the buyers, the adverse claim of ownership they have waited over a decade to litigate here and now. The Defendants consummated the transaction in reliance on the absence of any challenge to the Trustee's title. Only now, in this case filed in July 2006, some eleven years after the sale was

approved, does Plaintiff attempt to invalidate the Trustee's rights in the particular names and

goodwill sold to the Defendants, and only now, some ten years after Defendants purchased and

began trading, advertising, and building good will around those names and marks, does Virginia

Flood seek monetary, injunctive, and declaratory relief against any of the Defendants.

Accordingly, all of its claims are barred.

> **2.**      ***The FLOOD Names and Goodwill Were Sold Free and Clear of All Liens, Claims and Interests Pursuant to a Court Order Entered Under Bankruptcy Code Section 363, And Virginia Flood Waived its Right to Attack the Order of Sale By Failing to Challenge the Order of Sale in Within the Time Prescribed in the Bankruptcy Code and Rules***

In addition to being barred in equity by estoppel and laches, Virginia Flood also waived

any claim that the sale was invalid by failing to mount within the time prescribed by applicable

law on the Bankruptcy Court's order approving the sale.  The Trustee's motion for approval of

the sale expressly cited Section 363 of the Bankruptcy Code, and expressly provided that the

trade names were to be sold "free and clear of all liens, claims and encumbrances." Rinn Dec.

SMF Ex. B Att. B-10. Counsel for Virginia Flood, Haislip, and Seltzer (Gary Weltmann) was on

the service list, and there is no question that he received the Notice and Motion, because both

were referenced expressly in the objection he filed for Haislip and Seltzer.  Rinn Dec. SMF Ex.

B ¶¶ 18, 19 & Att. B-11 (Notice) B-12 (Objection to Sale).

Where assets are sold free and clear of liens and competing interests by a Trustee in

bankruptcy pursuant to an order of a U.S. Bankruptcy Court under Section 363 of the U.S.

Bankruptcy Code, as they were here, a party claiming an adverse interest in the assets,

particularly one with actual notice of the proposed sale announcing the Trustee's intention to

sell the assets free of adverse claims, is obliged to assert that interest and deny the Trustee's title

before the court, lest the party be deemed to have consented to the sale. Collier states, in relation

to sales permitted under Bankruptcy Code Section 363(f)(2):

> The trustee may sell property of the estate free of liens or other interests when the holder of the lien or interest consents to such a sale. This provision is similar to section 9-315(a) of the Uniform Commercial Code, which permits a sale free of a security interest when the secured party consents to such a sale. The consent required is consent to a sale free of liens or interests, not merely consent to sale of the assets. The consent may be express or may be implied from circumstances surrounding the sale.

3 *Collier on Bankruptcy* P363.06[3] & n.27 (15th ed. 2006).

In any event, Bankruptcy Code Section 363(m) reflects a policy in favor of promoting

certainty and reliance by persons who purchase assets out of bankruptcy in good faith and for

value, and an order approving a bankruptcy Trustee's sale of assets free and clear under Section

363 of the Bankruptcy Code is subject to the provisions of Federal Rule of Civil Procedure

60(b), by operation of Bankruptcy Rule 9024.  Bankruptcy Rule 9024; *FutureSource LLC v.*

*Reuters Ltd.*, 312 F.3d 281 (7th Cir. 2002), *cert. denied,* 538 U.S. 962, 123 S. Ct. 1769, 155 L.

Ed. 2d 513 (2003).  Therefore, such an order and a resulting asset sale is only subject to attack

within the time limits set forth in Federal Rule of Civil Procedure 60(b). *Id.* As the Seventh

Circuit noted in the *FutureSource* case:

> It is true that the Bankruptcy Code limits the conditions under which an interest can be extinguished by a bankruptcy sale, but one of those conditions is the consent of the interest holder, and lack of objection (provided of course there is notice) counts as consent. It could not be otherwise; transaction costs would be prohibitive if everyone who *might* have an interest in the bankrupt's assets had to execute a formal consent before they could be sold.

> And in any event the order approving a bankruptcy sale is a judicial order and can be attacked collaterally only within the tight limits that Fed.R.Civ.P. 60(b) imposes on collateral attacks on civil judgments. FutureSource has made no effort to bring itself within those limits; and now that more than a year has passed since the order was issued, it is doubtful, to say the least, that FutureSource could succeed in such a collateral attack.

