IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOHN C. FLOOD OF VIRGINIA, INC., et al. ) <br> ) <br> Plaintiffs and Counter-Defendants, ) <br> ) <br> v.  ) <br> ) <br> JOHN C. FLOOD, INC., et al. ) <br> ) <br> Defendants and Counter-Plaintiffs. ) | Judge Richard J. Leon <br> Case No.: 1:06CV01311 <br> Deck Type: General Civil |

**STATEMENT OF MATERIAL FACTS NOT IN DISPUTE
IN SUPPORT OF DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT
(WITH DECLARATIONS AND DOCUMENTS REFERENCED THEREIN)**

Pursuant to Local Rules of Civil Procedure LCvR 7(h) and LCvR 56, Defendant/Counterclaim-Plaintiff John C. Flood, Inc., and Defendants John C. Flood of D.C., Inc., Robert Smiley, Joanne Smiley (collectively, "the Smileys"), Mark Crooks ("Crooks"), Mel Davis ("Davis") and J.C. Flood, Inc., J.C. Flood Company, and JCF, Inc., (all collectively, "Defendants") hereby respectfully submit the following Statement of Material Facts Not In Dispute in Support of their Motion for Partial Summary Judgment, along with the supporting Declarations referenced therein as Exhibits "A" through "C," and the documents referenced in each of the Declarations, appended as attachments thereto.

I. *Use of JOHN C. FLOOD From 1984-1996*

A. *First Use of JOHN C. FLOOD By Companies Owned and Controlled by Davis/Crooks*

1. In 1984, Davis and Crooks formed a Maryland corporation called "John C. Flood, Inc." ("1984 Flood") and at that time began engaging in the plumbing heating, and air

conditioning business in the Washington, D.C. metropolitan area, trading under various names containing the dominant term JOHN C. FLOOD and FLOOD. *See* Counterclaims of Defendant-Counterclaim Plaintiff John C. Flood, Inc. ("Counterclaim"), ¶ 11, at 14, and Answers of Counter-Defendant John C. Flood of Virginia, and Third-Party Counterclaim Defendants John C. Flood, Inc., John C. Flood Contractors, Inc., and Answer by Individual Third Party Defendants Clinton Haislip and James Seltzer ("Answers to Counterclaim"), Seventh Defense, ¶ 11 (allegation of Paragraph 11 of Counterclaim admitted); Plaintiff's First Amended Complaint, ¶ 6.

2. Between 1984 and June 1991, 1984 Flood, owned and controlled by Davis and Crooks, continuously traded under and used the name JOHN C. FLOOD, INC. and other variations containing the dominant element JOHN C. FLOOD and FLOOD as trade names and service marks, in the Washington D.C., metropolitan area, including in Maryland, Virginia and the District of Columbia, in connection with plumbing, heating, and air conditioning services. During this period, 1984 Flood displayed continuously the name and mark JOHN C. FLOOD and similar names and marks, and the phrase WE DO IT ALL, on service trucks, on contracts, invoices, in telephone directory listings and ads, and/or in mass market advertising. Declaration of Mel Davis, ¶¶ 4-5 (Exhibit A hereto, "Davis Dec., Ex. A"), and Att. A-1 thereto, (telephone directory listings and advertisements showing use of JOHN C. FLOOD and WE DO IT ALL from 1985 to 1991); *Counterclaim*, ¶ 12; *Answers to Counterclaim*, Seventh Defense, ¶ 12, at 5 (admitted in part; admitted as to 1984 Flood, and admitted that Davis/Crooks owned and controlled 1984 Flood until June 1991, when bankruptcy petitions filed).

B. *Formation of Virginia Flood in 1989; Common Ownership of Davis/Crooks*

3. In late 1989, some four years after they and 1984 Flood began using JOHN C. FLOOD and similar variants, and WE DO IT ALL, Davis and Crooks formed John C. Flood of

2

Virginia, Inc., now the Plaintiff in this case ("Virginia Flood"). Davis and Crooks formed the company for the purpose of expanding in Northern Virginia the operations of 1984 Flood's JOHN C. FLOOD plumbing, heating and air conditioning business they already owned and controlled. Davis Dec. Ex. A ¶ 6.

