IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JOHN C. FLOOD OF VIRGINIA, INC., et al.    )
                                            )
    Plaintiffs and Counter-Defendants,      )
                                            )
v.                                          )        Judge Richard J. Leon
                                            )        Case No.: 1:06CV01311
JOHN C. FLOOD, INC., et al.                 )        Deck Type:  General Civil
                                            )
    Defendants and Counter-Plaintiffs.      )

## DECLARATION OF ROBERT SMILEY

### EXHIBIT "C"

## TO STATEMENT OF MATERIAL FACTS NOT IN DISPUTE IN SUPPORT OF DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **JOHN C. FLOOD OF VIRGINIA, INC., et al.** | ) | |
| | ) | |
| **Plaintiffs and Counter-Defendants,** | ) | |
| | ) | |
| **v.** | ) | **Judge Richard J. Leon** |
| | ) | **Case No.: 1:06CV01311** |
| **JOHN C. FLOOD, INC., et al.** | ) | **Deck Type:  General Civil** |
| | ) | |
| **Defendants and Counter-Plaintiffs.** | ) | |

### DECLARATION OF ROBERT SMILEY

1.     My name is Robert Smiley.  I am over the age of twenty-one, and I make this Declaration

on the basis of my personal knowledge and participation in the proceedings referenced herein, in

support of the Defendants'/Counterclaim Plaintiffs' Motion for Partial Summary Judgment in

*John C. Flood of Virginia, Inc.* v. *John C. Flood, Inc., et alia*, Case No. 1:06CV01311 (D.D.C.)

2.     I am a shareholder, the Vice President and a Director of Defendants/Counter Plaintiffs

John C. Flood, Inc. and John C. Flood of D.C., Inc. (hereafter "1996 Flood Corporations"). My

business addresses is 8543-A Edgeworth Drive, Capital Heights, Maryland.

3.     I have personal knowledge of the business operations of Defendants/Counter Plaintiffs

1996 Flood Corporations and the predecessors to 1996 Flood Corporations that used variations

of the trade names JOHN C. FLOOD and FLOOD, including, J.C.F., Inc., trading as J.C. Flood,

John C. Flood of DC, Inc. and John C. Flood of MD, Inc. (hereafter referred to as "New Flood")

under the supervision of a receiver appointed by the United States Bankruptcy Court from June

1995, until the sale of those assets in 1996.

4.     On May 17, 1995, Michael Rinn, Trustee of the consolidated bankruptcy estates of 1984

Flood, commenced an adversary proceeding in the bankruptcy case styled *John C. Flood, Inc., et*

*alia*, 91-4-3011 SD (the "Adversary Proceeding") against New Flood and MCMD, Inc. (a/k/a

Mark Crooks and Mel Davis, Inc.) and the persons operating them, which included myself and

my wife, Joanne. In connection with this proceeding in June 1995, the Bankruptcy Court

appointed a temporary receiver, Roman Fedirka, to recover, operate, preserve and protect the

assets of New Flood, including the JOHN C. FLOOD and FLOOD names and goodwill for the

benefit of the bankruptcy estate. During the period of receivership, Joanne and I continued to

work for the New Flood entities under the supervision of Mr. Fedirka.

5.     During the entire period of the receivership, from June 1995 through and after the sale of

the names and goodwill in or about February 1996, the business in receivership, that included

various New Flood entities, never ceased trading and advertising under the JOHN C. FLOOD

and FLOOD names and marks. One or more of the New Flood entities in receivership continued

to perform plumbing, heating and air conditioning services throughout the Metropolitan

Washington, D.C. area, and to use variations of JOHN C. FLOOD and FLOOD, on service

trucks, on business forms, and in advertisements, and the like. Attached hereto as Attachment C-

1 are true, correct and authentic copies of representative samples of invoices, work orders,

contracts and a telephone directory advertisement representative of the types of materials bearing

the JOHN C. FLOOD and FLOOD trade names and marks in trade and advertising we used

during this time period, June 1995 through and including February 1996.

6.     In or about February 1996, my wife Joanne and I, together with the New Flood entities,

entered into a Settlement and Forbearance Agreement and a number of associated debt and

security instruments, including a Bill of Sale, with Michael Rinn, the bankruptcy Trustee,

effectuating and memorializing the terms of the court-approved sale and purchase of the JOHN

C. FLOOD and FLOOD, INC. trade names and goodwill, and the stock of the New Flood entities

John C. Flood of DC, Inc. and John C. Flood of MD, Inc. These instruments obligated each of us and certain New Flood entities, jointly and severally, to pay the bankruptcy estate the purchase price of $425,000, in monthly installments of $6,666.66 each, and a balloon payment at the maturity in December 2000. Attached hereto as Attachment C-2 are true, correct and authentic copies of the Settlement and Forbearance Agreement and associated debt and security instruments and the Bill of Sale.

7.     During the negotiations that resulted in the Settlement and Forbearance Agreement in February 1996, I was aware that Clinton Haislip ("Haislip") and James Seltzer ("Seltzer") objected to the sale of the JOHN C. FLOOD and FLOOD, INC. trade names and goodwill and submitted a competing bid. Seltzer's and Haislip's bid caused Joanne and myself to raise our offer to secure the rights to the trade names and goodwill. To the best of my knowledge, at no time during these settlement negotiations with the Trustee, did Haislip, Seltzer or Virginia Flood assert that: (1) the bankruptcy Trustee lacked the right to sell or did not own the trade names or goodwill; or that, (2) the estate had abandoned the trade names by non-use; or that, (3) Virginia Flood had acquired exclusive rights thereto by virtue of the Trustee's sale of Mel Davis' and Mark Crooks' Virginia Flood Stock to Haislip and Seltzer.

8.     The 1996 Flood Corporations, Joanne and myself entered into the Settlement and Forbearance Agreement in February 1996, and executed and delivered the associated debt and security instruments, in reliance on the Court's approval of the purchase – as we modified it in response to issues raised by Haislip and Seltzer and their objection, that never included, insofar as I recall, any of the claims described in the preceding paragraph, which are now made in this case. Furthermore, we relied on the bankruptcy Trustee's right and powers under the Bankruptcy Code to sell the JOHN C. FLOOD and FLOOD trade names and goodwill. Our understanding

4

was that the Trustee had the right to sell the trade names and goodwill free and clear of claims by persons who had notice of the sale and the opportunity to object; that no objections, including the one filed by Hailsip and Seltzer, claimed that the Trustee did not own or lacked the right to sell the names and goodwill; and that we would acquire those assets free and clear of claims and interests, other than the ones set forth specifically in the purchase and sale documents.

9.      After the execution and delivery of the Settlement and Forbearance Agreement and associated debt and security instruments in February 1996, we continued engaging in the plumbing, heating and air conditioning business in the Washington D.C. metropolitan area utilizing the JOHN C. FLOOD and FLOOD trade names under the continued guidance and supervision of the bankruptcy receiver, Roman Fedirka.  The 1996 Flood Corporations' business was conducted in substantially the same manner Mr. Fedirka had conducted the business during the period of receivership.  As required by the settlement, until the purchase price was paid in full, 1996 Flood Corporations' business operations continued to be monitored by and conducted under the supervision of Mr. Fedirka.

10.      From 1996 through the early part of 2001, 1996 Flood Corporations made the required monthly payments until we paid the full $425,000 purchase price in January 2001.

11.      From 1996 to and including the present date, 1996 Flood Corporations have at all times actively traded and used JOHN C. FLOOD and variations of FLOOD as trade names and service marks to promote the business, in a number of ways, including on service trucks, signage, business forms, telephone directory ads and listings, periodicals, cable television ads, and on the Internet.

12.      1996 Flood spends substantial sums for advertising using the JOHN C. FLOOD and FLOOD marks, and has advertised continuously since 1996.

13.     On June 11, 1996, at mine and Joanne's direction, John Morrissey, counsel for 1996

Flood Corporations, wrote to Haislip and Seltzer to complain that Virginia Flood was infringing

on the trade names that we had purchased from the Trustee, by using "John C. Flood" in

telephone directory advertising, on service trucks, on signage and in other advertising without

the "of Virginia" designator.    Mr. Morrissey demanded that Virginia Flood stop using "John C.

Flood" without the distinguishing phrase, "of Virginia," to avoid confusion.    On August 21,

1996, Virginia Flood's counsel, Gary F. Weltmann, responded to Mr. Morrissey's letter agreeing

to add the words "of Virginia, Inc.," to Virginia Flood's signs and lettering.    Neither Haislip,

Seltzer, Virginia Flood nor their lawyer, communicated to us at or around the time of this letter

that they believed 1996 Flood Corporations were infringing on Virginia Flood's rights. Attached

hereto as Attachment C-3 are true, correct and authentic copies of two letters dated June 11, 1996

and August 13, 1996 from John P. Morrissey to Virginia Flood relating to Virginia Flood's

infringement of the trade name JOHN C. FLOOD, INC. and a letter dated August 21, 1996 from

Gary F. Weltmann in response thereto.

///

6

I HEREBY DECLARE AND AFFIRM ON PERSONAL KNOWLEDGE UNDER PENALTIES

OF PERJURY THAT THE FOREOING STATEMENTS ARE TRUE AND CORRECT.

Dated July 18, 2007

ROBERT SMILEY
Vice President
John C. Flood, Inc.
John C. Flood of D.C., Inc.

ROBERT SMILEY
Individually

## ATTACHMENT "C-1"

PHONE    202-291-3340    301-277-7300    703-799-7200

# J. C. FLOOD CO.

**Plumbing • Heating**

**711 Kennedy St. NW., Washington DC 20011**

| CUSTOMER'S ORDER NO | PHONE | | MECHANIC | HELPER | STARTING DATE |
|---|---|---|---|---|---|
| | | | | | 6 122195 |

REDACTED

·Y WORK
·ONTRACT
·XTRA

DESCRIPTION OF WORK

Servise A/C system

REDACTED

| SUB CONT. | |
|---|---|
| MISC | |
| TOTAL MATERIALS | |
| TOTAL LABOR | |
| TAX | |

DATE COMP

Signature

REDACTED

001278

# J. C. FLOOD CO.

*PLUMBING * HEATING * AIR CONDITIONING * HOME IMPROVEMENTS*
711 KENNEDY STREET, NW, WASHINGTON, DC 20011

**P.G. CO. 301-277-7300 * MONT. CO. 301-881-1121 * D.C. 202-546-5500 * VA 703-525-6215**

June 27, 1995

REDACTED

## I N V O I C E

Supplied necessary labor and equipment to do the following:

1. Snaked toilet drain to clear stoppage.

**BAI**   REDACTED

THANK YOU FOR YOUR BUSINESS.

Please remit payment to: J.C. Flood Co.
                          711 Kennedy St., N.W.
                          Washington, D.C. 20011

001273

**PHONE:**   202-291-3340   301-277-7300   703-799-7200

# JOHN C. FLOOD OF D.C., INC.
**Plumbing • Heating • Air Conditioning • Home Improvements**
**711 Kennedy St. NW., Washington DC 20011**

| CUSTOMER'S ORDER NO | PHONE | | MECHANIC Buck | HELPER | STARTING DATE 7/27/95 |
|---|---|---|---|---|---|

BILL

AT  REDACTED

☐ DAY WORK
☐ CONTRACT
☐ EXTRA

(1st Floor) Supplied and installed
New Tub and shower
faucet on Leg tub. Supplied
and installed shower Curtain Rod
Enclosure.

(2nd Floor) S+I New Leg tub faucet
and shower (Hand Held)

No check on Job
Est. to Collect or
Bill.

| | |
|---|---|
| SUB CONT. | |
| MISC | |
| TOTAL MATERIALS | |
| TOTAL LABOR | |
| TAX | |
| TOTAL AMOUNT | TBB |

DATE COMPLETED 7/27/95   WORK ORDERED BY

Sig  REDACTED

I hearby acknowledge the satisfactory completion
of the above work

001265

# JOHN C. FLOOD OF DC INC.

*PLUMBING • HEATING • AIR CONDITIONING • HOME IMPROVEMENTS*

711 KENNEDY STREET, N.W., WASHINGTON, DC 20011

P.G. CO. 301-277-7300 • MONT. CO. 301-881-1121 • DC 202-546-5500 • FAX 202-291-3442

July 28, 1995

REDACTED

## I N V O I C E

Supplied necessary labor and material to do the following:

1. Supplied & installed a new hand held shower with a new legtub faucet & a holder mounted to the wall in the top floor.

2. Supplied & installed a shower ring for the legtub on the 1st floor.

3. Supplied & installed a new faucet & shower riser for 1st floor legtub.

BALAN    REDACTED

THANK YOU FOR YOUR BUSINESS.

Please remit payment to: John C. Flood of DC, Inc.
711 Kennedy St., N.W.
Washington, D.C. 20011

Serving Washington, DC
and Surrounding Counties

Licensed, Bonded,
and Insured

DC HIC 1075, DC 1004
VA ST. 767
WSSC 01313
MD ST. 19154
MD HIC 47683

**JOHN C. FLOOD OF D.C., INC.**
Plumbing • Heating • Air Conditioning • Home Improvements
711 Kennedy Street, NW, Washington, DC 20011
Prince Georges County 301-277-7300 • Montgomery County 301

VA. 703-786-7200

10473

## REDALTE D    REDACTED

anan.

Tenant Phone _____    Estimator _Unns_
Davidson

**CONTRACT**  Approximate Starting Date  7-25-95    Approximate Completion Date _____

The Company offers to do or arrange to have done only the items listed below.
The problem is two legtubs need work. JCF will:

① On the legtub on the top floor JCF will supply + install a hand held shower with new legtub faucet and a holder mounted to the wall for the hand held piece.

② Supply + install a shower ring for the legtub on the 1st floor and a new faucet and shower riser (same legtub) JCF not responsible for supplying the shower curtains or beyond points of tie in on the above plumbing.

## REDACTED

You the buyer, may cancel this transaction anytime prior to midnight of the third business day after the date of this transaction. See attached notice of cancellation form for explanation of this right. If the buyer cancels this contract after the third business day from the date of this transaction or at any time after signing a waiver of buyer's rights of recision of said contract, buyer agrees to pay and the company shall be entitled to receive as liquidated damages a sum equivalent to (25%) twenty-five percent of the entire contract price.

Cash price of Total Con(    REDACTED

NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS AND SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

ANY REFERENCE TO "THE COMPANY" IN THIS CONTRACT SHALL BE CONSTRUED TO MEAN THE COMPANY

TERMS: NET CASH UNLESS OTHERWISE STATED IN AGREEMENT.
THE UNDERSIGNED REPRESENTS THAT HE IS) (SHE IS) (THEY ARE) THE (OWNER) (OWNERS) OF THE PROPERTY DESCRIBED IN THIS CONTRACT IT IS UNDERSTOOD THAT THE ENTIRE CONTRACT IS CONTAINED IN THIS AGREEMENT AND THAT NO OTHER AGREEMENT OR UNDERSTANDING, VERBAL OR WRITTEN, SHALL BE BINDING ON THE COMPANY, AND THAT THIS CONTRACT BECOMES EFFECTIVE ONLY UPON WRITTEN ACCEPTANCE BY THE CO. AFTER WHICH THIS CONTRACT IS NOT SUBJECT TO CANCELLATION.
THE COMPANY SHALL NOT BE HELD LIABLE IN DAMAGES FOR DELAYS IN PERFORMANCE OF THIS CONTRACT DUE TO CAUSES BEYOND ITS REASON-ABLE CONTROL. WORKMEN'S COMPENSATION AND PUBLIC LIABILITY INSURANCE ARE PROVIDED BUT THE COMPANY AGREES TO EXECUTE ALL NECESSARY PAPERS OR FORMS TO ENABLE COMPANY TO OBTAIN PAYMENT FOR EQUIPMENT, LABOR, AND MATERIAL WHICH WOULD BE INVOLVED PERTAINING TO THIS CONTRACT.
THE COMPANY IS NOT RESPONSIBLE FOR ANY LANDSCAPING, TRACKS MADE BY VEHICLES OR OTHER EQUIPMENT, UNLESS OTHERWISE SPECIFIED. IF IN THE COURSE OF PERFORMING THIS CONTRACT THE COMPANY ENCOUNTERS ROCK, QUICKSAND, OR UNDERGROUND WATER, OWNER WILL BE RESPON-SIBLE FOR LABOR AND MATERIAL COSTS INCURRED TO CORRECT THE SITUATION.

DON'T SIGN IN BLANK: HOMEOWNER IS ENTITLED TO COPY OF CONTRACT AT THE TIME OF AFFIXING SIGNATURE.

SEE TERMS AND CONDITIONS ON BACK.

ACCEPTED:                                         REDACTED

BY _____  DATE _____          _____ (SEAL)
                                                  Signature
SALESMAN'S LIC. NO._____                _____ (SEAL)

TERMS: Progress Payments of 90% of Total Price During Job; Maximum 10% Balance at Completion. In the event that the account of the buyer is placed in the hands of an attorney for collection, whether or not suit is filed, the buyer agrees to pay attorney's fees in the amount of 15 per cent of the amount due together with any other suit costs or costs of collection. It is further agreed that past due amounts are subject to 1 1/2 per cent per month service charge (18 per cent per annum) and that the buyer agrees to pay a service charge of $25.00 on each dishonored check.

PHONE    202-291-3340    301-277-7300    703-799-7200

# JOHN C. FLOOD OF D.C., INC.
*Plumbing • Heating • Air Conditioning • Home Improvements*
### 711 Kennedy St. NW., Washington DC 20011
## WE DO IT ALL!

| CUSTOMER'S ORDER NO | PHONE | | MECHANIC Bob | HELPER M.Ke | STARTING DATE 9/12/95 |
|---|---|---|---|---|---|
| BIL | REDACTED | | | | ORDER TAKEN BY |
| CIT | | | | | ☑ DAY WORK ☐ CONTRACT ☐ EXTRA |

DESCRIPTION OF WORK

UN Standard toilet

ey REDACTED

| | SUB CONT | |
|---|---|---|
| | MISC | |
| | TOTAL MATERIALS | |
| | TOTAL LABOR | |
| | TAX | |
| DATE COMPLETED / / | TOTAL AMOUNT | REDACTED |

Signatur  REDACTED

☐ No one home ☐ Total amount due for above work or ☐ Total billing to be mailed after completion of work

I hearby acknowledge the satisfactory completion
of the above work

**PHONE : 202-291-3340   301-277-7300   703-799-7200**

# JOHN C. FLOOD OF D.C., INC .

**Plumbing • Heating • Air Conditioning • Home Improvements**
**711 Kennedy St. NW., Washington DC 20011**

| CUSTOMER'S ORDER NO | PHONE | | MECHANIC Buck | HELPER | STARTING DATE 12/20/95 |
|---|---|---|---|---|---|

BILL TO

ADDR REDACTED

CITY

ORDER TAKEN BY Shop

☑ DAY WORK
☐ CONTRACT
☐ EXTRA

DESCRIPTION OF WORK

2— Ballcocks (Brass)
+ & Nut

COD

Installed 2 new Mansfield
Balcocks and suply tubes.
1year warranty on Labor

Check # 1

| | |
|---|---|
| SUB CONT. | |
| MISC | |
| TOTAL MATERIALS | |
| TOTAL LABOR | |
| TAX | |
| TOTAL AMOUNT | |

REDACTED

DATE COMPLETED 12/20/95    WORK ORDERED BY

Signature  X    REDACTED

home ☐ Total amount
due for above work or

...ling is
...mailed after
completion of
work

I hereby acknowledge the satisfactory completion
of the above work

001279

Serving Washington, DC
and Surrounding Counties

Licensed, Bonded,
and Insured

J.C.F., Inc. T/A

# J. C. FLOOD CO.

*Plumbing • Heating • Air Conditioning • Home Improvements*
711 Kennedy Street, NW, Washington, DC 20011

Prince Georges County 301-277-7300 • Montgomery County 301-891-1121 • Washington, DC 202-545-5500

DC HIC 1075, DC 1004
VA ST. 767
WSSC 01313
MD ST. 19154

**006108**

Address _____ SAME

_____ State _____ Zip _____

nt Name _____

Phone _____ Estimator— MARK —

Customer Work Phone _____

**CONTRACT** Approximate Starting Date: **1-9-96**    Approximate Completion Date: **1-10-96**

The Company offers to do or arrange to have done only the items listed below.

Problem is B bad fan motor & capacitor on existing electric furnace. After a discussion of repair costs customer desires to replace her 18 yr old unit. At customers request J.C.Flood to:
① Remove & HAUL existing interior unit to include coil.
② Set a new electric indoor unit & coil to be compatible with existing Trane - TWD730 B100 A0 outdoor unit. New indoor unit not to be Trane due to availability only to be compatible. All necessary sheet metal adaption to be done by J.C.Flood but not responsible beyond tie-in for the existing air distribution system. Tie into existing high & low voltage systems. Installation to include coil to be tied into existing cooling system. Customer understands that J.C.F. is not replacing outdoor unit and is not responsible for same past tie-in.
③ Not responsible for any other plumbing or repairs not specified and the price is net after any & all discounts and will remain the same regardless how long I'd.....

REDACTED          14670

REDACTED

the date of this transaction. See
y the third business day from the
company shall be entitled to    ...act, buyer agrees to pay and
**Cash price of Total Contract**    REDACTED

NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS AND SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

ANY REFERENCE TO "THE COMPANY" IN THIS CONTRACT SHALL BE CONSTRUED TO MEAN THE COMPANY

TERMS: NET CASH UNLESS OTHERWISE STATED IN AGREEMENT.

THE UNDERSIGNED REPRESENTS THAT HE IS (SHE IS) (THEY ARE) THE (OWNER) (OWNERS) OF THE PROPERTY DESCRIBED IN THIS CONTRACT. IT IS UNDERSTOOD THAT THE ENTIRE CONTRACT IS CONTAINED IN THIS AGREEMENT AND THAT NO OTHER AGREEMENT OR UNDERSTANDING, VERBAL OR WRITTEN, SHALL BE BINDING ON THE COMPANY, AND THAT THIS CONTRACT BECOMES EFFECTIVE ONLY UPON WRITTEN ACCEPTANCE BY THE CO. AFTER WHICH THIS CONTRACT IS NOT SUBJECT TO CANCELLATION.
THE COMPANY SHALL NOT BE HELD LIABLE IN DAMAGES FOR DELAYS IN PERFORMANCE OF THIS CONTRACT DUE TO CAUSES BEYOND ITS REASONABLE CONTROL. WORKMEN'S COMPENSATION AND PUBLIC LIABILITY INSURANCE ARE PROVIDED BY THE COMPANY. AGREES TO EXECUTE ALL NECESSARY PAPERS OR FORMS TO ENABLE COMPANY TO OBTAIN PAYMENT FOR EQUIPMENT, LABOR AND MATERIAL WHICH WOULD BE INVOLVED PERTAINING TO THIS CONTRACT.
THE COMPANY IS NOT RESPONSIBLE FOR ANY LANDSCAPING, TRACKS MADE BY VEHICLES OR OTHER EQUIPMENT, UNLESS OTHERWISE SPECIFIED. IF IN THE COURSE OF PERFORMING THIS CONTRACT THE COMPANY ENCOUNTERS ROCK, QUICKSAND, OR UNDERGROUND WATER, OWNER WILL BE RESPONSIBLE FOR LABOR AND MATERIAL COSTS INCURRED TO CORRE
DON'T SIGN IN BLANK, HOMEOWNER IS ENTITLED TO COPY OF CONTRA
SEE TERMS AND CONDITION ON BACK.

REDACTED

ACCEPTED

By _____ Date **1-6-96**    _____ Signature    (Seal)

Salesman's Lic. No _____

TERMS: Progress Payments of Total Price During Job; Maximum 18% Balance at Completion. In the event that the account of the buyer is placed in the hands of an attorney for collection, whether or not suit is filed, the buyer agrees to pay attorney's fees in the amount of 15 per cent of the amount due together with any other said costs or costs of collection. It is further agreed that past due amounts are subject to 1½ per cent per month service charge (18 per cent per annum) and that the buyer agrees to pay a service charge of $25.00 on each dishonored check.

Serving Washington, DC
and Surrounding Counties

Licensed, Bonded,
and Insured

*1 of 1*

DC HIC 1078, DC 1004
VA ST. 767
WSSC 01313
MD ST. 19154
MD HIC 47683

## JOHN C. FLOOD OF D.C., INC.

Plumbing • Heating • Air Conditioning • Home Improvements
711 Kennedy Street, NW, Washington, DC 20011
Prince Georges County 301-277-7300 • Montgomery County 301-881-1121 • Washington, DC 202-546-5500

VA 702-790-7000

**11465**

REDACTED

Address ___ S/A ___

_____ State ___ Zip ___

_ant Name  S/A

_ant Phone _____   Estimator Chuck

**CONTRACT** Approximate Starting Date 2/5/96      Approximate Completion Date 2/5/96

The Company offers to do or arrange to have done only the items listed below.

Customer has 12 year old carrier heat
pump which was diagnosed by J.B. Quick
as defective. checked voltage () ok to
line, bus on condenser unit, customer
needs new thermostat, possible transformer, (t.v.)
Flood Co. to do the following:
(1) Remove + Replace one - two (2) ton 10 SEER
heat pump condenser. (2) Attach to existing line
set. (3) Vacuum line set + re-charge as necessary,
(4) Replace one interior thermostat on existing
electric supply lines (5) Replace low voltage
transformer if necessary. (6) No other work
to be performed on (air handler, coil or
controls on system (7) Level best as possible
A/c condenser on existing pad. (8) All
_____ individual

REDACTED

Company shall be entitl_

**Cash price of Total C**

NOTICE: ANY HOLDER OF T
SELLER OF GOODS AND S
EXCEED AMOUNTS PAID B

ANY REFERENCE TO "THE

TERMS: NET CASH UNLES
THE UNDERSIG
IS UNDERSTOOD THAT The ENTIRE CONTRACT IS CONTAINED IN THIS AGREEMENT AND THAT NO OTHER AGREEMENT OR UNDERSTANDING, VERBAL OR
WRITTEN, SHALL BE BINDING ON THE COMPANY, AND THAT THIS CONTRACT BECOMES EFFECTIVE ONLY UPON WRITTEN ACCEPTANCE BY THE CO. AFTER
WHICH THE CONTRACT IS NOT SUBJECT TO CANCELLATION.
THE COMPANY SHALL NOT BE HELD LIABLE IN DAMAGES FOR DELAYS IN PERFORMANCE OF THIS CONTRACT DUE TO CAUSES BEYOND ITS REASON-
ABLE CONTROL. WORKMEN'S COMPENSATION AND PUBLIC LIABILITY INSURANCE ARE PROVIDED BUT THE COMPANY AGREES TO EXECUTE ALL NECESSARY
PAPERS OR FORMS TO ENABLE COMPANY TO OBTAIN PAYMENT FOR EQUIPMENT, LABOR, AND MATERIAL WHICH WOULD BE INVOLVED PERTAINING TO THIS
CONTRACT.
THE COMPANY IS NOT RESPONSIBLE FOR ANY LANDSCAPING, TRACKS MADE BY VEHICLES OR OTHER EQUIPMENT, UNLESS OTHERWISE SPECIFIED.
IF IN THE COURSE OF PERFORMING THIS CONTRACT THE COMPANY ENCOUNTERS ROCK, QUICKSAND, OR UNDERGROUND WATER, OWNER WILL BE RESPON-
SIBLE FOR LABOR AND MATERIAL COSTS INCURRED TO CORRECT THE SITUATION.

