**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **JOHN C. FLOOD OF VIRGINIA, INC., et al.** | ) | |
| | ) | |
| **Plaintiffs and Counter-Defendants,** | ) | |
| | ) | |
| **v.** | ) | **Judge Richard J. Leon** |
| | ) | **Case No.: 1:06CV01311** |
| **JOHN C. FLOOD, INC., et al.** | ) | **Deck Type: General Civil** |
| | ) | |
| **Defendants and Counter-Plaintiffs.** | ) | |

---

# VIRGINIA FLOOD'S STATEMENT OF POINTS AND AUTHORITIES IN OPPOSITION TO 1996 FLOOD'S MOTION FOR A PROTECTIVE ORDER[1]

---

## I. INTRODUCTION AND RELEVANT BACKGROUND

Defendants' motion for protective order must be denied because it is baseless. Defendants' motion focuses primarily on protecting financial and corporate records from production. Defendants oppose production based primarily on two arguments. First, Defendants incorrectly argue that their financial and corporate records are irrelevant because (they argue) Virginia Flood seeks to discover them solely for assessment of monetary damages. As set forth below, however, such information is highly relevant to the case in chief. Second, Defendants assert that their financial and corporate records are so highly sensitive that even a two-tiered protective order is insufficient to protect them. Such argument is disingenuous, however, considering Defendants' motion for protective order proposes alternative relief in the form of a two-tiered protective order.[2]

---

[1] This opposition is timely filed, pursuant to the Court's July 31, 2007 Minute Order, which set August 17, 2007 as the deadline to respond and granted the joint motion for extension of time to respond (doc. 38).
[2] See Defendants' Mot. for Protective Order at p. 2, ¶ (iii).

{00223569.4}

**A. Defendants' Financial and Corporate Records are Highly Relevant.**

In discovery, Virginia Flood requested specific records related to the finances and corporate structure and organization of (1) 1984 Flood, (2) the sham entities that its owners later created, and (3) 1996 Flood. Virginia Flood intends to examine and use the withheld documents to further establish that 1984 Flood ceased to exist at the time it filed bankruptcy, attempted to hide assets from creditors, and ceased to use the FLOOD marks in anything more than a token manner after filing Chapter 11 bankruptcy on June 21, 1991, or alternatively at least as early as March 2, 1993 when a receiver was appointed. Virginia Flood also intends to examine and use the withheld documents to further establish that since 1996 Flood purchased assets out of the bankruptcy estate, 1996 Flood's use of the FLOOD marks has been *de minimus* in the market as to constitute token use by 1996 Flood.

Virginia Flood maintains that the financial records of these sham entities are highly relevant to Virginia Flood's claim of abandonment by 1984 Flood and priority of use over 1996 Flood. Virginia Flood intends to examine and use the withheld records to prove that no good will existed to be sold or transferred; to establish the break in the chain of title between the various entities; and to establish the unlawful use of the FLOOD marks by the sham entities.[3]

**B. The Two-Tiered Protective Order Will Sufficiently Protect Defendants.**

Virginia Flood and Defendants conferred regarding Defendants' objections to these Requests. Defendants proposed,[4] and Virginia Flood accepted with another proposed draft, a two-tiered stipulated protective order, which would provide two tiers of confidential protection

[3] See Virginia Flood's Response to Defendants' Statement of Undisputed Material Fact ("SUMF") Nos. 8 & 15.
[4] See Ex. A hereto (Stipulated Protective Order proposed by Defendants in June 2007).

to all parties involved, including limiting disclosure to counsel and expert witnesses.[5] In response to similar production requests from Defendants, Virginia Flood also gathered this information and was, and is, prepared to produce this same information. Defendants later reneged on their agreement, as evidenced by the attached correspondence,[6] and filed the pending motion.

## II. LEGAL ARGUMENT

### A. The Federal Rules Of Civil Procedure Require Discovery of Information Reasonably Calculated to Lead to Admissible Evidence

The threshold in determining whether information is discoverable is a low one. **"**Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party . . . ." Fed. R. Civ. P. 26(b)(1). More importantly, the Rules state that "[R]elevant information need not be admissible at the trial if discovery appears reasonably calculated to lead to the discovery of admissible evidence." Id. (emphasis added). The Federal Rules of Civil Procedure create a statutory presumption in favor of open discovery, extending even to those materials not used at trial. Tavoulareas v. Washington Post Co., 724 F.2d 1010, 1015 (D.C. C. 1984), vacated on other grounds, 737 F.2d 1170 (1984).

"It is well established that a movant for a protective order must articulate specific and particular facts showing good cause, and not merely allege "stereotyped and conclusory statements." Fed. R. Civ. P. 26(c); Avirgan v. Hull, 118 F.R.D. 257, 262-63 (D.D.C. 1987); *see* Tavoulareas, 724 F.2d 1010, 1015-16 (D.C. Cir. 1984); 8 Wright & Miller, Federal Practice and

---

[5] See Ex. B hereto (July 2, 2007 Email from Virginia Flood's counsel, Stephen Zralek, to Defendants' counsel, Benjamin Lambiotte, attaching a new protective order, still providing two-tiered protection of confidential and attorneys' eyes only designations proposed by Defendants in Ex. A).

