IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JOHN C. FLOOD OF VIRGINIA, INC.   )
                                 )
        **Plaintiff,**        )
                                 )    **Judge Richard J. Leon**
**v.**                           )    **Case No. 1:06CV01311**
                               )    **Deck Type:  General Civil**
**JOHN C. FLOOD, INC.,** *et alia,*    )
                                 )
        **Defendants.**      )

---

## DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT

### I.    *Introduction and Summary*

On July 18, 2007, all Defendants moved for summary judgment as to whether Plaintiff

Virginia Flood was entitled to monetary, injunctive and declaratory relief on the trademark

infringement and unfair competition claims it asserts in this case.[1]  Accompanying the motion

was a Statement of Material Facts Not in Dispute ("SMF"), as required by United States District

Court for the District of Columbia Local Rule 56.1 ("LCvR 56.1"), setting forth 41 separate

paragraphs of detailed, undisputed facts, each supported by citations to admissions in the

pleadings, and to averments in three sworn declarations, as well as by hundreds of pages of

documents produced in discovery authenticated by and attached to the declarations.  On August

17, 2007, Virginia Flood filed papers in opposition to the summary judgment motion.

These included a "Response to 1996 Flood's Statement of Undisputed Material Facts Not

in Issue and Statement of Additional Facts Precluding Summary Judgment.

("Counterstatement").  The Counterstatement impermissibly blends admissions and partial

denials with haphazard allegations and legal arguments, in violation of Local Rule 56.1, and the

---

[1]  Because it did not request judgment on Defendant John C. Flood, Inc.'s counterclaims, the motion was styled as a Motion for Partial Summary Judgment.

standards scrupulously enforced by this Court for counterstatements of this nature. *See*

*Globalaw* v. *Carmon & Carmon*, 452 F.Supp.2d 1, 5 n.3 (D.D.C. 2006)[2] *See also Jackson v.*

*Finnegan, Henderson, Farabow, Garrett & Dunner*, 101 F.3d 145, 153 (D.C. Cir. 1996)

("[R]epeatedly blending factual assertions with legal argument, the 'relevant facts' section does

not satisfy the purposes of a [LCvR 56.1] statement."). In any event, the denials of the

Counterstatement are bolstered only by a single conclusory declaration by a principal of Virginia

Flood, and a copy of Defendants' written responses to Plaintiff's document requests (the latter

offered as "proof" of a patently false representation by Virginia Flood's counsel, *see supra*).

While difficult to follow due to the improper interweaving of bare allegations and

argument, as to each of the 41 paragraphs of averments in the Defendants' LCvR 56.1 Statement,

Virginia Flood's Counterstatement either:  (a) admits the truth of the averment; (b) purports, in

an entirely conclusory fashion, to deny the averment and admits the truth of the rest, while, as to

the part denied, failing to cite to or bring forward any substantial evidence creating a genuine,

trial-worthy issue; or (c) admits the truth of the averment, but untenably dismisses it as

immaterial. Nor do the few non-argumentative affirmative statements of fact in the

Counterstatement, or the scanty citations to documents proffered by Defendants; raise any

genuine, material factual issue that would preclude summary judgment under the theories set

forth in Defendants' moving papers. Indeed, in large part, those statements address impertinent

matters (for example, why Virginia Flood considered itself justified in making certain averments

in its trademark registration applications, Counterstatement, at page 31, Para. 15) not even

implicated by the motion for summary judgment.

---

[2] There, the Court noted that the non-movant's 56.1 statement "does not respond to the Counterclaim Defendants' Statement in any organized way; rather, it essentially regurgitates C&C's Memorandum in Opposition in a different format that blends legal argument with factual claims. The Court finds that this deviation from the mandate of the Local Civil Rule undermines the purpose of the Rule, which is to assist the Court in quickly determining which facts are actually in dispute." The same is true of Virginia Flood's Counterstatement.

In another example, Virginia Flood's Counterstatement attempts to manufacture a factual issue by resorting to an outright misrepresentation. Counsel for Virginia Flood, in its "responses" to Paragraphs 15, 31 and 35 of our LCvR 56.1 statement of material facts not in dispute, stated that Defendants have refused to produce proof of payment of the purchase price of the names and goodwill by the Defendants, attaching as Exhibit B to its Counterstatement Defendant's written response to Virginia Flood's request for production containing counsel's initial objections. Counterstatement, at ¶¶ 15, 31, 35 & Ex. B.

Virginia Flood's counsel fails to disclose to the Court that *on June 22, 2007, nearly two months before the date of filing of the Counterstatement, we served copies of checks and records of payment of the purchase price for the assets out of bankruptcy on Virginia Flood's counsel via overnight delivery.* Those records bear Bates Label Nos. 001168-001231. Attached hereto as Exhibit A are copies of Defendant's counsel's June 22, 2007 transmittal letter sent by overnight express and electronic mail, and copies of the payment records served therewith with proof of overnight delivery.

Because Virginia Flood's Counterstatement obscures, rather than illuminates, the facts not actually at issue, in clear violation of LCvR 56.1, the Court would be acting within its authority were it to strike it, or to deem all facts in Defendants' SMF as conceded. *See Robertson v. Am. Airlines*, 239 F. Supp. 2d 5 (D.D.C. 2002) (striking defendant's motion for summary judgment for noncompliance with Local Rule 7 and 56.1.).

Also supporting our summary judgment motion was a legal memorandum. Our memo articulated two broad legal theories (each independently sufficient to support judgment in Defendants' favor) why, under the undisputable facts of the case, Virginia Flood is not entitled, as a matter of law, to enjoin Defendants' use of the names and marks and associated goodwill

they purchased more than ten years ago from the bankruptcy estate of 1984 Flood, under an order of the U.S. Bankruptcy Court approving the sale of those assets free and clear of adverse liens and interests, nor to obtain any monetary recovery on those claims, nor to a declaration of priority over Defendants.

