IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| JOHN C. FLOOD OF VIRGINIA, INC., | ) | |
| | ) | |
| **Plaintiff** | ) | |
| | ) | |
| v. | ) | Judge Richard J. Leon |
| | ) | Case No.: 1:06CV01311 |
| JOHN C. FLOOD, INC., et al. | ) | Deck Type:  General Civil |
| | ) | |
| **Defendants,** | ) | |
| | ) | |

---

## REPLY MEMORANDUM IN SUPPORT OF MOTION FOR PROTECTIVE ORDER OF DEFENDANT/COUNTERCLAIM-PLAINTIFF AND DEFENDANTS

Defendant/Counterclaim-Plaintiff John C. Flood, Inc., and Defendants John C. Flood of

D.C., Inc., Robert Smiley, Joanne Smiley, Mark Crooks, Mel Davis and J.C. Flood, Inc., J.C.

Flood Company, and JCF, Inc., (collectively, "Defendants") respectfully submit this

memorandum in reply to the opposition of Plaintiff/Counterclaim-Defendant John C. Flood of

Virginia, John C. Flood, Inc., John C. Flood Contractors, Inc., Clinton Haislip and James L.

Seltzer, Jr. (collectively, "Virginia Flood") and respectfully request that this Court grant its

Motion for Protective Order pursuant to Rule 26(c) of the Federal Rules of Civil Procedure.

### I.    *Introduction and Summary*

Virginia Flood's opposition to Defendants' Motion for Protective Order fails to address

substantively the reasons for the relief requested in Defendants' motion. Virginia Flood's

opposition does not even attempt, on a request-by-request basis, to address Defendants' specific

objections and grounds showing good cause for the requested protective order.  Virginia Flood

does not distinguish among the particular production requests challenged by Defendants on

various and multiple specific grounds, but simply argues that it is entitled to all documents it

characterizes vaguely as "financial and corporate records." While it asserts in a sweeping, conclusory manner that all "financial and corporate records" are relevant to the extent and continuity of use of the disputed JOHN C. FLOOD and FLOOD marks by Defendants, Virginia Flood simply fails to address the specific objections to particular requests which form the basis of the protective order motion, much less to show that those objections are not well founded. Accordingly, Virginia Flood has failed to overcome Defendants' showing of good cause, and Defendants' Motion should be granted.

In particular, Virginia Flood has not addressed, much less overcome, Defendants' objections in the first part of our motion that Virginia Flood's First Production Requests Nos. 7, 39 and 40, and its Second Production Requests Nos. 3, 6, and 7, are patently overbroad, vague and ambiguous, and unduly burdensome, and that they call for records of long defunct, non-existent corporations. Defendants have already produced corporate records and records of use of the marks by the defunct entities in their possession custody and control. Even under Virginia Flood's newly-unveiled theory of relevance, scrutiny of the objectionable requests reveals that each is still overbroad, vague, unduly burdensome, and/or calls for non-existent records relating to long-defunct corporations.

Virginia Flood has also effectively conceded by failing to advance any contrary argument or authority Defendants' second point that Virginia Flood's requests for tax returns and tax-related documents, including communications with tax-related authorities in First Production Request Nos. 34, 35, 39, 45 and Second Production Request No. 4 are overbroad, burdensome, and violate a strong federal policy protecting such records.

Finally, with regard to First Production Request No. 6, calling for documents "evidencing income 1996 Flood has received for each of the past five years from the sale of 1996 Flood's

goods and/or services under the JOHN C. FLOOD marks, and 1996 Flood's projected annual income," and records showing income of defunct entities if those requests are not denied for other reasons, Virginia Flood grossly mischaracterizes the continuing attempts Defendants' counsel has made to resolve confidentiality issues surrounding those records.

It falsely claims that Defendants agreed to a two-tiered protective order and then broke that agreement, when, in fact, such an order was one of several means we proposed to deal with confidentiality of income records, which also included deferring discovery of such information on both sides until it was determined whether monetary relief would be an issue in the case. Counsel were exchanging drafts and had not yet reached any agreement on the form of such an order at the time undersigned counsel communicated Defendants' position that a deferral of discovery of sales income until it was determined that monetary relief would be available was preferable. Virginia Flood selectively withholds certain communications and redacts key portions of the e-mail attached from counsel it attached to its opposition, obscuring the truth surrounding the parties' attempts to confer and resolve this issue.

