UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **JOHN C. FLOOD OF VIRGINIA, INC., et al.,**  Plaintiffs and Counter-Defendants,  v.  **JOHN C. FLOOD, INC., et al.,**  Defendants and Counter-Plaintiffs. | Civil Action 06-1311 (RJL/JMF) |

**MEMORANDUM OPINION**

Before me is defendant and counter-plaintiffs' Motion for Protective Order of Defendant/Counterclaim-Plaintiff and Defendants ("Motion"), which was referred to me for resolution by Judge Richard J. Leon.

**Background**

This case pits two groups against each other over the use of the trade name "John C. Flood." Plaintiffs include the company "John C. Flood of Virginia, Inc." and other companies controlled by Clinton Haislip and James L. Seltzer, Jr. (collectively, "Virginia Flood"). The defendants include "John C. Flood, Inc." and "John C. Flood of DC, Inc." (collectively, "1996 Flood").[1]

In early 1996, Joanne and Robert Smiley and 1996 Flood purchased the trade names and associated goodwill in and to "John C. Flood" and "Flood" (together, the "Flood Marks") for $425,000 in a sale conducted under Section 363 of the U.S. Bankruptcy Code. Memorandum in Support of Defendants' Motion for a Protective

---

[1] Other defendants include: J.C. Flood, Inc., J.C. Flood Company, JCF, Inc., Mark Crooks, Mel Davis, Joanne Smiley and Robert Smiley.

Order ("Memo.") at 2. They therefore insist that they "trace their priority rights in the trade names and goodwill they acquired in that sale back to 1984, when the corporate debtor-in-bankruptcy, John C. Flood, Inc. ("1984 Flood") first began using the mark[, and] at all times since the purchase in February, 1996, [] have used JOHN C. FLOOD." Id.

Virginia Flood insists that 1984 Flood abandoned the Flood Marks and that it has priority of use of those marks over 1996 Flood. Virginia Flood's Statement of Points and Authorities in Opposition to 1996 Flood's Motion for a Protective Order ("Opp.") at 4. It has therefore propounded discovery concerning the extent to which 1984 Flood and 1996 Flood were actually doing business and using the Flood Marks. Id.

**The Information Sought**

Virginia Flood seeks the following information:

1.  All documents evidencing the income 1996 Flood has received for each of the past five years from the sale of its goods and services under the Flood Marks and its projected annual income for the next year five years. Virginia Flood Parties' First Set of Requests for the Production of Documents and Things by Defendant/Counterclaim-Plaintiff John C. Flood, Inc. and Defendants John C. Flood of D.C., Inc., Robert Smiley, Joanne Smiley, Mark Crooks and Mel Davis ("First Doc. Reqs."), attached to Motion as Exh. A (as Defendants' Responses to First Doc. Reqs.), at No. 6.

2.  All documents setting forth the pricing or intended pricing of 1996 Flood's goods and services. Id. at No. 7.

3.  Tax returns "for the years in which the Defendants filed on behalf of their named companies and employees." Id. at No. 34.

    4.    Franchise returns filed in D.C., Virginia or Maryland by 1996 Flood. <u>Id.</u> at No. 35.

    5.    All filings and correspondence with the Internal Revenue Service and governmental departments in D.C., Virginia or Maryland by 1986 Flood and 1996 Flood. <u>Id.</u> at Nos. 39-40.

    6.    Tax returns for defendants Crooks and Davis from 1989, and for defendants Joanne and Robert Smiley from 1994. <u>Id.</u> at No. 45.

    7.    All documents evidencing income generated by 1984 Flood and 1996 Flood, including "balance sheets and other financial statements." <u>Virginia Flood Parties' Second Set of Requests for the Production of Documents and Things by Defendant/Counterclaim-Plaintiff John C. Flood, Inc. and Defendants John C. Flood of D.C., Inc., Robert Smiley, Joanne Smiley, Mark Crooks and Mel Davis</u> ("Second Doc. Reqs."), attached to Motion as Exh. B(as Defendants' <u>Responses to Second Doc. Reqs.</u>), at No. 3.

    8.    Tax returns for each year in which 1984 Flood and 1996 Flood filed on behalf of their named companies and employees. <u>Id.</u> at No. 4.

    9.    All documents "showing financial and/or stock distributions" to the creditors or shareholders of 1984 Flood and 1996 Flood. <u>Id.</u> at Nos. 6-7.

