IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JOHN C. FLOOD OF VIRGINIA, INC., et al.    )
                                            )
     **Plaintiffs and Counter-Defendants,**    )
                                            )
v.                                              )    **Judge Richard J. Leon**
                                            )    **Case No.: 1:06CV01311**
**JOHN C. FLOOD, INC., et al.**            )    **Deck Type: General Civil**
                                            )
     **Defendants and Counter-Plaintiffs.**    )
                                            )

---

**VIRGINIA FLOOD PARTIES'
STATEMENT OF UNDISPUTED MATERIAL FACTS
IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

---

Pursuant to LCvR 7(h) and 56, the Virginia Flood Parties[1] respectfully submit the following Statement of Material Facts Not in Dispute in support of their Motion for Summary Judgment, along with documents attached to the Notice of Filing.

<u>Formation of 1984 Flood</u>

1.      Defendants Crooks and Davis incorporated John C. Flood, Inc. ("1984 Flood") in 1984 in Maryland. (Counterclaim at ¶ 1).

2.      1984 Flood provided plumbing, heating and air conditioning services, (Davis deposition at 81), and it operated in Maryland, DC and Virginia. (Counterclaim at ¶ 12; Davis Deposition at 34, 36, 52-53).

---

[1] "Virginia Flood Parties" refers to the following parties: Plaintiff/Counter-Defendant John C. Flood of Virginia, Inc. ("Virginia Flood"); Defendants John C. Flood, Inc. (a Virginia corporation) and John C. Flood Contractors, Inc. (all three corporations collectively referred to as the "Virginia Flood Corporate Parties"); and Third-party Defendants Clinton Haislip and James L. Seltzer, Jr.

3.    1984 Flood used the marks JOHN C. FLOOD and its abbreviated form, FLOOD, from 1984 through June 1991 on service trucks, contracts, invoices, telephone books, and advertising.  (Davis Declaration at ¶ 5, Doc. 37-3).

4.    Haislip and Seltzer began working for 1984 Flood in approximately 1987, where they worked as estimators and salesmen, but not mechanics or technicians.  (Seltzer Declaration at ¶ 5).

Formation of Virginia Flood

5.    In 1989, Crooks and Davis incorporated John C. Flood of Virginia, Inc. ("Virginia Flood") to expand their presence in Virginia.  (Davis Declaration at ¶ 6, Doc. 37-3).

6.    Prior to incorporating Virginia Flood, Crooks and Davis had already been advertising and operating in Virginia through 1984 Flood.  (Davis Deposition at 52-53; Crooks Deposition at 7).

7.    Virginia Flood provides plumbing, heating and air conditioning services, (Davis deposition at 81; First Am. Compl. at ¶ 23), and it operates in Maryland, DC and Virginia. (Haislip deposition at 7-8; Seltzer deposition at 6).

Crooks and Davis Licensed the FLOOD Marks to Haislip and Seltzer at Virginia Flood

8.    In a verbal agreement in 1989, Crooks and Davis gave Haislip and Seltzer permission to use the marks JOHN C. FLOOD and its abbreviated form, FLOOD, in connection with plumbing, heating, and air conditioning by Virginia Flood, and advertising those services in and on service trucks, contracts, invoices and telephone books, among other things.  (Seltzer Declaration at ¶ 6).

{00300715.5}

9.     In 1989, Crooks and Davis gave Haislip and Seltzer service trucks with which to start Virginia Flood, which said JOHN C. FLOOD on their sides.  (Davis deposition at 57).

10.     Davis testified in his deposition that Virginia Flood paid approximately $400-$500 each week to Crooks and Davis.  (Davis deposition at 57).

11.     Virginia Flood has used the marks JOHN C. FLOOD, or its abbreviated form, FLOOD, or JOHN C. FLOOD OF VIRGINIA continuously since 1989.  (Davis deposition at 91; Seltzer Declaration at ¶ 7).