*Id.* at 285-286 (Italics in original; internal citations omitted).  *See also Colorusso* v. *Ragossa*, 382 F.3d 51 (1st Cir. 2004) (adverse possession claimant who bid for land sold at a Trustee's sale pursuant to Section 363 who had notice of the sale, submitted a competing bid, was represented by counsel, and failed to assert her ownership interest was barred by Bankruptcy Code Section 363(m) and equitably estopped from challenging sale).

> **3.     *The Virginia Flood Parties' Claim to Ownership of the JOHN C. FLOOD Names and Goodwill By Operation of Abandonment and Non-Use Upon Conversion of Bankruptcy to a Chapter 7 in 1993 is Barred by the Release and Assignment in Favor of the Trustee that Was Part of the Consideration for the Sale of Virginia Flood Stock to Haislip and Seltzer in 1995***

Finally, any claim Virginia Flood, Haislip and Seltzer may have had to challenge the Trustee or the debtors' estate's right to sell the JOHN C. FLOOD and FLOOD tradenames and goodwill was expressly released and assigned to the Trustee. Virginia Flood asserts in Paragraphs 24 and 25 of the First Amended Complaint, that the debtors' estates had abandoned by non-use the JOHN C. FLOOD and FLOOD names, upon the conversion of the case to a Chapter 7 in 1993, thereby destroying the goodwill symbolized by them.  If that were true, then such claim had accrued and was ripe in October 1995, when Haislip and Seltzer acquired the balance of the Virginia Flood stock, and in March 1995, when they agreed to do so.  So, too, was any claim that the New Flood entities or the bankrupt debtors were violating or infringing Virginia Flood's "exclusive rights," by using JOHN C. FLOOD after the conversion of the case to a Chapter 7, as Virginia Flood asserts here.

It is undisputed that an essential term of that transaction was that Haislip and Seltzer expressly agreed to ***release and assign*** to the Trustee any claims they or John C. Flood of Virginia, Inc., had against the Trustee and the estates of the bankrupt debtors.  First Amended Complaint ¶ 27.  Rinn Dec. SMF Ex. B ¶ 24 & Att. B-14 (March 16, 1995, Letter from Sweeney

to Weltmann re terms of sale of Virginia Flood stock, Bates No. 2437-38, 2442-43). If they had

any claim against the estate to exclusive ownership of the trade names and goodwill, they

assigned it expressly to the Trustee, and they released any claims that the debtors or entities in

receivership had or were infringing on those rights. They cannot be heard to assert such claims

against the successors of the Trustee and received entities now.

## IV.  <u>CONCLUSION AND PRAYER FOR RELIEF</u>

**WHEREFORE,** fore the foregoing reasons, Defendants respectfully request this Court to

enter an Order granting them summary judgment on each and every one of the Plaintiff, Flood of

Virginia's, claims against them.

Respectfully submitted,

**COUNTERCLAIM PLAINTIFF/DEFENDANT JOHN C. FLOOD, INC., & DEFENDANTS JOHN C. FLOOD OF D.C., INC., ROBERT SMILEY, JOANNE SMILEY,  MARK CROOKS AND MEL DAVIS, J.C. FLOOD, INC., J.C. FLOOD COMPANY, & JCF, INC.**

By their attorneys:    /s/  Benjamin J. Lambiotte
                                    Benjamin J. Lambiotte
                                    D.C. Bar No. 421288
                                    blambiotte@gsblaw.com
                                    Steve Varholik
                                    D.C. Bar No. 497315
                                    svarholik@gsblaw.com
                                    **GARVEY SCHUBERT BARER**
                                    1000 Potomac Street, Fifth Floor
                                    Washington, D.C. 20007
                                    (202) 965-7880

## <u>CERTIFICATE OF SERVICE</u>

I certify that I served a copy of this MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT upon counsel for the Virginia Flood Parties via ECF and electronic mail, on this 18th day of July, 2007.

Stephen J. Zralek, *appearing pro hac vice*  
BONE McALLESTER NORTON PLLC  
511 Union Street, Suite 1600  
Nashville, TN 37219  
Tel: (615) 238-6300  
Fax: (615) 238-6391  
szraleck@bonelaw.com  

Lisa Dunner, DC Bar #452004  
DUNNER LAW  
1010 Wisconsin Avenue, N.W.  
Washington, DC 20007  
Tel: (202) 298-2002  
Fax: (202) 403-3030  
ldunner@dunnerlaw.com  

/s/  Benjamin J. Lambiotte