4. Davis and Crooks invited Third Party Counterclaim Defendants Clinton Haislip ("Haislip") and James Seltzer ("Seltzer") to join Virginia Flood as shareholders. *Id.* ¶ 7. From the inception of the company in 1989, to and including March 1995, Haislip and Seltzer owned a non-controlling equity interest in Virginia Flood. From some point in 1989 to March 29, 1995, Davis and Crooks owned a 50% interest collectively, and Haislip and Seltzer owned collectively the other 50% interest. *Counterclaim,* ¶¶ 13-17; *Answers to Counterclaim,* Seventh Defense, ¶¶ 13 & 17.

5. From about 1989 through and including June 1991, 1984 Flood and Virginia Flood were related companies, in which Davis and Crooks had substantial ownership interests, and controlled the use of the FLOOD marks. During this period, 1984 Flood used JOHN C. FLOOD and similar variants as trade names and service marks on trucks, business forms, and in advertising and promotional materials, subject to Davis' and Crooks' control and approval. Davis Dec. Ex. A. ¶ 8 and Att. A-2 thereto (telephone directory listings and ads from 1990-91). *Id.* ¶ 8.

    C.    *1991-1993 – The Chapter 11 - Davis and Crooks Continue to Operate, as Debtors-in-Possession, 1984 Flood, Trade and Use JOHN C. FLOOD, and to Hold Stock in 1984 Flood and Virginia Flood*

6. On June 21, 1991, 1984 Flood, Davis, Crooks and their wives each filed petitions for relief and reorganization under Chapter 11 of the U.S. Bankruptcy Code in the U.S. Bankruptcy Court for the District of Maryland. Declaration of Michael Rinn, Esquire, (Exhibit B hereto

"Rinn Dec. Ex. B") ¶ 4 & Att. B-1 thereto (Adversary Proceeding Complaint) ¶¶ 5-10. They intended to reorganize and to continue the JOHN C. FLOOD business. Davis Dec. Ex A ¶ 9.

7. From June 21, 1991 through and including March 1993, Davis and Crooks continued to control and operate 1984 Flood, which continued to conduct business and trade under and use JOHN C. FLOOD names and marks, and Davis and Crooks continued to hold their stock in 1984 Flood and Virginia Flood, as debtors-in-possession for the Chapter 11 bankruptcy estate. Davis Dec. Ex A at ¶ 10; Rinn Dec. Ex B ¶ 4.

8. During this period, 1984 Flood, under Davis' and Crooks' day to day direction and control as Chapter 11 debtors-in-possession, continued to use JOHN C. FLOOD and FLOOD to advertise and promote plumbing, heating and air conditioning business in the Washington D.C. metropolitan area. Davis Dec. Ex. A at ¶ 11. They continued to display JOHN C. FLOOD on service trucks, signage, business forms, brochures and advertising. Davis Dec. Ex. A at ¶ 11 & Att. A-3 (telephone directory ads and listings from June 1991 to September 1993; 1991 *Washington Post* ad proof Bates 00710;1992 back cover *Washington Post TV Week* ads Bates 0711-0716; and work orders, invoices, contracts, etc.) thereto.

9. On March 22, 1993, a Chapter 11 Trustee was appointed for 1984 Flood, Davis and Crooks, and Davis and Crooks ceased to be debtors-in-possession. On September 21, 1993, each 1984 Flood's, Davis', Crooks' and their wives' cases were converted to proceedings under Chapter 7 of the Bankruptcy Code, and all of the cases were consolidated and administered under the Chapter 7 case styled *John C. Flood, Inc, et alia*, 91-4-3011SD, Rinn Dec., Ex. B. ¶ 4.