DON'T SIGN IN BLANK: HOMEOWNER IS ENTITLED TO COPY OF CO_____

SEE TERMS AND CONDITIONS ON BACK.

ACCEPTED:

BY _____ DATE _____          REDACTED              . (SEAL)

SALESMAN'S LIC. NO. _____                                        . (SEAL)

TERMS: Progress Payments of 90% of Total Price During Job; Maximum t
whether or not sub is filed, the buyer agrees to pay attorney's fees in the amou_          for collection,
amounts are subject to 1 1/2 per cent per month service charge (18 per cent pa.                _hall past due

11360 © Bell Atlantic 1996

HEATING **601**

# HEATING
## CONTRACTORS (Cont'd)

**BARNETT & SONS INC**
Clinton --------------------------- **301 868-5454**
Barry John E Plumbing & Heating Corp
1244ColumbiaRdNW --------------------- 546-2675
Barry John E Plumbing & Heating Corp
505KennedyStNW ---------------------- 829-4434
Barry John E Plumbing & Heating Corp
1209 10thStNW ---------------------- 842-2424
**BATEMAN & SON INC**
141AWhiteMarlboroRd
CapitolHeights --------------------- **301 808-3180**
Bauer Jos C Inc
821VaAvSE -------------------------- 547-3477

**BEALL INC**

GEORGETOWN • N.W. WASHINGTON

**BEALL**

603 Carlisle Dr Herndon ------------- 703 318-9858

**BELTWAY HEATING & AIR CONDITIONING CO INC**

Sales - Service - Installation

12600 Laurie Dr Silver Spring ------ **301 585-6660**
No Va --------------------------- **703 451-2215**
10753 Tucker St Beltsville -------- **301 595-0990**

**BENNETT AIR CONDITIONING INC**
1700 12thStNW ------------------- **301 449-1680**
**BETHESDA PLUMBING & HEATING CO** 11500SchuylkillRd Rockville **301 881-2400**

**BETHESDA REFRIGERATION SERVICE INC**

Established 1946

**HEATING SERVICE**
Sales ○ Service ○ Installation
On All Major Makes
**EMERGENCY SERVICE**

Residential Division
4831 Del Ray Av Bethesda --------- **301 654-3224**

**BISHOP EQUIPMENT CO INC**

OUR 61ST YEAR

Georgetown • N.W. Wash • N. Virginia
Bethesda • Chevy Chase

**HEATING SPECIALISTS**

BOILERS & FURNACES

**SALES - SERVICE - INSTALLATIONS**
COMMERCIAL - RESIDENTIAL - COMPLETE
REPAIRS - MAINTENANCE - DUCT WORK
HUMIDIFIERS - ELECTRONIC AIR CLEANERS

**SALES**

**703-573-8980**

FOR SERVICE CALL
2825 Dorr Av Fairfax -------------- **703 573-1500**

Blake & Wilcox Inc
WashingtonDC ---------------------- 363-1225

**BLAKE & WILCOX INC**

**BLAKE & WILCOX** inc

OVER 70 YEARS EXPERIENCE
• FREE ESTIMATES • RESIDENTIAL • COMMERCIAL

**Water • Steam • Gas & Oil**
**BOILERS**

GAS CO. FINANCING

**INSTALLATION & REPAIR**

**24 HR. EMERGENCY PHONE SERVICE**

VISA & MASTERCARD ACCEPTED

**301-589-1771**

8037 13th St Silver Spring -------- **301 589-1771**

**BOILER & FURNACE CLEANERS INC**
4613Baltimore Av Hyatts ---------- **301 927-6760**
**BOUCHER HEATING & AIR CONDITIONING CO**
Over 30 Years Serving Washington Metro Area
12321CarrollAv Rockville -------- **301 984-2300**

CONTINUED NEXT LISTING PAGE

**J.C. FLOOD COMPANY OF D.C.**

PAY ON YOUR GAS BILL

EMERGENCY SERVICE

**HEATING • BOILERS**
PLUMBING AND HEATING

**RESIDENTIAL & COMMERCIAL SERVICE**

► Hot Air Furnaces ► Duct Work ► Heat Pumps
► Same Day Replacement
► Gas Air Conditioning Specialists
► Service Contracts Available ► Bank Financing

VISA    MasterCard    DISCOVER

SCD

**QUALITY SERVICE ALWAYS**
**FREE ESTIMATES • ALL BRAND NAMES**
Sales • Service • Installs

**PG COUNTY**         **MONT. COUNTY**         **VA**
**301-277-7300**   **301-881-1121**   **703-525-6215**

WSSC #01313
DC #1004
BONDED · LICENSED
INSURED

**291-3340**

MAIN OFFICE:
711 Kennedy St, NW



---

**FREE ESTIMATES**
ON SYSTEM REPLACEMENTS
**24 HOUR EMERGENCY SERVICE**

ALL MAJOR BRANDS

QUALITY
**John C. Dorsey** inc.
SINCE 1945

ONE DAY REPLACEMENTS AT LOW COST

50 Years Of
Exceptional Service
District Of Columbia
Montgomery & PG
Counties

**REPAIR**
DEPENDABILITY

**REPLACE**

SAVE ON HI-EFFICIENCY SYSTEMS
**ALL MAJOR BRANDS**
**Heat Your Home - Save $$$**
**PREVENTIVE MAINTENANCE**
**CONTRACTS AVAILABLE**
**HEATING / DUCT SYSTEM**
**CLEANING SPECIALISTS**

RESIDENTIAL

EXPERIENCE

COMMERCIAL

DC's NATURAL GAS EXPERTS
BOILERS / FURNACES
FIREPLACES & GAS LOGS
CALL FOR OUR MOBILE FIREPLACE
& GAS LOG SHOWROOM
WATER HEATERS • GRILLS
GAS APPLIANCE INSTALLATION

Natural
**GAS**
Contractor





100 EMPLOYEES & 65 TRUCKS TO SERVE YOU
**BOILERS / FURNACES**
STEAM & RADIANT HEAT
SPECIALISTS IN OIL TO GAS CONVERSIONS

**SATURDAY SERVICE AT NO EXTRA CHARGE**
Prince George's Chamber Of Commerce "Service/Professional Company Of The Year" • WE APPRECIATE YOUR BUSINESS

INSTANT CREDIT APPROVAL

  

ASK ABOUT OUR "NO MONEY DOWN, PAY ON YOUR
UTILITY BILL PLAN!" • EASY BUDGET

**(202) 554-4800**
MAIN OFFICE            TDD LINE
**(301) 927-7100**   **(301)927-5763**

 

# ATTACHMENT "C-2"

0621-001
1020796pms
settle.04

## IMPORTANT NOTICE

**THIS INSTRUMENT CONTAINS A CONFESSION OF JUDGMENT PROVISION WHICH CONSTITUTES A WAIVER OF IMPORTANT RIGHTS YOU MAY HAVE AS A DEBTOR AND ALLOWS THE CREDITOR TO OBTAIN A JUDGMENT AGAINST YOU WITHOUT ANY FURTHER NOTICE.**

## SETTLEMENT AND FORBEARANCE AGREEMENT

This Settlement and Forbearance Agreement (this "Agreement") is made as of this ___12th___ day of February, 1996 by and between (a) Michael G. Rinn, trustee in Bankruptcy Case No. 91-4-3011 ("Trustee") and Roman P. Fedirka, receiver in Adversary Proceeding No. 95A-215 ("Receiver", together with the Trustee, the "Beneficiary") and (b) John C. Flood, Inc., a Maryland corporation, John C. Flood of MD, Inc., a Maryland corporation, and John C. Flood of D.C., Inc., a District of Columbia corporation (collectively, the "Pledgor"); and (c) JCF, Inc.; MCMD, Inc.; Melville Davis, Florence Davis, Joanne Smiley, Robert B. Smiley, Mark Crooks and Lydia Crooks (collectively, the "Defendants").

## RECITALS

1.  Pursuant to the Bankruptcy Court Order dated October 26, 1995, entitled, "Order Granting Motion for Order Authorizing Private Sale of Stock and Other Assets Free and Clear of Liens and Approving Settlement" entered in Adversary Proceeding No. 95A-215 (the "Order"), which is incorporated by reference as if fully set forth herein, the Beneficiary was authorized to sell the stock in John C. Flood of MD, Inc., John C. Flood of D.C., Inc. and MCMD, Inc. (collectively, "New Flood"), along with the trade names John C. Flood, Inc. and Flood, Inc. and certain other assets and also settle claims against the Defendants in exchange for the payment of the sum of Four Hundred Twenty-Five Thousand Dollars ($425,000.00) (the "Acquisition Price"). The Acquisition Price represents the sum due and owing as a result of the Trustee's settlement of the litigation initiated against the Defendants and

000019

accordingly the installment payments being made to pay the Acquisition Price will not bear interest.

2.    Joanne Smiley and Robert Smiley and Pledgor (collectively, the "Makers") jointly and severally promise to pay Beneficiary the Acquisition Price in monthly installments of Six Thousand Six Hundred and Sixty-Six and 66/100 Dollars ($6,666.66) each over a five-year term with a balloon payment of Twenty-Five Thousand Dollars ($25,000.00) due and payable along with the Sixtieth (60th) payment due on the 60th month.   The terms for payment of the Acquisition Price are set forth in a promissory note which is attached hereto and incorporated by reference herein as Exhibit "A" and which is being executed simultaneously with this Agreement by Makers.

3.    Melville Davis and Mark Crooks (together, "Guarantors") personally, jointly and severally guarantee that the Acquisition Price will be paid as set forth above.   The terms of the guaranty are set forth in a Guaranty of Payment and Performance, which is attached hereto and incorporated by reference herein as Exhibit "B" and which is being executed simultaneously with this Agreement.

4.    <u>Liquidated Damages Jointly and Severally Against Melville Davis, Florence Davis, Mark Crooks and Lydia Crooks for $600,000</u>
(a)  Melville Davis and Florence Davis (the "Davises") and Mark Crooks and Lydia Crooks (the "Crooks" and together with the Davises the "Davises and Crooks"), in recognition of the settlement of the litigation initiated against them by the Trustee and in recognition of the release which will be given to them by the Trustee upon the final payment of the Acquisition Price, agree that they will pay the sum of Six Hundred Thousand Dollars ($600,000.00) ("Liquidated Damages") upon demand, jointly and severally, without notice, as liquidated damages to the Trustee should Makers fail to make any payment as and when due under the promissory note, or should there be any default under this

Agreement or in the event of default in the performance of any of the terms, covenants, conditions or provisions of any of the other documents executed in conjunction herewith by Defendants or Pledgor.

(b)  All payments due hereunder shall be made during regular business hours, c/o Michael G. Rinn, 111 Warren Road, Suite 4, Cockeysville, Maryland 21030, or at such other place as the Trustee may from time to time designate in writing, and shall be made in lawful money of the United States of America which, at the time of payment, shall be legal tender for the payment of public and private debts.  All such payments hereunder shall be made without offset, demand, counterclaim, deduction, or recoupment, each of which Davises and Crooks hereby waive.

(c)  It is expressly agreed that time is of the essence of this Agreement.  In the event of a default in the payment of any amount hereunder as and when the same becomes due and payable, or in the event of default in the performance of any of the terms, covenants, conditions or provisions hereunder or in any of the other documents executed in connection herewith, or in the event of the Defendants' failure to comply with any of the terms, covenants, conditions or provisions of the Order, then, and in any of such events, the Beneficiary may, at the option of Beneficiary, declare the entire outstanding principal balance owed by the Davises to be immediately due and payable without demand or further notice to the Davises or any other person.  Failure of the Beneficiary to exercise any rights hereunder shall not constitute its waiver of the right to the later exercise thereof.

(d)  If any provision (or any part of any provision) contained in this Agreement shall for any reason be held or deemed to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provision (or remaining part of the affected provision) of this Agreement, and this Agreement shall be construed as if such

invalid, illegal or unenforceable provision (or part thereof) had never been contained herein and the remaining provisions of this Agreement shall remain in full force and effect.

(e)   The Davises, Crooks and all others who may become liable for all or any part of the obligation evidenced by this Agreement hereby waive presentment, demand, protest, notice of demand and of dishonor and of nonpayment, and any and all lack of diligence or delays in collection or enforcement hereof.   The Davises and Crooks further jointly and severally expressly agree with the Beneficiary that the Beneficiary may, from time to time, extend or renew this Agreement or any payment hereunder without notice, in such manner, on such terms and for such time(s) as the Beneficiary may see fit, all without in any way affecting or releasing the liability of the Davises and Crooks.

(f)   <u>Confession of Judgment</u>.   In the event any default shall occur hereunder or under any other document evidencing or securing the indebtedness evidenced hereby, the Davises and Crooks authorize the clerk, Paul-Michael Sweeney, or any attorney of any court of record to appear for Davises and Crooks in any court of competent jurisdiction, to waive the issuance and service of process and to enter judgment by confession jointly and severally against Davises and Crooks in favor of the Beneficiary for the sum of Six Hundred Thousand Dollars ($600,000.00), together with court costs, prejudgment interest at the rate of six (6%) interest from the date of the default until the date of judgment and post-judgment interest at the legal rate and an attorney's fee of fifteen percent (15%) of the principal and interest then due hereunder.   No single exercise of the foregoing power to confess judgment shall be deemed to exhaust the power, whether or not any such exercise shall be held by any court to be invalid, voidable or void, but the power shall continue undiminished, and it may be exercised from time to time as often as the Beneficiary shall elect, until such time as the Beneficiary shall have received payment in full of all indebtedness of the Davises and Crooks to

the Beneficiary.    The Davises and Crooks hereby irrevocably constitute and appoint Paul-Michael Sweeney, Bradford F. Englander and any other designee of the Beneficiary, any one of whom may act alone, as the Davises' and Crooks' true and lawful attorneys-in-fact to appear in the Clerk's Office of the Fairfax County Circuit Court in the Commonwealth of Virginia, City of Alexandria Circuit Court, Arlington County Circuit Court, and any other state or federal court in the Commonwealth of Virginia or the State of Maryland, and confess judgment against the Davises and Crooks, jointly and severally, and any sureties, endorsers, or guarantors hereof for the full amount of Six Hundred Thousand Dollars ($600,000.00) (including, without limitation, all principal, interest, disbursements and costs) together with an attorneys' fee equal to fifteen percent (15%) of such indebtedness. The Davises and Crooks hereby ratify and confirm the acts of said attorneys-in-fact as fully as if done by the Davises and Crooks themselves. The Davises and Crooks waive the benefit of any and every statute, ordinance, or rule of court which may be lawfully waived conferring upon the Davises and Crooks any right or privilege of exemption, stay of execution, or supplementary proceedings, or other relief from the immediate enforcement of a judgment or related proceedings on a judgment.    The authority and power to appear for an enter judgment against the Davises and Crooks shall not be exhausted by one or more exercises thereof, nor by any imperfect exercise thereof, and shall not be extinguished by any judgment entered pursuant thereto. Such authority and power may be exercised on one or more occasions from time to time, in the same or different jurisdictions, as often as the Beneficiary shall deem advisable.

    (g)   <u>WAIVER OF TRIAL BY JURY.</u>   THE DAVISES AND CROOKS HEREBY WAIVE TRIAL BY JURY IN ANY ACTION OR PROCEEDING ARISING OUT OF OR IN ANY WAY PERTAINING TO THIS AGREEMENT AND/OR ANY OF THE OTHER DOCUMENTS EVIDENCING OR SECURING THE TRANSACTION EVIDENCED HEREBY.   THIS WAIVER IS KNOWINGLY, WILLINGLY AND VOLUNTARILY MADE BY THE DAVISES AND CROOKS, AND THE DAVISES AND CROOKS HEREBY REPRESENT THAT NO ORAL OR WRITTEN STATEMENTS HAVE BEEN MADE BY ANY

PARTY TO INDUCE THIS WAIVER OF TRIAL BY JURY OR TO IN ANY WAY
MODIFY OR NULLIFY ITS STATED EFFECT.    THE DAVISES AND CROOKS
FURTHER REPRESENT THAT THEY HAVE BEEN REPRESENTED BY INDEPENDENT
COUNSEL, SELECTED OF THEIR OWN FREE WILL, IN THE SIGNING OF THIS
AGREEMENT AND IN THE MAKING OF THIS WAIVER AND THAT THEY HAVE HAD
THE OPPORTUNITY TO DISCUSS THIS WAIVER WITH SUCH COUNSEL.

(h)  The Davises and Crooks recognize that this Agreement
is made in the State of Maryland and that it is to be construed
under the laws of the State of Maryland.  The Davises and Crooks
hereby consent to be sued in an appropriate court in the State of
Maryland and/or in the United States Bankruptcy Court for the
District of Maryland in any action to enforce the provisions of
this Agreement and/or in the Commonwealth of Virginia.  The Davises
and Crooks waive any objection to the venue of any action filed by
the Beneficiary against the Davises and Crooks in any State or
Federal Court of Maryland or Virginia and waive any claim of forum
non conveniens or for transfer of any such action to any other
court.  The Davises and Crooks hereby irrevocably agree to accept
service of process for them and in their behalf in any such
proceeding, and to receive any notices required pursuant to this
Agreement and that any service of process required under state or
federal law upon Davises and Crooks shall be complete and effective
upon deposit of said process with the United States Post Office,
addressed to Davises and Crooks separately, postage prepaid.

5.    Liquidated Damages Against Melville Davis and Mark Crooks
      Jointly and Severally for $1.5 Million Dollars

(a)  Melville Davis and Mark Crooks, in recognition of
the settlement of the litigation initiated against them by the
Trustee and in recognition of the release which will be given to
them by the Trustee upon the final payment of the Acquisition
Price, agrees that they will pay jointly and severally the sum of
One and One-Half Million Dollars ($1,500,000.00) ("Liquidated
Damages") upon demand, without notice, as liquidated damages, less
any credit for any sums paid pursuant to Section 4 above, to the

Trustee should Makers fail to make any payment as and when due under the promissory note or should there be any default under this Agreement or in the event of default in the performance of any of the terms, covenants, conditions or provisions of any of the other documents executed in conjunction herewith by Defendants or Pledgor.

(b)  All payments due hereunder shall be made during regular business hours, c/o Michael G. Rinn, 111 Warren Road, Suite 4, Cockeysville, Maryland 21030, or at such other place as the Trustee may from time to time designate in writing and shall be made in lawful money of the United States of America which at the time of payment shall be legal tender for the payment of public and private debts.  All such payments hereunder shall be made without offset, demand, counterclaim, deduction, or recoupment, each of which Melville Davis and Mark Crooks hereby waive.

(c)  It is expressly agreed that time is of the essence of this Agreement.  In the event of a default in the payment of any amount hereunder as and when the same becomes due and payable, or in the event of default in the performance of any of the terms, covenants, conditions or provisions hereunder or in any of the other documents executed in connection herewith, or in the event of the Defendants' failure to comply with any of the terms, covenants, conditions or provisions of the Order, then, and in any of such events, the Beneficiary may, at the option of Beneficiary, declare the entire outstanding principal balance owed by Melville Davis and Mark Crooks to be immediately due and payable without demand or further notice to Melville Davis and Mark Crooks or any other person.  Failure of the Beneficiary to exercise any rights hereunder shall not constitute its waiver of the right to the later exercise thereof.

(d)  If any provision (or any part of any provision) contained in this Agreement shall for any reason be held or deemed

to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provision (or remaining part of the affected provision) of this Agreement, and this Agreement shall be construed as if such invalid, illegal or unenforceable provision (or part thereof) had never been contained herein and the remaining provisions of this Agreement shall remain in full force and effect.

(e)  Melville Davis, Mark Crooks and all others who may become liable for all or any part of the obligation evidenced by this Agreement hereby waive presentment, demand, protest, notice of demand and of dishonor and of nonpayment, and any and all lack of diligence or delays in collection or enforcement hereof. Melville Davis and Mark Crooks expressly agree with the Beneficiary that the Beneficiary may, from time to time, extend or renew this Agreement or any payment hereunder without notice, in such manner, on such terms and for such time(s) as the Beneficiary may see fit, all without in any way affecting or releasing the liability of Melville Davis or Mark Crooks.

(f)  <u>Confession of Judgment</u>.  In the event any default shall occur hereunder or under any other document evidencing or securing the indebtedness evidenced hereby, Melville Davis and Mark Crooks authorize the clerk, Paul-Michael Sweeney or any attorney of any court of record to appear for them in any court of competent jurisdiction, to waive the issuance and service of process and to enter judgment by confession against Melville Davis and Mark Crooks, jointly and severally, in favor of the Beneficiary for the sum of One and One-Half Million Dollars ($1,500,000.00), together with court costs, prejudgment interest at the rate of six (6%) interest from the date of default until the date of judgment and post-judgment interest at the legal rate, and an attorney's fee of fifteen percent (15%) of the principal and interest then due hereunder.  No single exercise of the foregoing power to confess judgment shall be deemed to exhaust the power, whether or not any

such exercise shall be held by any court to be invalid, voidable or void, but the power shall continue undiminished, and it may be exercised from time to time as often as the Beneficiary shall elect, until such time as the Beneficiary shall have received payment in full of all indebtedness of Melville Davis and Mark Crooks to the Beneficiary. Melville Davis and Mark Crooks hereby irrevocably constitutes and appoints Paul-Michael Sweeney, Bradford F. Englander and any other designee of the Beneficiary, any one of whom may act alone, as Melville Davis' and Mark Crooks' true and lawful attorneys-in-fact to appear in the Clerk's Office of the Fairfax County Circuit Court in the Commonwealth of Virginia, City of Alexandria Circuit Court, Arlington County Circuit Court, and any other state or federal court in the Commonwealth of Virginia or the State of Maryland, and confess judgment against Melville Davis and Mark Crooks and any sureties, endorsers, or guarantors hereof for the full amount of One and One-Half Million Dollars ($1,500.000.00) (including, without limitation, all principal, interest, disbursements and costs) together with an attorneys' fee equal to fifteen percent (15%) of such indebtedness. Melville Davis and Mark Crooks hereby ratify and confirm the acts of said attorneys-in-fact as fully as if done by them. Melville Davis and Mark Crooks waive the benefit of any and every statute, ordinance, or rule of court which may be lawfully waived conferring upon them any right or privilege of exemption, stay of execution, or supplementary proceedings, or other relief from the immediate enforcement of a judgment or related proceedings on a judgment. The authority and power to appear for an enter judgment against Melville Davis and Mark Crooks shall not be exhausted by one or more exercises thereof, nor by any imperfect exercise thereof, and shall not be extinguished by any judgment entered pursuant thereto. Such authority and power may be exercised on one or more occasions from time to time, in the same or different jurisdictions, as often as the Beneficiary shall deem advisable.

(g)  <u>WAIVER OF TRIAL BY JURY.</u>  Melville DAVIS AND MARK CROOKS HEREBY WAIVE TRIAL BY JURY IN ANY ACTION OR PROCEEDING ARISING OUT OF OR IN ANY WAY PERTAINING TO THIS AGREEMENT AND/OR ANY OF THE OTHER DOCUMENTS EVIDENCING OR SECURING THE TRANSACTION EVIDENCED HEREBY.   THIS WAIVER IS KNOWINGLY, WILLINGLY AND VOLUNTARILY MADE BY MELVILLE DAVIS AND MARK CROOKS, AND MELVILLE DAVIS AND MARK CROOKS HEREBY REPRESENT THAT NO ORAL OR WRITTEN STATEMENTS HAVE BEEN MADE BY ANY PARTY TO INDUCE THIS WAIVER OF TRIAL BY JURY OR TO IN ANY WAY MODIFY OR NULLIFY ITS STATED EFFECT. MELVILLE DAVIS AND MARK CROOKS FURTHER REPRESENT THAT THEY HAVE BEEN REPRESENTED BY INDEPENDENT COUNSEL, SELECTED OF THEIR OWN FREE WILL, IN THE SIGNING OF THIS AGREEMENT AND IN THE MAKING OF THIS WAIVER AND THAT THEY HAVE HAD THE OPPORTUNITY TO DISCUSS THIS WAIVER WITH SUCH COUNSEL.

(h)  Melville Davis and Mark Crooks recognize that this Agreement is made in the State of Maryland and that it is to be construed under the laws of the State of Maryland.  Melville Davis and Mark Crooks hereby consent to be sued in an appropriate court in the State of Maryland and/or in the United States Bankruptcy Court for the District of Maryland in any action to enforce the provisions of this Agreement and/or in the Commonwealth of Virginia.  Melville Davis and Mark Crooks waive any objection to the venue of any action filed by the Beneficiary against Melville Davis and Mark Crooks in any State or Federal Court of Maryland or Virginia and waive any claim of <u>forum non conveniens</u> or for transfer of any such action to any other court.  Melville Davis and Mark Crooks hereby irrevocably agree to accept any service of process required under state or federal law for them and on their behalf for such proceeding and that any service of process upon Melville Davis and Mark Crooks shall be complete and effective upon deposit of said process with the United States Post Office addressed to Melville Davis and Mark Crooks separately, postage prepaid.

(i)  If, at any time, Mark Crooks, Lydia Crooks, Melville Davis, or Florence Davis makes payment on the $600,000.00 referenced in Section 4, such payment shall be credited against and reduce the amount outstanding on the $1,500,000.00 indebtedness referenced in this section.  If, at any time, Mark Crooks or Melville Davis makes payment on the $1,500,000.00 indebtedness referenced in this section, such payment shall be credited against and reduce the amount outstanding on the $600,000.00 referenced in Section 4 above.

6.  <u>Pledge of Stock</u>

(a)  As further security for the payment of all sums and performance of all obligations of the Defendants as and when required under this Agreement, the shareholders of Pledgor, Joanne Smiley and Robert Smiley (together, "Shareholders"), being the sole shareholders of Pledgor, pledge all their stock in Pledgor to Beneficiary.  Copies of all the issued stock certificates for John C. Flood, Inc., John C. Flood of MD, Inc. and John C. Flood of D.C., Inc. are attached hereto and incorporated herein by reference as <u>Exhibit "C"</u>.  The original stock certificates will be held by Beneficiary until all payments and obligations under this Agreement are satisfied.