[6] See Ex. C hereto (July 6, 2007 Email from Lambiotte to Zralek, withdrawing proposal of two-tiered protective order).

Procedure, Civil, § 2035 at 265 (1970). Indeed, to show good cause for entry of a protective order, the movant must articulate specific facts to support its request and cannot rely on speculative or conclusory statements. Fed. R. Civ. P. 26(c).

In this suit, Virginia Flood asserts that through non-use of the FLOOD marks, 1984 Flood abandoned its rights in these marks. Virginia Flood asserts priority over the FLOOD marks, and seeks to fully discover the extent of use of the marks by 1984 Flood, the sham entities and 1996 Flood. As established in Virginia Flood's opposition to Defendants' motion for summary judgment, there is no question regarding the relevancy of the requested information.

Defendants have improperly characterized Virginia Flood's requests for this information as being relevant only to the issue of damages. Virginia Flood asserts again, however, that the information it seeks is highly relevant to Virginia Flood's claims of abandonment by Defendants and the priority of Virginia Flood in its use of the marks. The financial information that Virginia Flood is requesting will be used to gauge both the continuity of use, if any, and the extent of use, if any, by 1984 Flood, the sham entities and 1996 Flood. Thus, Virginia Flood is seeking the financial information to establish whether or not Defendants were actually "doing business," as they claim. Virginia Flood is not seeking to increase the costs of this litigation for its own clients by seeking irrelevant information to "embarrass or harass," as Defendants contend. Rather, Virginia Flood is seeking information that goes to the heart of its claims against Defendants.

**B. The Information Defendants Seek to Protect is Not a "Trade Secret"**

Under District of Columbia law, a "trade secret " is information that is (1) secret; (2) [the] value of which derives from secrecy; and (3) [the] confidentiality of which owner makes reasonable effort to secure." U.S. Commodity Futures Trading Com'n v. Whitney, 441 F. Supp. 2d 61, 71 (D.D.C. 2006).

Defendants incorrectly argue the financial information Virginia Flood requests constitutes a trade secret. The information that Virginia Flood requested in discovery is a compilation of financial information that Defendants use in their business; however, it is not information that is valuable *because* of its secrecy. See id. Thus, the information cannot be regarded as a trade secret. Id. Moreover, Defendants fail to allege with any specificity how disclosing this information comprises "confidential proprietary commercial and trade secret information," and instead, only object with conclusory and speculative statements. Defendants' objections fall far-short of what is required for a movant to obtain a protective order. Fed. R. Civ. P. 26(c); Avirgan, 118 F.R.D. 262-63 (D.D.C. 1987).

Moreover, to assuage Defendants' reservations about revealing information it (now) considers to be a trade secret, Defendants proposed, and Virginia Flood agreed to, a two-tiered stipulated joint order of protection.[7] Defendants' actions in this regard necessarily undercut the sincerity of the arguments they now propound against producing this information.

### C. Defendants' Alternative Proposal Is Far-Reaching and Unnecessary Because Virginia Flood Has Already Agreed to a Two-Tiered Protective Order

Ironically, Defendants propose that if the Court does not grant their motion for a protective order that, in the alternative, the Court direct that the information Virginia Flood requests be:

> disclosed only under appropriately narrowly-tailored requests, and a two-tiered stipulated protective order, protecting the information from disclosure to the public and Virginia Flood Parties' principals, employees and affiliates, and restricting access only to outside counsel of record in the case, unaffiliated expert witnesses who agree to be bound by the confidentiality restrictions in the order, and the Court, and directing that all such documents and information submitted to or used in connection with proceedings before the Court be filed and maintained under seal.[8]

[7] See Exs. A through C, attached hereto.
[8] See Defendants' Memorandum in Support of Defendants' Motion for a Protective Order, III. (C) (2) ¶ 5.

{00223569.4}

Defendants' alternative proposal is unduly broad and unnecessary. Again, Defendants proposed, and Virginia Flood accepted, a two-tiered joint order of protection quite similar to Defendants' alternative proposal. Virginia Flood does not believe, however, that these documents need to be maintained under seal of Court nor have the use of such information limited to use at trial or on a appeal. Again, Virginia Flood intends to use this information to establish its claims of abandonment against Defendants, and thus, will need to use this information throughout this case. Defendants have failed to show that the information that Virginia Flood seeks is immaterial and/or irrelevant to Virginia Flood's claims. As the District Court for the District of Columbia has stated, far-reaching, "blanket orders only postpone, rather than prevent, the need for the Court to closely scrutinize discovery materials to see if [a] seal is justified." John Does I-IV v. Maharishi Mahesh YOGI, 110 F.R.D. 629, 632 (D.D.C. 1986). Virginia Flood is entitled to discovery of this specific and relevant financial information it requests in order to pursue its claims against Defendants.