First, we showed that on the undisputed facts of record, Virginia Flood could not carry its burden of demonstrating the fundamental element of ownership of and priority in the disputed marks. This is so because there is no evidence to support Virginia Flood's core contention that the Trustee's sale was invalid because the names, marks and goodwill had been abandoned by 1984 Flood's bankruptcy estate prior to the sale to Defendants.

Second, our memo further demonstrated, Virginia Flood's attempts to invalidate the sale and to obtain relief in this case, more than eleven years after the sale occurred, are barred by laches, estoppel, waiver and release. In support of these legal and equitable defenses, we showed that, among other things, there is no dispute that Virginia Flood and its principals: actively participated in the bankruptcy proceedings leading up to the sale over 11 years ago; filed an objection to the sale but failed to assert any superior interest in, or to challenge the Trustee's title or right to sell the names and goodwill, instead, offering the estate over $200,000 for the same assets they now assert the Trustee had no right to sell; executed and delivered to the Trustee a written release and assignment of all claims against the Trustee and bankruptcy estate; failed to challenge during the bankruptcy proceedings the estate's title to the assets, or, after entry within the time prescribed by applicable law, the Bankruptcy Court's order under Bankruptcy Code Section 363 approving the sale and cutting off adverse claims and interests; and commenced no action to enforce its purported rights until over a decade after the sale, during which period

4

Defendants continuously used the names and goodwill they purchased, and invested substantial sums in advertising and promoting their services under them.

In response to our memo, Virginia Flood filed a "Statement of Points and Authorities in Opposition to 1996 Floods' Motion for Partial Summary Judgment." (abbreviated herein, "Oppos."). In the same way its Counterstatement fails to properly meet Defendant's exposition of material facts not in issue and to show any genuine issue of fact, Virginia Flood's memorandum fails to articulate any cognizable reasons why, under the undisputed facts, Defendants are not entitled to judgment as a matter of law on the theories set forth in our opening brief.

In fact, as to our second line of argument – that Virginia Flood's claims are barred by laches, estoppel, waiver and release -- Virginia Flood's brief simply does not even address the opening memo's points, authorities and arguments *at all*. Indeed, Virginia Flood offers not a single page, line, or even a word, in rebuttal to these arguments. With respect to the material facts marshaled in support of these points, Virginia Flood's Counterstatement largely admits them, but flippantly dismisses them as "immaterial." But, again, its brief is devoid of any explanation how or why those uncontested facts are not determinative of the outcome of the legal and equitable defenses upon which Defendants seek judgment. Because the facts and law offered to support these defenses are essentially conceded, Defendants are entitled to summary judgment without further ado.

Also, Virginia Flood's memorandum fails to meet, much less address in any meaningful manner, Defendant's first argument that Virginia Flood cannot demonstrate, by the requisite clear and convincing evidence that the *estate*, personified by the Trustee, abandoned the marks and goodwill. As we showed in our opening brief, applicable law requires the proponent

asserting abandonment to prove, by clear and convincing evidence, both cessation of use, and an *intention to abandon*, on the part of mark owner, here, the Trustee. Virginia Flood does not dispute that the Defendants acquired the FLOOD names and goodwill from the bankruptcy estate of 1984 Flood, personified by the Trustee, or that 1984 Flood was the original, senior user of the marks, before Virginia Flood.

Instead, Virginia Flood focuses myopically on the conduct of the "sham" Flood entities. No one disputes that these were formed and used the FLOOD marks improperly and in derogation of the rights of the bankruptcy estate and Trustee during the bankruptcy. Virginia Flood's attempt to suggest that there is a trial-worthy issue as to whether the uses by these entities and the corporate debtor during the bankruptcy were or were not continuous, or merely "token," "*de minimus*" or "illegal," founders on its own contrary admissions that the Trustee sought and received appointment of a receiver *because* such uses were, in fact, occurring, and were in derogation of the rights of the estate, and a total lack of competent evidence to rebut the Defendants' voluminous proof of use of the JOHN C. FLOOD and FLOOD names and marks for the benefit of the estate during the bankruptcy.

But even if Virginia Flood *had* marshaled competent and sufficient proof to raise a genuine issue as to the extent and continuity of the debtors' and the "New Flood" entities' use during the bankruptcy (which it has not), that would be immaterial for purposes of summary judgment: It would not change the inevitable outcome of Virginia Flood's abandonment claim. Nor would discovery of financial records of 1984 Flood and the "New Flood" entities Virginia Flood claims disingenuously it needs to review to determine whether or not there was "token," or *de minimus* use during the bankruptcy case.

Any issue of non-use for two years or even longer would be immaterial because Virginia Flood has failed to point to any evidence from which a finder of fact could conclude that the Trustee clearly and convincingly intended to abandon the marks and names ultimately sold to Defendants. Virginia Flood ignores the crucial intent element of its two-fold burden entirely, resting exclusively on a rebuttable presumption of abandonment arising from just barely two years of alleged continuous non-use of the mark between March 1993 and June 1995.

Notwithstanding any discontinuity of use for two years or more, the evidence shows overwhelmingly that the Trustee took decisive action during the bankruptcy case to protect, preserve and continue and operate the business of 1984 Flood as a going concern under the FLOOD names and marks, evincing a clear intention to preserve and sell the names and goodwill for the benefit of the estate. The evidence of record more than rebuts any presumption of abandonment arising from any cessation of use, even if Virginia Flood could prove such non-use for the requisite period, and the utter lacuna of proof of contrary intent is fatal to Virginia Flood's abandonment claim. Defendants are entitled to summary judgment for this reason also.

## II.    *Legal Standards Applicable to the Sufficiency of Virginia Flood's Opposition*

Summary judgment is appropriate if the pleadings and the evidence demonstrate that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Globalaw Ltd.* v. *Carmon & Carmon,* 452 F.Supp.2d 1, 22 (D.D.C. 2006); *Dorn* v. *McTigue*, 157 F.Supp.2d 37, 42 (D.D.C. 2006). The moving party bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, which it believes demonstrate the absence of a genuine issue of material fact. *Globalaw,* 452 F.Supp.2d at 22; *Washington* v. *Thurgood Marshall Academy*, 2006 U.S.