In any event, Virginia Flood's opposition fails to address Defendants' point that, because the pending motion for summary judgment will affect the nature and scope of issues and discovery in this case, and may very well moot any controversy over how best to protect the confidentiality of those records, efficiency and fundamental fairness militate in favor of the Court exercising its power under Rule 26(d) to control the sequence and timing of discovery, and to defer resolution of issues concerning discovery of sales income documents until Virginia Flood's entitlement to monetary relief is resolved. For reasons articulated in our opening and reply briefs in connection with Defendants' Motion for Summary Judgment, the sales income may be entirely irrelevant, particularly on the theory of relevance articulated by Virginia Flood

in its opposition, because Defendants may be entitled to judgment as a matter of law on all

Virginia Flood's claims.

If Defendants do not prevail, and issues remain in the case as to which the Court

concludes income records are relevant, Defendants have already stated that, as to documents

responsive to First Request No. 6, such documents that can be produced without undue burden

will be produced under an appropriate stipulated two-tiered protective order, applicable to both

parties. Apart from the sequence and timing of discovery, there is only one narrow issue related

to such a stipulation upon which the parties cannot agree:  whether the documents and other

discovery materials designated as confidential filed with or used in open court should be received

under seal to preserve confidentiality and protect them from public disclosure.

**II.**     ***Good Cause Exists for the Protection Requested by Defendants, a Showing Which Virginia Flood Has Not Overcome***

> **A**   ***Virginia Flood Has Not Overcome Defendants' Relevance, Overbreadth, Vagueness and Undue Burden Objections***

In the first part of our motion, we sought protection from certain overbroad, burdensome

and invasive requests, seeking records that were confidential or private financial or business

records which were irrelevant and/or which did not presently exist or were not in the possession

custody or control of Defendants.  Specifically, in this category, we objected to:

- First Production Requests No. 7 (seeking documents showing pricing or intended pricing of 1996 Flood's services);

- First Production Requests Nos. 39 and 40, seeking "all documents 1996 Flood and 1984 Flood filed with and all correspondence between or regarding it [sic] and the IRS and governmental departments in Washington, D.C., Virginia and Maryland");

- Second Production Request No. 3, which, as to J.C. Flood Company, John C. Flood of DC, Inc., and John C. Flood Plumbing and Heating, Inc., d/b/a JCF, Inc., sought "[a]ny and all documents evidencing income generated by each entity, including balance sheets and other financial statements, up to and

including dissolution, forfeiture, registration revocation, and/or liquidation of
each entity;" and

- Second Production Requests Nos. 6 & 7, which as to those entities, sought "[a]ny
  and all document showing financial or stock distributions to each entity's
  creditors, and "[a]ny and all documents showing financial or stock distributions
  to the shareholders of each entity."

In discovery conferences prior to the filing of the instant motion, Defendants' counsel

asked Virginia Flood's counsel several times to identify their view of how financial records were

relevant and material to establishing anything other than monetary relief. Virginia Flood's

counsel refused to answer this question. In its opposition, Virginia Flood has now clarified, for

the first time, that it believes such documents are also relevant to Virginia Flood's claim that the

marks were abandoned by non-use prior to the sale to 1996 Flood, and that the Trustee had no

right to sell them Virginia Flood.

Even when measured by the theory of relevance articulated in Virginia Flood's

opposition – that the documents are relevant to show the extent and continuity of use of the

JOHN C. FLOOD and FLOOD marks – each of the foregoing requests are overbroad and, in

some cases, unduly burdensome, on their face. First Request No. 7 calls for pricing and intended

pricing of 1996 Flood's goods and services. This is obviously sensitive information which

would be very useful for a competitor like Virginia Flood to have and which could be used to the

disadvantage of 1996 Flood, as a basis for undercutting 1996 Flood in the marketplace. Virginia

Flood fails to articulate how and why pricing data would either prove or be likely to lead to

discovery of evidence which would prove the extent of 1996 Flood's use of the disputed marks,

and has failed to overcome our objections as to the relevance of this information.