### Controlling Legal Standards

The discovery provisions of the Federal Rules of Civil Procedure are to be interpreted liberally, but discovery is nonetheless limited to information that is relevant or likely to lead to relevant information. Fed. R. Civ. P. 26(b)(1).[2] The court must limit

---

[2] All references to the Federal Rules of Civil Procedure are to the version that became effective December 1, 2007.

discovery otherwise allowable by the Rules if it determines that: (1) the discovery sought is unreasonably cumulative or duplicative; (2) the discovery can be obtained from some other source that is more convenient, less burdensome, or less expensive; (3) the party has had ample opportunity to obtain the information by the other discovery; or (4) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues. Fed. R. Civ. P. 26(b)(2)(C).

## Relevancy

Virginia Flood maintains that the information it seeks is highly relevant to its "claim of abandonment by 1984 Flood and priority of use over 1996 Flood." Memo. at 2. It asserts that the withheld information "will be used to gauge both the continuity of use, if any, and the extent of use, if any, by 1984 Flood, the sham entities and 1996 Flood." Id. at 4. The records will purportedly be used to "prove that no goodwill existed to be sold or transferred [by 1984 Flood]; to establish the break in the chain of title between the various entities . . . [and that] 1996 Flood's use of the FLOOD marks has been *de minimis* in the market as to constitute token use." Id. at 2.

It must be said that these claims are, *ipse dixit*, the only "arguments" in favor of the broad discovery Virginia Flood seeks in resisting the Motion. At no point does Virginia Flood explain why its specific requests – earned and projected income, pricing of services, tax returns, distributions to creditors and stockholders, individual tax returns, and more – could prove that there was no goodwill to be sold at the bankruptcy sale, that there was a break in use of the Flood Marks when transferred at that sale, or that 1996 Flood's use of the Flood Marks has been *de minimis*.

- 4 -

A further explanation is offered by Virginia Flood in its opposition to 1996 Flood's <u>Motion for Partial Summary Judgment</u>:

> Virginia Flood has requested financial records seeking to examine the extent of the use of the FLOOD marks by 1984 Flood and other entities, but Defendants have refused to cooperate. For example, such information presumably would indicate, for 1984 Flood and the other entities, the volume of work conducted, the investment spent on advertising, the number of employees in the field, among other things – all signs of how strong or weak the entities' presence in the marketplace was for each given year.

<u>Virginia Flood's Statement of Points and Authorities in Opposition to 1996 Flood's Motion for Partial Summary Judgment</u> at 7. While this assertion at least creates a potential connection between the information sought and the defense of abandonment of the mark, that connection does not survive scrutiny.

Most of the disputed discovery requests – i.e. past and projected annual income, tax returns, franchise returns, financial and/or stock distributions to creditors or shareholders – relate to the financial health of 1984 Flood and 1996 Flood. First Doc. Reqs. Nos. 6, 34-35, 39-40, Second Doc. Reqs. Nos. 3-4, 6-7. This information provides limited, if any, insight into the use of the Flood Marks; General Motors, after all, makes great use of its trademarks, yet it posted a $39 billion net loss in the third-quarter of 2007. <u>See</u> Michelle Maynard and Nick Bunkley, <u>Setbacks at G.M., and Potentially in Holiday Spending</u>, N.Y. TIMES, Nov. 8, 2007, at C1. Nor is there much to be gained by the production of information relating to the pricing of, and income generated from, goods and services under the Flood Marks. First Doc. Reqs. Nos. 6-7. History teaches us to be cautious about overestimating the relationship between the success of a mark and the amount of use thereof. <u>See</u>, <u>e.g.</u>, Peter Carlson, <u>Edsel, the Flop Heard Round the World</u>, WASH. POST, Sep. 4, 2007, at C1 ("The [Ford] Edsel was the most colossal, stupendous

- 5 -

and legendary blunder in the history of American marketing."); Andrew Ward, After 20 Years, the Effect of New Coke Bubbles On, FIN. TIMES ONLINE, Apr. 24, 2005, *at* Westlaw, 2005 WLNR 6386751 (New Coke "remains arguably the greatest marketing disaster in U.S. corporate history").  Finally, no case has been made – nor could it – that the tax returns of the individual defendants have any relevance to the use of the Flood Marks.  First Doc. Reqs. No. 45.