12.     There was never an operating agreement for Virginia Flood.  (Seltzer Declaration at ¶ 6).

Crooks and Davis Initially Monitored & Controlled Quality at Virginia Flood

13.     Initially, Crooks and Davis owned 51 percent, and Haislip and Seltzer owned the remaining 49 percent, of the stock of Virginia Flood.  (Davis deposition at 83-84, 94-95).

14.     When Crooks and Davis first incorporated Virginia Flood in 1989, they maintained the corporate books to monitor the performance of Haislip and Seltzer, and had input on "everything" that Haislip and Seltzer were doing, including advertising.  (Davis deposition at 94-95).

15.     Crooks and Davis placed a manager at the Virginia Flood office in 1989 to get the business running right, and even Davis, himself, worked there for two to three months.  (Davis deposition at 58).

16.     Initially, Crooks and Davis lent their expertise to the operations of Virginia Flood. (Davis deposition at 59).

17.    According to Davis, Haislip and Seltzer were mere salespeople who did not understand the technical part of the job.  (Davis deposition at 59).

18.    Between November 1989 and June 1991, Crooks and Davis themselves performed the technical part of the job at Virginia Flood and helped Haislip and Seltzer with it.  (Davis deposition at 59).

19.    During this period, Crooks and Davis met with Haislip and Seltzer at 1984 Flood's office in Maryland every one to two weeks to go over Virginia Flood's "paperwork and what was expected and this and that and sales figures and everything else."  (Davis deposition at 59-60).

By 1993, Crooks & Davis Relinquished Control & Stopped Monitoring Virginia Flood's Quality

20.    On June 21, 1991, Crooks, Davis and 1984 Flood filed petitions for relief and reorganization under Chapter 11 of the U.S. Bankruptcy Code.  (Counterclaim at ¶ 15).  (Crooks, Davis and 1984 Flood's consolidated bankruptcy cases are referred to hereinafter as the "Underlying Bankruptcy").

21.    In his deposition, Davis testified that, from the moment the Underlying Bankruptcy was filed in June 1991, control of Virginia Flood was vested in Haislip and Seltzer.  (Davis deposition at 26-27).

22.    Later in his deposition, Davis also testified that Crooks and Davis no longer monitored Virginia Flood after the conversion to Chapter 7.  (Davis deposition at 99).

23.    A Trustee was appointed on March 22, 1993, and the Underlying Bankruptcy case was converted to a proceeding under Chapter 7 on September 21, 1993.  (Counterclaim at ¶ 15; Michael Rinn Declaration at  ¶ 4, Docket Entry 37-4).

24.    When the Underlying Bankruptcy was converted to a Chapter 7 proceeding, Crooks and Davis handed over the corporate books of Virginia Flood to Haislip and Seltzer. (Davis deposition at 96).

25.    Haislip and Seltzer were creditors in the Underlying Bankruptcy.    (Seltzer Declaration at ¶ 13).    They never were debtors in the Underlying Bankruptcy.    (Seltzer Declaration at ¶ 13).

Crooks and Davis Resigned as Officers of Virginia Flood in July 1991

26.    A month after Crooks and Davis instituted the Underlying Bankruptcy, on July 19, 1991, Crooks and Davis resigned as officers of Virginia Flood.    (Haislip Declaration ¶ 7, Docket Entry 41-2).

Haislip & Seltzer Have Had 50% Ownership Interests in Virginia Flood Since At Least 1991

27.    Crooks and Davis sold their extra 1% stock interest to Haislip and Seltzer some time between November 1990 and June 1991, at which time Crooks and Davis collectively owned 50 percent, and Haislip and Seltzer collectively owned the other 50 percent of the stock of Virginia Flood.    (Davis Deposition at 83-84, 94-95; Seltzer Declaration at ¶ 8).