4

D. *The Chapter 7 1993-1995: Debtors Crooks and Davis and Their Relatives Continue 1984 Flood Business Under Various Entities Trading and Advertising Under Variations of the JOHN C. FLOOD Name*

10. After the Chapter 11 receiver was appointed for 1984 Flood in March 1993, the individual debtors, Davis and Crooks, and the Smileys (who were members of Davis' family) continued to carry on the plumbing heating and air conditioning business of 1984 Flood in the Washington D.C. metropolitan area. They traded and advertised under various corporations and trade names, using variations of JOHN C. FLOOD and FLOOD, including J.C.F., Inc., J.C. Flood, John C. Flood of D.C, Inc., and John C. Flood of MD, Inc. These entities displayed FLOOD names and marks and on service trucks, signage, business forms, brochures and advertising, continuously, through and after June 1995, when a receiver was appointed by the Bankruptcy Court to take control of the entities. Davis Dec. Ex. A ¶ 12 & Att. A-3 through A-4 (3/93-6/95 work, orders, invoices); Rinn Dec. Ex. B ¶ 5-8 & Att. B-2 Exhibit A (J.C. Flood *Merchandiser* ad).

E. *March 1995 Trustee Rinn's Sale of Davis/Crooks' Interest in Virginia Flood to Haislip and Seltzer*

11. As of March 1995, Haislip and Seltzer had filed certain claims against the estates of 1984 Flood, Davis and Crooks. FAC ¶ 12.

12. Haislip and Seltzer had knowledge of the bankrupt debtors' use of the FLOOD name, and documentation of their advertising under those names. Michael G. Rinn, Esquire, by then the Chapter 7 Trustee of 1984 Flood, Davis and Crooks' bankruptcy estates ("Rinn," or "Trustee") planned to elicit their testimony and introduce such documentation in proceedings against the debtors arising from such use. Rinn Dec.Ex. B ¶ 9 & Att. B-3 & B-5 thereof (subpoenas).

5

13. In or about March 1995, Haislip and Seltzer, and the Trustee reached a settlement of Haislip's and Seltzer's claims. The Trustee agreed to sell to them Davis' and Crooks' 50% interest in Virginia Flood stock held by the estates, for $55,000. As part of the consideration for the sale, the Trustee agreed to release Haislip, Selzter and Virginia Flood from claims, causes of action or disputes the Trustee may hold against them, and Virginia Flood agreed to release the bankruptcy debtors and their estates, and assign to the Trustee any claims, causes of action or disputes Virginia Flood had with respect to the consolidated bankruptcy cases. First Amended Complaint ¶ 27; Rinn Dec. Ex. B ¶ 24 & Att. B-14 (March 16, 1995, Letter from Sweeny to Weltmann re terms of Sale of Virginia Flood stock, Bates No. DCDC 2437-38, 2442-43). Notice of the settlement was given to creditors on March 28, 1995, and the deadline for objections to the settlement described in the Notice ran without any being filed on April 20, 1995. Rinn Dec. Ex. B ¶24 B-15 (April 20, 1995, Clerk's Certificate of No Objections and March 25, 1995, Notice of Settlement). However, the formal Stock Purchase Agreement transferring the stock was not fully executed until October 1995, as Rinn signed it in September, and Haislip and Seltzer in mid-October, 1995. Rinn Dec. Ex. B ¶ 24 & Att. B-14 (signed and notarized Stock Purchase Agreement, Bates Nos. Flood DCDC 2132-36).

  F. *May 1995 Trustee Rinn's Adversary Proceeding Seeking Control of Successors to 1984 Flood's Business Operated by Debtors Davis and Crooks, to Preserve and Protect Value of Estate's JOHN C. FLOOD and FLOOD Tradenames and Goodwill; Appointment of Receiver and Charge to Continue Operating Business and to Protect Names and Goodwill for Sale*

14. On May 17, 1995, Rinn, Trustee of the consolidated bankruptcy estates of 1984 Flood, Davis and Crooks, commenced an adversary proceeding in the bankruptcy case (the "Adversary Proceeding") against JCF, Inc. t/a J.C. Flood, John C. Flood of MD, Inc., John C. Flood of DC, Inc., MDMC, Inc. a/k/a Mel Davis and Mark Crooks, Inc. and the persons

operating and controlling those entities, namely Davis, Crooks and the Smileys. Rinn Dec. Ex. B ¶ 6 & Att. B-1 thereto (Verified Adversary Proceeding Complaint).