(b)  Shareholders hereby agree as follows:

SECTION 1.

A.  <u>Pledge</u>.  The Shareholders hereby pledge to Beneficiary and grant to Beneficiary a lien upon and first priority security interest in shares of common stock of John C. Flood, Inc. evidenced by stock certificate(s) no. 1+2 , John C. Flood of MD, Inc. evidenced by stock certificate(s) no. 1+2 , and John C. Flood of D.C., Inc. evidenced by stock certificate(s) no. 1+2 (the "Pledged Stock") in all dividends, interest, cash instruments and

other property from time to time received, receivable or otherwise distributed in respect of any or all of such Pledged Stock.

B. <u>Authority</u>. Upon the occurrence of an Event of Default under this Agreement, or in the event of a default in the performance of any of the terms, covenants, conditions or provisions of any of the other documents executed in conjunction herewith, Beneficiary is authorized to sell, transfer or assign the Pledged Stock and to apply the proceeds to the Pledgor's, Shareholders' and the Defendants' obligations to Beneficiary. Shareholders waive any notice of any kind relative to sale or disposition of the Pledged Stock.

SECTION 2. <u>Security for Obligations</u>. This Agreement secures the payment of Pledgor's, Shareholders' and Defendants' obligations to Beneficiary under this Agreement, including without limitation, principal, interest, fees, and expenses.

SECTION 3. <u>Custody of Collateral; Reasonable Care</u>. Shareholders will deliver at closing the stock certificates representing the Pledged Stock to Beneficiary to be held by, or on behalf of Beneficiary pursuant hereto, which shall be in suitable form for transfer by delivery, endorsed as required by Beneficiary, and otherwise in form and substance satisfactory to Beneficiary.

SECTION 4. <u>Representation and Warranties</u>. The Shareholders represent and warrant as follows:

A. The Shareholders are the legal and beneficial owners of the Pledged Stock, free and clear of any lien, security interest, mortgage, option or other charge, encumbrance or restriction in the Pledged Stock except for the security interest created by this Agreement.

B.  Neither the execution and delivery of this Agreement by Shareholders, nor the consummation of the transactions contemplated hereby, nor the compliance by the Shareholder of the terms of said agreements, will violate any law, rule, regulation, order, writ, judgment, decree or award binding on Shareholders, or the provisions of any indenture, instrument or agreement to which it is bound, or conflict with or result in a default thereunder.

C.  The delivery of the Pledged Stock pursuant to this Agreement is intended to create a valid and perfected first security interest in the Pledged Stock, securing the payment of the obligations under this Agreement.

D.  No authorization, approval, or other action by, and no notice to of filing with, any governmental authority or regulatory body is required either (i) for the pledge by the Shareholders of the Pledged Stock pursuant to this Agreement or for the execution, delivery or performance of this Agreement by the Shareholders or (ii) for the exercise by Beneficiary of the rights provided for in this Agreement or the remedies in respect of the Pledged Stock pursuant to this Agreement.

E.  Shareholders have full power and authority to execute and deliver this Agreement and to consummate the transactions contemplated hereby.  This Agreement has been duly executed and delivered by Shareholders, and is valid, binding and enforceable in accordance with its respective terms, except to the extent that the enforcement thereof may be limited by bankruptcy, insolvency, reorganization, or other similar laws affecting creditor's rights generally, and subject to the availability of equitable remedies.

F.  With the exception of adversary proceeding 95A-215, there has not been filed any petition or application, or any proceedings commenced, by or against, or with respect to any assets

of, the Shareholders under Title 11 of the United States Code or any other law, domestic or foreign, relating to bankruptcy, reorganization, compromise, arrangement, insolvency, readjustment of debt or creditors' rights, and the Shareholders have not made any assignment for the benefit of creditors.

SECTION 5.  <u>Further Assurance.</u>  The Shareholders agree that at any time and from time to time, at the expense of the Shareholders, the Shareholders will promptly execute and deliver all further instruments and documents and take all further action that may necessary or reasonably desirable, or that Beneficiary may reasonably request, in order to perfect and protect any security interest granted or purported to be granted hereby or to enable Beneficiary to exercise and enforce its rights and remedies hereunder with respect to the Pledged Stock.

SECTION 6.  <u>Voting Rights; Dividends; Etc.</u>

A.  So long as no Event of Default (as hereinafter defined in Section 11 of this Agreement) or event which, with the giving of notice or the lapse of time, or both, would become an Event of Default shall have occurred and be continuing:

1.  The Shareholders shall be entitled to exercise and all voting and other consensual rights pertaining to any shares of Pledged Stock by it or any part thereof for any purpose not inconsistent with the terms of this Agreement or the Security Agreement provided that the Shareholders first obtain the Beneficiary's written agreement to any such vote, action, distribution or dividend;

2.   The Shareholders shall be entitled to receive and retain any and all dividends or interest paid in respect of the Pledged Stock pledged by it provided that the Shareholders first obtain the Beneficiary's written agreement to any such dividends, and <u>provided</u>, however, that any and all

    (a)   dividends or interest paid or payable other than in cash in respect of, and instruments and other property received, receivable or otherwise distributed in respect of, or in exchange for, any Pledged Stock;

    (b)   dividends, interest and other distributions paid or payable in cash in respect of any Pledged Stock in connection with a partial or total liquidation or dissolution or in connection with a reduction of capital, capital surplus or paid-in-surplus; and

    (c)   cash paid, payable or otherwise distributed in respect of principal of, or in redemption of, or in exchange for, any Pledged Stock,

shall be forthwith delivered to Beneficiary to hold as further security for the amounts due under this Agreement and shall, if received by Shareholders,

be received in trust for the benefit of Beneficiary, be segregated from the other property or funds of the Shareholders, and be forthwith delivered to Beneficiary in the same form as so received (with any necessary endorsement).

3.   Beneficiary shall execute and deliver (or cause to be executed and delivered) to the Shareholders all such proxies and other instruments as the Shareholders may reasonably request for the purpose of enabling the Shareholders to exercise the voting and other rights which they are entitled to exercise pursuant to paragraph (1) above and to receive the dividends and interest which they are authorized to receive and retain pursuant to paragraph (2) above.

B.   Upon the occurrence and during the continuance of an Event of Default or an event which, with the giving of notice or the lapse of time, or both, would become an Event of Default;

1.   All rights of the Shareholders to exercise the voting and other consensual rights which it would otherwise be entitled to exercise pursuant to Section 6(A)(1) and to receive the dividends and interest payments which it would otherwise be authorized to receive and retain pursuant to Section 6(A)(2) shall cease, and all such rights shall thereupon become vested in Beneficiary which shall thereupon have the sole right

to exercise such voting and other consensual rights and to receive and hold as further security such dividends and interest; and

2. All dividends which are received by the Shareholders contrary to the provisions of paragraph (1) of this Section 6(B) shall be received in trust for the benefit of Beneficiary, shall be segregated from other funds of the Shareholders and shall be forthwith paid over to Beneficiary as further security in the same form as so received (with any necessary endorsement).

SECTION 7.  <u>Transfers and Other Liens</u>.  The Shareholders agree that they will not (i) sell or otherwise dispose of, or grant any option with respect to, any of the Pledged Stock without the prior written consent of Beneficiary, or (ii) create or permit to exist any lien, security interest, or other charge or encumbrances upon or with respect to any of the Pledgor's assets or the Pledged Stock, except for the security interest under this Agreement.

SECTION 8.  <u>Trustee Appointed Attorney-in-Fact</u>.  The Shareholders hereby appoint Michael G. Rinn, Trustee as their attorney-in-fact for the purposes described herein, with full authority in the place and stead of the Shareholders and in the name of the Shareholders or otherwise, from time to time in Trustee's discretion and upon notice to Shareholders to take any action and to execute any instrument which Trustee may deem necessary or advisable to accomplish the purposes of this Agreement, including, without limitation, to receive, endorse and collect all instruments made payable to the Shareholders representing any dividend, interest payment or other distribution in respect of the Pledged Stock, to sell or otherwise dispose of the Pledgor's assets or any part thereof when it is entitled to do

so under this Agreement and to take any other action with respect
to the Pledgor's assets or the Pledged Stock permitted by this
Agreement, and to give full discharge for the same. Prior to the
termination of this Agreement and payment of all sums due under
this Agreement, said appointment shall not be revocable without the
consent of Trustee and shall create in Trustee a power coupled with
an interest.

SECTION 9. <u>Beneficiary May Perform</u>. If the Shareholders
fail to perform any agreement, Beneficiary may itself perform or
cause performance of, such agreement, and the expenses of
Beneficiary incurred in connection therewith shall be payable by
the Shareholders under Section 12.

SECTION 10. <u>Reasonable Care</u>. Beneficiary shall be
deemed to have exercised reasonable care in the custody and
preservation of the Pledged Stock in its possession if the Pledged
Stock is accorded treatment substantially equal to that which
Beneficiary accords its own property, it being understood that
Beneficiary shall not have any responsibility for (i) ascertaining
or taking action with respect to calls, conversions, exchanges,
maturities, tenders or other matters relative to any Pledged Stock,
whether or not Beneficiary has or is deemed to have knowledge of
such matters, (ii) taking any necessary steps to preserve rights
against any parties with respect to any Pledged Stock, and (iii)
the Trustee shall have no fiduciary obligation to the Shareholders
or to the Pledgor of any kind as a result of this security interest
in the Pledged Stock.

SECTION 11. <u>Event of Default; Remedies upon Default</u>.

A. Each of the following shall constitute an Event
of Default ("Event of Default") under this Agreement:

1. an event of default as defined elsewhere
   in this Agreement;

2.  any Shareholder or Defendant shall fail to perform or observe any term or agreement contained in this Agreement on its part to be performed or observed;

3.  a notice of lien, levy, or assessment is filed or recorded with respect to all or a substantial part of the Pledgor's assets or the Pledged Stock;

4.  all or a substantial part of the Pledgor's assets or Pledged Stock are attached, seized, subjected to a writ or distress warrant, or is levied upon, or comes within the possession of any receiver, trustee, custodian or assignee-for the benefit of creditors.

B.  If any Event of Default shall have occurred, and the required notice and cure period, if any, has passed, Beneficiary shall be entitled to exercise any and all of the rights it has with respect to the Pledgor's assets or the Pledged Stock under the terms of this Agreement. Specifically, without limiting the foregoing, and in addition to all other rights and remedies provided to Beneficiary under this Agreement, or otherwise, Beneficiary shall, in each and every case, at any time thereafter have the right (but no obligation) in its sole and absolute discretion to exercise and/or enforce any one or more of the following rights and remedies against the Pledgor's assets and/or the Pledged Stock, which rights and remedies may be enforced without first proceeding against the Shareholders or Defendants:

1.  Take possession of the Pledgor's assets (to the extent not already in Beneficiary's possession) and of any and all books of account and records of

000037

Shareholders relating to any of the Pledgor's assets;

2. Place Beneficiary's representatives upon any premises on which the Pledgor's assets or any part thereof or any such books of account or records may be situated, with full power to remove the same therefrom;

3. Arrange for and conduct a sale of any or all of the Pledgor's assets or the Pledged Stock at public or private sale, as Beneficiary may elect, which sale may be conducted by an employee or representative of Beneficiary, and such sale shall be considered to be a sale in a commercially reasonable manner;

4. Release, temporarily or otherwise, to Shareholders any item of Pledgor's assets of which Beneficiary has taken possession, without waiving any rights granted to Beneficiary hereunder; and

5. Exercise, in the name of Shareholders and/or in the name of Beneficiary, such rights and powers with respect to the Pledgor's assets or the Pledged Stock as Shareholders might exercise, including, without limitation, the right: (i) to enter into any extension, reorganization, deposit, merger, consolidation, or other agreement pertaining to the obligations hereunder, or deposit, surrender, accept, hold, or apply other property in exchange

for the Pledgor's assets or the Pledged Stock or any part thereof; (ii) to insure, process, and preserve the Pledgor's assets or the Pledged Stock; (iii) to reserve, open, and dispose of mail addressed to Shareholders relating to the Pledgor's assets or the Pledged Stock or any part thereof; (iv) to collect and endorse, receive and give receipts for, all dividends, interest, payments, proceeds, and other sums and property now or hereafter payable on or on account of the Pledgor's assets or the Pledged Stock or any part thereof or on account of its disposition; (v) to initiate, pursue, compromise, settle, or withdraw any claims, suits or proceedings pertaining to the Pledgor's assets or the Pledged Stock or any part thereof or to any dividend, interest, or to the payment on or on account of the Pledgor's assets or the Pledged Stock or any part thereof or on account of its disposition; (vi) to take possession of and endorse in the name of the Shareholders and/or in the name of Beneficiary any bills of exchange, checks, drafts, money orders, notes, or any chattel paper, documents, or instruments constituting all or any part of the Pledgor's assets or the Pledged Stock or received as dividend, interest, rent, or other payment on or on account of the Pledgor's assets or the Pledged Stock or any part hereof, or on account of its disposition; (vii) to appoint another (who may be an employee,

officer, or other representative of Beneficiary) to do any other action upon the security interest in the Pledgor's assets or the Pledged Stock or any part thereof.

C. Furthermore, if any Event of Default shall have occurred, Beneficiary may exercise in respect of the Pledgor's assets or the Pledged Stock, in addition to other rights and remedies and provided for in this Agreement, herein or otherwise available to it, all the rights and remedies of a secured party upon a default under the Uniform Commercial Code in effect in the State of Maryland at that time (the "Code").

D. Any notices required under the Code with respect to the sale or other disposition of the Pledgor's assets or the Pledged Stock shall be deemed reasonable if mailed by Beneficiary to the Shareholders at their last known address at least five (5) days prior to disposition of the Pledgor's assets or the Pledged Stock and, in the case of a private sale of Pledgor's assets or the Pledged Stock, need state only that Beneficiary intends to negotiate the purchase and sale.

E. If the Beneficiary exercises its options pursuant to this Section and sells the assets of the Pledgor, the amount owed by the Pledgor pursuant to the promissory note attached hereto as Exhibit "A" and the amount guaranteed by the Guarantors pursuant to Exhibit "B", shall be reduced by the amount of the monies collected by the Beneficiary by reason of said sale.

SECTION 12. Expenses.

A. After an Event of Default the Shareholders will upon demand pay to Beneficiary, the amount of any and all reasonable expenses including the fees and expenses of its counsel and of any experts and agents, which Beneficiary may incur in connection with (i) the administration of this Agreement, (ii) the

custody or preservation of, or the sale of, collection from, or other realization upon, any of the Pledgor's assets or the Pledged Stock, (iii) the release of any of the Pledgor's assets; (iv) the exercise of enforcement of any of the rights of Beneficiary hereunder; or (v) the failure by the Shareholders to perform or observe any of the provisions hereof.

B.    The Shareholders will pay all transfer and recordation taxes and other costs associated with Beneficiary's perfection of the security interest granted herein, not to exceed Two Hundred Fifty Dollars ($250.00).

SECTION 13.    Security Interest Absolute.    All rights of Beneficiary hereunder, all obligations of the Shareholders hereunder, shall be absolute and unconditional irrespective of:

1.    any lack of validity or enforceability of this Agreement or any other agreement or instrument relating thereto;

2.    any change in the time, manner or place of payment of, or in any other term of, or any of the obligations under this Agreement, or any other amendment or waiver of or any consent to any departure from this Agreement;

3.    any exchange, release or non-perfection of any other collateral, or any release or amendment or waiver of or consent or departure from any guaranty, for all or any of the obligations hereunder; or

4.    any other circumstances which might otherwise constitute a defense available to, or a discharge of, any Shareholder or

Defendant in respect of the obligations under this Agreement.

SECTION 14.  **Amendments, Waivers and Consents.**  No amendment or waiver of any provision of this Agreement nor consent to any departure by the Defendants herefrom, shall in any event be effective unless the same shall be in writing and signed by Beneficiary, and then such amendment, waiver or consent shall be effective only in the specific instance and for the specific purpose for which given.  All rights and remedies of Beneficiary are cumulative and concurrent and the exercise of one right or remedy shall not be deemed a waiver or release of any other right or remedy.

SECTION 15.  **Continuing Security Interest.**  In accordance with the terms hereof, this Agreement shall create a continuing security interest in the Pledgor's assets or the Pledged Stock and shall (i) remain in full force and effect until released by Beneficiary in accordance with the terms of this Agreement; (ii) be binding upon the Defendants, their successors and assigns; and (iii) inure to the benefit of Beneficiary and its successors, transferees and assigns.

SECTION 16.  **Participation or Sale.**  Notwithstanding any other provision of this Agreement, the Pledgor and Defendants understand that Beneficiary has the right, any time after December 31, 1996, to sell all its interest, title and rights under this Agreement and the related documents to a third party or parties. Provided, however, that Shareholders shall receive thirty (30) days notice of any bona fide offer to purchase Beneficiary's interest, title and rights under this Agreement and the other documents executed herewith and Shareholders shall have an option to match such offer within that same thirty (30) day period.  So long as Pledgor or Defendants are not in default, Beneficiary will not sell or assign its interest under this Agreement to John C. Flood of Virginia, Inc., or to Leif Hanson, or to any party, individual or corporate, related to such parties, their heirs or assigns.

7.   <u>Binding Effect, Assignment; and Entire Agreement</u>.  This Agreement shall inure to the benefit of, and shall be binding upon, the respective successors and permitted assigns of the parties hereto.  The Pledgor and Defendants have no right to assign any of their rights or obligations hereunder without the prior written consent of Beneficiary, which may be withheld in the sole and absolute discretion of the Beneficiary.  This Agreement, and the documents executed and delivered pursuant hereto and in connection herewith, constitute the entire agreement between the parties and may be amended only by a writing signed on behalf of each party.

8.   <u>Severability</u>.  If any provision of this Agreement shall be held invalid under any applicable laws, such invalidity shall not affect any other provision of this Agreement that can be given effect without the invalid provision, and, to this end, the provisions hereof are severable.

9.   <u>Counterparts</u>.  This Agreement may be executed in any number of counterparts, each of which shall be deemed to be an original, but all of which together shall constitute but one and the same instrument.

10.  <u>Governing Law; Terms</u>.  The Pledgor and the Defendants recognize that this Agreement is made in the State of Maryland and that it is to be construed under the laws of the State of Maryland. The Pledgor and the Defendants hereby consent to be sued in an appropriate court in the State of Maryland and/or the Commonwealth of Virginia and/or in the United States Bankruptcy Court for the District of Maryland in any action to enforce the provisions of this Agreement.  Pledgor and the Defendants waive any objection to the venue of any action filed by the holder of this Agreement against Pledgor and Defendants in any State or Federal Court of Maryland or Virginia, and waive any claim of <u>forum non conveniens</u> or for transfer of any such action to any other court.  The Pledgor and the Defendants hereby irrevocably agree that any service of process required under state or federal law will be complete and

effective upon them by deposit of said process with the United States Post Office, postage prepaid, addressed to Pledgor and the Defendants individually. This Agreement shall be governed by and construed in accordance with the laws and decisions of the State of Maryland.   Unless otherwise defined herein, terms defined in Article 9 of the Code are used herein as therein defined.

11. Pledgor and the Defendants covenant and agree not to create or consent to the imposition of any lien, lease, encumbrance, easement, reservation, limitation, covenant, condition or restriction upon any of their real property or any personal or real property owned by Pledgor until all payments have been made under this Agreement without obtaining the prior written consent of Beneficiary, such consent not to be unreasonably withheld.

12. The Pledgor and Defendants covenant and agree that they will not create or use any new operating entities and that John C. Flood Inc., John C. Flood of MD, Inc. and John C. Flood D.C., Inc. will be the sole and exclusive operating entities for all their operations no matter where located. All pre-existing corporations, partnerships and other business entities are no longer being operated and all operations of such entities have terminated and will not resume until all obligations under this Agreement have been satisfied. Articles of Dissolution, filed stamped as received by the State Department of Assessments and Taxation, or such other proof of dissolution as may be acceptable to Beneficiary in its sole discretion, for JCF, Inc. and MCMD, Inc. and Plumcom will be provided to Beneficiary at the earliest possible date, and no later than February 1, 1997. The Defendants further represent that John C. Flood of MD, Inc. and John C. Flood of D.C., Inc. have been operating throughout the term of the receivership but that JCF, Inc., MCMD, Inc. and Plumcom have not operated since before the imposition of the receivership.

13. The Defendants further covenant and agree that they will not operate any business, other than John C. Flood, Inc., John C.

Flood of MD, Inc. and John C. Flood of D.C., Inc., until all payments to Beneficiary are completed under this Agreement unless express written approval is first obtained from Beneficiary.

14. The Defendants further covenant and agree that until all payments to Beneficiary are completed under this Agreement, the Statute of Limitations on the causes of actions set forth in the Complaint pending in Adversary Proceeding No. 95A-215 and the Adversary Proceedings filed by the Trustee against Melville Davis, Florence Davis, Mark Crooks and Lydia Crooks to determine their discharge pursuant to 11 U.S.C. §727 are tolled and all further proceedings in these Adversary Proceedings will be deemed settled pending completion of all payments under this Agreement.

15. The parties agree that Beneficiary, at its cost, has the right to oversight over Pledgor's operations, such oversight to be no more onerous than that which occurred during the receivership.

16. The Beneficiary agrees that upon completion of all payments due under this Agreement (a) all adversary proceedings initiated by the Trustee against the Defendants will be dismissed with prejudice; (b) all stock of Pledgor held by Beneficiary will be returned to the party designated by Pledgor; and (c) Beneficiary will release all security interests in the property of Pledgors or Defendants and upon conclusion of the Trustee's liquidation of the bankruptcy estate and distribution thereof, Beneficiary will execute a mutual release with Pledgor and Defendants.

17. Beneficiary, in accordance with this Agreement and pursuant to the Order, is transferring all stock and beneficial interest in John C. Flood of MD, Inc. and John C. Flood of D.C., Inc., and the tradenames of John C. Flood, Inc. and Flood, Inc., and good will associated therewith, to Joanne and Robert Smiley, their heirs and assigns, to have and to hold such property as fully and completely as Beneficiary by virtue of the Order might or should sell and convey the same. Except as expressly set forth in

000045

this Agreement, there are no other debts, amounts due, collections or monies owed to or due to the Beneficiary from these Defendants including, but not limited to, costs, expenses, fees or attorney's fees incurred by or on behalf of the Beneficiary from these Defendants. Notwithstanding anything to the contrary, nothing in this Agreement shall be construed as limiting or otherwise impairing the Trustee's right and authority to liquidate assets of the Bankruptcy estates and make distributions to the creditors thereof.

18. <u>Notices</u>. All notices, certificates or other written communications hereunder shall be sufficiently given if in writing and personally delivered, or mailed by registered or certified mail, postage prepaid, return receipt requested, addressed as follows:

| | |
|---|---|
| If to Pledgor: | John C. Flood, Inc.,<br>John C. Flood of MD, Inc., and<br>John C. Flood of D.C., Inc.<br>Attn: Joanne Smiley<br>711 Kennedy Street, N.W.<br>Washington, D.C.  20011 |
| If to Trustee: | Michael G. Rinn<br>111 Warren Road, Suite 4<br>Cockeysville, Maryland  21030 |
| If to Receiver: | KMR Management, Inc.<br>c/o Mr. Roman P. Fedirka<br>51 South Keswick Avenue<br>Glenside, PA  19038 |
| With copy to: | John Morrissey, Esquire<br>4201 North View Drive<br>Bowie, Maryland  20716 |
| With copy to: | Paul-Michael Sweeney, Esquire<br>Linowes and Blocher LLP<br>1010 Wayne Avenue, 10th Floor<br>Silver Spring, Maryland  20910 |
| If to Defendants: | JCF, Inc.<br>711 Kennedy Street, N.W.<br>Washington, D.C.  20011 |

MCMD, Inc.
c/o Joanne Smiley, Resident Agent
107 Meadow Road
Riva, Maryland  21012

Melville Davis
3501 Mobile Court
Davidsonville, Maryland  21035

Florence Davis
3501 Mobile Court
Davidsonville, Maryland  21035

Joanne Smiley
107 Meadow Road
Riva, Maryland  21012

Robert B. Smiley
107 Meadow Road
Riva, Maryland  21012

Mark Crooks
179 Dividing Court
Riva, Maryland  21012

Lydia Crooks
179 Dividing Court
Riva, Maryland  21012

20.  WAIVER OF JURY TRIAL.  THE PLEDGOR AND THE DEFENDANTS

JOINTLY AND SEVERALLY HEREBY SPECIFICALLY WAIVE TRIAL BY JURY IN

ANY ACTION BROUGHT ON OR WITH RESPECT TO THIS AGREEMENT OR THE DEBT

SECURED HEREBY.  THIS WAIVER IS KNOWINGLY, WILLINGLY AND

VOLUNTARILY MADE BY THE PLEDGOR AND THE DEFENDANTS, AND THE PLEDGOR

AND THE DEFENDANTS HEREBY REPRESENT THAT NO ORAL OR WRITTEN

STATEMENTS HAVE BEEN MADE BY ANY PARTY TO INDUCE THIS WAIVER OF

TRIAL BY JURY OR TO IN ANY WAY MODIFY OR NULLIFY ITS STATED EFFECT.

THE PLEDGOR AND THE DEFENDANTS FURTHER REPRESENT THAT THEY HAVE

BEEN REPRESENTED BY INDEPENDENT COUNSEL, SELECTED OF THEIR OWN FREE

WILL, IN THE SIGNING OF THIS AGREEMENT AND IN THE MAKING OF THIS

WAIVER AND THAT THEY HAVE HAD THE OPPORTUNITY TO DISCUSS THIS WAIVER WITH SUCH COUNSEL.

21. <u>Miscellaneous</u>. The paragraph headings of this Agreement are for convenience only and shall not limit or otherwise affect any of the terms hereof. Neither this Agreement nor any term, condition, covenant, or agreement hereof may be changed, waived, discharged, or terminated orally, but only by an instrument in writing signed by the party against whom enforcement of the change, waiver, discharge, or termination is sought. This Agreement shall be binding upon the Pledgor and the Defendants and is not assignable or transferable by Pledgor or the Defendants without the Beneficiary's prior written consent and this Agreement shall inure to the benefit of the successors and assigns of the Beneficiary. As used herein, the singular number shall include the plural, the plural the singular, and the use of the masculine, feminine, or neuter gender shall include all genders, as the context may require, and the term "person" shall include an individual, a corporation, an association, a partnership, a trust, and an organization.

[SIGNATURE PAGES FOLLOW]

000048

WITNESS:                                    TRUSTEE:

_____                   _____
Gie M Harris                                Michael G. Rinn     TRUSTEE.

_____                   RECEIVER:

                                            _____
                                            Roman P. Fedirka     JRMR MGT. INC. RECEIVER

                                            PLEDGOR:

                                            JOHN C. FLOOD, INC.