**D. Defendants' Fraudulent Actions in Creating the Sham Entities Entitles Virginia Flood to Discovery of These Entities' Corporate and Financial Records**

Michael Rinn, the bankruptcy trustee the Court appointed to oversee 1984 Flood's Bankruptcy, filed a Verified Complaint to Avoid and Recover Fraudulent Conveyances, to Compel Turnover of Estate Assets, for the Appointment of a Receiver and for Other Relief ("Verified Complaint for Appointment of a Receiver").[9] There, the trustee averred under oath that shortly after he was appointed as trustee on March 2, 1993, Crooks, Davis, and Robert and Joanne Smiley created sham entities to conceal assets of the bankruptcy estate from creditors. These sham entities included J.C.F. Inc., t/a J.C. Flood, Co., John C. Flood of MD, Inc., John C.

[9] See Ex. B-1, attached to Rinn Decl. (doc. 37-4), attached to Defendants' MSJ.

Flood of D.C., Inc., MCMD, Inc., a/k/a Mark Crooks & Melville Davis, Inc., which the trustee referred to as "New Flood."[10] Due to their fraudulent activity, the trustee named the Smileys and each of the sham entities, as defined above, as defendants in this adversary proceeding, despite the fact that they had not been parties to the original Chapter 11 bankruptcy filed on June 21, 1991.[11]

In the Verified Complaint for Appointment of a Receiver, the trustee averred:

> Substantially all of the employees of [1984 Flood] were told to quit, were released, or were fired by Mr. Crooks and Mr. Davis after [the bankruptcy judge] announced his decision to appoint a trustee on March 2, 1993.
>
> Defendants informed substantially all of [1984 Flood's] employees that they should quit [1984 Flood] and go to work for [the sham entities]. [The sham entities] immediately hired substantially all of [1984 Flood's] employees.
>
> When the appointed trustee finally seized [1984 Flood's] corporate bank accounts, paychecks to [1984 Flood's] employees bounced.[12]

At the conclusion of the hearing on the appointment of a trustee, the Court also specifically warned 1984 Flood's owners, Crooks and Davis, and stated "I will caution the debtors that it is a bankruptcy crime to meddle with the assets of the estate and that's subject to criminal penalties."[13] Thus, the Court expressed concern with the overall supervision of the financial transactions and Defendants' lack of compliance with the Bankruptcy Code.[14]

Yet, despite the Court's warning to Defendants, Rinn stated in the Verified Complaint for Appointment of a Receiver:

> Crooks and Davis and the other Defendants proceeded to remove, transfer and use, and continue to use up to the present time, without Court authorization, estate assets. The removal of estate assets and property included, but was not limited to, removal of monies in bank accounts, cash, accounts receivable, Debtors' trade name, good will, trade secrets, corporate opportunities, corporate

[10] Id. at ¶ 20.
[11] See Virginia Flood's Statement of Additional Facts Precluding Summary Judgment No. 14.
[12] Verified Complaint for Appointment of a Receiver ¶¶ 28-30.
[13] Id. at ¶ 39.
[14] Id. at ¶ 38.

> name, equipment, inventory, furniture, fixtures, customer lists, licenses, permits, certifications, and other tangible and intangible assets . . . .[15]

Virginia Flood seeks the corporate and financial records of each of the individual sham entities that Defendants used to conceal the assets of 1984 Flood. These documents will undoubtedly reveal information highly relevant to its claim against 1984 Flood for abandonment of the Flood marks and priority of use of the Flood marks as against 1996 Flood. Defendants' arguments that such information is irrelevant simply ring hollow in light of Michael Rinn's assessment of the dubious actions of the adversary proceeding defendants' (which included Crooks, Davis and the Smileys) in setting up these entities to defraud the bankruptcy estate and creditors. Defendants should not be entitled to obstruct Virginia Flood's discovery of this highly relevant information, which goes to the essence of Virginia Flood's claims against Defendants.

## III. CONCLUSION

For the foregoing reasons, Virginia Flood is entitled to discovery of the financial information it seeks from Defendants.

Respectfully submitted,

/s/ Erica Stiff-Coopwood
Stephen J. Zralek, *appearing pro hac vice*
Erica Stiff-Coopwood, *appearing pro hac vice*
**BONE McALLESTER NORTON PLLC**
511 Union Street, Suite 1600
Nashville, TN 37219
(615) 238-6300 – phone
(615) 238-6301 – facsimile
szralek@bonelaw.com
estiff-coopwood@bonelaw.com

[15] Id. at ¶ 40.

and

Lisa Dunner, DC Bar # 452004
**DUNNER LAW**
1010 Wisconsin Ave., N.W.
Washington, DC 20007
(202) 298-6002 – phone
(202) 403-3030 – facsimile
ldunner@dunnerlaw.com

*Counsel for John C. Flood of Virginia, Inc., John C. Flood, Inc. (a Virginia corporation), John C. Flood Contractors, Inc., and the Individual Defendants, Clinton Haislip & James L. Seltzer, Jr.*

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was served via ECF to Benjamin J. Lambiotte, Esq., Steve Varholik, Esq., GARVEY SCHUBERT BARER**,** 1000 Potomac Street, Fifth Floor, Washington, D. C. 20007 on this the 17th day of August 2007.

/s/ Erica Stiff-Coopwood
Erica Stiff-Coopwood