Dist. LEXIS 40318, *16 (D.D.C. June 19, 2006). Defendants respectfully submit that our moving papers discharged this initial responsibility.

In response to a motion for summary judgment, the non-movant "must go beyond the pleadings, and by his own affidavits, or depositions, answers to interrogatories, and admissions on file, 'designate' specific facts showing there is a genuine issue for trial." *Globalaw,* 452 F.Supp.2d at 22; *Washington,* 2006 U.S. LEXIS 40318 at *17. Although a court should draw all justifiable inferences from the supporting record submitted by the non-movant in the non-movant's favor, the mere existence of a factual dispute, by itself, is not sufficient to bar summary judgment. *Id.* To demonstrate the existence of a genuine, material issue of fact precluding summary judgment, a non-moving party must establish more than a scintilla of evidence in support of its position, and must do more than show there is some metaphysical doubt as to the material facts. *Globalaw,* 452 F.Supp.2d at 22.

To determine what facts are "material," a court must look to the substantive law on which the particular claim or defense as to which judgment is sought rests. *Dorn,* 157 F.Supp.2d at 42, *citing Anderson* v. *Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). Only those factual assertions capable of affecting the substantive outcome of such a claim or defense are "material." *Globalaw,* 452 F.Supp.2d at 22; *Washington,* 2006 U.S. Dist. LEXIS 40318, at * 18. To be "genuine," "the issue must be supported by sufficient admissible evidence that a reasonable trier-of-fact could find for the non-moving party." *Globalaw,* 452 F.Supp.2d at 22, *citing Laningham v. U.S. Navy,* 813 F.2d 1236, 1242-43 (D.C. Cir. 1987); and *Liberty Lobby,* 477 U.S. at 251 (the court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law").

Mere allegations or denials in the non-moving party's papers are insufficient, as are conclusory statements. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Globalaw,* 452 F.Supp.2d at 22. Where the moving party shows that the non-movant "failed to make a showing sufficient to establish the existence of an element essential to that party's case, and in which that party will bear the ultimate burden of proof at trial," and points to the absence of such evidence proffered by the non-moving party, the movant is entitled to summary judgment. *Dorn,* 157 F.Supp.2d at 42, *quoting Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986).

Whether or not the non-movant has proffered admissible evidence sufficient to permit a reasonable finder-of-fact to find in its favor on a matter on which the non-movant bears the burden of persuasion is measured with reference to the standard of proof required. *See, e.g., Dorn,* 157 F.Supp.2d at 48-50 (non-movant failed to make a showing sufficient to allow a jury to find misrepresentation by the required clear and convincing evidence); *Washington,* 2006 U.S. Dist. LEXIS 40318, at *30 (Defendant's motion for summary judgment on misrepresentation claim granted; "[p]laintiff has . . . failed to provide clear and convincing evidence from which a reasonable fact-finder could conclude Defendant fraudulently misrepresented either her job duties, working hours, or number of students.").

Where, as in this case, in which neither side has demanded a jury, the district court would be the trier-of-fact on an issue were the case to proceed to trial, the Court is not confined to deciding questions of law only, but may draw derivative inferences from undisputed subsidiary facts, even if those facts would support a contrary inference, so long as the inference does not depend on an evaluation of witness credibility. *Derose* v. *Rice,* 2006 U.S. Dist. LEXIS 5182, * 29-30, *quoting Cook* v. *Babbit,* 819 F.Supp 1, 11 & n.11 (D.D.C. 1993). In such a case, a

conflict between the parties concerning the ultimate and decisive conclusion to be drawn from undisputed facts does not prevent rendition of summary judgment. *Ramallo* v. *Reno,* 931 F.Supp. 884, 888 (D.D.C. 1996).

As we show below, when measured by these standards, Virginia Flood's opposition to the motion falls far short. Virginia Flood has failed utterly to controvert either the facts or legal principles upon which Defendant's entitlement to judgment on its laches, estoppel, waiver and release defenses rest. Also, it has failed to come forward with sufficient evidence to establish a genuine issue of fact on the core abandonment claim upon which it must shoulder the burden of persuasion by clear and convincing evidence, or to demonstrate how or why additional discovery geared toward proof of suspension or cessation of use of the names and marks during the bankruptcy case would raise an outcome-determinative issue.

III.    ***Virginia Flood's Opposition Fails to Demonstrate a Genuine, Material Issue of Fact or That Defendants are Not Entitled to Judgment as a Matter of Law***

A. ***Virginia Flood Does not Contest that its Claims Are Barred by Laches and Estoppel***

In our opening brief, we requested summary judgment on Defendants' laches and estoppel defenses, arguing that all claims, and, certainly, claims to any monetary relief, were barred by the defense. We showed that the well established elements of the defense – a substantial delay in filing suit; knowledge of the alleged infringement, and a reliance interest on the part of the defendant – (*see NAACP* v. *NAACP Legal Defense and Educational Fund, Inc.,* 753 F.2d 131, 137-38 & n.65 (D.C. Cir. 1985))-- were more than satisfied by the undisputed facts. Virginia Flood does not effectively controvert that:

o  Virginia Flood delayed more than ten years after Defendant-purchasers began using the names and marks in bringing an infringement action against Defendants, use of which Virginia Flood was aware (Counterstatement ¶¶ 34, 36, 41);

o  At and after the time of the sale, Virginia Flood failed to assert any superior interest in, or to challenge the Trustee's title or right to sell the names and goodwill, instead,

its principals offered the estate over $200,000 for the same assets they now assert the Trustee had no right to sell (*Id.* ¶¶ 26, 30);

o Defendants increased and changed their offer in response to Virginia Flood's counteroffer, and made the higher offer and closed the sale in reliance on Virginia Flood's failure to challenge the Trustee's title and right to sell the names and goodwill, or the Bankruptcy Court's order approving the sale and cutting off adverse interests (*Id.* ¶¶ 27, 32, 33 (statements of fact as to Smiley's reliance and Virginia Flood's failure to object on grounds that Trustee lacked title not denied);

o Virginia Flood failed to object or assert its alleged superior rights in October 1995, when the Trustee wrote Virginia Flood a letter complaining of uses of the JOHN C. FLOOD mark the Trustee considered infringing (*Id.* ¶ 29);

o Virginia Flood failed to object or assert its alleged superior rights or to the marks or allege infringement of its rights, in June 1996, after the sale, when Defendants' counsel wrote a letter complaining that Virginia Flood was infringing the Defendant-buyers' rights by using JOHN C. FLOOD without a distinguishing "of Virginia" designator, and, in fact, its counsel agreed to add such designator (*Id.* ¶ 39);

o During the decade long period of delay, Defendants continuously used the names and goodwill they purchased, and invested substantial sums in advertising and promoting their services under them. (*Id.* ¶ 34, ¶ 36 (statement of fact as to uses by 1996 Flood not denied and admitted in Virginia Flood's pleadings); ¶ 37 (statement of fact as to expenditures of 1996 Flood not denied).