Likewise, compliance with First Requests Numbers 39 and 40 would require production

of not only all tax filings (itself impermissible as a violation of public policy for the reasons set

forth in our opening brief and Section B hereof), but also every scrap of all correspondence with the IRS and each and every government agency or department of each of the District of Columbia, Maryland, and Virginia, regardless of the subject matter. Once again, Virginia Flood does not deign to explain to the Court how every tax filing and every piece of correspondence with the IRS and every local and state government agency of three jurisdictions is relevant to show the extent of trademark use by the Defendants.

For the reasons explained in our opening brief, Second Request No. 3 is vague in its identification of the entities to which it pertains, but, to the extent that it calls for financial statements and balance sheets of existing and defunct entities, this request is subject to the same objections and arguments Defendants make in respect of First Production Request No. 6 (see Part C hereof).

In any event, as to this entire category of requests, Defendants have already produced to Virginia Flood hundreds of pages of telephone and television directory advertisements showing their use of the JOHN C. FLOOD trade names and marks from 1985 - 2005, hundreds of pages of representative samples of customer work orders, contacts and invoices showing Defendants' use of the trade names and marks from 1991 – 2006, all reasonably available public corporate records for 1996 Flood, 1984 Flood and the defunct entities establishing the dates of existence of these entities and disposition thereof, sworn affidavits and answers to interrogatories from Defendants' and the 1984 Flood bankruptcy trustee testifying to the use of the trade names and marks, photographs showing the use of the trade names and marks, substantial correspondence discussing Defendants' use of the trade names and marks, and the complete 465-page bankruptcy adversary proceeding record for the case styled *John C. Flood, Inc.*, et alia, 91-4-3011 SD (Bankr. MD). In deciding the scope of discovery of a Rule 26 protective order, the court must

balance "the requestor's need for the information from this particular source, its relevance to the litigation at hand, the burden of producing the sought after material, and the harm which disclosure would cause to the party seeking to protect the information." *Burka v. Dept. of Health and Human Servs.*, 87 F.3d 508, 517 (D.C. Cir. 1996); *Amfac Resorts, L.L.C. v. Dep't of the Interior*, 143 F. Supp.2d 7, 14 (D.D.C. 2001). That balance militates in favor of Defendants here.

Second Production Requests 6 and 7 call for all documents showing financial and stock distributions to creditors and stockholders of each of the vaguely identified entities. These requests are clearly overbroad and would subject Defendants to undue burden. Compliance with them would require a search for and production of literally every record of every payment of money each of the entities had ever made to any creditor, and each payment or distribution of property each of the entities made at any time to any stockholder, for any purpose. Once again, all payments to all creditors and all payments and distributions to shareholders, are simply not relevant to show the extent of use of the disputed marks, the sole theory of relevance Virginia Flood states in its opposition.

**B.** ***Virginia Flood Has Conceded That Tax Records and Tax-Related Communications Are Not Discoverable***

In its opposition to Defendants' Motion for Protective Order, Virginia Flood fails to address Defendants' argument that disclosure of tax records and tax-related communications with the IRS and other tax authorities would violate the strong federal public policy and precedent, followed in this jurisdiction, disfavoring disclosure of tax records. Defendants refer the Court to the arguments raised in their motion on this point. *See* Defendants' Memorandum in Support of Defendants' Motion For A Protective Order, pp. 15-17. The objectionable requests include 1st Requests Nos. 34, 35, 39, 40 and 45, and 2d Request No. 4.