Moreover, Virginia Flood's discovery requests are so broad in scope and subject that they sweep up great amounts of irrelevant information.  Virginia Flood seeks ten years of earned and projected income of 1996 Flood.  First Doc. Reqs. No. 6.  It seeks nineteen years of tax returns from certain individuals.  Id. at No. 45.  The requests for individual tax returns would encompass irrelevant information such as personal investments, mortgage payments, and charitable contributions.  Id. at Nos. 45-46.  It seeks tax returns and governmental filings for a corporation, 1984 Flood, that has been defunct for over a decade.  Id. at No. 40; Second Doc. Reqs. at No. 4.  The requests for governmental filings would encompass irrelevant matters involving land use, equal employment opportunity compliance, parking tickets, and Social Security.  First Doc. Reqs. at Nos. 39-40.  The requests concerning financial statements and income would encompass corporate operations unrelated to the Flood Marks.[3]  Id. at Nos. 34-35; Second Doc. Reqs. at Nos. 3, 6-7.

In sum, the disputed discovery requests fail the relevancy test: the information sought is simply not relevant or likely to lead to relevant evidence as to whether 1984 Flood or 1996 Flood abandoned the Flood Marks.  Moreover, the requests are so

---

[3] The financial success of Viacom, for example, does not shed any light on the specific use of any of its many trademarks such as Dreamworks, Nickelodeon, VH1, MTV Films, Paramount Pictures, BET, TV Land, Spike, Bubba Gump Shrimp Company, MTVi Group, Comedy Central, Nick GAS, or CMT.  See, e.g., Viacom, Our Brands, *at* http://www.viacom.com/ourbrands/brandindex (last visited Feb. 1, 2008).

overbroad as to encompass a great amount of information that is plainly irrelevant to the claims at issue in this litigation.

### The Rule 26(b)(2)(C) Calculus

Even if it could be argued that the financial information sought by Virginia Flood might tend to prove abandonment of the Flood Marks insofar as fewer sales hint at lesser use, the discovery requests still fail to meet the requirements of Rule 26(b)(2)(C). Under that rule, discovery requests cannot be "unreasonably cumulative or duplicative," Fed. R. Civ. P. 26(b)(2)(C)(i), nor can the burden or expense of the resulting production be outweighed by the likely benefit. Fed. R. Civ. P. 26(b)(2)(C)(iii).

This analysis calls first for a comparison of the information sought and the information already provided. 1996 Flood has described what it has already provided:

> [H]undreds of pages of telephone and television directory advertisements showing their use of the JOHN C. FLOOD trade names and marks from 1985 - 2005, hundreds of pages of representative samples of customer work orders, contacts and invoices showing Defendants' use of the trade names and marks from 1991 - 2006, all reasonably available public corporate records for 1996 Flood, 1984 Flood and the defunct entities establishing the dates of existence of these entities and disposition thereof, sworn affidavits and answers to interrogatories from Defendants and the 1984 Flood bankruptcy trustee testifying to the use of the trade names and marks, photographs showing the use of the trade names and marks, substantial correspondence discussing Defendants' use of the trade names and marks, and the complete 465-page bankruptcy adversary proceeding record for the case styled John C. Flood, Inc., *et alia*, 91-4-301 1 SD (Bankr. MD).

<u>Reply Memorandum in Support of Motion for Protective Order of Defendant/ Counterclaim-Plaintiff and Defendants</u> ("Reply") at 6. This is an impressive list, and the items all appear highly relevant to a claim of abandonment. At no point does Virginia

Flood explain why the additional information it seeks is necessary in light of what has already been produced, or why it would not be cumulative or duplicative.

Even if Virginia Flood had so explained, Rule 26(b)(2)(C)(iii) also calls for a determination of whether the cost involved in complying with the additional discovery is justified by the information likely to be provided. See McPeek v. Ashcroft, 202 F.R.D. 31, 34 (D.D.C. 2001) (applying the economic principle of marginal utility to a discovery dispute). The cost of complying with Virginia Flood's requests – which are unabashedly overbroad – simply cannot be justified in light of the information already provided and the questionable relevance of the information sought.

## Conclusion

For the reasons stated above, the Motion will be granted and the objections will be sustained as to First. Doc. Reqs. Nos. 6-7, 34-35, 39-40, and 45, and Second Doc. Reqs. Nos. 3-4, and 6-7.[4]

An Order accompanies this Memorandum.

Dated: February 1, 2008                              /s/
                                              JOHN M. FACCIOLA
                                              UNITED STATES MAGISTRATE JUDGE

---

[4] It is unclear whether defendants seek a protective order for information previously exchanged, or solely for information that, in accordance with this Memorandum Opinion, will no longer need to be produced. Memo. at 20-22. If it is the former, defendants shall advise the Court whether the parties can agree upon the terms of a protective order or whether additional judicial action is necessary.