28.    On February 14, 1995, the bankruptcy Trustee entered an oral agreement with Haislip and Seltzer to transfer the remaining 50 percent interest of Virginia Flood, formerly owned by Crooks and Davis, to Haislip and Seltzer.    (Flood/DCDC 2437-38, attached to Rinn Declaration at B-14, Doc. 37-4 at pp. 234-35).

29.    On March 28, 1995, the Trustee filed a "Notice of Settlement" with the Bankruptcy Court regarding the agreement to transfer the remaining 50 percent interest in

Virginia Flood to Haislip and Seltzer. (Flood/DCDC 2132-36, attached to Rinn Declaration at B-14, Doc. 37-4 at pp. 222-26).

30.    From and after March 29, 1995, Haislip and Seltzer, not Crooks and Davis, have fully owned Virginia Flood. (Counterclaim at ¶ 17).


<u>1984 Flood Stopped All Operations by at Least September 21, 1993</u>

31.    At the peak of operations, prior to filing bankruptcy, 1984 Flood had yearly sales of $10 million, over 200 workers, operated over 90 trucks, generated monthly sales over $700,000.00, and had an advertising budget that ran close to one million dollar a year. (Davis deposition at 102-03).

32.    After the conversion to Chapter 7, Davis handed the keys to the door of 1984 Flood to the Trustee. (Davis deposition at 104).

33.    1984 Flood never had any sales after the conversion to Chapter 7: all the telephones were turned off, and its sales dropped to zero. (Davis deposition at 104-05).


<u>1996 Flood Was Not Established until 1996</u>

34.    On February 20, 1996, a Bill of Sale was executed, in which the Trustee and Receiver sold to Defendants Joanne and Robert Smiley (the daughter and son-in-law of Davis) the stock of John C. Flood of MD, Inc., John C. Flood of D.C., Inc., and MCMD, Inc., along with the tradenames John C. Flood, Inc. and Flood, Inc. (Document produced by 1996 Flood in Rule 26(a) disclosures on October 31, 2006, Bates labeled 306-310).

35.    The Bill of Sale states that the sale is only "as fully and completely as [the Trustee and Receiver] . . . might or should sell . . . ." (Document produced by 1996 Flood in Rule 26(a) disclosures on October 31, 2006, specifically at Bates labeled pages 307-308).

36.    1996 Flood was not incorporated until February 5, 1996. (Document produced by 1996 Flood in Rule 26(a) disclosures on October 31, 2006, specifically at Bates labeled pages 112-115).

Confusion Exists in the Marketplace Regarding Source of Origin of the Flood Marks

37.    1996 Flood operates and advertises in Maryland, DC, and Virginia. (Counterclaim at ¶ 53; Robert Smiley deposition at 4-5).

38.    1996 Flood uses the marks JOHN C. FLOOD, and its abbreviated form, FLOOD, whether separately or combined with other words. (Counterclaim at ¶ 53).

39.    1996 Flood and Virginia Flood compete directly for the same customers in the same geographic region in the same lines of trade and business, and advertise and promote their businesses in the same channels of trade. (Counterclaim at ¶ 53).

40.    Confusion exists among consumers regarding the source of origin of the marks JOHN C. FLOOD and FLOOD. (Davis deposition at 131-32).

Virginia Flood owns the Registration to Two FLOOD Marks

41.    On April 25, 2000, the U.S. Patent & Trademark Office issued Registration No. 2,345,161 to Virginia Flood for the word mark JOHN C. FLOOD, attached hereto as **Exhibit A**. (Counterclaim at ¶ 41).

42.     On June 6, 2000, the U.S. Patent & Trademark Office issued Registration No.

2,355,004 to Virginia Flood for the logo mark, attached hereto as **Exhibit B**:

(Counterclaim at ¶ 41).