15. In the Adversary Proceeding, the Trustee exercised his powers to avoid fraudulent transfers and compel turnover of estate assets to the Trustee pursuant to the Bankruptcy Code. Among his grounds was that the foregoing "New Flood" entities (as he called them) were the successors of 1984 Flood. He sought to compel the defendants to deliver to the estate, account for, refrain from further use, and to have the Court appoint a receiver to take control of, assets rightfully belonging to the estate, to preserve them for the creditors of the estate. He also sought appointment of a receiver immediately, *ex parte*, to take control of the assets and administer them for the benefit of the bankruptcy estate. The assets specifically included the FLOOD trade names and goodwill, which the Trustee alleged were being infringed and misappropriated by the individual debtors and their family members. Rinn Dec. Ex. B ¶ 6 & Att. B-1 thereto (Verified Adversary Proceeding Complaint), *passim* & ¶ 7 & Att. B-2 thereto (Verified Motion and Memorandum in Support of Verified Motion for Appointment of a Receiver) ¶¶ 12-13.

16. On or about June 5, 1995, the Bankruptcy Court entered Stipulated and Consent Order for a preliminary injunction and temporary appointment of a receiver. Roman Fedirka, still the temporary receiver, was appointed to serve as temporary receiver, to operate, preserve and protect the New Flood assets, including the JOHN C. FLOOD and FLOOD names and related goodwill during the bankruptcy proceeding. Rinn Dec. Ex. B ¶ 10 & Att. B-4 (June 1995 Temporary Receivership Order). Among the powers and duties the Court expressly conferred on the receiver were to: "take immediate possession and charge of the right title and interest of all tangible and intangible property of New Flood, wherever located . . . . and assets of every kind a nature (collectively the "Assets") and to manage, operate, secure, and control same so as to

protect and preserve New Flood as ongoing business entities until further Order of the Court" *Id.* On August 17, 1995, the Court entered a Second Stipulated and Consent Order continuing the receivership under Mr. Fedirka, and charging him with the identical powers and duties. Rinn Dec. Ex. B ¶ 12 & Att. B-6 (August 1995 Second Temporary Receivership Order).

### G. *Motion for Approval of Settlement of Adversary Proceeding; Section 363 Sale; Notice to Va. Flood; Active Participation of Va. Flood and Haislip/Seltzer; Competing Bid; Failure to Assert Claim of Exclusive Ownership of JOHN C. FLOOD*

17. By September 7, 1995, after lengthy negotiations, Rinn and the Adversary Proceeding defendants reached a settlement agreement in principal whereby the estate would, after due notice to all creditors, sell the stock in certain of the New Flood corporations and the JOHN C. FLOOD, INC. and FLOOD, INC. trade names and goodwill, to Davis, Crooks, and Joanne and Robert Smiley on certain terms, including a release of the claims against them. Pending resolution of the details, grant or denial of the motion approving the sale after an opportunity for creditors to object or to submit higher and better bids, and a sale of the assets, the parties consented that Mr. Fedirka would be appointed permanent receiver, with powers similar to those granted in the previous Temporary Receivership Orders. Rinn Dec. Ex. B ¶13.

18. A hearing on the consent motion for permanent appointment of a receiver before the Bankruptcy Court was held on September 7, 1995, at which a court reporter was present. Rinn Dec. Ex. B ¶14 & Att. B-7. The transcript summarizes the details of the contemplated settlement as proposed at the time. A lawyer, Mr. Gary Weltmann, appeared for John C. Flood of Virginia, Inc., and attended the hearing. *Id.* & Att. B-7, cover (showing Weltmann's appearance and client).