_____                   By: _____ [SEAL]
                                            Name: JOANNE SMILEY
                                            Title: PRESIDENT

                                            PLEDGOR:

                                            John C. Flood of MD, INC.

_____                   By: _____ [SEAL]
                                            Name: JOANNE SMILEY
                                            Title: PRESIDENT

                                            PLEDGOR:

                                            JOHN C. FLOOD OF D.C., INC.

_____                   By: _____ [SEAL]
                                            Name: JOANNE SMILEY
                                            Title: PRESIDENT

000049

JCF, INC.

By: _____ [SEAL]
Name: JOANNE SMILEY
Title: PRESIDENT

MCMD, INC.

By: _____ [SEAL]
Name: MELVILLE DAVIS
Title: PRESIDENT

_____ [SEAL]
MELVILLE DAVIS

_____ [SEAL]
FLORENCE DAVIS

_____ [SEAL]
JOANNE SMILEY

_____ [SEAL]
ROBERT B. SMILEY

_____ [SEAL]
MARK CROOKS

_____ [SEAL]
LYDIA CROOKS

000050

\* \* \*

STATE OF MARYLAND          \*
                           \*   to wit:
COUNTY OF Harford          \*

    I HEREBY CERTIFY that on this 15th day of February,
1996, before me, a Notary Public in and for the State and County
aforesaid, personally appeared Michael G. Rinn, known to me (or
satisfactorily proven) to be the person whose name is subscribed to
the foregoing and annexed instrument and acknowledged that said
individual executed the same for the purposes therein contained.

    IN WITNESS WHEREOF, I hereunto set my hand and official seal.

                                     _Sandra M. Wirtanen_
                                           Notary Public

My Commission Expires:     Sandra M. Wirtanen, Notary Public
                                  Harford County
                                 State of Maryland
[NOTARIAL SEAL]            My Commission Expires Oct. 21, 1998

                        \* \* \*

STATE OF MARYLAND          \*
                           \*   to wit:
COUNTY OF Montgomery        \*

    I HEREBY CERTIFY that on this 20th day of February,
1996, before me, a Notary Public in and for the State and County
aforesaid, personally appeared Roman P. Fedirka, known to me (or
satisfactorily proven) to be the person whose name is subscribed to
the foregoing and annexed instrument and acknowledged that said
individual executed the same for the purposes therein contained.

    IN WITNESS WHEREOF, I hereunto set my hand and official seal.

                                      _Marian J. Bucktest_
                                           Notary Public

My Commission Expires: 7-1-96

[NOTARIAL SEAL]

000051

\* \* \*

STATE OF MARYLAND                    \*
                                     \*    to wit:
COUNTY OF Prince George's            \*


    I HEREBY CERTIFY that on this 12th day of February ,
1996, before me, a Notary Public in and for the State and County
aforesaid, personally appeared Joanne Smiley , known to
me (or satisfactorily proven) to be the President
of John C. Flood, Inc., a Maryland corporation, and
that such corporate officer, being authorized to do so, executed
the foregoing and annexed instrument for the purposes therein
contained by signing the name of the said corporation.

    IN WITNESS WHEREOF, I hereunto set my hand and official seal.

_Dorothy A. Grabarek_
Notary Public

My Commission Expires: 3-10-97

[NOTARIAL SEAL]

\* \* \*

STATE OF MARYLAND                    \*

                                     \*   to wit:

COUNTY OF Prince Georges             \*


    I HEREBY CERTIFY that on this 12th day of February , 1996, before me, a Notary Public in and for the State and County aforesaid, personally appeared Melville Davis, known to me (or satisfactorily proven) to be the person whose name is subscribed to the foregoing and annexed instrument and acknowledged that said individual executed the same for the purposes therein contained.

    IN WITNESS WHEREOF, I hereunto set my hand and official seal.

Dorothy G. Grabarek

Notary Public

My Commission Expires: 3-10-97

[NOTARIAL SEAL]

000053

\* \* \*

STATE OF MARYLAND                *

                                 *     to wit:

COUNTY OF Prince George's        *


    I HEREBY CERTIFY that on this _12th_ day of _February_,
1996, before me, a Notary Public in and for the State and County
aforesaid, personally appeared _Joanne Smiley_, known to
me (or satisfactorily proven) to be the _President_
of JCF, Inc., a _Maryland_ corporation, and that such
corporate officer, being authorized to do so, executed the
foregoing and annexed instrument for the purposes therein contained
by signing the name of the said corporation.

    IN WITNESS WHEREOF, I hereunto set my hand and official seal.

                              _Dorothy A. Grabarek_
                                 Notary Public

My Commission Expires: _3-10-97_

[NOTARIAL SEAL]

000054

\* \* \*

STATE OF MARYLAND                \*
                                 \*    to wit:
COUNTY OF PRINCE GEORGE'S         \*


    I HEREBY CERTIFY that on this 12th day of February,
1996, before me, a Notary Public in and for the State and County
aforesaid, personally appeared Joanne Smiley, known to
me (or satisfactorily proven) to be the President
of John C. Flood of MD, Inc., a Maryland corporation,
and that such corporate officer, being authorized to do so,
executed the foregoing and annexed instrument for the purposes
therein contained by signing the name of the said corporation.

    IN WITNESS WHEREOF, I hereunto set my hand and official seal.

Dorothy A. Grabarek
_____
Notary Public

My Commission Expires: 3-10-97

[NOTARIAL SEAL]

000055

\* \* \*

STATE OF MARYLAND                    \*
                                     \*    to wit:
COUNTY OF Prince George's            \*

    I HEREBY CERTIFY that on this 12th day of February,
1996, before me, a Notary Public in and for the State and County
aforesaid, personally appeared Joanne Smiley, known to
me (or satisfactorily proven) to be the President
of John C. Flood of D.C., Inc., a District of Columbia corporation,
and that such corporate officer, being authorized to do so,
executed the foregoing and annexed instrument for the purposes
therein contained by signing the name of the said corporation.

    IN WITNESS WHEREOF, I hereunto set my hand and official seal.

                        Dorothy A. Grabarek
                            Notary Public

My Commission Expires: 3-10-97

[NOTARIAL SEAL]

\* \* \*

STATE OF MARYLAND                    \*
                                     \*  to wit:
COUNTY OF Prince Georges             \*

    I HEREBY CERTIFY that on this 12th day of February ,
1996, before me, a Notary Public in and for the State and County
aforesaid, personally appeared Melville Davis , known to
me (or satisfactorily proven) to be the President
of MCMD, Inc., a Maryland corporation, and that such
corporate officer, being authorized to do so, executed the
foregoing and annexed instrument for the purposes therein contained
by signing the name of the said corporation.

    IN WITNESS WHEREOF, I hereunto set my hand and official seal.

_Dorothy A. Grabarek_
Notary Public

My Commission Expires: 3-10-97

[NOTARIAL SEAL]

\* \* \*

STATE OF MARYLAND                    \*
                                     \*  to wit:
COUNTY OF Prince George's            \*

    I HEREBY CERTIFY that on this 12th day of February ,
1996, before me, a Notary Public in and for the State and County
aforesaid, personally appeared Melville Davis, known to me (or
satisfactorily proven) to be the person whose name is subscribed to
the foregoing and annexed instrument and acknowledged that said
individual executed the same for the purposes therein contained.

    IN WITNESS WHEREOF, I hereunto set my hand and official seal.

_Dorothy A. Grabarek_
Notary Public

My Commission Expires: 3-10-97

[NOTARIAL SEAL]

* * *

STATE OF MARYLAND          *
COUNTY OF PRINCE GEORGE'S   *   to wit:
                              *

    I HEREBY CERTIFY that on this 12th day of February, 1996, before me, a Notary Public in and for the State and County aforesaid, personally appeared Florence Davis, known to me (or satisfactorily proven) to be the person whose name is subscribed to the foregoing and annexed instrument and acknowledged that said individual executed the same for the purposes therein contained.

    IN WITNESS WHEREOF, I hereunto set my hand and official seal.

Dorothy A. Grabarek<br>
Notary Public

My Commission Expires: 3-10-97

[NOTARIAL SEAL]

* * *

STATE OF MARYLAND          *
COUNTY OF PRINCE GEORGE'S   *   to wit:
                              *

    I HEREBY CERTIFY that on this 12th day of February, 1996, before me, a Notary Public in and for the State and County aforesaid, personally appeared Joanne Smiley, known to me (or satisfactorily proven) to be the person whose name is subscribed to the foregoing and annexed instrument and acknowledged that said individual executed the same for the purposes therein contained.

    IN WITNESS WHEREOF, I hereunto set my hand and official seal.

Dorothy A. Grabarek<br>
Notary Public

My Commission Expires: 3-10-97

[NOTARIAL SEAL]

621-001/1020796pms/settle.04          39

000058

\* \* \*

STATE OF MARYLAND                    \*
                                     \*   to wit:
COUNTY OF Prince George's            \*

    I HEREBY CERTIFY that on this 12th day of February,
1996, before me, a Notary Public in and for the State and County
aforesaid, personally appeared Robert B. Smiley, known to me (or
satisfactorily proven) to be the person whose name is subscribed to
the foregoing and annexed instrument and acknowledged that said
individual executed the same for the purposes therein contained.

    IN WITNESS WHEREOF, I hereunto set my hand and official seal.

                                 Dorothy A. Grabarek
                                       Notary Public

My Commission Expires: 3-10-97

[NOTARIAL SEAL]

\* \* \*

STATE OF MARYLAND                    \*
                                     \*   to wit:
COUNTY OF Prince George's            \*

    I HEREBY CERTIFY that on this 12th day of February,
1996, before me, a Notary Public in and for the State and County
aforesaid, personally appeared Mark Crooks, known to me (or
satisfactorily proven) to be the person whose name is subscribed to
the foregoing and annexed instrument and acknowledged that said
individual executed the same for the purposes therein contained.

    IN WITNESS WHEREOF, I hereunto set my hand and official seal.

                                   Dorothy A. Grabarek
                                       Notary Public

My Commission Expires: 3-10-97

[NOTARIAL SEAL]

\* \* \*

STATE OF MARYLAND        \*

COUNTY OF PRINCE GEORGE'S    \*  to wit:

                                      \*

       I HEREBY CERTIFY that on this 13th day of February,
1996, before me, a Notary Public in and for the State and County
aforesaid, personally appeared Lydia Crooks, known to me (or
satisfactorily proven) to be the person whose name is subscribed to
the foregoing and annexed instrument and acknowledged that said
individual executed the same for the purposes therein contained.

       IN WITNESS WHEREOF, I hereunto set my hand and official seal.

                                   Dorothy J. Grabarek
                                       Notary Public

My Commission Expires:   3-10-97

[NOTARIAL SEAL]

000060

## EXHIBIT "A"

### IMPORTANT NOTICE

**THIS INSTRUMENT CONTAINS A CONFESSION OF JUDGMENT PROVISION WHICH CONSTITUTES A WAIVER OF IMPORTANT RIGHTS YOU MAY HAVE AS A DEBTOR AND ALLOWS THE CREDITOR TO OBTAIN A JUDGMENT AGAINST YOU WITHOUT ANY FURTHER NOTICE.**

### PROMISSORY NOTE

$425,000.00                                   _____, Maryland

                                               February 12___, 1996

    FOR VALUE RECEIVED, JOANNE SMILEY, ROBERT SMILEY, JOHN C. FLOOD, INC., a Maryland corporation, JOHN C. FLOOD OF MD, INC., a Maryland corporation, and JOHN C. FLOOD OF D.C., INC., a District of Columbia corporation (collectively, the "Makers"), jointly and severally promise to pay to the order of MICHAEL G. RINN, Trustee in Adversary Proceeding No. 95A-215 in the United States Bankruptcy Court for the District of Maryland (or his successors or assigns) (the "Payee"), the principal sum of FOUR HUNDRED TWENTY-FIVE THOUSAND DOLLARS ($425,000.00). Said principal sum shall be payable as set forth hereinbelow.

    The principal balance of this Note shall be payable as follows:

    (a) One lump sum payment of $13,333.32 upon execution of this Note and

    (b) Beginning on February 26, 1996, and continuing on the twenty-sixth day of each and every calendar month thereafter through and including December 26, 2000, Makers shall pay to the holder of this Note the sum of $6,666.66; and

    The Makers shall have the right to make a one-half payment of the monthly amount that is due and owing in any three months out of a twelve month period while this Promissory note is in effect. The Makers agree and understand that if they elect to make a one-half payment pursuant to this section for any month, they must, in addition to their normal monthly amount, pay the other one-half payment during the following nine months in equal monthly one-ninth (1/9) portions during that nine (9) months. If the makers elect to make one-half payments for three consecutive months, the nine month payback period shall commence at the end of the third month. If the Maker elects to make a one-half payment in one month, but then makes a full payment the next month, Maker agrees that repayment must begin at the beginning of the second

month and that the Maker will not be able to elect a one-half payment in another month until the first month's half payment is completely paid.

After Beneficiary sends written notice of default in the payments required hereunder to Makers c/o Joanne Smiley, 711 Kennedy Street, N.W., Washington, D.C. 20011, by regular first class mail, Makers shall have seven (7) calendar days to cure said default.

The entire unpaid principal balance in the amount of Twenty-Five Thousand Dollars ($25,000.00), and all other obligations of Makers hereunder, if not sooner paid, shall be due and payable in full on December 26, 2000 ("Maturity Date").

All regular monthly payments made on account hereof shall be applied first to the payment of any late charges accrued and due, then to accrued and unpaid interest, then to unpaid principal then due and payable, and any remainder of any such payment shall be applied to unpaid principal to be due and payable on the Maturity Date, and thereafter to any unpaid installments of principal in the inverse order of maturity.

All payments of principal and other sums due hereunder shall be made during regular business hours, c/o Michael G. Rinn, Trustee, 111 Warren Road, Suite 4, Cockeysville, Maryland 21030, or at such other place as the holder of this Note may from time to time designate in writing and shall be made in lawful money of the United States of America which at the time of payment shall be legal tender for the payment of public and private debts. All such payments hereunder shall be made without offset, demand, counterclaim, deduction, or recoupment, each of which Makers hereby waive.

It is expressly agreed that time is of the essence of this Note. In the event of a default in the payment of any amount hereunder as and when the same becomes due and payable, or in the event of default in the performance of any of the terms, covenants, conditions or provisions of that certain Settlement and Forbearance Agreement dated February 12, 1996 by and among Payee, Roman P. Fedirka (the "Receiver"), Makers, and the other defendants in Adversary Proceeding 95A-215 (the "Agreement"), or that certain Security Agreement dated February 12, 1996 between the Trustee and the Receiver and John C. Flood, Inc., John C. Flood of MD, Inc. and John C. Flood of D.C., Inc. (the "Security Agreement"), or any of the other documents executed in connection herewith, or in the event of Makers' failure to comply with any of the terms, covenants, conditions or provisions of the Order Granting Motion for Entry of Order Authorizing Private Sale of Stock and Other Assets Free and Clear of Liens and Approving Settlement, entered in Adversary Proceeding No. 95A-215 in the United States Bankruptcy Court for the District of Maryland, then, and in any of such events, the holder hereof may, at the option of such holder, declare the entire outstanding principal balance hereof, together

with late charges and any liquidated damages to be immediately due and payable without demand or further notice to the Makers or any other person. Failure of the holder to exercise any rights hereunder shall not constitute its waiver of the right to the later exercise thereof. All costs of collection or of enforcement of the holder's rights under this Note, the Agreement, the Security Agreement, or under any other instruments now or hereafter executed in favor of holder which in any manner evidence or constitute additional security for this Note, including attorneys' fees, whether suit is brought or not, shall be paid by the Makers on demand.

The privilege is hereby reserved by the Makers to prepay the principal of this Note in whole or in part at any time and from time to time without premium or penalty, upon no less than 30 days' prior written notice to the holder hereof. Partial prepayments shall not postpone or reduce any regular payments of principal, but shall be credited first to the payment of any late charges accrued and due, then to unpaid principal to be due and payable on the Maturity Date and then, if applicable, to any unpaid installments of principal in the inverse order of maturity.

Notwithstanding any provision herein or in any other instrument or document executed in connection herewith, the total liability for payments in the nature of interest shall not exceed the limits now imposed by the usury laws of the jurisdiction whose laws govern the interpretation and enforcement of this Note. If by reason of the acceleration of the unpaid principal balance of this Note for any cause, or if, for any other reason, interest in excess of the highest legal contract rate in said jurisdiction shall at any time be paid, any such excess shall constitute and be treated as a payment on the principal hereof and shall operate to reduce such principal balance.

If any provision (or any part of any provision) contained in this Note shall for any reason be held or deemed to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provision (or remaining part of the affected provision) of this Note, and this Note shall be construed as if such invalid, illegal or unenforceable provision (or part thereof) had never been contained herein and the remaining provisions of this Note shall remain in full force and effect.

The Makers, all endorsers and guarantors hereof, and all others who may become liable for all or any part of the obligation evidenced hereby, waive presentment, demand, protest, notice of demand and of dishonor and of nonpayment, and any and all lack of diligence or delays in collection or enforcement hereof. The Makers and all endorsers and guarantors hereof further jointly and severally expressly agree with the holder hereof that said holder may, from time to time, extend or renew this Note or any payment hereunder without notice, in such manner, on such terms and for such time(s) as the holder may see fit, all without in any way affecting or releasing the liability of the Makers and all endorsers and guarantors hereof.

000063

Confession of Judgment. In the event any default shall occur hereunder or under any other document evidencing or securing the indebtedness evidenced hereby, the Makers authorize the clerk, Paul-Michael Sweeney or any attorney of any court of record to appear for Makers in any court of competent jurisdiction, to waive the issuance and service of process and to enter judgment by confession in favor of the holder of this Note for the balance (principal and all other sums evidenced or secured by the other documents executed in connection herewith) then due on this Note, together with court costs, prejudgment interest at the rate of six (6%) interest from the date of default until the date of judgment and post-judgment interest at the legal rate, and an attorney's fee of fifteen percent (15%) of the principal and interest then due hereunder. No single exercise of the foregoing power to confess judgment shall be deemed to exhaust the power, whether or not any such exercise shall be held by any court to be invalid, voidable or void, but the power shall continue undiminished, and it may be exercised from time to time as often alone, as the holder of this Note shall elect, until such time as the holder of this Note shall have received payment in full of all indebtedness of Makers to the holder of this Note. In addition, the Makers hereby irrevocably constitute and appoint Paul-Michael Sweeney, Bradford F. Englander and any other officer of the Payee (or its successor as holder of the Agreement), any one of whom may act alone, as the Makers' true and lawful attorneys-in-fact to appear in the Clerk's Office of the Fairfax County Circuit Court in the Commonwealth of Virginia, City of Alexandria Circuit Court, Arlington County Circuit Court, and any other state or federal court in the Commonwealth of Virginia or the State of Maryland, and confess judgment against the Makers and any sureties, endorsers, or guarantors hereof for all sums due under the Note (including, without limitation, all principal, interest, late charges, disbursements and costs) together with an attorneys' fee equal to fifteen percent (15%) of such indebtedness. The Makers hereby ratify and confirm the acts of said attorneys-in-fact as fully as if done by the Makers themselves. The Makers waive the benefit of any and every statute, ordinance, or rule of court which may be lawfully waived conferring upon the Makers any right or privilege of exemption, stay of execution, or supplementary proceedings, or other relief from the immediate enforcement of a judgment or related proceedings on a judgment. The authority and power to appear for an enter judgment against the Makers shall not be exhausted by one or more exercises thereof, nor by any imperfect exercise thereof, and shall not be extinguished by any judgment entered pursuant thereto. Such authority and power may be exercised on one or more occasions from time to time, in the same or different jurisdictions, as often as the holder of this Note shall deem advisable.

WAIVER OF TRIAL BY JURY. THE MAKERS HEREBY WAIVE TRIAL BY JURY IN ANY ACTION OR PROCEEDING ARISING OUT OF OR IN ANY WAY PERTAINING TO THIS NOTE AND/OR ANY OF THE OTHER DOCUMENTS EVIDENCING OR SECURING THE TRANSACTION EVIDENCED HEREBY. THIS WAIVER IS KNOWINGLY, WILLINGLY AND VOLUNTARILY MADE BY MAKERS, AND MAKERS HEREBY REPRESENT THAT NO ORAL OR WRITTEN STATEMENTS HAVE

BEEN MADE BY ANY PARTY TO INDUCE THIS WAIVER OF TRIAL BY JURY OR TO IN ANY WAY MODIFY OR NULLIFY ITS STATED EFFECT.    MAKERS FURTHER REPRESENT THAT THEY HAVE BEEN REPRESENTED BY INDEPENDENT COUNSEL, SELECTED OF THEIR OWN FREE WILL, IN THE SIGNING OF THIS NOTE AND IN THE MAKING OF THIS WAIVER AND THAT THEY HAVE HAD THE OPPORTUNITY TO DISCUSS THIS WAIVER WITH SUCH COUNSEL.

Makers recognize that this Note is made in the State of Maryland and that it is to be construed under the laws of the State of Maryland.    The Makers hereby consent to be sued in an appropriate court in the State of Maryland and/or the Commonwealth of Virginia in any action to enforce the provisions of this Note. The Makers waive any objection to the venue of any action filed by the holder of this Note against the Makers in any State or Federal Court of Maryland and/or the Commonwealth of Virginia and waive any claim of forum non conveniens or for transfer of any such action to any other court.    The Makers hereby irrevocably appoint Joanne Smiley and/or Robert Smiley to accept service of process for it and in its behalf in any such proceeding, and to receive any notices required pursuant to this Obligation and Makers further agree that any service of process required under this state or federal law will be complete and effective upon them by deposit of said process with the United States Post Office, postage prepaid, addressed to Joanne Smiley and/or Robert Smiley, 711 Kennedy Street, Washington, D.C. 20011.

[SIGNATURE PAGE FOLLOWS]

IN WITNESS WHEREOF, Makers have executed and sealed this Note as of the day and year first above written.

WITNESS:                              MAKERS:

_____              _____ [SEAL]
                                     JOANNE SMILEY

_____              _____ [SEAL]
                                     ROBERT SMILEY


                                     JOHN C. FLOOD, INC.

_____              By: _____ [SEAL]
                                     Name: JOANNE SMILEY
                                     Title: PRESIDENT


                                     JOHN C. FLOOD OF MD, INC.

_____              By: _____ [SEAL]
                                     Name: JOANNE SMILEY
                                     Title: PRESIDENT


                                     JOHN C. FLOOD OF D.C., INC.

_____              By: _____ [SEAL]
                                     Name: JOANNE SMILEY
                                     Title: PRESIDENT

\* \* \*

## CERTIFICATION

    THIS IS TO CERTIFY that this is the Note described in and secured by that certain Security Agreement and described in a Settlement Agreement, bearing even date herewith, from John C. Flood, Inc., John C. Flood of MD, Inc., John C. Flood of D.C., Inc., Joanne Smiley, Robert Smiley, and certain other parties, in favor of Payee, said Security Agreement and this Note having been executed in my presence.

_Dorothy A. Grabarek_
Notary Public

My Commission Expires: _3-10-97_

[NOTARIAL SEAL]

## EXHIBIT "B"

### IMPORTANT NOTICE

**THIS INSTRUMENT CONTAINS A CONFESSION OF JUDGMENT PROVISION WHICH CONSTITUTES A WAIVER OF IMPORTANT RIGHTS YOU MAY HAVE AS A DEBTOR AND ALLOWS THE CREDITOR TO OBTAIN A JUDGMENT AGAINST YOU WITHOUT ANY FURTHER NOTICE.**

### GUARANTY OF PAYMENT AND PERFORMANCE

THIS GUARANTY OF PAYMENT AND PERFORMANCE (this "Guaranty"), made this 12th day of January, 1996, by Melville Davis and Mark Crooks (together, the "Guarantors"), to and for the benefit of Michael G. Rinn, Trustee, (the "Payee").

### R E C I T A L S:

Recital 1.    Joanne Smiley, Robert Smiley and John C. Flood, Inc., a Maryland corporation, John C. Flood of MD, Inc., a Maryland corporation and John C. Flood of D.C., Inc., a District of Columbia corporation (the "Borrowers"), have executed a promissory note (the "Note") in the amount of Four Hundred Twenty-Five Thousand Dollars ($425,000.00) for the stock and other assets purchased pursuant to that certain Order Granting Motion for Entry of Order Authorizing Private Sale of Stock and Other Assets Free and Clear of Liens and Approving Settlement. The transaction evidencing the purchase and settlement is further evidenced and secured by a Security Agreement, with even date herewith ("Security Agreement"), and a Settlement and Forbearance Agreement, with even date herewith ("Settlement Agreement").

Recital 2.    To induce the Payee to agree to the purchase and settlement and to grant such other accommodations to the Borrowers as the Payee may deem proper, and with full knowledge that the transaction, and any such other accommodations would not be made unless the Guarantors executed and delivered this Guaranty, the Guarantors have agreed with the Payee to guarantee (i) the payment of the principal sum, the interest and any and all other charges provided for in the Note, the Security Agreement and the Settlement Agreement, and (ii) the performance and observance by the Borrowers of all the terms, covenants, conditions and agreements on its part to be performed and observed pursuant to the Security Agreement and the Settlement Agreement.

NOW, THEREFORE, in consideration of, and as a material induce-ment to, the Payee's agreement to sell to Borrowers and settle with the Guarantors and the other Defendants in Adversary Proceeding No. 95A-215 (the "Defendants") and the granting to the Borrowers such other accommodations as the Payee may deem appropriate, and for other good and valuable consideration, the receipt and sufficiency

of which being hereby acknowledged, the undersigned Guarantors hereby covenant to and agree with the Payee as follows:

1.    The Guarantors hereby unconditionally, absolutely and irrevocably, jointly and severally, guarantee to the Payee:

(a)   the due and punctual payment in full (and not merely the collectibility) of the principal of the Note, as required under the terms of the Note, the Security Agreement and the Settlement Agreement and the interest thereon, in each case when due and payable, whether on any installment payment date or at the stated or accelerated maturity, all in accordance with the terms and conditions of the Note, the Security Agreement and the Settlement Agreement; and

(b)   the due and punctual payment in full (and not merely the collectibility) of all other sums and charges which may at any time be due and payable in accordance with, or secured by, the Note, the Security Agreement and the Settlement Agreement; and

(c)   the due and punctual performance and observance of all of the other terms, covenants, conditions and agreements contained in the Note, the Security Agreement and the Settlement Agreement, to be performed and observed by or on the part of Borrowers or any of the other Defendants pursuant to the Note, the Security Agreement and Settlement Agreement.