Virginia Flood's opposition papers simply do not address, much less meet or overcome, our showing that these undisputed facts and applicable law bar all of Virginia Flood's claims, and certainly all monetary relief claims, as a matter of law, effectively conceding the point. Defendants are entitled to summary judgment for this reason alone.

/

/

/

11

**B.** *Virginia Flood Does Not Contest That Its Claims Are Barred by Its Failure to Assert its Purported Interests Before the Bankruptcy Court or to Challenge the Bankruptcy Court's Order Within the Time Prescribed By Law, or By Release/Assignment[3]*

In our opening brief, we showed that, in addition to being barred by laches and estoppel Virginia Flood's claims are barred as a matter of law by its failure to assert its allegedly superior rights, or to challenge the Trustee's right to sell the names and goodwill, before the bankruptcy court, or to challenge within the time prescribed by Bankruptcy Rule 9024 the Bankruptcy Court's order approving the sale free and clear of adverse claims and interests pursuant to Bankruptcy Code Section 363, despite having notice of and actively participating in the bankruptcy proceedings leading to the sale. Once again, Virginia Flood's opposition papers do not dispute the facts upon which this argument is based. Virginia Flood's Counterstatement expressly admits:

o The Adversary Proceeding settlement proposal contemplated that the JOHN C. FLOOD and FLOOD tradenames and goodwill would be sold free and clear of all adverse liens, claims and interests pursuant to 15 U.S.C. Section 363;

o The Trustee served a notice of motion and a motion for approval of the names and good will free and clear on all creditors and parties in interest, including counsel for Virginia Flood and its principals, Haislip and Seltzer;

o Haislip and Seltzer filed an objection to the sale, which did not claim or assert that the estate lacked the right to sell or lacked title and interest in and to the JOHN C. FLOOD and FLOOD trade names and goodwill, or that the sale would be invalid due to Virginia Flood' rights;

o At no time before or after the sale approval process did Virginia Flood, Haislip, Seltzer or their attorney ever claim or assert before or in any connection with the bankruptcy case that the estate lacked the right to sell or lacked title and interest in

---

[3] In addition to laches/estoppel and failure to challenge the Order, we also argued in our opening brief that Virginia Flood's claims were barred because any claim that the Trustee had no rights in the marks because Virginia Flood owned them exclusively due to abandonment by non use between 1993 and 1995 would have been ripe as of the time of the sale, yet, by then, as part of the consideration for the Trustee's 50% interest in Virginia Flood, which transaction closed in October 1995, Virginia Flood, Haislip and Seltzer expressly released any and all claims against the Trustee and bankruptcy estate, and expressly assigned such claims to the Trustee. Memo at 42-43. Once again, Virginia Flood failed to contest these factual and legal points, and has effectively conceded that summary judgment is appropriate for this reason as well.

and to the JOHN C. FLOOD and FLOOD trade names and goodwill, or that the sale was invalid due to Virginia Flood's rights.

Counterstatement, at Paras. 22-30.

In addition to conceding the key facts, Virginia Flood does not contest the legal points and authorities advanced in support of our argument that the Bankruptcy Court's order approving the sale bars their claims as a matter of federal law.

Where a party with notice who participated in proceedings leading to a sale of assets under Section 363 fails to assert an alleged adverse interest in the asset, or to challenge the order after entry within the time prescribed by Federal Rule of Civil Procedure 60(b) (made applicable to bankruptcy proceedings by Bankruptcy Rule 9024), that party is barred from asserting such a claim in subsequent proceedings. *Colorusso* v. *Ragossa*, 382 F.3d 51 (1st Cir. 2004); *FutureSource LLC v. Reuters Ltd.*, 312 F.3d 281 (7th Cir. 2002), *cert. denied*, 538 U.S. 962 (2003).

In *La Preferida, Inc.* v. *Cerveceria Modelo, S.A. de C.V*, the U.S. Court of Appeals for the Seventh Circuit described the effect of the failure of an alleged trademark holder to assert its rights before the Bankruptcy Court or to collaterally attack within the time prescribed by Bankruptcy Rule 9024, an order approving the sale of trademarks free and clear of adverse interests:

> It is quite clear that, correctly or incorrectly, the bankruptcy court purported to sell *all* of Corona's trademarks "free and clear of all liens, claims and encumbrances" and that La Preferida, a party to the proceeding with full rights of participation, including discovery, acquiesced in that sale on that basis. La Preferida neither appealed the judgment of the district court nor requested, according to Bankruptcy Rule 9024, that the matter be reconsidered. At the time of the bankruptcy court's order, La Preferida acquiesced in the sale -- without encumbrance -- of *all* the trademarks of Corona evidenced by registrations in the United States Patent and Trademark Office. By contrast, La Preferida's 1987 suit now asks that the district court undo one of the essential terms of the sale order and determine that, even now, La Preferida has an interest in the trademarks. In short, the 1987 suit is nothing other than a collateral attack on the final judgment of the bankruptcy

13

> court. However, except for the narrow exceptions set forth in Rule 60(b), bankruptcy sales, if they are to fulfill their role, must be final when made. *See Matter of Met-L-Wood Corp.*, 861 F.2d 1012, 1019 (7th Cir. 1988), *cert. denied*, 490 U.S. 1006, 104 L. Ed. 2d 157, 109 S. Ct. 1642 (1989).