In its opposition, Virginia Flood has not offered any rebuttal to Defendants' specific points that the requests for tax records of the corporate defendants are unavailable under applicable policy and precedent, and that tax records of the individual Defendants (1st Request No. 45), and tax records pertaining to employees (1st Request 34 and 2d Request No. 4) are objectionable not only for that reason, and also because they are overbroad and irrelevant, because they call for private records of individuals against whom no claims for monetary relief are asserted, and private records of employees who are complete strangers to this litigation. Even under Virginia Flood's newly-asserted theory of relevance, the requests are still violative of public policy and overbroad and oppressive, and Virginia Flood has failed to explain how and why the tax records of the companies, individuals and employees would tend to prove or disprove the extent of trademark use by the Defendants. To the extent Virginia Flood can establish a right to any monetary relief, relevant, appropriately tailored information concerning 1996 Flood's profits, sales and expenses is available through alternate means. *Id.* Consequently, discovery of the specific tax documents sought in Virginia Flood's First Production Request Nos. 34, 35, 39, 40 and 45, and Second Production Request No. 4, whether by production request, interrogatory, or deposition, should be denied.

/

/

/

**C. *Virginia Flood Has Not Shown Why it Would Not Serve the Goals Of Efficiency and Fairness to Defer Resolution of Issues Concerning Discovery of Documents Showing Defendants' Income; Erroneously Contends that Defendants Have not Shown that Income Records Are Deserving of Protection Under Federal Rule of Civil Procedure 26(c)(7), and Mischaracterizes the Outcome of the Parties' Conferences Prior to Filing of this Motion***

**1. *The Interests of Efficiency and Fairness Would be Served by Deferring Discovery of Income Records and Resolution of Issues Concerning Confidentiality Thereof At Least Until After The Court Rules on the Pending Motion for Summary Judgment***

Currently pending before the Court is Defendants' Motion for Partial Summary Judgment demonstrating that, on the undisputed facts of the case, Defendants are entitled to judgment as a matter of law, for several reasons, each of which is independently sufficient to bar Virginia Flood's claims. *See Defendants' Reply in Support of Motion for Partial Summary Judgment.* Among other things, Defendants demonstrate in their briefs in support of summary judgment that, on the undisputed facts, laches, estoppel, waiver and release conclusively bar all Virginia Flood's claims, and, in particular, all claims for monetary relief. Virginia Flood's opposition papers *do not even address, much less overcome* these points, which are essentially conceded.

Defendants' briefs in support of summary judgment also show that, even if Virginia Flood were able to demonstrate that there was a cessation of use by any of 1984 Flood or the now-defunct Flood entities formed during the bankruptcy and brought under the control of the receiver by order of the bankruptcy court, Virginia Flood still cannot prevail as a matter of law on its abandonment contention. Further, Defendants' summary judgment briefs demonstrate that Virginia Flood's assertion that it requires discovery of the "financial records" of 1984 Flood and the defunct Flood entities to show a lack of continuity of use of the marks during the bankruptcy in support of their abandonment and non-use theory is specious, because such proof would be

immaterial to the abandonment question at this point. Even if Virginia Flood had come forward with sufficient proof to raise a genuine issue of fact concerning non-use (which it has not), that would only give rise to a presumption of abandonment, which Defendants have already marshaled more than enough proof in support of their motion for summary judgment to rebut. Even conceding, *arguendo*, such non-use, on the undisputed facts, no reasonable finder of fact could conclude clearly and convincingly that 1984 Flood's bankruptcy estate intended to abandon the marks. Because Virginia Flood has failed to come forward with sufficient evidence from which a reasonable finder of fact could find in its favor on both of the elements of abandonment – non-use and intention to abandon – matters upon which Virginia Flood bears the burden of persuasion by strict proof – Defendants are entitled to judgment.

While Virginia Flood in its opposition to the protective order motion suggests that it seeks 1996 Flood income records to "establish that since 1996 Flood purchased assets out of the bankruptcy estate, 1996 Flood's use of the FLOOD marks has been *de minimus* in the market as to constitute token use by 1996 Flood," Opposition at 2, that is not and has never been a genuine issue in this case, and contradicts Virginia Flood's prior admissions. Indeed, the most fundamental factual premise of Virginia Flood's claims of trademark infringement and unfair competition claims are Virginia Flood's admissions, made multiple times in its pleadings, that (in its words):