Respectfully submitted,

_____

Stephen J. Zralek, *appearing pro hac vice*
Paul W. Kruse, *appearing pro hac vice*
**BONE McALLESTER NORTON PLLC**
511 Union Street, Suite 1600
Nashville, TN  37219
(615) 238-6300 – phone
(615) 238-6301 – facsimile
szralek@bonelaw.com
pkruse@bonelaw.com

and

Lisa Dunner, DC Bar # 452004
**DUNNER LAW**
1010 Wisconsin Ave., N.W.
Washington, DC 20007
(202) 298-6002 – phone
(202) 403-3030 – facsimile
ldunner@dunnerlaw.com

*Counsel for John C. Flood of Virginia, Inc.,*
*John C. Flood, Inc. (a Virginia corporation),*
*John C. Flood Contractors, Inc., and*
*Clinton Haislip & James L. Seltzer, Jr.*

## CERTIFICATE OF SERVICE

I hereby certify that on the 12th day of September, 2008, a true and correct copy of the foregoing document was served via e-mail upon:

Benjamin J. Lambiotte, Esq.
Steven Varholik, Esq.
**GARVEY SCHUBERT BARER**
1000 Potomac Street, Fifth Floor
Washington, D. C. 20007

_____

Int. Cls.: 37 and 40

Prior U.S. Cls.: 100, 103 and 106

## United States Patent and Trademark Office

Reg. No. 2,345,161

Registered Apr. 25, 2000

## SERVICE MARK
### PRINCIPAL REGISTER

## JOHN C. FLOOD

JOHN C. FLOOD OF VIRGINIA, INC. (VIRGIN-
IA CORPORATION)
2870 HARTLAND ROAD
FALLS CHURCH, VA 22043

FOR: PLUMBING; INSTALLATION, REPAIR
AND MAINTENANCE OF HEATING EQUIP-
MENT; INSTALLATION AND REPAIR OF AIR
CONDITIONING APPARATUS; AND ELECTRI-
CAL CONTRACTING, IN CLASS 37 (U.S. CLS.
100, 103 AND 106).

FIRST USE 11-0-1989; IN COMMERCE
1-0-1990.
FOR: WATERPROOFING OF BASEMENTS,
IN CLASS 40 (U.S. CLS. 100, 103 AND 106).
FIRST USE 11-0-1989; IN COMMERCE
1-0-1990.
THE NAME JOHN C. FLOOD DOES NOT
IDENTIFY A LIVING INDIVIDUAL.

SER. NO. 75-665,434, FILED 3-22-1999.

PAUL LAMB, EXAMINING ATTORNEY

EXHIBIT

A

Int. Cls.: 37 and 40

Prior U.S. Cls.: 100, 103 and 106

**Reg. No. 2,355,004**

## United States Patent and Trademark Office

Registered June 6, 2000

### SERVICE MARK
### PRINCIPAL REGISTER



JOHN C. FLOOD OF VIRGINIA, INC (VIRGINIA CORPORATION)
2870 HARTLAND ROAD
FALLS CHURCH, VA 22043

FOR: PLUMBING; INSTALLATION, REPAIR AND MAINTENANCE OF HEATING EQUIPMENT; INSTALLATION AND REPAIR OF AIR CONDITIONING APPARATUS; AND ELECTRICAL CONTRACTING , IN CLASS 37 (U.S. CLS. 100, 103 AND 106).

FIRST USE 11–0–1989; IN COMMERCE 1–0–1990.
FOR: WATERPROOFING OF BASEMENTS, IN CLASS 40 (U.S. CLS. 100, 103 AND 106).

FIRST USE 11–0–1989; IN COMMERCE 1–0–1990.
NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE ''PLUMBING, HEATING, AIR CONDITIONING, ELECTRICAL WATERPROOFING, HEAT PUMPS'' AND ''VIRGINIA, INC.'', APART FROM THE MARK AS SHOWN.

THE NAME JOHN C. FLOOD DOES NOT IDENTIFY A LIVING INDIVIDUAL

SER. NO. 75–665,433, FILED 3–22–1999.

PAUL LAMB, EXAMINING ATTORNEY


EXHIBIT
B