19. On September 7, 1995, the Bankruptcy Court entered a Consent Order Appointing Permanent Receiver and Granting Permanent Injunctive Relief. Rinn Dec. Ex B ¶15 & Att. B-8

thereto. ("Permanent Receivership Order"). Among the powers and duties the Court expressly conferred on the receiver were to: "take immediate possession and charge of the right title and interest of all tangible and intangible property of New Flood, wherever located . . . . and assets of every kind a nature (collectively the "Assets") and to manage, operate, secure, and control same so as to protect and preserve New Flood as ongoing business entities until consummation of sale to a purchaser, subject to further Order of this Court." Att. 8, Permanent Receivership Order, ¶ 1. He was also charged expressly "[t]o prohibit any confusingly similar or otherwise infringing uses of the common law tradename JOHN C. FLOOD, INC., by any individual or entity. . . ." *Id.* ¶ 3.

20. During the entire period of the temporary and permanent receiverships, from June 1995 through and after the sale of the names and goodwill in 1996, the businesses in receivership never ceased trading and advertising under the JOHN C. FLOOD and FLOOD names and marks. The companies continued to perform plumbing, heating and air conditioning services throughout the Metropolitan Washington, D.C. area, and to use variations of JOHN C. FLOOD and FLOOD, on service trucks, on business forms, and in advertisements, and the like. Smiley Dec. ¶¶ 4-5 & Att. C-1 thereto (representative samples of business forms and ads used during the receivership). The Smileys continued to work in the business, under the supervision of the receiver. *Id.* ¶ 4.

21. The Adversary Proceeding settlement proposal contemplated that the ultimate asset sale would be pursuant to 15 U.S.C. § 363, which permits the Trustee to sell estate assets free and clear of all adverse liens, claims, and encumbrances, after due notice to all creditors and parties in interest and an opportunity to object and submit higher and better bids. Rinn Dec. Ex. B ¶ 15 & Att. B-7, Permanent Receiver Motion Hearing Transcript, at 5-17. On September 15, 1995, the Trustee gave formal notice of the appointment of a permanent receiver, to all creditors

and parties in interest. *Id.* Rinn Dec. Ex. B ¶ 17 & Att. B-9 (Notice of Permanent Receivership). The Notice provided that: "all creditors will receive additional notice prior to any sale and the notice of the sale will provide for a period of time for creditors and parties in interest to respond and also provide for a hearing to be held." *Id.* & Att. B-9.

22. Early in October, 1995, Rinn reached a settlement with the Adversary Proceeding parties, whereby the trade names and goodwill in and to JOHN C. FLOOD, INC. and FLOOD, INC., and the stock of John C. Flood of MD, Inc. and John C. Flood of DC, Inc. were to be sold, along with the operating assets and liabilities of those companies, pursuant to 15 U.S.C. § 363, free and clear of all adverse liens, claims and interests, to Davis, Crooks, and the Smileys, for $300,000 on terms. Rinn Dec. Ex. B ¶ 18. To effectuate the settlement, on October 5, 1995, Rinn filed in the Bankruptcy Court a Motion for Entry of Order Authorizing Private Sale of Stock and Other Assets Free and Clear of Liens and For Approval of Settlement. *Id.* & Att. B-10 (with Exhibits A and B) ("Motion for Approval of Sale Free and Clear of Liens").

23. On October 6, 1995, Rinn caused to be served all creditors and parties in interest with a Notice of the Motion for Approval of Sale Free and Clear of Liens, to which was attached the Motion, and exhibits thereto identifying the operating assets and liabilities of the New Flood entities whose stock was be sold. Gary Weltmann, counsel to Haislip, Seltzer and John C. Flood of Virginia, Inc., was served with a copy. Rinn Dec. Ex. B ¶ 19 & Att. B-11 (Motion for Approval of Sale Free and Clear of Liens, including Certificate of Service on Weltmann, *et alia*).