2.    The Guarantors expressly agree that the Payee may, in its sole and absolute discretion, without notice to or further assent of the Guarantors, and without in any way releasing, affecting or impairing the obligations and liabilities of the Guarantors hereunder:

(a)   waive compliance with, or any defaults under, or grant any other indulgences with respect to, the Note, the Security Agreement or the Settlement Agreement; and

(b)   agree with the Borrowers or any of the other Defendants to modify, amend, or change any provision of the Note, the Security Agreement or Settlement Agreement; and

(c)   grant to the Borrowers or any of the other Defendants extensions or renewals of or with respect to the Note, the Security Agreement or Settlement Agreement, or effect any release, compromise or settlement in connection with the Note, the Security Agreement or Settlement Agreement; and

(d)   agree with the Borrowers or any of the other Defendants to the substitution, exchange, release or other disposition of all or any part of the property or any instrument delivered pursuant thereto; and

(e)   make advances for the purpose of performing any term or covenant contained in the Note, the Security Agreement or

Settlement Agreement with respect to which Borrowers or any of the other Defendants shall be in default; and

     (f)  assign or otherwise transfer the Note, the Security Agreement or Settlement Agreement or this Guaranty or any interest therein or herein, subject to the terms set forth in the Settlement Agreement; and

     (g)  add additional guarantors and release or make settlement with any person or entity comprising the Guarantors; and

     (h)  deal in all respects with Borrowers or any of the other Defendants as if this Guaranty were not in effect.

The obligations of the Guarantors under this Guaranty shall be unconditional, irrespective of the genuineness, validity, regularity or enforceability of the Note, the Security Agreement or Settlement Agreement, or any other security given therefor or in connection therewith or any other circumstances which might otherwise constitute a legal or equitable discharge of a surety or guarantor.

    3.  The liability of the Guarantors under this Guaranty shall be primary, direct and immediate and not conditional or contingent upon pursuit by the Payee of any remedies Payee may have against Borrowers, the Defendants or their successors and assigns, with respect to the Note, the Security Agreement or Settlement Agreement, whether pursuant to the terms thereof or by law. Without limiting the generality of the foregoing, the Payee shall not be required to make any demand on Borrowers or any of the other Defendants, or to sell at foreclosure or otherwise pursue or exhaust its remedies against any secured collateral, or any part thereof or against Borrowers or any of the other Defendants, before, simultaneously with or after enforcing its rights and remedies hereunder against the Guarantors. Any one or more successive or concurrent actions may be brought hereon against the Guarantors either in the same action, if any, brought against Borrowers or any of the other Defendants or on the collateral security or in separate actions, as often as the Payee may deem advisable.

    4.  The Guarantors hereby expressly waive:

     (a)  presentment and demand for payment of the principal of or interest on the Note, the Security Agreement and the Settlement Agreement and protest of nonpayment; and

     (b)  notice of acceptance of this Guaranty and of presentment, demand and protest; and

     (c)  notice of any default hereunder or under the Note, Security Agreement or Settlement Agreement, and of all indulgences; and

(d)    demand for observance or performance of, or enforcement of, any terms or provisions of this Guaranty or the Note, the Security Agreement or Settlement Agreement; and

(e)    all other notices and demands otherwise required by law which the Guarantors may lawfully waive.

The Guarantors agree that, in the event this Guaranty shall be enforced by suit or otherwise, the Guarantors will reimburse the Payee for all expenses incurred in connection therewith, including, without limitation, reasonable attorneys' fees.

5.    Anything contained in this Guaranty or in the Security Agreement or Settlement Agreement or any of the other documents to the contrary notwithstanding, the Payee, at its option, may accelerate the indebtedness evidenced and secured by the Note, the Security Agreement and Settlement Agreement in the event of:  (a) the making by the Guarantors, or any of them, of an assignment for the benefit of creditors; (b) the appointment of a custodian for the Guarantors, or for any of them, or for any property of any of the Guarantors; or (c) the commencement of any proceeding by or against the Guarantors, or any of them, under any bankruptcy, reorganization, arrangement, insolvency, readjustment, receivership or similar applicable law or statute, notwithstanding the Adams Bank judgment or the Citizens Bank litigation.

6.    If the Guarantors shall advance any sums to Borrowers or any other Defendants, or their successors or assigns, or if Borrowers or any other Defendants, or their successors or assigns, shall hereafter become indebted to the Guarantors, then such sums and indebtedness shall be subordinate in all respects to the amounts then or thereafter due and owing to the Payee under the Note, the Security Agreement or Settlement Agreement.  Nothing herein contained shall be construed to give the Guarantors any right of subrogation in and to the Note, Security Agreement or Settlement Agreement, or all or any part of the Payee's interest therein, until all amounts owing to Payee have been paid in full. Notwithstanding any provision of the Guaranty to the contrary, if any of the Guarantors are or become "insiders" (as defined from time to time in Section 101 of the Federal Bankruptcy Code) with respect to the Borrowers or any other Defendants, then such Guarantors irrevocably and absolutely waive any and all rights of subrogation, contribution, indemnification, reimbursement or any similar rights against the Borrowers or any other Defendants with respect to this Guaranty, whether such rights arise under an express or implied contract or by operation of law.  It is the intention of the parties hereto that none of the Guarantors shall be deemed to be a "creditor" (as defined in Section 101 of the Federal Bankruptcy Code) of the Borrowers or any other Defendants by reason of the existence of the Guaranty in the event that the Borrowers or any other Defendants become debtors in any proceeding under the Federal Bankruptcy Code.

7.    If at any time any payment, or portion thereof, made by or for the account of the Guarantors on account of any of the obligations and liabilities under this Guaranty is set aside by any court or trustee having jurisdiction as a voidable preference or fraudulent conveyance or must otherwise be restored or returned by the Payee under any insolvency, bankruptcy or other federal and/or state laws or as a result of any dissolution, liquidation or reorganization of the Borrowers or any other Defendants or upon, or as a result of, the appointment of any receiver, intervenor or conservator of, or trustee or similar officer for, the Borrowers or any other Defendants or any substantial part of their properties or assets, the Guarantors hereby agree that this Guaranty shall continue and remain in full force and effect or be reinstated, as the case may be, all as though such payment(s) had not been made.

8.    Any notice or demand given or made under this Guaranty shall be given or made by mailing the same by registered mail or certified mail, return receipt requested, first class, postage prepaid, to the party to whom the notice or demand is given or made at the address set forth below or any other address designated by notice as herein provided:

              Payee:          Michael G. Rinn
                              111 Warren Road
                              Suite 4
                              Cockeysville, Maryland  21030


        with a copy to:       Paul-Michael Sweeney, Esquire
                              Linowes and Blocher LLP
                              1010 Wayne Avenue, 10th Floor
                              Silver Spring, Maryland  20910


        Guarantors:           Mark Crooks
                              179 Dividing Court
                              Riva, Maryland  21012


                              Melville Davis
                              3501 Mobile Court
                              Davidsonville, Maryland  21035


9.    All rights and remedies afforded to the Payee by reason of this Guaranty, the Note, the Security Agreement or Settlement Agreement, or by law, are separate and cumulative and the exercise of one shall not in any way limit or prejudice the exercise of any other such rights or remedies.  No delay or omission by the Payee in exercising any such right or remedy shall operate as a waiver thereof.  No waiver of any rights and remedies hereunder, and no modification or amendment hereof, shall be deemed made by the Payee unless in writing and duly signed by an authorized officer of the Payee.  Any such written waiver shall apply only to the particular instance specified therein and shall not impair the further exercise of such right or remedy or of any other right or remedy of

exercised on one or more occasions from time to time, in the same or different jurisdictions, as often as the Payee shall deem advisable.

12. In case any provision (or any part of any provision) contained in this Guaranty shall for any reason be held to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provision (or remaining part of the affected provision) of this Guaranty but this Guaranty shall be construed as if such invalid, illegal or unenforceable provision (or part thereof) had never been contained herein and the remaining provisions of this Guaranty shall remain in full force and effect.

13. This Guaranty shall inure to the benefit of, and be enforceable by, the Payee and its successors and assigns, as holder of the Note, Security Agreement and Settlement Agreement, and shall be binding upon, and enforceable against, the Guarantors and their heirs, personal representatives, successors and assigns.

14. Wherever the singular number is used herein, the same shall include the plural, and vice versa, as the context shall require. As used herein, the term "Guarantors" shall be deemed to mean each individual or entity comprising one of the Guarantors.

15. Nothing contained in this Guaranty shall be construed in a manner to create any relationship between the Guarantors and the Payee other than the relationship of guarantor and lender, and the Guarantors and the Payee shall not be considered partners or co-venturers for any purpose whatsoever.

16. Time shall be of the essence of each and every provision of this Guaranty.

17. It is the intention of the parties hereto that all questions with respect to the construction of this Guaranty and the rights and liabilities of the parties hereunder shall be determined in accordance with the laws of the State of Maryland.

18. <u>WAIVER OF JURY TRIAL.</u> THE GUARANTORS JOINTLY AND SEVERALLY HEREBY SPECIFICALLY WAIVE TRIAL BY JURY IN ANY ACTION BROUGHT ON OR WITH RESPECT TO THIS GUARANTY OR THE DEBT SECURED HEREBY. THIS WAIVER IS KNOWINGLY, WILLINGLY AND VOLUNTARILY MADE BY THE GUARANTORS, AND THE GUARANTORS HEREBY REPRESENT THAT NO ORAL OR WRITTEN STATEMENTS HAVE BEEN MADE BY ANY PARTY TO INDUCE THIS WAIVER OF TRIAL BY JURY OR TO IN ANY WAY MODIFY OR NULLIFY ITS STATED EFFECT. THE GUARANTORS FURTHER REPRESENT THAT THEY HAVE BEEN REPRESENTED BY INDEPENDENT COUNSEL, SELECTED OF THEIR OWN FREE WILL, IN THE SIGNING OF THIS GUARANTY AND IN THE MAKING OF THIS WAIVER AND THAT THEY HAVE HAD THE OPPORTUNITY TO DISCUSS THIS WAIVER WITH SUCH COUNSEL.

IN WITNESS WHEREOF, the Guarantors, intending to be legally bound, have executed this Guaranty under seal as of the day and year first above written.

WITNESS:                              GUARANTORS:

_____       _____  [SEAL]
                                      Mark Crooks

_____       _____  [SEAL]
                                      Melville Davis


                              * * *


STATE OF MARYLAND                     *
                                      *  to wit:
COUNTY OF Prince George's             *


I HEREBY CERTIFY that on this 12th day of February, 1996, before me, a Notary Public in and for the State and County aforesaid, personally appeared Mark Crooks, known to me (or satisfactorily proven) to be the person whose name is subscribed to the foregoing and annexed instrument and acknowledged that said individual executed the same for the purposes therein contained.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

_____
Notary Public

My Commission Expires: 3-10-97

[NOTARIAL SEAL]

* * *

STATE OF MARYLAND                    *
                                     *  to wit:
COUNTY OF Prince Georges             *


    I HEREBY CERTIFY that on this 12th day of February , 1996, before me, a Notary Public in and for the State and County aforesaid, personally appeared Melville Davis, known to me (or satisfactorily proven) to be the person whose name is subscribed to the foregoing and annexed instrument and acknowledged that said individual executed the same for the purposes therein contained.

    IN WITNESS WHEREOF, I hereunto set my hand and official seal.

_Dorothy A. Grabarek_
Notary Public

My Commission Expires: 3-10-97

[NOTARIAL SEAL]

0621-001\finance
1020796dca
sa.07

## SECURITY AGREEMENT

THIS SECURITY AGREEMENT ("Agreement") made this __12th__ day of February, 1996, by John C. Flood, Inc., a Maryland corporation, John C. Flood of MD, Inc., a Maryland corporation, and John C. Flood of D.C., Inc., a District of Columbia corporation (collectively, the "Pledgor") in favor of Michael G. Rinn, trustee ("Trustee") in Bankruptcy Case No. 91-4-3011 pending in the United States Bankruptcy Court for the District of Maryland (the "Bankruptcy Court"), and Roman P. Fedirka, receiver ("Receiver", together with the Trustee, the "Beneficiary"), by order of the Bankruptcy Court in Adversary Proceeding No. 95A-215.



## R E C I T A L S :

The Beneficiary has agreed to a settlement of Adversary Proceeding No. 95A-215 provided that defendants therein and the Pledgor satisfy certain monetary and other obligations evidenced by that certain Settlement and Forbearance Agreement dated February __12__, 1996 ("Settlement Agreement"), executed by Melville Davis, Florence Davis, Mark Crooks, Lydia Crooks, Robert Smiley, Joanne Smiley, JCF, Inc., John C. Flood of MD, Inc., John C. Flood of D.C., Inc., and MCMD, Inc. (collectively, the "Defendants") and the Pledgor and the Beneficiary (the "Settlement Agreement"). The Beneficiary has required, as a condition of executing the Settlement Agreement, the execution of this Agreement by the Pledgor, and the consent to this Agreement by the other Defendants.

NOW, THEREFORE, in order to secure: (a) the prompt payment of all past, present, and future indebtedness, liabilities, and obligations of the Pledgor and the other Defendants to the Beneficiary under the Settlement Agreement and this Agreement, the Promissory Note and the Guaranty (collectively, the "Pledgor's Liabilities"); and (b) the performance by the Pledgor and the other Defendants of all of the terms, conditions, and provisions of the Settlement Agreement and this Agreement, the Promissory Note and the Guaranty (collectively, the "Secured Documents"), the Pledgor agrees with the Beneficiary as follows:

1.    **Collateral.** The Pledgor hereby grants to the Beneficiary a security interest in the following property of the Pledgor (collectively, the "Collateral"):

(a)  All of the property described in the Collateral Description attached hereto and incorporated by reference herein as __Exhibit "A"__.

(b)  All ledger sheets, files, records, documents and instruments (including, but not limited to, computer programs, tapes and related electronic data processing software) evidencing an interest in or relating to the above.

000076

(c)  All substitutes and replacements for, accessions, attachments, and other additions to, and tools, parts, and equipment used in connection with the above property.

(d)  All property similar to the above now owned or hereafter acquired by Pledgor.

The Collateral under this Security Agreement shall further include any and all additions and accessions to the above-named Collateral, and all products and proceeds (cash and non-cash, including insurance proceeds) thereof.

**2.    Payment and Performance.**  The Pledgor will pay the Pledgor's Liabilities as and when due and payable and will perform, comply with, and observe the terms and conditions of the Secured Documents.

**3.    Title to Collateral.**  The Pledgor represents and warrants that it is the owner of the Collateral and has good and marketable title to the Collateral free and clear of all liens, security interests, and other encumbrances except for those in favor of the Beneficiary and, as to motor vehicles, such encumbrances as are listed as of record as shown on the titles which are attached hereto as Exhibit "A".  Without the prior written consent of the Beneficiary, the Pledgor shall not take by consignment any goods or property of the same type as the Collateral.  Upon request of the Beneficiary, the Pledgor shall deliver to the Beneficiary all certificates of title, certificates of origin, or other evidence of the Pledgor's ownership of the Collateral as may be required by the Beneficiary.

**4.    Further Assurances.**  The Pledgor will defend its title to the Collateral against all persons and will, upon request of the Beneficiary:  (a) furnish such further assurances of title as may be required by the Beneficiary; and (b) deliver and execute or cause to be delivered and executed, in form and content satisfactory to the Beneficiary, any financing, continuation, termination, or security interest filing statement, security agreement, or other document as the Beneficiary may request in order to perfect, preserve, maintain, or continue the perfection of the Beneficiary's security interest in the Collateral and/or its priority.  As agreed in the Settlement Agreement, the Pledgor will pay the costs of filing any financing, continuation, termination or security interest filing statement, as well as any recordation or transfer tax required by law to be paid in connection with the filing or recording of any such statement, as set forth in the Settlement Agreement.  A carbon, photographic, or other reproduction of a security agreement or a financing statement is sufficient as a financing statement.

**5.    Transfer and Other Liens.**  The Pledgor will not sell, lease, transfer, exchange, or otherwise dispose of the Collateral, or any part thereof, without the prior written consent of the Beneficiary and will not permit any lien, security, interest, or

other encumbrance to attach to the Collateral, or any part thereof, other than those in favor of the Beneficiary or those permitted by the Beneficiary in writing, except that the Pledgor may, in the ordinary course of its business, and in the absence of an Event of Default (hereinafter defined) hereunder, collect its accounts and chattel paper and sell its inventory.

6.     **Consents.** Without notice to Pledgor, without further consent of the Pledgor, without in any way waiving any of the provisions of this Agreement, and without in any way releasing all or any part of the Pledgor's Liabilities and/or of the Collateral, the Pledgor hereby consents:    (a) to any extension of time for payment of any of the Pledgor's Liabilities; (b) to any renewal, waiver, or release of any of the Pledgor's Liabilities or the Secured Documents; (c) to the release of, any of the Defendants or of any other maker, accommodation maker, endorser, guarantor, surety, or indemnitor of any of the Pledgor's Liabilities or of the Secured Documents; (d) to the addition to, or release of, all or any part of the collateral and security for the Secured Documents and all or any part of the Collateral hereunder; and (e) to any indulgence and/or waiver given to any of the Defendants or to any other maker, accommodation maker, endorser, guarantor, surety, or indemnitor of any of the Pledgor's Liabilities.

7.     **Financial Statements, Books and Records.**   The Pledgor will:

(a)   at all times maintain, in accordance with generally accepted accounting principles, accurate and complete books and records pertaining to the operation, business, and financial condition of the Pledgor and pertaining to the Collateral and any contracts and collections relating to the Collateral;

(b)   furnish to the Beneficiary as soon as available, and in any event within thirty (30) days after the end of each calendar quarter, financial statements of the Pledgor and, upon written request, the other Defendants, and a statement of changes in financial position of the Pledgor and the other Defendants, all in reasonable detail, prepared in accordance with generally acceptable accounting principles, consistently applied and accompanied by certificates signed by the Pledgor and the other Defendants, setting forth their representations that those are the records as of that date, that there are no material misrepresentations known to them as of that date, and that no Event of Default exists to the date of such certificate or existed during the period covered by such certificate, or certifying that the Events of Default, as described in said certification, constitute all of the Events of Default of which the Pledgor and the other Defendants had knowledge at the time of issuance of the certificate;

(c)   furnish to the Beneficiary promptly upon request, and in the form and content and at the intervals specified by the Beneficiary, such additional financial statements, reports, schedules, and other information with respect to the operation,

business affairs, and financial condition of the Pledgor as the Beneficiary may from time to time require in its sole discretion;

(d)  at all reasonable times, without prior notice and without hindrance or delay, permit the Beneficiary or any person designated by the Beneficiary to enter any place of business of the Pledgor or any other premises where any books, records, and other data concerning the Pledgor and/or the Collateral may be kept and to examine, audit, inspect, and make extracts from and photocopies of any such books, records, and other data on terms no more onerous than those previously existing under the receivership;

(e)  furnish to the Beneficiary promptly upon request and in the form and content specified by the Beneficiary lists of purchasers of inventory, aging of accounts, aggregate cost or wholesale market value of inventory, schedules of equipment and other data concerning the Collateral as the Beneficiary may reasonably from time to time specify; and

(f)  mark its books and records in a manner satisfactory to the Beneficiary so that the Beneficiary's rights in and to the Collateral will be shown.

8.  **Name of Pledgor, Place(s) of Business of Pledgor, and Location of Collateral.**  The Pledgor represents and warrants that its correct legal name is as specified on the signature lines of this Agreement.  Without the prior written consent of the Beneficiary, the Pledgor will not change its name, dissolve, merge, or consolidate with any other person or entity.  The Pledgor warrants that the address of the Pledgor's chief executive office and the address of each other place of business of the Pledgor are as specified below the signature lines of this Agreement.  Except for mobile equipment and motor vehicles, the Collateral and all books and records pertaining to the Collateral have been, are, and will be located only at the Pledgor's chief executive office specified below or at any other place of business which may be specified below or at such job sites where the collateral is used in the ordinary course of the Pledgor's business (which job sites are contemplated by the parties to be located in the State of Maryland, the Commonwealth of Virginia, and the District of Columbia).  The Pledgor must obtain Beneficiary's consent prior to opening any new place of business, and of any change in the location of its chief executive office and the places where the Collateral, or any part thereof, or the books and records concerning the Collateral, or any part thereof, are kept.

9.  **Care of Collateral.**  The Pledgor will maintain the Collateral in good condition and will not do or permit anything to be done to the Collateral that may impair its value or that may violate the terms of any insurance covering the Collateral or any part thereof.  The Beneficiary shall have no duty to, and the Pledgor hereby releases the Beneficiary from all claims for loss or damage caused by the failure to collect or enforce any account or

000079

chattel paper or to preserve rights against prior parties to the Collateral.

**10. Insurance.** The Pledger will insure such of the Collateral as specified by the Beneficiary against such casualties and risks in such form and amount as may from time to time be required by the Beneficiary. All insurance proceeds shall be payable to the Beneficiary and Pledgor jointly, and all policies of insurance shall be furnished to the Beneficiary. The Pledgor will pay all premiums due or to become due for such insurance and hereby assigns to the Beneficiary any returned or unearned premiums which may be due upon cancellation of insurance coverage. Immediately upon default, notwithstanding any notice or cure period, the Beneficiary is hereby irrevocably: (a) appointed the Pledgor's attorney-in-fact (which appointment is coupled with an interest and irrevocable) to endorse any draft or check which may be payable to the Pledgor in order to collect such returned or unearned premiums or the proceeds of insurance; and (b) authorized to apply such insurance proceeds in the same manner and order as the proceeds of the sale or other disposition of the Collateral are to be applied pursuant to Paragraph 21 hereof.

**11. Taxes and Claims.** Pledgor shall pay and discharge, all taxes, assessments and governmental charges or levies upon it or upon its income or profits, or upon any property belonging to it, prior to the date on which penalties attached thereto, and all lawful claims which, if unpaid, might become a lien or charge upon the property of the Pledgor; PROVIDED that the Pledgor shall not be required to pay any such tax, assessment, charge, levy or claim, the payment of which is being contested in good faith and by proper proceedings until such time as sale or seizure of any property of the Pledgor is effective or notice of such contemplated sale or seizure is published or provided.

**12. Equipment Not Fixtures.** The Pledgor warrants that all equipment which constitutes a part of the Collateral is personalty and is not and will not be affixed to real estate in such manner as to become a fixture or part of such real estate. If, in the opinion of the Beneficiary, any such equipment is or may become part of any real estate, the Pledgor will furnish to the Beneficiary a written waiver by the record owner of such real estate of all interest in such equipment and a written subordination to the Beneficiary's security interest and lien by any person who has a lien on or security interest in such real estate which is or may be superior to the Beneficiary's security interest hereunder.

**13. Specific Assignments.** Promptly after the occurrence of any Event of Default, upon request by the Beneficiary, the Pledgor will execute and deliver to the Beneficiary written assignments, endorsements, and/or schedules, in form and content satisfactory to the Beneficiary, of specific chattel paper and accounts or groups of accounts of chattel paper, but the security interest of the Beneficiary hereunder shall not be limited in any way by such

assignments. Such accounts and chattel paper are to secure payment of the Pledgor's Liabilities and performance of the Settlement Agreement and are not sold to the Beneficiary whether or not any assignment thereof which is separate from this Agreement is in form absolute.

**14. Delivery, etc., of Chattel Paper.** Upon the occurrence of any Event of Default, the Pledgor will promptly upon request by the Beneficiary deliver, assign, and endorse to the Beneficiary all chattel paper and all other documents held by the Pledgor in connection therewith.

**15. Government Contracts.** Upon the occurrence of any Event of Default, if any account or chattel paper arises out of a contract or contracts with the United States of America or any department, agency, or instrumentality thereof, the Pledgor shall immediately notify the Beneficiary thereof in writing and execute any instruments or take any steps required by the Beneficiary in order that all moneys due or to become due under such contract or contracts shall be assigned to the Beneficiary and notice thereof given under the Federal Assignment of Claims Act.

**16. Collateral Account.** Immediately upon a default, notwithstanding any notice and cure period, if all or any part of the Collateral at any time consists of inventory, accounts, or chattel paper, the Pledgor will, upon the request of the Beneficiary at any time and from time to time, deposit or cause to be deposited to a bank account designated by the Beneficiary and from which the Beneficiary alone has power of access and withdrawal (the "Collateral Account") all checks, drafts, cash, and other remittances in payment or on account of payment of such inventory, accounts, or chattel paper or cash and the cash proceeds of any returned goods, the sale or lease of which gave rise to an account or chattel paper (all of the foregoing herein collectively referred to as "Items of Payment"). The Pledgor shall deposit the Items of Payment for credit to the Collateral Account within two (2) business days of the receipt thereof, and in precisely the form received, except for the endorsement of the Pledgor where necessary to permit the collection of the Items of Payment, which endorsement the Pledgor hereby agrees to make. Pending such deposit, the Pledgor will not commingle any of the Items of Payment with any of its other funds or property but will hold them separate and apart. At least once a week, the Beneficiary will apply the whole or any part of the collected funds credited to the Collateral Account against the Pledgor's Liabilities or credit such collected funds to a banking account of the Pledgor with the Beneficiary, the order and method of such application to be in the sole discretion of the Beneficiary. Pledgor will deposit all funds derived from its business operations into operating accounts maintained at the Bank of Bowie. Pledgor must not move, close or otherwise terminate those accounts, or take any other action prohibited by paragraph 20 herein, without the prior written consent of Beneficiary.

**17. Rights of Beneficiary and Duties of Pledgor as to Certain Collateral.** Immediately upon a default, notwithstanding any notice and cure period, the Beneficiary may, at any time and from time to time, at the cost and expense of the Pledgor, and without notice to the Pledgor, take any or all of the following actions: (i) notify the account debtors obligated on any of the Collateral to make payments thereon directly to the Beneficiary, and to take control of the cash and non-cash proceeds of any such Collateral; (ii) charge to any banking account of the Pledgor with the Beneficiary any item of payment credited to the Collateral Account which is dishonored by the drawee or maker thereof; (iii) compromise, extend, or renew any of the Collateral or deal with the same as it may deed advisable; (iv) release, make exchanges or substitutions for, or surrender all or any part of the Collateral; (v) remove from the Pledgor's place of business all books, records, ledger sheets, correspondence, invoices, and documents relating to or evidencing any of the Collateral or, without cost or expense to the Beneficiary, make such use of the Pledgor's place(s) of business as may be reasonably necessary to administer, control, and collect the Collateral; (vi) repair, alter, or supply goods, if any, necessary to fulfill in whole or in part the purchase order of any account debtor; (vii) demand, collect, receipt for, and give renewals, extensions, discharges, and releases of any of the Collateral; (viii) institute and prosecute legal and equitable proceedings to enforce collection of, or realize upon, any of the Collateral; (ix) settle, renew, extend, compromise, compound, exchange, or adjust claims with respect to any of the Collateral or any legal proceedings brought with respect thereto; (x) endorse the name of the Pledgor upon any Items of Payment relating to the Collateral or upon any proof of claim in bankruptcy against an account debtor; and (xi) receive and open all mail addressed to the Pledgor and, if an Event of Default exists hereunder, notify postal authorities to change the address for the delivery of mail to the Pledgor to such address as the Beneficiary may designate. The Pledgor hereby irrevocably appoints the Beneficiary as its attorney-in-fact coupled with an interest and with power of substitution, at the Beneficiary's sole discretion, to take any and all actions on behalf of and in the name of Pledgor, to the same extent as the Pledgor could take on its own behalf. The Pledgor will: (i) make no material change to the terms of the sale or lease of inventory or of any account or chattel paper without the prior written permission of the Beneficiary; (ii) on demand, make available in form acceptable to the Beneficiary shipping documents and delivery receipts evidencing the shipment of goods which gave rise to the sale or lease of inventory or of an account or chattel paper, completion certificates, or other proof of the satisfactory performance of services which gave rise to the sale or lease of inventory or of an account or chattel paper, copies of the invoices arising out of the sale or lease of inventory or for an account, and the Pledgor's copy of any written contract or order from which a sale or lease of inventory, an account, or chattel paper arose; and (iii) when requested, regularly advise the Beneficiary whenever an account debtor returns or refuses to retain any goods, the sale or lease of which gave rise to an account or chattel paper, and

will comply with any instructions which the Beneficiary may given regarding the sale or other disposition of such returns.