914 F.3d 900, 908 (7th Cir. 1990).

The same undisputed legal principles apply with equal force here. On the undisputed facts of this case, they bar Virginia Flood's claims, and Defendants are entitled to judgment.

### C. *Virginia Flood Has Shown a Genuine, Material Issue as to Abandonment*

Virginia Flood does not  dispute that 1984 Flood's use of JOHN C. FLOOD, FLOOD and similar variations in connection with plumbing, heating, and air conditioning services in the Washington, D.C. metropolitan area was senior and prior to Virginia Flood's. *See* Counterstatement, ¶¶ 1 and 3. Virginia Flood does not deny that, upon the filing of a petition in bankruptcy, an estate in bankruptcy is created, and that all legal and equitable interests in all property of the debtor, including all servicemarks, tradenames and goodwill, become vested in the estate, no matter by whom or where those interests are held. *See* 11 U.S.C. § 541(a) *and* Defendant's Memo., page 27. Nor does it deny that, in late 1995, the bankruptcy estate of 1984 Flood, by and through the Chapter 7 Trustee, Michael Rinn, sold the JOHN C. FLOOD and FLOOD marks and goodwill to Defendants, pursuant to an Order of the Bankruptcy Court approving the sale. Counterstatement, Paras. 17, 21-28 (apart from impertinent argument, statements of fact admitted).

A trustee in bankruptcy has the power to sell the trademarks and goodwill of a debtor, and that sale is effective to assign the estate's rights in the assets to the buyer. *EH Yacht, LLC* v. *Egg Harbor, LLC*, 84 F.Supp. 556, 567 (D. N.J. 2000). After a valid assignment of trademarks and goodwill, the assignee succeeds to all the rights and priorities of the assignor. 2 J.T. McCarthy, *McCarthy on Trademarks and Unfair Competition,* § 18:15, at 18-33 n.2. Thus,

Defendants derive their priority from the 1984 Flood bankruptcy estate's priority, which relates back to the company's first use in 1984.

Virginia Flood's claims of trademark infringement and unfair competition are based entirely on allegations in their Complaint that "[a]t the time the Trustee and Receiver attempted to sell JOHN C. FLOOD, INC. and FLOOD, INC. to 1996 Flood, 1984 Flood was no longer using JOHN C. FLOOD and/or similar variations thereof, and, as a consequence, any goodwill that may have been symbolized thereby had been destroyed by 1984 Flood's abandonment and non-use of the same," First Amended Complaint, at Para. 33. With this abandonment claim, Virginia Flood seeks to trump the undisputed seniority that the estate of 1984 Flood, and, in turn, its assignee, Defendants would otherwise enjoy.

A trademark is "deemed abandoned" under the Lanham Act "when its use has been discontinued with intent not to resume. Intent not to resume may be inferred from circumstances." 15 U.S.C. 1127. Currently, the statute further provides: "Non-use for three consecutive years shall be prima facie evidence of abandonment." Prior to January 1, 1996, the effective date of Public Law 103-465, which extended the period to three years, non-use for two consecutive years constituted prima facie evidence of abandonment. Pub. Law. No. 103-465, Title V, § 521, 108 Stat. 4981 (December 8, 1994).

In any event, as the plain language of the statute states, the essence of abandonment is the mark-holder's *intention* to abandon, and proof of non-use is not dispositive of that question. As one of the cases cited by Virginia Flood observes correctly, proof of continuous non-use for the requisite statutory period raises no more than a presumption of abandonment, and "[a]bandonment being in the nature of a forfeiture, it must be strictly proved." *Dial-A-Mattress*

*Operating Corp.* v. *Mattress Madness, Inc.,* 841 F.Supp. 1339, 1355 (E.D.N.Y 1994) (internal quotation marks and citation omitted).

"*Therefore, the presumption of abandonment following from two years of non-use is rebuttable, if the owner of the mark presents facts that would negate the inference of intent to abandon.*" *Seidelmann Yachts d/b/a Pacemaker* v. *Pace Yacht Corp.,* 1989 U.S. Dist. LEXIS 17486 *16 (D. Md. 1989) (emphasis added, internal citations omitted), *aff'd* 898 F.2d 127 (4th Cir. 1990). *Accord EH Yacht LLC* v. *Egg Harbor LLC,* 84 F.Supp. 556, 565-566 (D.N.J. 2000) (proponent of abandonment must show that the circumstances clearly and convincingly establish an intent not to resume use of the mark; Supreme Court has held that almost total non-use for over four years, and a resulting near total loss of goodwill was insufficient) *citing Beech-Nut Packing Co.* v. *P. Lorillard Co.,* 273 U.S. 629 (1927). *See also Skippy, Inc.* v. *CPC Int'l, Inc.,* 674 F.2d 209 (4th Cir.) *cert. denied* 459 U.S. 969 (1982) (23 year hiatus in use did not constitute abandonment).

A *prima facie* showing of abandonment shifts only the burden of production, leaving the ultimate burden of persuasion of both elements, by strict proof, on the party alleging abandonment. *Cumulus Media, Inc.* v. *Clear Channel Comm., Inc.,* 304 F.3d 1167, 1175-78 (11th Cir. 2002). If the presumption is triggered, the owner of the mark has the burden of bringing forward evidence of either actual use during the relevant period or intent to resume use. *Id.* at 1176-77; *Emergency One, Inc.* v. *American Fire Eagle, Ltd.,* 228 F.3d 531, 536 (4th Cir. 2000). Once a party brings forward evidence of actual use, or an intention that use be resumed, "any presumption deriving from the proof of the prima facie case drop[s] out, and the [party arguing abandonment is] obligated to prove both continuous non-use and intent not to resume use." *Emergency One,* 228 F.3d at 536 n.1.