> Since the incorporation of 1996 Flood in 1996, Corporate Defendants have used and continue to use JOHN C. FLOOD and/or similar variations thereof in connection with sale, offering for sale, distribution, and advertising of Corporate Defendants' services, and such use is likely to cause confusion, or to cause mistake, or to deceive the public as to the affiliation, connection, or association of Corporate Defendants with Virginia Flood, or as to the origin of Corporate Defendants' services, or as to the sponsorship or approval by Virginia Flood of Corporate Defendants' services or commercial activities in violation of 15 U.S.C. § 1114(1) . . . . Corporate Defendants have used and continue to use JOHN C. FLOOD and/or similar variations thereof with knowledge and intent that such use causes confusion, cause mistake or deceive the public.

*Plaintiff's First Amended Complaint,* ¶¶ 57-58. *See also Answer by Counter-Defendant John C. Flood of Virginia, Inc., and Defendants John C. Flood, Inc. (a Virginia Corporation and John C. Flood Contractors,* ¶ 29 (in response to allegation "At all times [after February 1996], Flood has been controlled by the Smileys, and, subject to their control, has been trading as JOHN C. FLOOD, INC. and advertising and promoting its plumbing, heating, and air conditioning services throughout the metropolitan Washington D.C. area, including in Maryland, D.C. and Virginia, using the terms JOHN C. FLOOD, INC. or similar variants thereof, and displaying the name and mark on trucks, signage, on contracts and in advertising" Virginia Flood "admits the averments contained in the first sentence of Paragraph 29.")

Other than this bare assertion in its opposition, Virginia Flood has pointed to no specific facts that have come to light in discovery or otherwise since Virginia Flood's pleadings containing the foregoing admissions were filed tending to suggest that 1996 Flood's uses have been so minimal as to constitute token use. In the end, the argument is not only entirely specious, but self-defeating. Token use, by its very nature, would be insufficient to create the level of association in the purchasing public's mind necessary to constitute use as a trademark. Logically, such minimal use could not be sufficient to cause confusion, mistake, or to deceive the purchasing public – the essence of the injury Virginia Flood claims it suffered as a result of 1996 Flood's use. Virginia Flood has therefore has not shown how or why 1996 Flood's income records are truly relevant to any actual issue other than the measure of any monetary relief.

Thus, Defendants' Motion for Partial Summary Judgment establishes that, based upon the undisputed facts derived from admissions in the pleadings, and from materials already exchanged in discovery authenticated through declarations, Virginia Flood cannot carry its burden of establishing abandonment. It is incumbent on Virginia Flood to demonstrate a triable

issue of material fact warranting discovery of Defendants' confidential financial records. Virginia Flood has not met this burden and no amount of additional discovery regarding 1996 Flood's, 1984 Flood's, or the defunct Flood entities' use of the marks, particularly that which might only tenuously be reflected in the financial records requested, would affect this result.

The ruling on the Motion for Summary Judgment may eliminate Virginia Flood's claims from the case entirely, if granted, and, even if not granted outright, may limit or eliminate certain issues from the case. In the Motion, Defendants specifically requested the Court, in the event that it concludes that judgment should not be rendered for all the relief, to enter an Order, pursuant to Federal Rule of Civil Procedure 56(e), specifying the facts that appear without substantial controversy and deeming them established for purposes of trial, and specifically stating the extent to which monetary and other relief requested by Plaintiff is not in controversy. *Defendants' Motion for Partial Summary Judgment*, at 2.

The Court has the express power under Federal Rule of Civil Procedure 26(d), upon motion, to control the timing and sequence of discovery, "for the convenience of the parties and in the interests of justice." Fed. R. Civ. Proc. 26(d). The outcome of Defendants' Motion for Partial Summary Judgment may obviate the need for discovery of income records entirely. If the Court grants Defendants' Motion for Partial Summary Judgment, and Virginia Flood is determined not to be entitled to any relief, or to any monetary relief, Defendants should not be required to produce confidential, competitively-sensitive income records.