24. On October 20, 1995, Haislip and Seltzer, through their counsel, Mr. Weltmann, filed an objection to the Motion to Approve Sale Free and Clear of Liens. They objected on the grounds that the Trustee should not settle the case or sell the assets to the proposed purchasers, Davis, Crooks and Joanne and Robert Smiley, because they had engaged in fraud, and diverted

and concealed assets of the estate. Rinn Dec. Ex. B ¶ 20 & Att. B-12 (Haislip/Seltzer Objection to Sale).

25. As part of their Objection to Sale, Haislip and Seltzer made an offer to purchase only the tradenames JOHN C. FLOOD, INC. and FLOOD, INC. for $225,000, on terms, but not the stock of the New Flood entities. They noted that, according to the proposed terms of sale, the purchasers' operation of the business had to be monitored by the Trustee until the purchase price was paid due to their past history, causing an expense that would cause the estate to derive a lower net recovery than under Haslip/Seltzer's counteroffer. Rinn Dec. Ex. B ¶¶ 20-21 & Att. B-12, Haislip/Seltzer Objection to Sale, ¶ 9.

26. Haislip and Seltzer's objection did not claim or assert that the estate lacked the right to sell, or lacked title and interest in and to the JOHN C. FLOOD, INC. and FLOOD, INC., trade names and associated goodwill. Nor did their objection claim or assert that the sale was invalid because, previously, in or about March 1995, the Trustee had settled their claim against the estates of Davis and Crooks by selling to Haislip and Seltzer the 50% Virginia Flood interests owned by debtors Davis and Crooks, as Virginia Flood claims here. Virginia Flood's Answer to Counterclaim, ¶ 22; Rinn Dec. Ex. B ¶¶ 20, 23 & Att. B-12, Haislip/Seltzer Objection to Sale.

27. In response to the issues that were raised in the objection, Davis and Crooks withdrew from the proposed bid, and the Smileys increased their offer from $300,000 to $425,000, on terms. Rinn Dec. Ex. B ¶ 22; Smiley Dec. Ex. C ¶¶ 6-7.

28. A hearing was held before Judge Keir on October 26, 1995. Rinn Dec. Ex. B. ¶ 22. Mr. Weltmann appeared at the hearing. *Id.* On October 28, 1995, after considering Haislip and Seltzer's objections and counteroffer, the Court entered an Order approving the sale of the Flood stock and trade name including the trade names JOHN C. FLOOD, INC and FLOOD, INC. and

goodwill, to the Smileys and the corporations they were to operate, for the sum of $425,000, on the terms set forth in the Order and the instruments recited therein. *Id.* & Att. B-13 thereto. (October 28, 1995, Order authorizing Sale Free and Clear).

### H. *October 1995 Trustee Demands that Virginia Flood Trade Desist Use of JOHN C. FLOOD Without Distinguishing Geographic Designator*

29. On October 5, 1995, the day before he filed the Motion for Approval of Sale Free and Clear of Liens, the Trustee sent a letter to Mr. Weltmann demanding that his clients cease and desist using JOHN C. FLOOD in certain telephone directory advertising without the distinguishing designator "of Virginia." Rinn wrote: "[w]ithout belaboring the point, I consider your client's use of the name without the clarification as John C. Flood of Virginia in the same category as the issues which led to litigation of the received entities." Rinn Dec. Ex. B. ¶, Att. B-16.

30. At no time during or after the sale approval process did Mr. Weltmann, Haislip, Seltzer, or anyone else acting for or on behalf of John C. Flood of Virginia, Inc., ever claim or assert before or in connection with the bankruptcy case that the estate lacked the right to sell, or lacked title and interest in and to the JOHN C. FLOOD, INC. and FLOOD, INC., trade names and associated goodwill, despite notice and opportunity to do so. Nor did they ever claim or assert there that the sale was invalid because, previously, in or about March 1995, the Trustee had settled their claim against the estates of Davis and Crooks by selling to Haislip and Seltzer the 50% ownership interest Davis and Crooks had in John C. Flood of Virginia, Inc. Virginia Flood's Answer to Counterclaim, ¶ 22; Rinn Dec. Ex. B ¶¶ 20, 23 & Att. B-12 (Haislip/Seltzer Objection to Sale); Smiley Dec, SMF Ex. C ¶ 7-8. Insofar as the Receiver is concerned, they acted in a manner contrary to such contentions in offering $225,000 for the very same assets. Rinn Dec. SMF Ex. B ¶ 23.