**18. Performance by Beneficiary.** If the Pledgor or any of the other Defendants fail to perform, observe, or comply with any of the conditions, terms, or covenants contained in this Agreement or the Secured Documents, the Beneficiary, without notice to or demand upon the Pledgor and without waiving or releasing any of the Pledgor's Liabilities or any Event of Default, may (but shall be under no obligation to) at any time thereafter perform such conditions, terms, or covenants for the account and at the expense of the Pledgor and the other Defendants, and may enter upon any place of business or other premises of the Pledgor or the other Defendants for that purpose and take all such action thereon as the Beneficiary may consider necessary or appropriate for such purpose. All sums paid or advanced by the Beneficiary in connection with the foregoing and all costs and expenses (including, without limitation, attorneys' fees and expenses) incurred in connection therewith (collectively, the "Expense Payments") together with interest thereon at a per annum rate of interest which is equal to the then highest rate of interest charged on the principal of any of the Pledgor's Liabilities (_i.e._, 6% or the legal rate of interest), plus one percent (1%) per annum, from the date of payment until repaid in full, shall be paid by the Pledgor to the Beneficiary on demand and shall constitute and become a part of the Pledgor's Liabilities secured hereby.

**19. Pledgor's Covenants.** Until payment in full of all of the Pledgor's Liabilities: (a) the Pledgor will at all times (i) maintain its properties, whether owned or leased, in good operating condition, and from time to time will make all proper repairs, renewals, replacements, additions, and improvements thereto needed to maintain such properties in good operating condition, (ii) comply with the provisions of all material leases to which it is a party or under which it occupies property so as to prevent any loss or forfeiture thereof or thereunder, and (iii) comply with all laws, rules, regulations, and orders applicable to the properties or any part thereof; provided, however, that nothing contained in this section shall require the making of any repair, renewal, replacement, addition or improvement of or to a particular property or the continued maintenance of any property which would not be required in the exercise of sound business judgment; (b) the Pledgor will (i) at all times maintain with well-rated and responsible insurance companies such insurance as is required by applicable laws and such other insurance in such amounts, of such types and against such risks, hazards, liabilities, casualties, and contingencies as is customarily maintained by companies similarly situated, and (ii) file with the Beneficiary, upon request, a detailed list of the insurance then in effect and stating the names of the insurance companies, the types, the amounts, and rates of the insurance, dates of the expiration thereof and the properties and risks covered thereby, and within thirty (30) days after notice in writing from the Beneficiary, obtain such additional insurance as the Beneficiary may reasonably request; (c) except to the extent

that the validity or amount thereof is being contested in good faith and by appropriate proceedings, the Pledgor will pay and discharge all Taxes prior to the date when any interest or penalty would accrue for the nonpayment thereof; (d) the Pledgor will at all times maintain in full force and effect its corporate existence, rights, privileges, and franchises and qualify and remain qualified in all jurisdictions where qualification is required; (e) Pledgor shall promptly give to the Beneficiary notice in writing of all litigation and all proceedings before any governmental or regulatory agencies affecting the Pledgor or any of the Pledgor's properties; (f) for the period December 1, 1995 through December 31, 1996 the Pledgor will furnish to the Beneficiary as soon as available, and in any event, within five (5) days after receipt by Pledgor, originals of the bank statements of each and every one of Pledgor's bank accounts and thereafter within five (5) days after any written request is made for same; (g) without the prior written consent of the Beneficiary, the Pledgor will not terminate any of its existing bank accounts and will not open any new bank accounts.   A list of all of Pledgor's bank accounts is attached as Exhibit "B"; (h) without the prior written consent of the Beneficiary, the Pledgor will not withdraw funds from any bank account, provided, however, that so long as no Event of Default has occurred, ·the Pledgor may make withdrawals for amounts not to exceed Five Thousand Dollars ($5,000.00) in order to pay its debts incurred in the ordinary course of Pledgor's business to support customer deliverables, goods, or insurances as they become due; (i) without the prior written consent of the Beneficiary, the Pledgor will not incur or permit to exist any indebtedness or liability on account of deposits or advances or for borrowed money or for the deferred purchase price of any property or services, except (i) the Pledgor's Liabilities, (ii) current debt, (iii) current accounts payable arising in the ordinary course of business, and (iv) other indebtedness outstanding on the date hereof; (j) without the prior written consent of the Beneficiary, the Pledgor will not create or permit to exist any mortgage, pledge, security interest, or other lien on any of its property, real or personal, now owned or hereafter acquired; (k) without the prior written consent of the Beneficiary, the Pledgor will not purchase or lease any additional real property; (l) without the prior written consent of the Beneficiary, the Pledgor will not prepay rent more than one month in advance for any of its leased properties; (m) without the prior written consent of the Beneficiary, the Pledgor will not lease or buy any additional vehicles, including but not limited to trucks or cars; (n) without the prior written consent of the Beneficiary, the Pledgor will not become or be guarantor or surety of, or otherwise become or be responsible in any manner (whether by agreement to purchase any obligations, stock, assets, goods, or services, or to supply or advance any funds, assets, goods or services, or otherwise) with respect to, any undertaking of any other person or make or permit to exist any loans or advances to any other person or entity; (o) without the prior written consent of the Beneficiary, the Pledgor will not be a party to any merger or consolidation, or purchase or otherwise acquire all, or substantially all of the assets or stock

with the exception of the payment due to the Trustee pursuant to this agreement

of any class of, or any partnership or joint venture interest in, any other person, or sell, transfer, convey or lease all or any substantial part of its assets, or sell or assign with or without recourse any accounts; (p) without the prior written consent of the Beneficiary, the Pledgor will not increase the amount of salary, bonus or other compensation paid to its officers, management, executive personnel, and other key employees from that amount being paid to such persons as of the date hereof, nor will Pledgor repay any loans or other indebtedness unto any such persons; (q) without the prior written consent of the Beneficiary, the Pledgor will not purchase or redeem any shares of the capital stock of the Pledgor, declare or pay any dividends thereon (other than stock dividends), make any distribution to stockholders, or set aside any funds for any such purpose, and not prepay, purchase, or redeem any indebtedness of the Pledgor other than the Pledgor's Liabilities. The Pledgor and all Defendants will give notice to Beneficiary, along with a copy of all pleadings, of all lawsuits or demands for the payment of past due monies which are filed against them jointly or individually; (r) without the prior written consent of Beneficiary, Pledgor will not incur or permit to exist any capital expenditures or facility expenditures in excess of One Hundred Dollars ($100.00); (s) without the prior written consent of Beneficiary, Pledgor will not contact Washington Gas Light Company ("WGL"), Baltimore Gas and Electric Company ("BG&E"), Potomac Edison Power Company ("PEPCO") or any other utility and request any modification or change in any account maintained by any of these utilities in favor of Pledgor for work performed or services provided by Pledgor including, but not limited to, any account numbers or the named payee of any account maintained by the utilities; or (t) will not transfer funds between bank accounts other than for ordinary business purposes.

   20.  **Default.**  The occurrence of any one or more of the following events shall constitute an event of default (an "Event of Default") under this Agreement: (a) the failure of the Pledgor or any of the other Defendants to pay any of the Pledgor's Liabilities as and when due and payable; however, after such a default, Pledgor shall have seven (7) calendar days, after written notice of a monetary default in the payment of the Pledgor's Liabilities is sent by Beneficiary, to cure said default; (b) the failure of the Pledgor or any of the other Defendants to perform, observe, or comply with any of the provisions of this Agreement or the Secured Documents; (c) the occurrence of an Event of Default under the Secured Documents; (d) if Joanne Smiley terminates the lease between Joanne Smiley and Pledgor in the absence of any act or omission by Pledgor which would give Joanne Smiley a right to terminate under the lease, and without prior written notice to the Beneficiary stating the specific reason for terminating the lease; (e) if any information contained in any financial statements, applications, schedules, reports, or any other documents given by the Pledgor, or the other Defendants, or by any other person in connection with the Pledgor's Liabilities, with the Collateral, or with the Secured Documents is not in all respects true and accurate, or if the Pledgor or any of the other Defendants or such

000085

other person omitted to state any material fact or any fact necessary to make such information not misleading; (f) if any judgment against the Pledgor or any attachment or other levy against the property of the Pledgor with respect to a claim remains unpaid, unstayed on appeal, undischarged, unbonded, or undismissed for a period of thirty (30) days; (g) if the Pledgor or any of the other Defendants become insolvent and generally do not pay their debts as they become due, or if a petition for relief in a bankruptcy court is filed by the Pledgor or any other Defendants, or if the Pledgor or any other Defendants apply for, consents to or acquiesces in the appointment of a trustee, custodian, or receiver for the Pledgor or any other Defendants or any of their assets and property, or make a general assignment for the benefit of creditors; or, in the absence of such application, consent, or acquiescence, a trustee, custodian, or receiver is appointed for the Pledgor or any other Defendants for a substantial part of the assets and property of the Pledgor or any other Defendants and is not discharged within thirty (30) days; or any bankruptcy, reorganization, debt arrangement, or other proceeding or case under any bankruptcy or insolvency law or any dissolution or liquidation proceeding is instituted against the Pledgor or any other Defendants and is consented to or acquiesced in by the Pledgor or such other Defendants or remains undismissed for sixty (60) days; or the Pledgor or any other Defendants takes any action to authorize any of the actions described in this subsection; (h) if the Beneficiary determines in good faith that a material adverse change has occurred in the financial condition of the Pledgor from the financial condition set forth in the most recent financial statement furnished to the Beneficiary, or from the financial condition of the Pledgor or any other Defendants most recently disclosed to the Beneficiary in any manner; (i) if the Beneficiary determines in good faith that the prospect of payment of any of the Pledgor's Liabilities is impaired; (j) the dissolution, merger, consolidation, or reorganization of the Pledgor or any of the other Defendants; or (k) any bond, debenture, note or other evidence of indebtedness of the Pledgor shall become due before stated maturity, by acceleration of the maturity thereof, by reason of default, or shall have become due by its terms and shall not be promptly paid or extended, or the Pledgor shall be in default in payment of any other debts or obligations.

   21.  **Rights and Remedies upon Default.**  Upon the occurrence of an Event of Default hereunder (and in addition to all of its other rights, powers, and remedies under this Agreement, the Settlement Agreement, the other Secured Documents, or otherwise), the Beneficiary may, at its option, and without notice to the Pledgor, or any other party, declare the unpaid balance of the Pledgor's Liabilities to be immediately due and payable, and the Beneficiary shall have all of the rights and remedies of a secured party under the Maryland Uniform Commercial Code and other applicable laws. The occurrence or non-occurrence of an Event of Default shall in no manner impair the ability of the Beneficiary to demand payments of any portion of the Pledgor's Liabilities which are payable on demand. Upon the occurrence of an Event of Default hereunder, the

000086

Pledgor, upon demand by the Beneficiary, shall assemble the Collateral and make it available to the Beneficiary at a place designated by the Beneficiary which is mutually convenient to both parties. Upon the occurrence of an Event of Default hereunder, the Beneficiary or its agents may enter upon the Pledgor's premises to take possession of the Collateral, to remove the Collateral from the premises or to render the Collateral unusable, all without judicial process or proceedings, and the Pledgor consents to the appointment of an immediate receiver in the United States Bankruptcy Court for the District of Maryland or any such other court of competent jurisdiction to sell or otherwise dispose of the Collateral for the benefit of the Beneficiary. Upon the occurrence of an Event of Default hereunder, Beneficiary shall be entitled to foreclose on the lien imposed hereunder on all assets of the Pledgor in favor of the Beneficiary. Furthermore, Beneficiary is entitled to continue to exercise its rights and privileges upon all of the stock of the Pledgor assigned to Beneficiary as further security, and said stock not to be transferred by the Beneficiary until the terms of the Secured Documents have been fully satisfied by the Pledgor and the other Defendants.

Any written notice of the sale, disposition, or other intended action by the Beneficiary with respect to the Collateral which is required by applicable laws and is sent by certified mail, postage prepaid, to the Pledgor at the address of the Pledgor's chief executive office specified below, or such other address of the Pledgor for which may from time to time be shown on the Beneficiary's records, at least ten (10) days prior to such sale, disposition, or other action shall constitute reasonable notice to the Pledgor. The Pledgor shall pay on demand all costs and expenses, including, without limitation, attorneys' fees and expenses incurred by or on behalf of the Beneficiary (a) in enforcing the Pledgor's Liabilities, and (b) in connection with the taking, holding, preparing for sale, or other disposition, selling, managing, collecting, or otherwise disposing of the Collateral. All of such costs and expenses (collectively, the "Liquidation Costs") together with interest thereon at a per annum rate of interest which is equal to the then highest rate of interest charged on the principal of any of the Pledgor's Liabilities, plus one percent (1%) per annum, from the date of payment until repaid in full, shall be paid by the Pledgor to the Beneficiary on demand and shall constitute and become a part of the Pledgor's Liabilities secured hereby. Any proceeds of sale or other disposition of the Collateral will be applied by the Beneficiary to the payment of Liquidation Costs and Expense Payments, and the balance of such proceeds (if any) will be applied by the Beneficiary to the payment of the remaining Pledgor's Liabilities (whether then due or not), at such time or times and in such order and manner of application as the Beneficiary may from time to time in its sole discretion determine.

22. **Remedies Cumulative.** Each right, power, and remedy of the Beneficiary as provided for in the Secured Documents, or now or hereafter existing at law or in equity or by statute or otherwise

000087

shall be cumulative and concurrent and shall be in addition to every other right, power, or remedy provided for in the Secured Documents or now or hereafter existing at law or in equity or by statute or otherwise, and the exercise or beginning of the exercise by the Beneficiary of any one or more of such rights, powers, or remedies shall not preclude the simultaneous or later exercise by the Beneficiary of any or all such other rights, powers, or remedies.

**23. Waiver.** No failure or delay by the Beneficiary to insist upon the strict performance of any term, condition, covenant, or agreement of the Secured Documents, or to exercise any right, power, or remedy consequent upon a breach thereof, shall constitute a waiver of any such term, condition, covenant, or agreement or of any such breach, or preclude the Beneficiary from exercising any such right, power, or remedy at any later time or times. By accepting payment after the due date of any of the Pledgor's Liabilities, the Beneficiary shall not be deemed to have waived the right either to require prompt payment when due of all other of Pledgor's Liabilities or to declare an Event of Default for failure to effect such payment of any such other Pledgor's Liabilities. The Pledgor waives presentment, notice of dishonor, and notice of non-payment with respect to accounts and chattel papers.

**24. WAIVER OF TRIAL BY JURY.** THE PLEDGOR AND THE OTHER DEFENDANTS HEREBY WAIVE TRIAL BY JURY IN ANY ACTION OR PROCEEDING ARISING OUT OF OR IN ANY WAY PERTAINING TO THE SECURED DOCUMENTS. THIS WAIVER IS KNOWINGLY, WILLINGLY AND VOLUNTARILY MADE BY THE PLEDGOR AND THE OTHER DEFENDANTS, AND THE PLEDGOR AND THE OTHER DEFENDANTS HEREBY REPRESENT THAT NO ORAL OR WRITTEN STATEMENTS HAVE BEEN MADE BY ANY PARTY TO INDUCE THIS WAIVER OF TRIAL BY JURY OR TO IN ANY WAY MODIFY OR NULLIFY ITS STATED EFFECT. THE PLEDGOR AND THE OTHER DEFENDANTS FURTHER REPRESENT THAT THEY HAVE BEEN REPRESENTED BY INDEPENDENT COUNSEL, SELECTED OF THEIR OWN FREE WILL, IN THE SIGNING OF THIS AGREEMENT AND IN THE MAKING OF THIS WAIVER AND THAT THEY HAVE HAD THE OPPORTUNITY TO DISCUSS THIS WAIVER WITH SUCH COUNSEL.

**25. Jurisdiction.** The Pledgor and the other Defendants recognize that this Agreement is made in the State of Maryland and that it is to be construed and enforced under the laws of the State of Maryland, excluding principles of choice of laws. The Pledgor and the other Defendants hereby consent to be sued in an appropriate court in the State of Maryland, including but not limited to the United States Bankruptcy Court for the District of Maryland and/or the Commonwealth of Virginia, in any action to enforce the provisions of the Secured Documents. The Pledgor and the other Defendants waive any objection to the venue of any action filed by the Beneficiary against the Pledgor and/or the other Defendants in any State or Federal Court of Maryland and/or the Commonwealth of Virginia and waives any claim of forum non conveniens or for transfer of any such action to any other court. The Pledgor and the other Defendants hereby irrevocably agree to accept any service of process required under state or federal law

and that any service of process upon them will be complete and effective upon deposit of said process with the United States Post Office, postage prepaid, addressed to Pledgor in accordance with the Notice section below.

**26. Notices.** All notices, certificates or other written communications hereunder shall be sufficiently given if in writing and personally delivered, or mailed by regular, registered or certified mail, postage prepaid, return receipt requested, addressed as follows:

If to Pledgor:

> Pledgor
> c/o John C. Flood, Inc.
> Attn: JoAnne Smiley
> 711 Kennedy Street, N.W.
> Washington, D.C.  20011

If to Trustee:

> Michael G. Rinn
> 111 Warren Road, Suite 4
> Cockeysville, Maryland  21030

If to Receiver:

> KMR Management
> c/o Mr. Roman P. Fedirka
> 51 South Keswick Avenue
> Glenside, PA  19038

With copy to:

> John Morrissey, Esquire
> 4201 North View Drive
> Bowie, Maryland  20716

With copy to:

> Paul-Michael Sweeney, Esquire
> Linowes and Blocher LLP
> 1010 Wayne Avenue
> Silver Spring, Maryland  20910

**27. Miscellaneous.** The paragraph headings of this Agreement are for convenience only and shall not limit or otherwise affect any of the terms hereof. Neither this Agreement nor any term, condition, covenant, or agreement hereof may be changed, waived, discharged, or terminated orally, but only by an instrument in writing signed by the party against whom enforcement of the change, waiver, discharge, or termination is sought. This Agreement shall be binding upon the heirs, personal representatives, successors, and assigns of the Pledgor and shall inure to the benefit of the successors and assigns of the Trustee. As used herein, the singular number shall include the plural, the plural the singular, and the use of the masculine, feminine, or neuter gender shall include all genders, as the context may require, and the term "person" shall include an individual, a corporation, an association, a partnership, a trust, and an organization. Unless varied by this Agreement, all terms used herein which are defined by the Maryland Uniform Commercial Code shall have the same



**MVA** Maryland Department of Transportation
MOTOR VEHICLE ADMINISTRATION
6601 RITCHIE HIGHWAY, N.E.
GLEN BURNIE, MARYLAND 21062

| SECURITY INTEREST FILING STATEMENT | PLEASE TYPE OR PRINT IN INK ALL INFORMATION REQUESTED |
|---|---|
| | **FILING FEE $20.00** |

## NOTICE OF SECURED

**TO PERFECT YOUR SECURITY INTEREST: (Maryland Title Must Accompany This Form)**

The Security Interest as set forth below is perfected on date of creation if this statement, filing fee, and any other information required is delivered to the Motor Vehicle Administration within ten days from the date this Security Interest was created. If delivery is made after the tenth day, the date of perfection is the date received by the Motor Vehicle Administration.

### VEHICLE HELD AS COLLATERAL

| YEAR | MAKE OF VEHICLE | BODY STYLE | VEHICLE IDENTIFICATION NO. | MARYLAND TITLE NO. |
|---|---|---|---|---|
| 1995 | Ford | 4S | 1FALP52U0SA178242 | 24004552 |

| PLEASE SPECIFY TYPE OF CONTRACT (DESCRIBE): | MVA USE ONLY (LIEN CODE) |
|---|---|
| Settlement and Forbearance Agreement | |

| NAME OF SECURED PARTY: | DATE OF CREATION | AMOUNT OF LIEN |
|---|---|---|
| Michael G. Rinn, Trustee | 2/7/96 | $425,000.00 |

| ADDRESS OF SECURED PARTY: (STREET ADDRESS) | (CITY OR TOWN) | (COUNTY) | (STATE) | (ZIP CODE) |
|---|---|---|---|---|
| 111 Warren Road, Suite 4, Cockeysville | Baltimore | | MD | 21030 |

| NAME OF DEBTOR: |
|---|
| John C. Flood of D.C. |

| ADDRESS OF DEBTOR: | (STREET ADDRESS) | (CITY OR TOWN) | (COUNTY) | (STATE) | (ZIP CODE) |
|---|---|---|---|---|---|
| 1 Azar Ct. | | Baltimore | Baltimore | MD | 21227 |

I certify, under penalty of perjury, that the secured party named herein holds a security interest against the described vehicle in accordance with the provisions of the Maryland Vehicle Laws.

SIGNATURE OF AUTHORIZED AGENT OF SECURED PARTY

TITLE                    DATE

### ASSIGNMENT OF SECURITY INTEREST   –   FILING FEE $20.00

| NAME OF ASSIGNEE: |
|---|
| |

| ADDRESS OF ASSIGNEE: |
|---|
| |

| AMOUNT OF SECURITY INTEREST ASSIGNED | | FULL AMOUNT | DATE ASSIGNED |
|---|---|---|---|
| $ | | PARTIAL AMOUNT | |

We, the undersigned, certify, under penalty of perjury, that the security interest set forth above has been assigned by the original secured party named herein to the assignee indicated.

SIGNATURE OF ORIGINAL SECURED PARTY          DATE

SIGNATURE OF ASSIGNEE          DATE

### FOR MVA USE ONLY

VR-217 (1-92)

000090



**STATE OF MARYLAND**
**CERTIFICATE OF TITLE FOR VEHICLE**

*4*    *1*  *2*  *3*                                *5*

| VEHICLE IDENTIFICATION NO. | YEAR | MAKE | BODY STYLE | CLASS | ODOMETER | BRAND | TITLE NUMBER |
|---|---|---|---|---|---|---|---|
| 1FALP52U0SA178242 | 95 | FORD | 4S | A | 25 | A | 24004552 |

| EXCEPT. | GR. VEH. WT. | GR. COMB. WT. | FEE (TAGS) | INSPECTION DATE | DATE ISSUED |
|---|---|---|---|---|---|
| N/A | -3700 | 00N/A | $27.00 | N/A | 04/19/95 |

OWNER'S SOUNDEX / DRIVER LICENSE NO.          CO-OWNER'S SOUNDEX / DRIVER LICENSE NO.
Z-975-001-189-782

NAME(S) AND ADDRESS OF REGISTERED OWNER(S)

ODOMETER CODES
A. Actual Mileage
B. Exceeds Mechanical Limits
C. Not Actual Mileage

JOHN C FLOOD OF DC
1 AZAR CT
BALTIMORE  MD 21227

CONTROL NO.
(This is not a Title No.)
H0561823

H0561823

I, THE UNDERSIGNED, HEREBY CERTIFY THAT AN APPLICATION FOR CERTIFICATE OF TITLE HAS BEEN MADE FOR THE VEHICLE DESCRIBED HEREON, PURSUANT TO THE PROVISIONS OF THE MOTOR VEHICLE LAWS OF THIS STATE, AND THE APPLICANT NAMED ON THE FACE HEREOF HAS BEEN DULY RECORDED AS THE LAWFUL OWNER OF SAID VEHICLE.

THE ADMINISTRATION WILL NOT BE RESPONSIBLE FOR FALSE OR FRAUDULENT ODOMETER STATEMENTS MADE IN THE ASSIGNMENT OF THE CERTIFICATE OF TITLE OR FOR ERRORS MADE IN RECORDING BY THE ADMINISTRATION.

NAME(S) AND ADDRESS OF SECURED PARTIES IN RECORDED ORDER

FORD MOTOR CREDIT CO
P O BOX 3076
COLUMBIA  MD 21045

LIEN RELEASE

MVA USE ONLY

OFFICIALLY ISSUED ON THE DATE SET FORTH ABOVE

ADMINISTRATOR OF MOTOR VEHICLES
VR-2 (8-91)

000091

**MORRISSEY BROTHERS, P.C.**
ATTORNEYS AT LAW
4201 NORTHVIEW DRIVE
SUITE 407
BOWIE, MD. 20716

TEL: 301-390-6400
FAX-301-262-1150

JAMES M. MORRISSEY, MD.
PAUL D. MORRISSEY, D.C.
ROBERT J. MORRISSEY, MD.
JOHN P. MORRISSEY, MD.

3003 M ST. N.W.
SUITE 2
WASH., D.C. 20007

February 12, 1996

Paul Sweeney, Esquire
Linowes & Blocker, P.A.
1010 Wayne Avenue
P.O. Box 8728
Silver Spring, Maryland 20907

Re:    Michael G. Rinn v. JCF, Inc. et al. Case No. 95A-215

Dear Mr. Sweeney:

Pursuant to the terms of the Settlement Agreement and Security Agreement entered into among the parties in the above referenced action, listed below as Exhibit B to the Security Agreement are the banks utilized by the Pledgor:

Bank of Bowie, 4201 Northview Drive, Bowie, Maryland 20716.

First Virginia Bank, 6618 Richmond Highway, Alexandria, Virginia 22306.

Commercial and Farmers Bank, 611 Frederick Road, Suite 104, Catonsville, Maryland 21228.

Very truly yours,
Morrissey Brothers, P.C.