In this case, because the estate was the party in interest as to the marks and goodwill during the bankruptcy, the estate's intentions with respect to use of the mark are decisive. As the Court held in *Egg Harbor* (another case cited by Virginia Flood) Congress's use of the term "deemed abandoned" in the abandonment statute signals its intent that any:

> determination of intent not to resume use should be based on the totality of objective evidence of intent to resume use, not simply the intent of the . . . trademark owner. Under this standard, so long as there is power to do so, any valid intent to resume use within a reasonable time becomes relevant. *Thus, the Court holds that . . . .the party wishing to show intent not to resume use under § 1127 must point to objective evidence that clearly and convincingly establishes that, among those that had an interest and a right to do so, there was no intent to resume use of the Egg Harbor name within a reasonable time.* Defendant's proposed interpretation would render meaningless most secured creditors' interests in a trademark.

84 F.Supp.2d at 566 (emphasis added).

In that case, the Court concluded that evidence that the company's principals intended to sell the business to another concern, or allow its creditors to seize its assets and operate as a going concern until a buyer could be found necessitated finding against clear and convincing evidence of an intent not to resume use. *Id. See also Cash Processing Servs.* v. *Ambient Entertainment*, 418 F.Supp.2d 1227, 1230-34 (D. Nev. 2006) (discussing evidence of U.S. Government's intentions, after seizure of a brothel, that the famous "Mustang Ranch" mark be sold to a buyer who would operate a brothel). Thus, the requisite "intention to resume use" can be a party in interest's intention to sell the assets to a person who will resume use, or to operate the assets until a buyer can be found.

Virginia Flood argues in its brief that there is a genuine issue as to continuity of use, because use by the debtors and the "New Flood" entities during the bankruptcy was allegedly merely "token" and *de minimus*. In support of this argument, Virginia Flood advances nothing more than a series of specious legal arguments and the entirely conclusory, one-line averment in

17

a declaration from Clinton Haislip, President of Virginia Flood, and a counterdefendant here, that he monitored use by the debtors during bankruptcy, and that it was "*de minimus*."

Yet, apart from this bare legal conclusion in Haislip's declaration, Virginia Flood identifies no specific facts to rebut the averments in Mel Davis' declaration as to use of the mark on trucks and signage, or the documentary evidence proffered by Defendants showing substantial advertising of the marks in (at least) Maryland telephone directories, *The Washington Post TV Week, The Mechandiser,* newspaper coupons, and on business forms, throughout the bankruptcy case. Nor does Virginia Flood dispute the Trustee's averments in his declaration and the averments of the verified pleadings, motions and exhibits filed in the Bankruptcy Court which are part of the summary judgment record here, to the effect that the principals of 1984 Flood and entities they established used estate assets, including the marks and goodwill, essentially, to continue 1984 Flood's business during the bankruptcy between the appointment of a Chapter 11 Trustee in 1993 and the appointment of a receiver in 1995. This evidence of use destroys any presumption of abandonment. Virginia Flood's paltry showing is insufficient to raise a genuine issue for summary judgment purposes, much less to persuade a reasonable finder of fact that use was clearly and convincingly discontinued between 1993 and 1995.

Virginia Flood's proposition that advertising does not constitute evidence of trade name and service mark use is misleading, and the authorities it cites for the proposition inapposite. In *Lucent Information Management* v. *Lucent Technologies*, 986 F.Supp. 253, 259 (D.D.C. 1997), it was undisputed that the only use made by the defendant was on letterhead announcing the new business and name, and a few product presentations made during a single month. *Blue Bell* v. *Farah Manufacturing*, 508 F.2d 1260, 1266-67 (5th Cir. 1975) did not involve the sufficiency of advertising to prove use of a servicemark at all, but dealt goods in the nature of garments, and

whether a shipment of garments with labels bearing a mark to sales managers constituted a bona fide use in trade. That case turned on a rule applicable to use of a mark on goods (not in connection with services), and the "[e]lementary tenets of trademark law that labels or designs *be affixed* to *the merchandise actually intended to bear the mark in commercial transactions.*" (Emphasis added). In *Steer Inn Systems, Inc. v. Laughner's Drive-In, Inc.,* 405 F.2d 1401 (C.C.P.A. 1969), again, extensive advertising on trucks and in telephone directories and periodicals of the type offered by Defendants was not the issue; the only use involved in that case was on an office door sign, letterhead, and on architectural drawings.

Indeed, Virginia Flood disingenuously fails to inform the court that, where intangible services (as opposed to goods) are involved, use of a mark is proven by demonstrating that the mark "is used or displayed in the sale *or advertising* of the services. . ." Lanham Act Section 45, 15 U.S.C. § 1127 (emphasis added). "To prove a certain term is used as a mark to identify services, there must be a 'direct association' between mark and services, meaning that the mark be used in such a way *in advertising* that it would be readily perceived as identifying such services." 2 J.T. McCarthy, *supra,* §19.81, at 19-248 & n.7. (internal quotations and citations omitted) (emphasis added). Here, even the most cursory review of the advertisements proffered by Defendants reveal the requisite association between the FLOOD marks, and the plumbing, heating and air conditioning services offered under them.

Virginia's Flood's argument that the use of the marks by the "New Flood" entities was illegal, and did not inure to the Defendants' benefit (Oppos., at 16-17), inherently contradicts its position that the entities did not use the marks, and, in any event, misapprehends our point that the uses by those entities inured to the *estate's* (the seller's) benefit. Defendants purchased the names and marks from the *estate,* not the so-called "sham" New Flood entities. Virginia Flood

concedes that use by those entities was illegal *because it diverted estate assets in violation of the Bankruptcy Code.* Oppos., at 13. It simply defies reason to suggest that such improper uses (which the estate took action to curtail and bring under the control of the Court) caused the seller-estate somehow forfeit the right to sell the marks and goodwill.