At this point, it would be premature for the Court to resolve the issues raised by this motion as to the relevance and discoverability of income records, and would be inefficient and would unfairly prejudice Defendants to permit such intrusive discovery, when the propounding party's rights to assert the very claims providing the arguable bases for relevance and

- 12 -

discoverability are ripe for ruling on a pending, fully-briefed, dispositive motion. *See e.g.,* *Peskoff* v. *Faber,* 230 F.R.D. 25, 30 (D.D.C. 2005) (deferring discovery of defendants' financial condition until after liability for punitive damages is determined); *Chesney* v. *Valley Stream Union Free School Dist. No. 24,* 236 F.R.D. 113 (E.D.N.Y 2006) (staying discovery pending resolution of dispositive motions); *Builders Ass'n of Greater Chicago* v. *City of Chicago,* 170 F.R.D. 435, 437 (N.D. Ill. 1996)(order controlling sequence of discovery appropriate when a potentially dispositive issue is raised by motion).

### 2. *Documents Showing Sales Revenues are Confidential Commercial Information Meriting Protection Under Federal Rule of Civil Procedure 26(c)(7)*

Virginia Flood claims that documents responsive to First Request No. 6 showing the sales income of 1996 Flood, a private corporation, and an arch competitor of Virginia Flood, do not qualify for protection as a trade secret. Trade secret status was not the only basis for protection asserted by Defendants, and the documents, at a minimum, clearly qualify as confidential commercial information under Federal Rule of Civil Procedure 26(c)(7).

Defendants objected to production of such records, among other records seeking income information, on the grounds that "this request calls for confidential proprietary commercial and trade secret information, the disclosure of which may compromise Defendant's proprietary rights and would confer an unfair competitive advantage on the Virginia Flood Parties." Federal Rule of Civil Procedure 26(c) expressly authorizes the court to enter an appropriate order providing that "a trade secret *or other confidential* research, development *or commercial information* not be revealed or be revealed only in a designated way." Fed. R. Civ. Pro. 26(c)(7) (emphasis added).

1996 Flood is a private company, is not obliged to, and does not, publicly disclose its sales revenues. As such, documents showing non-public sales revenues clearly qualify as both confidential and commercial information. As we noted in our objection, documents showing 1996 Flood's sales revenues if, disclosed on an unrestricted basis, may destroy the confidentiality of such information by making the information publicly available. Moreover, obtaining the historic and present sales revenues of its rival and arch competitor 1996 Flood on an unrestricted basis would confer upon Virginia Flood a business and competitive advantage it does not presently have. Under applicable legal standards, the documents requested by Request Number 6 clearly qualify for protection under Rule 26(c)(7).

Regardless of its present posturing, counsel for both parties had, prior to the filing of this motion, been working on a bilateral, stipulated two-tiered protective order that would permit designation of two levels of confidential, competitively sensitive information of the precise type Defendants seek protection here. In the end, despite multiple telephonic conferences, e-mail exchanges, and good faith efforts on both sides, counsel were unable to agree on only two matters: (1) the timing and sequence of discovery of confidential information that would be subject to the stipulated protective order (provided the information was still relevant), and (2) whether documents and information subject to the order used in or filed with the Court would be subject to seal to protect their confidentiality.

   3. *Virginia Flood's Assertion That Defendants Agreed To Use A Two-Tiered Protective Order And Then Withdrew From That Agreement Is Inaccurate The Parties and their Counsel Have Been Conferring in Good Faith*

Virginia Flood's representation that Defendants agreed to enter into a two-tiered protective order to deal with confidential information and then backed away from that agreement is inaccurate. In support of this representation, Virginia Flood attached to its opposition a single,

redacted e-mail between its counsel and Defendants' counsel that distorts the substance of the communication and Defendants' level of cooperation in discovery. *See* Opposition, p. 3 and Exhibit C. To provide the Court with a complete and accurate picture of the conferences that led to the instant motion, Defendants attach hereto an unredacted version of the same communication, and other related communications regarding the subject matter of this motion. *See* June 12, 2007, letter and June – July 2007 e-mails between B. Lambiotte and S. Zralek, attached hereto as Exhibit A.