I.  *Sale to 1996 Flood; Continuation of Operation of JOHN C. FLOOD Businesses for Ten Years Prior to Virginia Flood's Filing of This Case*

31. In or about February 1996, the Smileys, John C. Flood, Inc., a newly-formed Maryland corporation (Defendant and Counterclaim Plaintiff here), and the "New Flood" entities in receivership (collectively, "1996 Flood") entered into a Settlement and Forbearance Agreement. Certain of them executed and delivered a number of associated debt and security instruments with the Trustee (including a Bill of Sale) effectuating, and memorializing the terms of, the court-approved purchase of the JOHN C. FLOOD, INC. and FLOOD, INC. tradenames and goodwill, and the stock of the New Flood entities John C. Flood of DC, Inc. and John C. Flood of MD, Inc. Smiley Dec. Ex. C ¶ 6 & Att. C-2. The instruments obliged each of the Smileys and those entities to pay the estate the purchase price of $425,000, in monthly installments of $6,666.66 each, and a balloon payment at maturity in December 2000. *Id.*

32. The Smileys and 1996 Flood entered into the Settlement and Forbearance Agreement, and executed and delivered the associated debt and security instruments, in reliance on the Court's approval of the purchase – as modified in response to the issues which Haislip and Seltzer had raised in their objection to the original proposal. Smiley Dec. Ex. C ¶ 8. They also relied on the Trustee's right to sell the FLOOD trade names and goodwill free and clear of any and all adverse claims, encumbrances and interests, including any claims and interests which could have been asserted and litigated before the Bankruptcy Court by parties in interest who had received notice of the proposed sale. *Id.* Their expectation in agreeing to buy the assets was that there were no such claims or adverse interests that had not been resolved by the Court. *Id.*

33. They agreed to buy the assets with the understanding that no one, including Haislip and Seltzer or Virginia Flood, had objected on the grounds that the Trustee lacked the right to sell or did not own the trade names and goodwill and that they would acquire the trade names

and goodwill free and clear of adverse claims and interests other than those set forth in the purchase documents. *Id.* ¶¶ 7-8.

34. After execution and delivery of the Settlement and Forbearance Agreement and associated debt and security instruments, Defendants continued engaging in the plumbing, heating and air conditioning business in the Washington D.C. metropolitan area under the JOHN C. FLOOD and FLOOD tradenames substantially as it had been conducted under the auspices of the receiver. *Id.* ¶ 9. As required in the settlement, until the purchase price was paid in full, Defendants' operations were monitored by and conducted under the supervision of the receiver, Roman Fedirka. *Id.*

35. From 1996 through early 2001, 1996 Flood made the monthly payments as required, and, in January 2001, had paid the $425,000 purchase price in full. *Id.* ¶ 10.

36. From 1996 to and including the present date, 1996 Flood has at all times actively traded under and used JOHN C. FLOOD and variations of FLOOD as trade names and servicemarks to promote their business, through a variety of means, including on service trucks, signage, business forms, in telephone directory ads and listings, in periodical and cable television ads, and on the Internet, Smiley Dec. Ex. C. ¶ 11, and Virginia Flood is and has been aware of these facts. Virginia Flood's Answer to Counterclaim, ¶ 29; First Amended Complaint ¶¶ 47, 57.

37. 1996 Flood spends substantial sums for advertising using the JOHN C. FLOOD and FLOOD marks, and advertised continuously since 1996. Smiley Dec. ¶ 12.