John P. Morrissey



**Maryland Department of Transportation**
MOTOR VEHICLE ADMINISTRATION
6601 RITCHIE HIGHWAY, N.E.
GLEN BURNIE, MARYLAND 21062

| SECURITY INTEREST FILING STATEMENT | PLEASE TYPE OR PRINT IN INK ALL INFORMATION REQUESTED |
|---|---|
|  | **FILING FEE $20.00** |

## NOTICE OF SECURED

**TO PERFECT YOUR SECURITY INTEREST:** (Maryland Title Must Accompany This Form)

The Security Interest as set forth below is perfected on date of creation if this statement, filing fee, and any other information required is delivered to the Motor Vehicle Administration within ten days from the date this Security Interest was created. If delivery is made after the tenth day, the date of perfection is the date received by the Motor Vehicle Administration.

### VEHICLE HELD AS COLLATERAL

| YEAR | MAKE OF VEHICLE | BODY STYLE | VEHICLE IDENTIFICATION NO. | MARYLAND TITLE NO. |
|---|---|---|---|---|
| 1988 | Dodge | VN | 1B7GK1338JX215638 | 24395605 |

| PLEASE SPECIFY TYPE OF CONTRACT (DESCRIBE): Settlement and Forbearence Agreement | MVA USE ONLY (LIEN CODE) |
|---|---|

| NAME OF SECURED PARTY: Michael G. Rinn, Trustee | | DATE OF CREATION 2/7/96 | | AMOUNT OF LIEN $ 425,000.00 | |
|---|---|---|---|---|---|
| ADDRESS OF SECURED PARTY: (STREET ADDRESS) 111 Warren Road, Suite 4, | (CITY OR TOWN) Cockeysville | (COUNTY) Baltimore | (STATE) MD | (ZIP CODE) 21030 | |
| NAME OF DEBTOR: John C. Flood of D.C. | | | | | |
| ADDRESS OF DEBTOR: (STREET ADDRESS) 1 Azar Ct. | (CITY OR TOWN) Baltimore | (COUNTY) Baltimore | (STATE) MD | (ZIP CODE) 21227 | |

I certify, under penalty of perjury, that the secured party named herein holds a security interest against the described vehicle in accordance with the provisions of the Maryland Vehicle Laws.

SIGNATURE OF AUTHORIZED AGENT OF SECURED PARTY

TITLE          DATE

### ASSIGNMENT OF SECURITY INTEREST  -  FILING FEE $20.00

NAME OF ASSIGNEE:

ADDRESS OF ASSIGNEE:

| AMOUNT OF SECURITY INTEREST ASSIGNED $ | | FULL AMOUNT | DATE ASSIGNED |
|---|---|---|---|
| | | PARTIAL AMOUNT | |

We, the undersigned, certify, under penalty of perjury, that the security interest set forth above has been assigned by the original secured party named herein to the assignee indicated.

SIGNATURE OF ORIGINAL SECURED PARTY          DATE

SIGNATURE OF ASSIGNEE          DATE

### FOR MVA USE ONLY

VR-217 (1-92)



**STATE OF MARYLAND**
**CERTIFICATE OF TITLE FOR A VEHICLE**

4          1     2   3          5

| VEHICLE IDENTIFICATION NO. | YEAR | MAKE | BODY STYLE | CLASS | ODOMETER | BRAND | TITLE NUMBER |
|---|---|---|---|---|---|---|---|
| 1B7GK1338JX215638 | 88 | DODG | VN | M | 103748 | B | 24395605 |

| EXCEPT. | GR. VEH. WT. | GR. COMB. WT. | FEE (TAGS) | INSPECTION DATE | DATE ISSUED |
|---|---|---|---|---|---|
| N/A | -3700 | 00N/A | $27.00 | 05/19/95 | 05/19/95 |

OWNER'S SOUNDEX / DRIVER LICENSE NO.
Z-975-001-206-222

CO-OWNER'S SOUNDEX / DRIVER LICENSE NO.

NAME(S) AND ADDRESS OF REGISTERED OWNER(S)

ODOMETER CODES
A. Actual Mileage
B. Exceeds Mechanical Limits
C. Not Actual Mileage

JOHN C FLOOD OF DC
1 AZAR COURT
BALTIMORE  MD 21227

CONTROL NO.
(This is not a Title No.)
H0624374

H0624374

I, THE UNDERSIGNED, HEREBY CERTIFY THAT AN APPLICATION FOR CERTIFICATE OF TITLE HAS BEEN MADE FOR THE VEHICLE DESCRIBED HEREON, PURSUANT TO THE PROVISIONS OF THE MOTOR VEHICLE LAWS OF THIS STATE, AND THE APPLICANT NAMED ON THE FACE HEREOF HAS BEEN DULY RECORDED AS THE LAWFUL OWNER OF SAID VEHICLE.

THE ADMINISTRATION WILL NOT BE RESPONSIBLE FOR FALSE OR FRAUDULENT ODOMETER STATEMENTS MADE IN THE ASSIGNMENT OF THE CERTIFICATE OF TITLE OR FOR ERRORS MADE IN RECORDING BY THE ADMINISTRATION.

NAME(S) AND ADDRESS OF SECURED PARTIES IN RECORDED ORDER

LIEN RELEASE

MVA USE ONLY

OFFICIALLY ISSUED ON THE DATE SET FORTH ABOVE

ADMINISTRATOR OF MOTOR VEHICLES
VR-2 (8-91)

000094



| | | SECURITY INTEREST FILING STATEMENT | PLEASE TYPE OR PRINT IN INK ALL INFORMATION REQUESTED |
|---|---|---|---|
| **MVA** | Maryland Department of Transportation<br>MOTOR VEHICLE ADMINISTRATION<br>6601 RITCHIE HIGHWAY, N.E.<br>GLEN BURNIE, MARYLAND 21062 | | **FILING FEE $20.00** |

## NOTICE OF SECURED

TO PERFECT YOUR SECURITY INTEREST: (Maryland Title Must Accompany This Form)

The Security Interest as set forth below is perfected on date of creation if this statement, filing fee, and any other information required is delivered to the Motor Vehicle Administration within ten days from the date this Security Interest was created. If delivery is made after the tenth day, the date of perfection is the date received by the Motor Vehicle Administration.

### VEHICLE HELD AS COLLATERAL

| YEAR | MAKE OF VEHICLE | BODY STYLE | VEHICLE IDENTIFICATION NO. | MARYLAND TITLE NO. |
|---|---|---|---|---|
| 1993 | Dodge | TK | 1B7GH14R1PX524569 | 24423259 |

| PLEASE SPECIFY TYPE OF CONTRACT. (DESCRIBE):<br>Settlement and Forbearance Agreement | MVA USE ONLY (LIEN CODE) |
|---|---|

| NAME OF SECURED PARTY:<br>Michael G. Rinn, Trustee | | DATE OF CREATION<br>2/7/96 | AMOUNT OF LIEN<br>$ 425,000.00 |
|---|---|---|---|

| ADDRESS OF SECURED PARTY: (STREET ADDRESS)<br>111 Warren Road, Suite 4, | (CITY OR TOWN)<br>Cockeysville | (COUNTY)<br>Baltimore | (STATE)<br>MD | (ZIP CODE)<br>21030 |
|---|---|---|---|---|

NAME OF DEBTOR:
John C. Flood of D.C.

| ADDRESS OF DEBTOR:      (STREET ADDRESS)<br>1 Azar Ct. | (CITY OR TOWN)<br>Baltimore | (COUNTY)<br>Baltimore | (STATE)<br>MD | (ZIP CODE)<br>21227 |
|---|---|---|---|---|

I certify, under penalty of perjury, that the secured party named herein holds a security interest against the described vehicle in accordance with the provisions of the Maryland Vehicle Laws.

SIGNATURE OF AUTHORIZED AGENT OF SECURED PARTY

TITLE          DATE

### ASSIGNMENT OF SECURITY INTEREST  -  FILING FEE $20.00

NAME OF ASSIGNEE:

ADDRESS OF ASSIGNEE:

| AMOUNT OF SECURITY INTEREST ASSIGNED<br>$ | FULL AMOUNT | DATE ASSIGNED |
|---|---|---|
| | PARTIAL AMOUNT | |

We, the undersigned, certify, under penalty of perjury, that the security interest set forth above has been assigned by the original secured party named herein to the assignee indicated.

SIGNATURE OF ORIGINAL SECURED PARTY          DATE

SIGNATURE OF ASSIGNEE          DATE

### FOR MVA USE ONLY

VR-217 (1-92)

000095



## STATE OF MARYLAND
### CERTIFICATE OF TITLE FOR A VEHICLE

4   1   2   3   5

| VEHICLE IDENTIFICATION NO. | YEAR | MAKE | BODY STYLE | CLASS | ODOMETER | BRAND | TITLE NUMBER |
|---|---|---|---|---|---|---|---|
| 1B7GH14R1PX524569 | 93 | DODG | TK | EPO | 71252 | A | 24423259 |

| EXCEPT. | GR. VEH. WT. | GR. COMB. WT. | FEE (TAGS) | INSPECTION DATE | DATE ISSUED |
|---|---|---|---|---|---|
| N/A | 07000 | 000 N/A | $33.75 | 02/20/95 | 04/25/95 |

OWNER'S SOUNDEX / DRIVER LICENSE NO.  
Z-975-001-334-934

CO-OWNER'S SOUNDEX / DRIVER LICENSE NO.

NAME(S) AND ADDRESS OF REGISTERED OWNER(S)

JOHN C FLOOD OF DC  
AZAR CT  
BALTIMORE  MD 21227

**ODOMETER CODES**
A. Actual Mileage
B. Exceeds Mechanical Limits
C. Not Actual Mileage

CONTROL NO.
(This is not a Title No.)
H0550215

H0550215

I, THE UNDERSIGNED, HEREBY CERTIFY THAT AN APPLICATION FOR CERTIFICATE OF TITLE HAS BEEN MADE FOR THE VEHICLE DESCRIBED HEREON, PURSUANT TO THE PROVISIONS OF THE MOTOR VEHICLE LAWS OF THIS STATE, AND THE APPLICANT NAMED ON THE FACE HEREOF HAS BEEN DULY RECORDED AS THE LAWFUL OWNER OF SAID VEHICLE.

THE ADMINISTRATION WILL NOT BE RESPONSIBLE FOR FALSE OR FRAUDULENT ODOMETER STATEMENTS MADE IN THE ASSIGNMENT OF THE CERTIFICATE OF TITLE OR FOR ERRORS MADE IN RECORDING BY THE ADMINISTRATION.

NAME(S) AND ADDRESS OF SECURED PARTIES IN RECORDED ORDER

FORD MOTOR CREDIT CO  
P O BOX 3076  
COLUMBIA  MD 21045

LIEN RELEASE

MVA USE ONLY
OFFICIALLY ISSUED ON THE DATE SET FORTH ABOVE

ADMINISTRATOR OF MOTOR VEHICLES
VR-2 (8-91)

000096

meanings hereunder as assigned to them by the Maryland Uniform
Commercial Code.

[SIGNATURE PAGES FOLLOW]

The signature and seal of the Pledgor are subscribed to this Agreement the day and year first above written.

WITNESS:

"PLEDGOR":

JOHN C. FLOOD, INC.,
a Maryland corporation

By: _____ (SEAL)
Name: JOANNE SMILEY
Title: PRESIDENT

PLEDGOR'S PRINCIPAL PLACE OF BUSINESS:

711 Kennedy Street, N.W.
Washington, D.C. 2001!

JOHN C. FLOOD OF MD, INC.,

By: _____ (SEAL)
Name: JOANNE SMILEY
Title: PRESIDENT

PLEDGOR'S PRINCIPAL PLACE OF BUSINESS:

#1 Azar CT, Baltimore, MD
21227

JOHN C. FLOOD OF D.C., INC.,

By: _____ (SEAL)
Name: JOANNE SMILEY
Title: PRESIDENT

PLEDGOR'S PRINCIPAL PLACE OF BUSINESS:

711 Kennedy Street
Washington, D.C. 21227

0621-001\finance\1020796doc\ss_07          16

000098

PLEDGOR'S PLACES OF BUSINESS:

711 KENNEDY STREET
WASHINGTON, DC 20011

#1 Azar Ct.
BALTIMORE, MD 21227

8180 Richmond Highway
Alexandria, VA 22309

WITNESS:

_Jill M. Harris_

WITNESS:

"TRUSTEE":

_Michael G. Rinn_  TRUSTEE.
MICHAEL G. RINN

"RECEIVER":

_R.P. Fedirka of KMR MGT, INC. RECEIVER_
ROMAN P. FEDIRKA

0621-001\finance\1020796dca\sa.07          17          000099

\* \* \*

STATE OF MARYLAND, _Prince George's_ COUNTY, TO-WIT:

    I HEREBY CERTIFY that on this _12th_ day of _February_ , 19 _96_ , before me, the subscriber, a Notary Public in and for the State and County aforesaid, personally appeared _Joanne Smiley_ of John C. Flood, Inc., a Maryland corporation, who did acknowledge that he executed the foregoing documents for the purposes therein contained and as the voluntary and authorized act of said corporation.

    IN WITNESS WHEREOF, I have hereunto subscribed my name and affixed my official Notarial Seal the day and date last above written.

My Commission Expires: _3-10-97_

             _Dorothy A. Grabarek_
             Notary Public

\* \* \*

STATE OF MARYLAND, _Prince George's_ COUNTY, TO-WIT:

    I HEREBY CERTIFY that on this _12th_ day of _February_ , 19 _96_ , before me, the subscriber, a Notary Public in and for the State and County aforesaid, personally appeared _Joanne Smiley_ of John C. Flood of MD, Inc., a Maryland corporation, who did acknowledge that he executed the foregoing documents for the purposes therein contained and as the voluntary and authorized act of said corporation.

    IN WITNESS WHEREOF, I have hereunto subscribed my name and affixed my official Notarial Seal the day and date last above written.

My Commission Expires: _3-10-97_

             _Dorothy A. Grabarek_
             Notary Public

000100

* * *

STATE OF MARYLAND, _Prince George's_ COUNTY, TO-WIT:

I HEREBY CERTIFY that on this _12th_ day of _February_, 19 _96_, before me, the subscriber, a Notary Public in and for the State and County aforesaid, personally appeared _Joanne Smiley_ of John C. Flood of D.C., Inc., a District of Columbia corporation, who did acknowledge that he executed the foregoing documents for the purposes therein contained and as the voluntary and authorized act of said corporation.

IN WITNESS WHEREOF, I have hereunto subscribed my name and affixed my official Notarial Seal the day and date last above written.

My Commission Expires: _3-10-97_

_Dorothy G. Grabarek_
Notary Public

000101

\* \* \*

STATE OF MARYLAND, _Harford_ COUNTY, TO-WIT:

I HEREBY CERTIFY that on this _15th_ day of _February_, 19_96_, before me, the subscriber, a Notary Public in and for the State and County aforesaid, personally appeared Michael G. Rinn, who did acknowledge that he executed the foregoing document for the purposes therein contained.

IN WITNESS WHEREOF, I have hereunto subscribed my name and affixed my official Notarial Seal the day and date last above written.


My Commission Expires:                    _Sandra M. Wirtanen_
                                           Notary Public

        Sandra M. Wirtanen, Notary Public
                Harford County
               State of Maryland
        My Commission Expires Oct. 21, 1998

## CONSENT OF DEFENDANTS

By their execution below, the Defendants hereby acknowledge and consent to the terms and conditions of the foregoing and annexed Security Agreement as of the date first above written.

WITNESS:                                    DEFENDANTS:

_____        _____ [SEAL]
                                            MELVILLE DAVIS

_____        _____ [SEAL]
                                            FLORENCE DAVIS

_____        _____ [SEAL]
                                            MARK CROOKS

_____        _____ [SEAL]
                                            LYDIA CROOKS

_____        _____ [SEAL]
                                            ROBERT SMILEY

_____        _____ [SEAL]
                                            JOANNE SMILEY


                                            JCF, INC.

_____        By: _____ [SEAL]
                                                President

                                            MCMD, INC.

_____        By: _____ [SEAL]

000103

## EXHIBIT "A"

### DESCRIPTION OF COLLATERAL

1.    John C. Flood, Inc., John C. Flood of MD, Inc. and John C. Flood of D.C., Inc. (collectively, the "Pledgor" or "Debtor"), assigns to Michael G. Rinn, Trustee and Roman P. Fedirka, Receiver (collectively, the "Beneficiary" or "Secured Party"), and grants to Secured Party a blanket security interest in all of the Debtor's tangible and intangible personal property and including, but not limited to, the following property (collectively, the "Collateral"):   (i) the property described below; and (ii) the property described in subparagraph F below.

**A.    Receivables and General Intangibles.**    All of Debtor's present and future accounts, contract rights, receivables, promissory notes and other instruments, chattel paper and general intangibles, including all present and future rights of Debtor relating to trademarks, service marks, patents, copyrights and other intellectual property; all present and future customer lists of Debtor; all present and future rights of Debtor relating to tax refunds and refunds or returns of prepaid expenses; all present and future rights and interests of Debtor in connection with any contracts or agreements to which Debtor is or becomes a party or third party beneficiary; all goods previously or hereafter returned, repossessed or stopped in transit, the sale, lease or other disposition of which contributed to the creation of any account, instrument or chattel paper of Debtor; all present and future rights of Debtor as an unpaid seller of goods; all present and future rights, liens and security interests of Debtor under law or agreement against any account debtor or other obligor of Debtor or against any property of any account debtor or other obligor of Debtor; and all other present and future contingent and non-contingent rights of Debtor to the payment of money, whether arising in contract, tort or otherwise including, but not limited to, all cash receivables, rights, accounts and proceeds generated by any account maintained by Washington Gas & Light Company, Baltimore Gas and Electric Company, Potomac Edison Power Company and any other utility in favor of Debtor.

**B.    Inventory.**    All inventory of Debtor, now owned and hereafter acquired, including raw materials, work in process, finished goods, goods returned or repossessed or stopped in transit, and goods held for demonstration, marketing or similar purposes; all present and future rights of Debtor in connection with goods consigned to or by Debtor; all present and future documents of title relating to any of the foregoing; all present and future rights of Debtor as an unpaid seller of goods; and all present and future rights and interests of Debtor in connection with purchases of, or warranties relating to, or damages to, goods held or to be held by Debtor as inventory.

C.  **Equipment.**  All equipment and fixtures of Debtor, now owned and hereafter acquired; all present and future documents of title relating to any of the foregoing; and all present and future rights and interests of Debtor in connection with purchases of, or warranties relating to, or damages to, goods held or to be held by Debtor as equipment or fixtures.

D.  **Specific Equipment.**  All of the equipment of Debtor described below, now owned and hereafter acquired; all present and future documents of title relating to such equipment; and all present and future rights and interests of Debtor in connection with purchases of, or warranties relating to, or damages to, such equipment.

Description of equipment:_____

_____
_____
(Description of equipment may be continued on an attached Schedule)

E.  **Other.**  Description of collateral:_____

_____
_____
____
    (Description of collateral may be continued on an attached Schedule)

F.  In all events, "Collateral" shall include all present and future substitutions for, replacements of, accessories for, accessions to, and materials and supplies relating to, any property constituting "Collateral"; all of Debtor's present and future books and records in any form relating to any property constituting "Collateral"; and all present and future proceeds (cash and non-cash) and products, in any form whatsoever, of all property constituting "Collateral", including all proceeds of insurance policies insuring any property constituting "Collateral".

G.  In addition, see following pages for motor vehicles.

000105

 **Maryland Department of Transportation** MOTOR VEHICLE ADMINISTRATION 6601 RITCHIE HIGHWAY, N.E. GLEN BURNIE, MARYLAND 21062

| | | |
|---|---|---|
| | SECURITY INTEREST FILING STATEMENT | PLEASE TYPE OR PRINT IN INK ALL INFORMATION REQUESTED |
| | | FILING FEE $20.00 |

## NOTICE OF SECURED

TO PERFECT YOUR SECURITY INTEREST: (Maryland Title Must Accompany This Form)

The Security Interest as set forth below is perfected on date of creation if this statement, filing fee, and any other information required is delivered to the Motor Vehicle Administration within ten days from the date this Security Interest was created. If delivery is made after the tenth day, the date of perfection is the date received by the Motor Vehicle Administration.

### VEHICLE HELD AS COLLATERAL

| YEAR | MAKE OF VEHICLE | BODY STYLE | VEHICLE IDENTIFICATION NO. | – | MARYLAND TITLE NO. |
|---|---|---|---|---|---|
| 1981 | Ford | TK | 2FTCF10E9BCA43549 | | 23781796 |

| PLEASE SPECIFY TYPE OF CONTRACT (DESCRIBE): | MVA USE ONLY (LIEN CODE) |
|---|---|
| Settlement and Forbearence Agreement | |

| NAME OF SECURED PARTY: | DATE OF CREATION | AMOUNT OF LIEN |
|---|---|---|
| Michael G. Rinn, Trustee | 2/7/96 | $ 425,000.00 |

| ADDRESS OF SECURED PARTY: (STREET ADDRESS) | (CITY OR TOWN) | (COUNTY) | (STATE) | (ZIP CODE) |
|---|---|---|---|---|
| 111 Warren Road, Suite 4, | Cockeysville | Baltimore | MD | 21030 |

NAME OF DEBTOR:
John C. Flood of D.C.

| ADDRESS OF DEBTOR: (STREET ADDRESS) | (CITY OR TOWN) | (COUNTY) | (STATE) | (ZIP CODE) |
|---|---|---|---|---|
| 1 Azar Ct. | Baltimore | Baltimore | MD | 21227 |

I certify, under penalty of perjury, that the secured party named herein holds a security interest against the described vehicle in accordance with the provisions of the Maryland Vehicle Laws.

_____
SIGNATURE OF AUTHORIZED AGENT OF SECURED PARTY

| | TITLE | DATE |
|---|---|---|

### ASSIGNMENT OF SECURITY INTEREST  –  FILING FEE $20.00

NAME OF ASSIGNEE:

ADDRESS OF ASSIGNEE:

| AMOUNT OF SECURITY INTEREST ASSIGNED $ | FULL AMOUNT | DATE ASSIGNED |
|---|---|---|
| | PARTIAL AMOUNT | |

We, the undersigned, certify, under penalty of perjury, that the security interest set forth above has been assigned by the original secured party named herein to the assignee indicated.

_____
SIGNATURE OF ORIGINAL SECURED PARTY          DATE

_____
SIGNATURE OF ASSIGNEE          DATE

### FOR MVA USE ONLY

VR-217 (1-92)

000106



## STATE OF MARYLAND
### CERTIFICATE OF TITLE FOR A VEHICLE

4    1    2  3    5

| VEHICLE IDENTIFICATION NO. | YEAR | MAKE | BODY STYLE | CLASS | ODOMETER | BRAND | TITLE NUMBER |
|---|---|---|---|---|---|---|---|
| 2FTCF10E9BCA43549 | 81 | FORD | TK | EPO | 86588 | A | 23781796 |

| EXCEPT: | GR. VEH. WT. | GR. COMB. WT. | FEE (TAGS) | INSPECTION DATE | DATE ISSUED |
|---|---|---|---|---|---|
| N/A | 07000 | 00N/A | $33.75 | 09/30/94 | 10/17/94 |

OWNER'S SOUNDEX / DRIVER LICENSE NO.
2-975-001-163-708

CO-OWNER'S SOUNDEX / DRIVER LICENSE NO. —

NAME(S) AND ADDRESS OF REGISTERED OWNER(S)

ODOMETER CODES
A. Actual Mileage
B. Exceeds Mechanical Limits
C. Not Actual Mileage

JOHN C FLOOD OF DC
1 AZAR CT
BALTIMORE   MD 21227

CONTROL NO.
H0219432

H219432

I, THE UNDERSIGNED, HEREBY CERTIFY THAT AN APPLICATION FOR CERTIFICATE OF TITLE HAS BEEN MADE FOR THE VEHICLE DESCRIBED HEREON, PURSUANT TO THE PROVISIONS OF THE MOTOR VEHICLE LAWS OF THIS STATE, AND THE APPLICANT NAMED ON THE FACE HEREOF HAS BEEN DULY RECORDED AS THE LAWFUL OWNER OF SAID VEHICLE.

THE ADMINISTRATION WILL NOT BE RESPONSIBLE FOR FALSE OR FRAUDULENT ODOMETER STATEMENTS MADE IN THE ASSIGNMENT OF THE CERTIFICATE OF TITLE OR FOR ERRORS MADE IN RECORDING BY THE ADMINISTRATION.

NAME(S) AND ADDRESS OF SECURED PARTIES IN RECORDED ORDER

LIEN RELEASE

MVA USE ONLY

OFFICIALLY ISSUED ON THE DATE SET FORTH ABOVE

ADMINISTRATOR OF MOTOR VEHICLES
VR-2 (8-91)

000107



| **MVA** Maryland Department of Transportation MOTOR VEHICLE ADMINISTRATION 6601 RITCHIE HIGHWAY N.E. GLEN BURNE, MARYLAND 21062 | SECURITY INTEREST FILING STATEMENT | PLEASE TYPE OR PRINT IN INK ALL INFORMATION REQUESTED **FILING FEE $20.00** |

## NOTICE OF SECURED

**TO PERFECT YOUR SECURITY INTEREST: (Maryland Title Must Accompany This Form)**

The Security Interest as set forth below is perfected on date of creation if this statement, filing fee, and any other information required is delivered to the Motor Vehicle Administration within ten days from the date this Security Interest was created. If delivery is made after the tenth day, the date of perfection is the date received by the Motor Vehicle Administration.

### VEHICLE HELD AS COLLATERAL

| YEAR 1989 | MAKE OF VEHICLE Dodge | BODY STYLE VN | VEHICLE IDENTIFICATION NO. 2B7FK1138KR265860 | MARYLAND TITLE NO. 24266761 |

| PLEASE SPECIFY TYPE OF CONTRACT (DESCRIBE): Settlement and Forbearance Agreement | MVA USE ONLY (LIEN CODE) |

| NAME OF SECURED PARTY: Michael G. Rinn, Trustee | DATE OF CREATION 2/7/96 | AMOUNT OF LIEN $425,000.00 |
| ADDRESS OF SECURED PARTY: (STREET ADDRESS) 111 Warren Road, Suite 4, | (CITY OR TOWN) Cockeysville | (COUNTY) Baltimore | (STATE) MD | (ZIP CODE) 21030 |

| NAME OF DEBTOR: John C. Flood of D.C. |
| ADDRESS OF DEBTOR: (STREET ADDRESS) 1 Azar Ct. | (CITY OR TOWN) Baltimore | (COUNTY) Baltimore | (STATE) MD | (ZIP CODE) 21227 |

I certify, under penalty of perjury, that the secured party named herein holds a security interest against the described vehicle in accordance with the provisions of the Maryland Vehicle Laws.