Virginia Flood further suggests that the Defendants should not be granted summary judgment because of the Smileys' participation in the operation of the "New Flood" entities during the bankruptcy. Oppos., at 17. The record shows that the Trustee asserted claims against the Smileys and the "New Flood" entities they formed in the adversary proceeding that led to the sale of the names and goodwill. (SMF ¶¶ 14-15 & Atts. B-1 & B-2 (Verified Complaint and Verified Motion for Appointment of Receiver). It also shows that Virginia Flood and its principals raised precisely the same arguments before the Bankruptcy Court in their objection to the sale of the assets. (SMF ¶¶ 24-26 & Att. B-12 Haislip/Seltzer Objection to Sale). The Trustee, with full knowledge of their participation in the acts alleged in the adversary proceeding, agreed to settle the claims by selling the "New Flood" stock and names and goodwill to the Smileys and corporations controlled by them. (SMF ¶¶ 22, 31-32 and exhibits and attachments cited in support). The Bankruptcy Court considered and ultimately overruled Virginia Flood's objections and entered a final order approving the sale and settlement terms. (SMF ¶ 28 and exhibit and attachments cited in support). Also, the sale transaction documents provided expressly for dismissal of the adversary proceeding with prejudice, and a mutual release of all claims upon payment of the purchase price in full (SMF Ex. C ¶ 6, Att. C-2, Settlement & Forbearance Agreement, Bates No. 00045, at Para. 16). Robert Smiley's averment in his declaration that the purchase price was paid in full (SMF Ex. C ¶ 10) is unrebutted by any evidence, other than a misrepresentation by Virginia Flood's counsel. The consideration for the

Smileys' settlement with the estate has been paid, and the Smileys have satisfied the conditions

of the settlement of the Trustee's claims against them. Virginia Flood's same "unclean hands"

arguments were raised and resolved against it by the Bankruptcy Court over a decade ago. They

are *res judicata,* and cannot be relitigated now to a different result here. *NextWave Personal*

*Comms., Inc.* v. *FCC,* 254 F.3d 130, 142-43 (D.C. Cir. 2001).

　　　　As to Virginia Flood's claim that the valuable goodwill associated with the names had

been destroyed prior to the sale, making the sale an "assignment in gross," this is just a rehash of

the same unconvincing abandonment argument made elsewhere, equally devoid of any factual

support, and bolstered only by dubious citations to inapplicable authority.  The undisputed

evidence of record reveals that:  (1) the goodwill was to be sold, and was sold, along with the

names, and not separated.  (SMF ¶ 28 and exhibits and attachments cited in support thereof). (*cf.*

*American Sleek Craft, Inc.* v. *Nescher,* 131 Bankr. 991, 997 (Bankr. Az. 1991), citing rule that

trademark of bankrupt cannot be sold apart from goodwill); (2) in addition to the names and

goodwill, the Defendants also received certain "hard" operating assets of the "New Flood"

entities.  Counterstatement, at Para. 12, page 30-31.  These included service trucks and other

assets used by the "New Flood" entities (as the Trustee found), and the receiver to continue to

operate as a going concern the plumbing, heating and air conditioning business of 1984 Flood

(SMF ¶¶ 15 & 23, and exhibits and attachments cited in support thereof) meaning that the

Defendant-buyers acquired not only the names and goodwill of the business, but other assets

needed to continue to operate that business as it had been conducted (*see Merry Hull & Co.* v.

*Hi-Line Co.*, 243 F.Supp. 45, 52 (S.D.N.Y. 1965) (goodwill not destroyed where assets

purchased out of bankruptcy are sufficient to enable purchaser to conduct business "in real

continuity with the past"); and (3) the goodwill associated with the FLOOD and JOHN C.

21

FLOOD names had substantial residual value as of the date of sale. First, the Trustee and Bankruptcy Court went to great lengths to preserve and protect the names and goodwill, bringing an adversary proceeding and appointing a receiver to preserve their value. (SMF ¶¶ 14-19 and exhibits and attachments cited in support thereof). Second, contrary to their hollow argument made long after the fact, Virginia Flood's principals admitted contemporaneously the continuing value of the goodwill associated with the names, by offering nearly a quarter of a million dollars for them. (SMF ¶¶ 25, 30 and exhibits and attachments cited in support thereof). Third, the Smileys were willing, and did, increase their offer in response to Virginia Flood's principals' counteroffer, and purchased the names and goodwill for a substantial sum of money. (SMF ¶ 27, 35 and exhibits cited in support thereof). (See *Sterling Brewers, Inc.* v. *Schenley Indus., Inc.,* 441 F.2d 675, 679 (C.C.P.A. 1971), party's willingness to pay $7,500 for mark evidence that mark had not lost value as symbol of goodwill). Against this proof, Virginia Flood offers only an unfocused legal argument, and no specific facts, much less any supported by competent evidence.

But even crediting this wholly unconvincing attempt to manufacture from the gossamer of a legal conclusion by a party and a series of unsupported arguments by its counsel an issue as to the extent of use of the names and marks by the debtors and the "New Flood" entities during the bankruptcy, it bears repeating that, under applicable law, proof of cessation of use for more than two or three years merely raises a *presumption* of intent to abandon. Where proof of actual uses during that period and/or a contrary intention is brought forward by the party opposing abandonment, as we have done here, the proponent of abandonment must go on to prove both elements -- including *intention* -- by clear and convincing evidence. Thus, even if use by the debtors and companies formed by them during the bankruptcy had been "token," sporadic, or

even non-existent for two or more years, Defendants have marshaled proof of facts more than sufficient to rebut the presumption that the Trustee did not intend to abandon the FLOOD names, marks and associated goodwill.

*The evidence of record demonstrates conclusively that the Trustee, when presented with information( including information offered  by Virginia Flood's principals themselves in their counsel's letter to the Trustee's counsel dated December 29 , 1994)* (SMF ¶ 12 & Ex. B Att. B-14, Dec. 29, 1994, Letter from Weltmann to Sweeney, Bates No. Flood DCDC 1848-49)*, that the individual debtors had taken control of and were using those valuable assets of the estate, took action by filing a lawsuit in May 1995.*  (SMF ¶¶ 14-15 and exhibit and attachments cited in support). *It shows that the Trustee and the Bankruptcy Court considered the JOHN C. FLOOD and FLOOD names and goodwill to be valuable estate assets, and both intended that they be brought under the control of a receiver appointed by the Bankruptcy Court, protected, preserved, and used in connection with operations of the New Flood entities as a going business, until they and other operating assets could be sold for the benefit of the creditors.*  (SMF ¶¶ 15-19 and exhibit and attachments cited in support thereof).  Virginia Flood does not address the legal significance of these uncontested facts as to the Trustee's intention in the context of its assertion that the names, marks and goodwill were abandoned.  Instead, it prefers to ignore them in the mistaken belief that such intentions are immaterial to the legal issue.  On this record, Virginia Flood does not, indeed, it cannot, demonstrate to the satisfaction of a reasonable trier-of-fact, that the estate clearly and convincingly both ceased use and intended to abandon the disputed marks and names.