In fact, as Virginia Flood implicitly concedes in arguing that the two-tiered protective order should not provide for documents to be filed with or received by the Court under seal, Defendants and Virginia Flood never reached agreement on the timing and sequence of disclosure of confidential information, or on the form of the stipulated protective order under which such information would be disclosed. The concept of a two–tiered stipulated protective order was proposed initially by undersigned counsel, as part of several ideas and options to be considered as a means of resolving consensually discovery issues pertaining to competitively sensitive information. *See Ex. A,* June 19, 2007 e-mail from Benjamin J. Lambiotte, Esq. to Stephen Zralek, Esq. Other concepts proposed in the June 19, 2007, e-mail were to defer disclosure of such information until the Court determined that the party seeking it was entitled to monetary relief, or to provide that, if a party were entitled to such relief, the amount thereof would be determined by a Special Master, who would direct the parties to file with the Master and serve upon each other such documents and information as he required. *Id.* In a subsequent telephone conference on June 21, 2007, Virginia Flood's counsel rejected out of hand the idea of deferring discovery, and, as to the proposed form of stipulated protective order, expressed reservations about creating a classification that excluded his clients from disclosure, believing

- 15 -

that it may hamper his ability to interact with his clients, and to the complexities associated with filing and receiving protected information under seal. Undersigned counsel asked him to confer with his clients, reconsider the deferral proposal, and to send a marked up draft of the stipulated protective order that resolved Virginia Flood's concerns.

While Virginia Flood's counsel was conferring with his clients and marking up the draft document, undersigned counsel conferred with Defendants, carefully weighed and considered the alternatives regarding the disclosure of competitively sensitive financial and commercial information and ultimately decided that the most efficient course was to defer discovery until a party's right to monetary relief was established. Undersigned counsel communicated this position to Virginia Flood on July 6, 2007, *Ex. A,* July 6, 2007, 12:38 pm e-mail from Benjamin J. Lambiotte, Esq. to Stephen Zralek, Esq. Due to a "spam blocker" glitch in undersigned counsel's intranet, unbeknownst to Defendants' counsel, Virginia Flood's counsel had the previous pre-holiday week sent a marked up Stipulated Protective Order. Once the undersigned counsel realized that Virginia Flood had proposed a revised version of the stipulated protective order, counsel sent another e-mail to Virginia Flood's counsel reiterating Defendants' position and the reasons for it. *Ex. A,* July 6, 2007, 4:42 pm e-mail from Benjamin J. Lambiotte, Esq. to Stephen Zralek, Esq.

Contrary to Virginia Flood's opposition papers, Defendants have been cooperative with Virginia Flood in discovery, producing nearly 2000 pages of documents and serving detailed written responses to interrogatories and request for admissions. Defendants have shared documents and information received from third parties without the necessity of formal requests from Virginia Flood. Defendants' counsel has conferred successfully with Virginia Flood's counsel, and working together, counsel has resolved a number of discovery issues. As to the

subject matter of this motion, in the end, there was simply an honest disagreement with Virginia Flood as to whether this narrow category of confidential, competitively sensitive information should be produced at this time and, at any time, without adequate confidentiality protection, including a provision for the reception of such information under seal.

To clarify Defendants' position as to what form such protection should take, in the event the Court declines to defer discovery of this type of information as requested in Defendants' Motion for Protective Order. Defendants ask the Court to enter a protective order establishing conditions to: appropriately narrow the scope of requested financial records to include only to corporate Defendants' income and revenue statements and advertising expenditures and sales revenues related to the use of the JOHN C. FLOOD trade names and marks; protect the confidentiality and to prevent the disclosure of such documents and information to the public generally and specifically prevent the disclosure of such documents and information to Virginia Flood Parties and their principals, employees, contracts and affiliates; restrict the disclosure of such records and information in them to outside counsel appearing in this case, expert witnesses unaffiliated with the Virginia Flood Parties or their principals, employees, contractors, and affiliates who agree to be bound by the confidentiality restrictions of the order, and the Court; restrict the use of such records and information only for purposes of preparation for and for purposes of trial and appeal of this action; and require that any such documents or information in them filed or used in connection with proceedings before the Court be received and kept under seal, with such order to be in the form agreed to by counsel for the parties, or in the event they cannot agree, prepared by the Court. To assist the Court, we attach hereto as Exhibit B the proposed form of the draft stipulated protective order we shared with Virginia Flood's counsel on June 19, 2007.