38. Virginia Flood was aware in 1996 that the Smileys and 1996 Flood purchased the JOHN C. FLOOD and FLOOD tradenames and goodwill in a sale approved by the Bankruptcy

Court, and planned to use them, because Virginia Flood participated actively in the proceedings. *See* Paragraphs 18-27 hereof, *supra*, and declarations and materials cited in support thereof.

39. On June 11, 1996, John P. Morrissey, counsel for 1996 Flood wrote to Haislip and Seltzer complaining that Virginia Flood was infringing the tradenames 1996 Flood had purchased from the Trustee, by using "John C. Flood" in telephone directory advertising, on service trucks, on signage, and in other advertising. Smiley Dec. Ex C. ¶13 & Att. C-3 (June 11, 1996 Morrissey to Haislip/Seltzer). He demanded, as the Trustee had in October 1995 before him (*see* ¶ 27, *supra*), that Virginia Flood stop using "John C. Flood" without the distinguishing designator "of Virginia," to avoid confusion. On August 21, 1996, Virginia Flood, through Mr. Weltmann, wrote a letter to Mr. Morrissey essentially acceding to Mr. Morrissey's demands. In particular, Weltmann wrote that he had personally seen the newest telephone directory ads, and "they contain the words 'of Virginia, Inc.' after 'John C. Flood.'" He also agreed that his client would have the words "of Virginia, Inc., "added to building and service truck signage. *Id.* & Att. C-3 (August 21, 1996, Weltmann to Morrissey). Weltmann did not in this letter, or in any other communication with 1996 Flood about the issue at this time, take the position that 1996 Flood's use infringed Virginia Flood's rights. *Id.* ¶ 13.

40. Since 1996, Virginia Flood has been aware that 1996 Flood has used and continues to use those names and marks in connection with directly competitive services in the same geographic in the same lines of trade and business as those offered by Virginia Flood. Plaintiff's First Amended Complaint, ¶¶ 43, 59.

41. Virginia Flood did not commence or file any suit or action at law or in equity against any of Defendants seeking injunctive, monetary or declaratory relief arising from their allegedly infringing use of JOHN C. FLOOD and/or FLOOD until it commenced this action, on

July 25, 2006. Complaint for Trademark Infringement and Unfair Competition, Case No. 1:06CV01311, dated July 25, 2006.

                                          Respectfully submitted,

**COUNTERCLAIM PLAINTIFF/DEFENDANT JOHN C. FLOOD, INC., & DEFENDANTS JOHN C. FLOOD OF D.C., INC., ROBERT SMILEY, JOANNE SMILEY, MARK CROOKS AND MEL DAVIS, J.C. FLOOD, INC., J.C. FLOOD COMPANY, & JCF, INC.**

By their attorneys:    /s/ Benjamin J. Lambiotte
                               Benjamin J. Lambiotte
                               D.C. Bar No. 421288
                               blambiotte@gsblaw.com
                               Steve Varholik
                               D.C. Bar No. 497315
                               svarholik@gsblaw.com
                               **GARVEY SCHUBERT BARER**
                               1000 Potomac Street, Fifth Floor
                               Washington, D.C. 20007
                               (202) 965-7880

## CERTIFICATE OF SERVICE

      I certify that I served a copy of this STATEMENT OF MATERIAL FACTS NOT IN DISPUTE IN SUPPORT OF DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT upon counsel for the Virginia Flood Parties via ECF and electronic mail, on this 18th day of July, 2007.

Stephen J. Zralek, *appearing pro hac vice*
BONE McALLESTER NORTON PLLC
511 Union Street, Suite 1600
Nashville, TN 37219
Tel: (615) 238-6300
Fax: (615) 238-6391
szraleck@bonelaw.com

Lisa Dunner, DC Bar #452004
DUNNER LAW
1010 Wisconsin Avenue, N.W.
Washington, DC 20007
Tel: (202) 298-2002
Fax: (202) 403-3030
ldunner@dunnerlaw.com
Counsel for Clinton Haislip &
James L. Seltzer, Jr.

/s/ Benjamin J. Lambiotte