SIGNATURE OF AUTHORIZED AGENT OF SECURED PARTY

TITLE                                          DATE

### ASSIGNMENT OF SECURITY INTEREST   –   FILING FEE $20.00

NAME OF ASSIGNEE:

ADDRESS OF ASSIGNEE:

| AMOUNT OF SECURITY INTEREST ASSIGNED $ | FULL AMOUNT | DATE ASSIGNED |
| | PARTIAL AMOUNT | |

We, the undersigned, certify, under penalty of perjury, that the security interest set forth above has been assigned by the original secured party named herein to the assignee indicated.

SIGNATURE OF ORIGINAL SECURED PARTY            DATE

SIGNATURE OF ASSIGNEE            DATE

### FOR MVA USE ONLY

VR-217 (1-92)

000108



**STATE OF MARYLAND**
**CERTIFICATE OF TITLE FOR VEHICLE**

4          1    2    3                                5

| VEHICLE IDENTIFICATION NO. | YEAR | MAKE | BODY STYLE | CLASS | ODOMETER | BRAND | TITLE NUMBER |
|---|---|---|---|---|---|---|---|
| 2B7FK1138KR265860 | 89 | DODG | VN | EPO | 88941 | A | 24266761 |

| EXCEPT. | GR. VEH. WT. | GR. COMB. WT. | FEE (TAGS) | INSPECTION DATE | DATE ISSUED |
|---|---|---|---|---|---|
| N/A | 07000 | 00N/A | $33.75 | 03/13/95 | 03/14/95 |

OWNER'S SOUNDEX / DRIVER LICENSE NO.
Z-975-001-163-708

CO-OWNER'S SOUNDEX / DRIVER LICENSE NO.

NAME(S) AND ADDRESS OF REGISTERED OWNER(S)

ODOMETER CODES
A. Actual Mileage
B. Exceeds Mechanical Limits
C. Not Actual Mileage

JOHN C FLOOD OF DC
1 AZAR CT
BALTIMORE  MD 21227

CONTROL NO.
(This is not a Title No.)
H0878490

H0878490

I, THE UNDERSIGNED, HEREBY CERTIFY THAT AN APPLICATION FOR CERTIFICATE OF TITLE HAS BEEN MADE FOR THE VEHICLE DESCRIBED HEREON, PURSUANT TO THE PROVISIONS OF THE MOTOR VEHICLE LAWS OF THIS STATE, AND THE APPLICANT NAMED ON THE FACE HEREOF HAS BEEN DULY RECORDED AS THE LAWFUL OWNER OF SAID VEHICLE.

THE ADMINISTRATION WILL NOT BE RESPONSIBLE FOR FALSE OR FRAUDULENT ODOMETER STATEMENTS MADE IN THE ASSIGNMENT OF THE CERTIFICATE OF TITLE OR FOR ERRORS MADE IN RECORDING BY THE ADMINISTRATION.

NAME(S) AND ADDRESS OF SECURED PARTIES IN RECORDED ORDER

LIEN RELEASE

MVA USE ONLY

OFFICIALLY ISSUED ON THE DATE SET FORTH ABOVE

ADMINISTRATOR OF MOTOR VEHICLES
VR-2 (8-91)

000109

521-001
)20896pms
)s.01

*** ORIGINAL TO BE DELIVER~~ UPON FINAL PAYMENT ***

## BILL OF SALE

This Bill of Sale made this 20th day of February, 1996, between JOANNE SMILEY and ROBERT SMILEY (collectively hereafter, the "PURCHASERS"), and MICHAEL G. RINN, Trustee ("TRUSTEE"), Trustee for the Bankruptcy Estates of JOHN C. FLOOD, INC. ("FLOOD"), and MELVILLE R. DAVIS ("M. DAVIS"), FLORENCE E. DAVIS ("F. DAVIS"), MARK J. CROOKS ("M. CROOKS") and LYDIA CROOKS ("L. CROOKS") and ROMAN P. FEDIRKA, *OF KMR MANAGEMENT, INC.* Receiver ("RECEIVER") (the Trustee and Receiver together being referred to as "SELLERS").

### R E C I T A L S:

A.   On June 21, 1991, M. CROOKS, M. DAVIS and FLOOD filed separate voluntary petitions for relief under Chapter 11 of the United States Bankruptcy Code.

B.   On July 30, 1992, L. CROOKS and F. DAVIS filed separate voluntary petitions for relief under Chapter 11 of the United States Bankruptcy Code.

C.   On April 2, 1993, all of the above bankruptcy cases were substantively consolidated and administered under Case No. 91-4-3011 SD.

D.   On September 21, 1993, all of the above bankruptcy cases were converted to proceedings under Chapter 7 of the United States Bankruptcy Code.

E.   On November 29, 1993, Michael G. Rinn was appointed Chapter 7 Trustee for the above bankruptcy estates. The bankruptcy estates include the tradenames of John C. Flood, Inc., Flood, Inc., and the good will associated therewith.

000306

F.    On September 17, 1995, Roman P. Fedirka was appointed permanent receiver for John C. Flood of MD, Inc., John C. Flood of D.C., Inc. and MCMD, Inc. (collectively, "NEW FLOOD"), by Order entered September 7, 1995.

G.    On October 6, 1995, Sellers filed a Motion for Entry of Order Authorizing Sale of Stock and Other Assets Free and Clear of Liens and for Approval of Settlement, which was granted by the United States Bankruptcy Court for the District of Maryland by Order entered October 26, 1995.

H.    PURCHASERS wish to purchase and SELLERS agree to sell the tradenames John C. Flood, Inc., Flood, Inc., and all of the stock of John C. Flood of MD, Inc., John C. Flood of D.C., Inc., and MCMD, Inc. according to the terms and conditions set forth in a certain Settlement and Forbearance Agreement and Security Agreement executed on even date herewith.

WHEREFORE, in consideration of the recitals set forth above and the mutual covenants and obligations set forth below, the parties agree as follows:

I.    <u>SALE OF STOCK BY SELLER, MICHAEL G. RINN, TRUSTEE</u>

1.    I, Michael G. Rinn, duly appointed and qualified trustee of John C. Flood, Inc. and Flood, Inc. hereby sell and deliver to PURCHASERS the tradenames of John C. Flood, Inc. and Flood, Inc. and the goodwill associated therewith in consideration of Four Hundred Twenty-Five Thousand Dollars ($425,000.00), payable pursuant to a certain Settlement and Forbearance Agreement and Security Agreement executed on even date herewith.

2.    To have and to hold such property to PURCHASERS, their heirs and assigns forever, as fully and completely as Michael G. Rinn, by virtue of the Order Granting Motion for Entry of Order Authorizing Private Sale of Stock and Other Assets Free and Clear of Liens and Approving Settlement entered October 26, 1995 and of the Bankruptcy Code of the United States, might or should sell and convey the same.

II.    **SALE OF STOCK BY SELLER, ROMAN P. FEDIRKA, RECEIVER**

1.    I, Roman P. Fedirka, duly appointed permanent receiver for John C. Flood of MD, Inc., John C. Flood of D.C., Inc. and MCMD, Inc. hereby sell, endorse and deliver to PURCHASERS all shares of stock in John C. Flood of Maryland, Inc., all shares of stock in John C. Flood of D.C., Inc. and all shares of stock in MCMD, Inc. in consideration of Four Hundred Twenty-Five Thousand Dollars ($425,000.00) paid pursuant to a certain Settlement and Forbearance Agreement executed on even date herewith.

2.    To have and to hold such property to PURCHASER, his or her heirs and assigns forever, as fully and completely as Roman P. Fedirka, by virtue of the Order Granting Motion for Entry of Order Authorizing Private Sale of Stock and Other Assets Free and Clear of Liens and Approving Settlement entered October 26, 1995 and of the Bankruptcy Code of the United States, might or should sell same.  -

[SIGNATURE PAGE FOLLOWS]

IN WITNESS WHEREOF, the SELLERS have executed this Bill of Sale as follows:

SELLERS:

MICHAEL G. RINN, CHAPTER 7
TRUSTEE FOR THE BANKRUPTCY
ESTATES OF JOHN C. FLOOD, INC.,
MELVILLE R. DAVIS, FLORENCE E.
DAVIS, MARK J. CROOKS and
LYDIA CROOKS

By: _____ Trustee
     Michael G. Rinn, Trustee


ROMAN P. FEDIRKA, RECEIVER FOR
JOHN C. FLOOD OF MD., INC.,
JOHN C. FLOOD OF D.C., INC. AND
MCMD, INC.

By: _____, of KMR MGT, INC, RECEIVER
     Roman P. Fedirka, Receiver

000309

\* \* \*

STATE OF MARYLAND       \*
                     \*   to wit:

COUNTY OF                \*

     I HEREBY CERTIFY that on this _15th_ day of _February_, 1996, before me, a Notary Public in and for the State and County aforesaid, personally appeared MICHAEL G. RINN, Trustee known to me (or satisfactorily proven) to be the person whose name is subscribed to the foregoing and annexed instrument and acknowledged that said individual executed the same for the purposes therein contained.

     IN WITNESS WHEREOF, I hereunto set my hand and official seal.

                          _Sandra M. Wirtanen_
                                     Notary Public
                Sandra M. Wirtanen, Notary Public
                     Harford County
                      State of Maryland
My Commission Expires:     My Commission Expires Oct. 21, 1998

    [NOTARIAL SEAL]

                            \* \* \*

STATE OF MARYLAND       \*
                     \*   to wit:

COUNTY OF                \*

     I HEREBY CERTIFY that on this _15th_ day of _February_, 1996, before me, a Notary Public in and for the State and County aforesaid, personally appeared ROMAN P. FEDIRKA, Receiver known to me (or satisfactorily proven) to be the person whose name is subscribed to the foregoing and annexed instrument and acknowledged that said individual executed the same for the purposes therein contained.

     IN WITNESS WHEREOF, I hereunto set my hand and official seal.

                          _Sandra M. Wirtanen_
                                     Notary Public
                Sandra M. Wirtanen, Notary Public
                     Harford County
                      State of Maryland
My Commission Expires:     My Commission Expires Oct. 21, 1998

[NOTARIAL SEAL]

COPY

521-001
)20896pms
)s.01

*** ORIGINAL TO BE DELIVER‾‾ UPON FINAL PAYMENT ***

## BILL OF SALE

This Bill of Sale made this _20th_ day of February, 1996,
between JOANNE SMILEY and ROBERT SMILEY (collectively hereafter,
the "PURCHASERS"), and MICHAEL G. RINN, Trustee ("TRUSTEE"),
Trustee for the Bankruptcy Estates of JOHN C. FLOOD, INC.
("FLOOD"), and MELVILLE R. DAVIS ("M. DAVIS"), FLORENCE E. DAVIS
("F. DAVIS"), MARK J. CROOKS ("M. CROOKS") and LYDIA CROOKS ("L.
CROOKS") and ROMAN P. FEDIRKA, *OF KMR MANAGEMENT, INC.* Receiver ("RECEIVER") (the Trustee
and Receiver together being referred to as "SELLERS").

### R E C I T A L S:

A.   On June 21, 1991, M. CROOKS, M. DAVIS and FLOOD filed
separate voluntary petitions for relief under Chapter 11 of the
United States Bankruptcy Code.

B.   On July 30, 1992, L. CROOKS and F. DAVIS filed separate
voluntary petitions for relief under Chapter 11 of the United
States Bankruptcy Code.

C.   On April 2, 1993, all of the above bankruptcy cases were
substantively consolidated and administered under Case No. 91-4-
3011 SD.

D.   On September 21, 1993, all of the above bankruptcy cases
were converted to proceedings under Chapter 7 of the United States
Bankruptcy Code.

E.   On November 29, 1993, Michael G. Rinn was appointed
Chapter 7 Trustee for the above bankruptcy estates.  The bankruptcy
estates include the tradenames of John C. Flood, Inc., Flood, Inc.,
and the good will associated therewith.

000306

F.   On September 17, 1995, Roman P. Fedirka was appointed permanent receiver for John C. Flood of MD, Inc., John C. Flood of D.C., Inc. and MCMD, Inc. (collectively, "NEW FLOOD"), by Order entered September 7, 1995.

G.   On October 6, 1995, Sellers filed a Motion for Entry of Order Authorizing Sale of Stock and Other Assets Free and Clear of Liens and for Approval of Settlement, which was granted by the United States Bankruptcy Court for the District of Maryland by Order entered October 26, 1995.

H.   PURCHASERS wish to purchase and SELLERS agree to sell the tradenames John C. Flood, Inc., Flood, Inc., and all of the stock of John C. Flood of MD, Inc., John C. Flood of D.C., Inc., and MCMD, Inc. according to the terms and conditions set forth in a certain Settlement and Forbearance Agreement and Security Agreement executed on even date herewith.

WHEREFORE, in consideration of the recitals set forth above and the mutual covenants and obligations set forth below, the parties agree as follows:

I.   **SALE OF STOCK BY SELLER, MICHAEL G. RINN, TRUSTEE**

1.   I, Michael G. Rinn, duly appointed and qualified trustee of John C. Flood, Inc. and Flood, Inc. hereby sell and deliver to PURCHASERS the tradenames of John C. Flood, Inc. and Flood, Inc. and the goodwill associated therewith in consideration of Four Hundred Twenty-Five Thousand Dollars ($425,000.00), payable pursuant to a certain Settlement and Forbearance Agreement and Security Agreement executed on even date herewith.

2.   To have and to hold such property to PURCHASERS, their heirs and assigns forever, as fully and completely as Michael G. Rinn, by virtue of the Order Granting Motion for Entry of Order Authorizing Private Sale of Stock and Other Assets Free and Clear of Liens and Approving Settlement entered October 26, 1995 and of the Bankruptcy Code of the United States, might or should sell and convey the same.

II.  **SALE OF STOCK BY SELLER, ROMAN P. FEDIRKA, RECEIVER**

1.   I, Roman P. Fedirka, duly appointed permanent receiver for John C. Flood of MD, Inc., John C. Flood of D.C., Inc. and MCMD, Inc. hereby sell, endorse and deliver to PURCHASERS all shares of stock in John C. Flood of Maryland, Inc., all shares of stock in John C. Flood of D.C., Inc. and all shares of stock in MCMD, Inc. in consideration of Four Hundred Twenty-Five Thousand Dollars ($425,000.00) paid pursuant to a certain Settlement and Forbearance Agreement executed on even date herewith.

2.   To have and to hold such property to PURCHASER, his or her heirs and assigns forever, as fully and completely as Roman P. Fedirka, by virtue of the Order Granting Motion for Entry of Order Authorizing Private Sale of Stock and Other Assets Free and Clear of Liens and Approving Settlement entered October 26, 1995 and of the Bankruptcy Code of the United States, might or should sell same.  -

[SIGNATURE PAGE FOLLOWS]

IN WITNESS WHEREOF, the SELLERS have executed this Bill of Sale as follows:

SELLERS:

MICHAEL G. RINN, CHAPTER 7
TRUSTEE FOR THE BANKRUPTCY
ESTATES OF JOHN C. FLOOD, INC.,
MELVILLE R. DAVIS, FLORENCE E.
DAVIS, MARK J. CROOKS and
LYDIA CROOKS

By: _Michael G. Rinn_ TRUSTEE
    Michael G. Rinn, Trustee

ROMAN P. FEDIRKA, RECEIVER FOR
JOHN C. FLOOD OF MD., INC.,
JOHN C. FLOOD OF D.C., INC. AND
MCMD, INC.

By: _R.P. Fedirka_, of KMR MGT, INC, RECEIVER
    Roman P. Fedirka, Receiver

* * *

STATE OF MARYLAND       *
      *   to wit:
COUNTY OF            *

     I HEREBY CERTIFY that on this _15th_ day of _February_,
1996, before me, a Notary Public in and for the State and County
aforesaid, personally appeared MICHAEL G. RINN, Trustee known to me
(or satisfactorily proven) to be the person whose name is
subscribed to the foregoing and annexed instrument and acknowledged
that said individual executed the same for the purposes therein
contained.

     IN WITNESS WHEREOF, I hereunto set my hand and official seal.

_Sandra M. Wirtanen_
                       Notary Public

Sandra M. Wirtanen, Notary Public
Harford County
State of Maryland
My Commission Expires Oct. 21, 1998

My Commission Expires:

[NOTARIAL SEAL]

* * *

STATE OF MARYLAND       *
      *   to wit:
COUNTY OF            *

     I HEREBY CERTIFY that on this _15th_ day of _February_,
1996, before me, a Notary Public in and for the State and County
aforesaid, personally appeared ROMAN P. FEDIRKA, Receiver known to
me (or satisfactorily proven) to be the person whose name is
subscribed to the foregoing and annexed instrument and acknowledged
that said individual executed the same for the purposes therein
contained.

     IN WITNESS WHEREOF, I hereunto set my hand and official seal.

_Sandra M. Wirtanen_
                       Notary Public

Sandra M. Wirtanen, Notary Public
Harford County
State of Maryland
My Commission Expires Oct. 21, 1998

My Commission Expires:

[NOTARIAL SEAL]

1-001/3020896pms/bos.01        5

000310

**ATTACHMENT "C-3"**

MORRISSEY BROTHERS, P.C.

ATTORNEYS AT LAW
4201 NORTHVIEW DRIVE
SUITE 407
BOWIE, MD. 20716

TEL: 301-390-6400
FAX-301-262-1150

FILE COPY

JAMES M. MORRISSEY, MD
PAUL D. MORRISSEY, D.C.
ROBERT J. MORRISSEY, MD.
JOHN P. MORRISSEY, MD.

3003 M ST. N.W.
SUITE 2
WASH., D.C. 20007

June 11, 1996

James Seltzer
John C. Flood of Virginia, Inc.
2870 Hartland Road
Falls Church, Virginia 22043

Clinton Haislip
John C. Flood of Virginia, Inc.
2870 Hartland Road
Falls Church, Virginia 22043

Re: Infringement of Trade Name of John C. Flood, Inc.

Dear Messrs. Seltzer and Haislip:

Please be advised that I represent John C. Flood, Inc., John C. Flood of Maryland, Inc. and John C. Flood of D.C., Inc. As you know (you were a party to bidding against my clients as well as actually present at the Hearing in Bankruptcy Court), my clients purchased from Michael Rinn, the Chapter 7 Trustee, the tradenames John C. Flood, Inc. and Flood, Inc.

I have been advised by my clients and by a number of witnesses, and have actually witnessed myself, use of my clients' tradename "John C. Flood" by John C. Flood of Virginia, Inc. John C. Flood of Virginia, Inc. has been advertising itself as John C. Flood in yellow book advertisements, on its trucks and in its other advertising. I have documented proof of these infringements by John C. Flood of Virginia, Inc. The infringement of my clients' tradename by John C. Flood of Virginia, Inc. is causing my clients irreparable and permanent damage to their business. The damages are readily traceable to customer confusion over your use of the name John C. Flood without the words "of Virginia, Inc." included therein.

In addition to the common law claims of infringement which my clients have against John C. Flood of Virginia, Inc., the corporate registration form which John C. Flood of Virginia, Inc. filed with the Maryland State Department of Assessments and Taxation certifies that you agreed to transact business in the State of Maryland "ONLY under the assumed name of John C. Flood of Virginia, Inc." I have attached a copy of the registration to this letter.

James Seltzer
Clinton Haislip
John C. Flood of Virginia, Inc.
June 11, 1996
Page -2-

You are requested to immediately cease and desist using the name "John C. Flood" without the corporate designation "of Virginia, Inc." in any type of advertising or display whether in Maryland, the District of Columbia or Virginia. In addition you are requested to remedy any currently placed advertising which uses the name "John C. Flood" without the corporate designation "of Virginia, Inc." Continued use of the name "John C. Flood" without the appropriate corporate designation "of Virginia, Inc." after the date of this letter will indicate that you are intentionally infringing on my client's tradename.

In an attempt to avoid litigation over this issue, I would request a meeting between you and representatives of my client to discuss a possible resolution to my client's claims. I believe that if all parties can meet, we may be able to reach some type of agreement regarding the appropriate use of your corporate name. The meeting may be at place and time which is mutually agreeable to all parties involved. If you will contact me, or have your counsel contact me, I will be happy to set up the meeting.

Please respond to my request for a meeting no later than Tuesday, June 25, 1996. If I do not hear from you or your representative by this date, I will assume that you have no desire to meet with my clients to resolve this matter. I will instruct my clients accordingly on the steps necessary to enforce their rights for trade name infringement, tortious interference with prospective advantage and unfair trade practices and to recover compensatory as well as punitive damages.

If you or your counsel have any questions, would like to discuss this matter in more detail or would care to set up a meeting with my clients, please contact my by June 25, 1996.

Very truly yours,
Morrissey Brothers, P.C.

John P. Morrissey

Encl.











```
                    Verification Report


Date: Aug 12                              Time: 08:45PM

                7 pages sent to:                  2797138

Transmission time: 00:03:08

        Result: Transmission OK
```

### Verification Report

Date: Aug 12                                    Time: 08:50PM

                        2 pages sent to:              12022913442

Transmission time: 00:01:31

            Result: Transmission OK

# MORRISSEY BROTHERS, P.C.

ATTORNEYS AT LAW
4201 NORTHVIEW DRIVE
SUITE 407
BOWIE, MD. 20716

TEL: 301-390-6400
FAX-301-262-1150

JAMES M. MORRISSEY, MD.
PAUL D. MORRISSEY, D.C.
ROBERT J. MORRISSEY, MD.
JOHN P. MORRISSEY, MD.

3003 M ST. N.W.
SUITE 2
WASH., D.C. 20007

August 13, 1996

<u>Via Telecopy and U.S. Mail</u>

Gary Weltman, Esquire
600 Jefferson Plaza, Suite 202
Rockville, Maryland 20852

Re: Infringement of Trade Name of John C. Flood, Inc.

Dear Mr. Weltman:

I have been contacted by my clients on several occasions over the last week with respect to the proposed Agreement which was faxed to your office on July 19, 1996. My clients have informed me that the building sign for your client's new location is using the name "John C. Flood Incorporated." I have included photographs of the building sign. Although your clients claimed that they were unaware of the name to be used on the sign, the sign has been erected since the last time we met. I consider such action on your client's part to be in bad faith and run contrary to the spirit and terms of the proposed agreement.

In addition, at the meeting at your office, your clients claimed that there was only one vehicle that was lettered with the name "John C. Flood" without any other corporate designation. I have included photographs which indicate that a number your client's vehicles are lettered with the name "John C. Flood" without any corporate designation.

With respect to the advertising which you told me had been modified, I request that you fax to me a copy of the page proofs of the advertising that was actually placed. Finally, you have had the agreement that I proposed for several weeks. If I do not receive your comments with respect to such agreement by the end of the week, my clients will not hesitate to use all legal and equitable remedies to enforce their trademark rights, at considerable cost to your clients. If you have any comments, please call me.

Very truly yours,
Morrissey Brothers, P.C.

John P. Morrissey

Encl.

# MORRISSEY BROTHERS, P.C.

ATTORNEYS AT LAW
4201 NORTHVIEW DRIVE
SUITE 407
BOWIE. MD. 20716

TEL: 301-390-6400
FAX-301-262-1150

JAMES M. MORRISSEY. MD.
PAUL D. MORRISSEY. D.C.
ROBERT J. MORRISSEY. MD.
JOHN P. MORRISSEY. MD.

3003 M ST. N.W.
SUITE 2
WASH.. D.C. 20007

## TELECOPY COVER SHEET

DATE: 8/13/96    NUMBER OF PAGES: 6 INC. Cover

PLEASE DELIVER THE FOLLOWING PAGE(S) TO:

Gary Weltman, Esq.

FAX NO: (301) 279 - 7138

FROM: J.P. Morrissey

DESCRIPTION:

ORIGINAL TO FOLLOW:    REGULAR MAIL    ✓

SPECIAL MESSENGER _____

ORIGINAL WILL NOT FOLLOW:    _____

### *** IMPORTANT NOTICE ***

This message is intended only for the use of the individual or entity to which it is addressed and may contain information that this privileged, confidential and exempt from disclosure under applicable law, if the reader of this message is not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone and return the original message to us at the above address via the U.S. Postal Service.  Thank you.

# MORRISSEY BROTHERS, P.C.

ATTORNEYS AT LAW
4201 NORTHVIEW DRIVE
SUITE 407
BOWIE, MD. 20716

TEL: 301-390-6400
FAX-301-262-1150

JAMES M. MORRISSEY, MD.
PAUL D. MORRISSEY, D.C.
ROBERT J. MORRISSEY, MD.
JOHN P. MORRISSEY, MD.

3003 M ST. N.W.
SUITE 2
WASH., D.C. 20007

## _TELECOPY COVER SHEET_

DATE: _8/13/96_          NUMBER OF PAGES: _2 inc. cover_

PLEASE DELIVER THE FOLLOWING PAGE(S) TO:

_Mel Davis_
_John C. Flood, Inc._

FAX NO:          _202 291 - 3442_

FROM:          _John P. Morrissey_

DESCRIPTION:          _Letter to Weltman_

ORIGINAL TO FOLLOW:          REGULAR MAIL          _____

SPECIAL MESSENGER _____

ORIGINAL WILL NOT FOLLOW:          _____✓

### * * * IMPORTANT NOTICE * * *

This message is intended only for the use of the individual or entity to which it is addressed and may contain information that this privileged, confidential and exempt from disclosure under applicable law, if the reader of this message is not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone and return the original message to us at the above address via the U.S. Postal Service.  Thank you.

LAW OFFICES

# GARY F. WELTMANN, P.C.

ADMITTED TO PRACTICE IN MARYLAND,
THE DISTRICT OF COLUMBIA & VIRGINIA

JEFFERSON PLAZA, SUITE 202
600 EAST JEFFERSON STREET
ROCKVILLE, MARYLAND 20852

PHONE: 301-279-0303
FACSIMILE: 301-279-7138

August 21, 1996

**VIA FACSIMILE (301) 262-1150 (This is the only page.)**

John P. Morrissey, Esquire
Morrissey Brothers, P.C.
4201 Northview Drive
Suite 407
Bowie, Maryland 20716

Re:   John C. Flood of Virginia, Inc.

Dear John:

Though we have missed each other, I have called you the last several times to discuss the agreement between our clients. In response to your latest inquiry, please be advised that I have personally seen the advertisements to go into the new books, and they contain the words "of Virginia, Inc." after "John C. Flood." With respect to the photographs you have supplied, my client responds as follows:

a.   The building pictured in one of the photographs is the Virginia location, not, as your clients aver, a new location.

b.   The trucks pictured are trucks which have been in existence since the inception of the company and for which your clients ordered and commissioned the lettering thereon.

Notwithstanding this, my client, within a reasonable period of time, shall have the words "of Virginia, Inc." added to the various signs and lettering. Please have your clients check the facts prior to making accusations.

Should you have any questions or comments please do not hesitate to contact me.

Very truly yours,

Gary F. Weltmann













# **END OF EXHIBIT "C"**