Nor does Virginia Flood's claim that it needs additional discovery into the financial affairs of 1984 Flood and the "New Flood" entities militate in favor of deferring or denying

summary judgment. Oppos., at 21. Virginia Flood says it needs financial documents "to determine the continuity between and the extent of use, if any, by 1984 Flood, the 'sham' entities, and 1996 Flood." *Id.* The Court may, pursuant to Federal Rule of Civil Procedure 56(f), order a continuance to permit discovery, upon a proper showing by the non-movant, but whether to do so lies within the sound discretion of the Court. *Globalaw,* 452 F.Supp.2d at 23. A party seeking the protection of Rule 56(f) "must state by affidavit the reasons why he is unable to present the necessary opposing material." *Id.* The party seeking additional discovery bears the burden of identifying the facts to be discovered that would create a triable issue and the reasons why the party cannot produce those facts in opposition to the motion. *Byrd v. United States EPA*, 174 F.3d 239, 248 n.8 (D.C. Cir. 1999). It must also show a reasonable basis to suggest that discovery might reveal triable issues of fact. *Carpenter v. Fannie Mae*, 174 F.3d 231, 237 (D.C. Cir. 1999). "[C]onclusory allegations unsupported by factual data will not create a triable issue of fact." *Exxon Corp.* v. *FTC,* 663 F.2d 120, 126-27 (D.C. Cir. 1980). Rule 56(f) is not intended to provide parties with a vehicle for defeating motions for summary judgment based on unsupported speculation. *Broaddreick* v. *Executive Office of the President,* 139 F.Supp. 55, 56 (D.D.C. 2001). Here, our summary judgment motion is supported by specific, relevant evidence of substantial use during the time period in question. "Something more than a fanciful allegation is required to justify denying a motion for summary judgment when the moving party has met its burden of demonstrating the absence of any genuine issue of fact." *Id.* at 65.

Virginia Flood has not requested, much less properly supported a request for, relief under Rule 56(f). Defendants take issue with Virginia Flood's characterization that Defendants have refused to produce documents showing the extent of use by and records relating to use by 1984 Flood and the "New Flood" entities, or any notion that Defendants are failing to cooperate in

discovery.  To the contrary, Defendants asserted valid and explicit objections to certain discovery requests of the Virginia Flood Parties, and have filed a motion seeking protection from the requests, as required by the Federal Rules, but, in the meantime, have produced thousands of pages of documents, including evidence of use of the marks and corporate records relating to 1984 Flood and the "New Flood" entities.  Lacking in any substantial, competent support in fact or law, Virginia Flood's contention that the financial records of 1984 Flood and the "New Flood" entities from the bankruptcy era might somehow demonstrate a discontinuity of use amounts to nothing more than speculation based on a bare fanciful allegation.

In any event, no amount of discovery of the financial records of 1984 Flood or the "New Flood" entities (assuming any exist at this time) Virginia Flood says it needs to search for "token," *de minimus,* or "illegal" use by those entities, or any discontinuity of use, would affect the outcome of the key abandonment issue.  In the face of undisputed evidence that the estate did not intend to abandon the names and marks, proof of such use, or even outright non-use, for two or more years would do no more than to raise a rebuttable presumption of abandonment, a presumption which has already been rebutted and of no further significance in this case.  Even if it had made a proper Rule 56(f) showing, Virginia Flood has not and cannot carry its burden under Rule 56(f) to show how financial records of 1984 Flood and the "sham" entities would create a triable issue.

IV.    *__Conclusion and Prayer for Relief__*

**WHEREFORE,** for the reasons stated herein, and in Defendants' opening memorandum, the Court must grant the relief requested in Defendants' Motion for Partial Summary Judgment, which prayer for relief is herein incorporated by reference.

Respectfully submitted,

**COUNTERCLAIM PLAINTIFF/DEFENDANT
JOHN C. FLOOD, INC., & DEFENDANTS JOHN
C. FLOOD OF D.C., INC., ROBERT SMILEY,
JOANNE SMILEY, MARK CROOKS AND MEL
DAVIS, J.C. FLOOD, INC., J.C. FLOOD
COMPANY, & JCF, INC.**

By their attorneys:      /s/ Benjamin J. Lambiotte
Benjamin J. Lambiotte
D.C. Bar No. 421288
blambiotte@gsblaw.com
Steve Varholik
D.C. Bar No. 497315
svarholik@gsblaw.com
**GARVEY SCHUBERT BARER**
1000 Potomac Street, Fifth Floor
Washington, D.C. 20007
(202) 965-7880

## CERTIFICATE OF SERVICE

I certify that I served a copy of this REPLY IN SUPPORT OF DEFENDANTS'
MOTION FOR PARTIAL SUMMARY JUDGMENT upon counsel for the Virginia Flood
Parties via ECF and electronic mail, on this 7th day of September, 2007.

Stephen J. Zralek, *appearing pro hac vice*          Lisa Dunner, DC Bar #452004
BONE McALLESTER NORTON PLLC                   DUNNER LAW
511 Union Street, Suite 1600                              1010 Wisconsin Avenue, N.W.
Nashville, TN 37219                                        Washington, DC 20007
Tel: (615) 238-6300                                       Tel: (202) 298-2002
Fax: (615) 238-6391                                       Fax: (202) 403-3030
szraleck@bonelaw.com                                     ldunner@dunnerlaw.com

/s/ Benjamin J. Lambiotte