### III.    _Conclusion and Prayer for Relief_

**WHEREFORE,** Defendants respectfully request this Motion for a Protective Order sustaining Defendants' objections and controlling the timing and sequence of discovery, by entering an Order:

(i) denying and protecting Defendants from certain overbroad and vague production requests that call for irrelevant and confidential business and private information and documents, and/or are calculated to oppress, harass or intimidate, and for tax returns and tax-related communications, including First Production Requests Nos. 7, 34, 35, 39, 40, and 45, and Second Production Requests Nos. 3, 4, 6 and 7;

(ii) deferring the disclosure of competitively sensitive confidential financial documents and information pertaining to Virginia Flood's claims for monetary relief, including (to the extent not already denied for other reasons) documents requested in each of First Production Requests Nos. 6, 7, 34, 35, 39, 40, and 45, and Second Production Requests Nos. 3, 4, 6 and 7, until after it is determined whether Virginia Flood is entitled to such remedies, and, at least, until a ruling on the Defendants' Motion for Partial Summary Judgment, which may have the effect of obviating any need for such discovery entirely.  If the Court grants the Motion for Partial Summary Judgment, and Virginia Flood is determined not to be entitled to such remedies, we request that such discovery be denied.  To permit such intrusive and oppressive discovery when the issue of the propounding party's right to assert the very claim providing the basis for relevance of the requested information has been presented to the Court, and is ripe for resolution on a dispositive motion, would be inefficient, and would unfairly prejudice Defendants; and

(iii) in the alternative, in the event the Court denies the relief we requested in part (ii) hereof or the Motion for Partial Summary Judgment is denied, we ask the Court to enter a

protective order establishing conditions:  protect the confidentiality and to prevent disclosure of such documents and the information in them to the public generally and specifically to Virginia Flood Parties and their principals, employees, contractors and affiliates; to restrict disclosure of such records and information in them only to outside counsel of record appearing in this case, expert witnesses unaffiliated with the Virginia Flood Parties or their principals, employees, contractors, and affiliates who agree to be bound by the confidentiality restrictions in the order, and the Court; to restrict use of such records and information only for purposes of trial and appeal in this action; and to require that any such documents or information in them filed with or used in connection with proceedings before the Court be received and kept under seal, with such order to be in a form agreed to by counsel for the parties, or in the event they cannot agree, prepared by the Court.

Respectfully submitted,

**COUNTERCLAIM PLAINTIFF/DEFENDANT JOHN C. FLOOD, INC., & DEFENDANTS JOHN C. FLOOD OF D.C., INC., ROBERT SMILEY, JOANNE SMILEY,  MARK CROOKS AND MEL DAVIS, J.C. FLOOD, INC., J.C. FLOOD COMPANY, & JCF, INC.**

By their attorneys:     /s/  Benjamin J. Lambiotte
Benjamin J. Lambiotte
D.C. Bar No. 421288
blambiotte@gsblaw.com
Steve Varholik
D.C. Bar No. 497315
svarholik@gsblaw.com
**GARVEY SCHUBERT BARER**
1000 Potomac Street, Fifth Floor
Washington, D.C. 20007
(202) 965-7880

## CERTIFICATE OF SERVICE

I certify that I served a copy of this Reply upon counsel for the Virginia Flood Parties via ECF and electronic mail, on this 7th day of September, 2007.

Stephen J. Zralek, *appearing pro hac vice*
BONE McALLESTER NORTON PLLC
511 Union Street, Suite 1600
Nashville, TN 37219
Tel: (615) 238-6300
Fax: (615) 238-6391
szraleck@bonelaw.com

Lisa Dunner, DC Bar #452004
DUNNER LAW
1010 Wisconsin Avenue, N.W.
Washington, DC 20007
Tel: (202) 298-2002
Fax: (202) 403-3030
ldunner@dunnerlaw.com

/s/ Benjamin J. Lambiotte