Westlaw.

MCCARTHY § 18:48 Page 1
3 McCarthy on Trademarks and Unfair Competition § 18:48 (4th ed.)

McCarthy on Trademarks and Unfair Competition, Fourth Edition
Database updated August 2008

J. Thomas McCarthy

Chapter 18. Assignment and Licensing of Trademarks
II. LICENSING

References

§ 18:48. Effect of naked licensing

**West's Key Number Digest**

West's Key Number Digest, Trademarks⚷ 1208

*Uncontrolled Licensing: Deception of the Public.* Uncontrolled licensing of a mark whereby the licensee can place the mark on any quality or type of goods or services may cause the mark to lose any significance it may have. Such uncontrolled use by a licensee raises a grave danger that the public will be deceived by such a usage.[1] The public will be deceived because in the absence of quality control, the licensee's use of the mark misrepresents the trademark owner's connection with the goods or services sold under the licensed mark. A trademark carries with it a message that the trademark owner is controlling the nature and quality of the goods or services sold under the mark.[2] Without quality control, this message is false because without control of quality, the goods or services are not truly "genuine." This dissonance and deception erodes the significance of the designation as an accurate indication of origin: a trademark.

*The Licensor's Duty to Control.* A product is not truly "genuine" unless it has been manufactured and distributed under quality controls established by the manufacturer. Thus, not only does the trademark owner have the right to control quality, when it licenses, it has the duty to control quality. When that duty is not adequately discharged, the licensed mark carries the potential for customer deception: the antithesis of a valid trademark. As the Second Circuit succinctly pointed out in the *Dawn Donut* case:

> If the licensor is not compelled to take some reasonable steps to prevent misuses of his trademark in the hands of others, the public will be deprived of its most effective protection against misleading uses of a trademark. The public is hardly in a position to uncover deceptive uses of a trademark before they occur and will be at best slow to detect them after they happen. Thus, unless the licensor exercises supervision and control over the operations of its licensees the risk that the public will be unwittingly deceived will be in-

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

EXHIBIT O

Case 1:06-cv-01311-RJL-JMF   Document 64-3   Filed 09/12/2008   Page 2 of 10

MCCARTHY § 18:48                                                                                    Page 2
3 McCarthy on Trademarks and Unfair Competition § 18:48 (4th ed.)

creased and this is precisely what the [Lanham] Act is in part designed to prevent. … Clearly the only effective way to protect the public where a trademark is used by licensees is to place on the licensor the affirmative duty of policing in a reasonable manner the activities of his licensees.[3]

The Second Circuit later stated that naked licensing without quality control is a fraud on the public and unlawful.[4] In the same way, the Ninth Circuit said that naked and uncontrolled licensing is "inherently deceptive and constitutes abandonment" of all rights in the trademark and results in cancellation of its registration.[5]

Similarly, the Fifth Circuit in the *KFC* case emphasized the importance of quality control:

Courts have long imposed upon trademark licensors a duty to oversee the quality of licensee's products. … The rationale for this requirement is that marks are treated by purchasers as an indication that the trademark owner is associated with the product. Customers rely upon the owner's reputation when they select the trademarked goods. If a trademark owner allows licensees to depart from its quality standards, the public will be misled, and the trademark will cease to have utility as an informational device. A trademark owner who allows this to occur loses its right to use the mark.[6]

However, the court in *KFC* followed up this warning by pointing out that it was reluctant to interfere with reasonable quality control arrangements agreed to by the parties and would accept even minimal control over the licensee's use of the mark.[7] The Fifth Circuit later observed that while the purpose of the quality control requirement is to prevent consumer deception resulting from deviant qualities of goods or services rendered under the same mark, the emphasis should be on substance, not form.[8]

***Naked Licensing as Trademark Abandonment.*** Uncontrolled or "naked" licensing may result in the trademark ceasing to function as a symbol of quality and controlled source. This effect has often been characterized as an "abandonment" of the trademark.[9] Of course, such "abandonment" must be distinguished from abandonment from nonuse of a mark, which occurs only if some intent to abandon can be inferred.[10] Abandonment because of uncontrolled licensing is purely an "involuntary" forfeiture of trademark rights, for the mark owner probably has no subjective intent to abandon the mark.[11] Uncontrolled licensing may well cause a designation to lose its meaning as a trademark. This results in a loss of trademark rights, whether called "abandonment" or not.[12]

On the other hand, uncontrolled licensing in some cases may be of such a limited nature that it has little impact of weakening the mark and thus does not result in a loss of all rights.[13]

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

EXHIBIT O

Case 1:06-cv-01311-RJL-JMF   Document 64-3   Filed 09/12/2008   Page 3 Page 3 of 10

MCCARTHY § 18:48                                                                    Page 3
3 McCarthy on Trademarks and Unfair Competition § 18:48 (4th ed.)

*Strict Proof is Required.* Because uncontrolled licensing may result in a "forfeiture" of trademark rights, courts have required that a high degree of proof be made before a court declares that all rights in the mark are lost.[14] The Fifth Circuit has noted that a "stringent" burden of proof is placed on the challenger who attempts to prove that a lack of quality control has resulted in a total loss of trademark significance: an abandonment.[15]

*Effects of Naked Licensing.* A finding of uncontrolled licensing may result in several possible effects: abandonment of rights in the mark; a break in the chain of continuous use necessary to prove priority of use over another;[16] a finding that the license is void,[17] or that the licensor is estopped from challenging the licensee's uncontrolled use.[18] The fact that a document alleged to be a license contains insufficient quality control provisions and the purported licensor failed to control the critical aspects of quality, both indicate that the document is in fact not a "license."[18.50]

The connection between naked licensing and loss of rights in the mark was noted by the Restatement:

> An uncontrolled or "naked" license authorizes use of the trademark on goods or services for which the trademark owner cannot offer a meaningful assurance of quality. When the trademark owner fails to exercise reasonable control over the use of the mark by a licensee, the presence of the mark on the licensee's goods or services misrepresents their connection with the trademark owner since the mark no longer identifies goods and services that are under the control of the owner of the mark. Although prospective purchasers may continue to perceive the designation as a trademark, the courts have traditionally treated an erosion of the designation's capacity for accurate identification resulting from uncontrolled licensing as a loss of trademark significance, thus subjecting the owner of the mark to a claim of abandonment under the rule stated in [Restatement] § 30(2)(b).[19]

Under the Lanham Act, a trademark registration may be cancelled if the mark has become "abandoned."[20] A mark can become abandoned by any act or omission of the registrant which causes the mark to lose its significance as an indication of origin.[21] Thus, uncontrolled and "naked" licensing can result in such a loss of significance of a trademark that its federal registration should be cancelled.[22]

Failure to reasonably control a licensee may also render the licensor liable to charges of false advertising if the licensee has used the trademark as an instrument to defraud the public.[23]

Some courts hold that a finding of uncontrolled licensing should not work a total abandonment of the mark, but a forfeiture of mark rights only in those geographic and product markets where use of the mark has not been adequately controlled.[24] Such partial abandonment could be reflected in a partial cancellation

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

EXHIBIT O

MCCARTHY § 18:48 Page 4
3 McCarthy on Trademarks and Unfair Competition § 18:48 (4th ed.)

of a federal registration mark.[25]

A licensor's alleged failure to exercise sufficient quality control is not per se a ground on which to base a claim for cancellation in a district court.[26]

*Phase Out Agreements.* The Fifth Circuit refused to invalidate the EXXON trademark because the trademark owner, in the course of policing its mark, permitted alleged infringers to "phase out" their use of the mark by exhausting existing stores of stationery, advertising materials and products bearing the mark. While such "phase out" agreements were challenged as constituting "naked licensing" which invalidated the EXXON mark, the court refused to presume a loss of trademark significance because Exxon Corp., "in the course of diligently protecting its mark, entered into agreements designed to preserve the distinctiveness and strength of that mark."[27] Rather, the court found that the challenger had failed to prove that EXXON had lost its significance as a trademark due to the allegedly naked licensing present in the phase-out agreements. Thus, the abandonment claim was rejected.

[FN1] Broeg v. Duchaine, 319 Mass. 711, 67 N.E.2d 466, 69 U.S.P.Q. 627 (1946) (uncontrolled licensing may result in trademark ceasing to have any meaning and be a fraud on the public); Heaton Distributing Co. v. Union Tank Car Co., 387 F.2d 477, 156 U.S.P.Q. 299 (8th Cir. 1967); Siegel v. Chicken Delight, Inc., 448 F.2d 43, 171 U.S.P.Q. 269 (9th Cir. 1971), cert. denied, 405 U.S. 955, 31 L. Ed. 2d 232, 92 S. Ct. 1173, 172 U.S.P.Q. 577 (1972). *See* Arthur Murray, Inc. v. Horst, 110 F. Supp. 678, 96 U.S.P.Q. 363 (D. Mass. 1953).

[FN2] *See* § 3:10 (a trademark indicates that the trademark owner is the source of standards of quality of goods and services sold under the mark). The maturing of the source theory into the quality theory is what made modern trademark licensing possible. *See* § 18:40. Regarding the trademark owner's right to exercise quality control, *see* § 25:42.

[FN3] Dawn Donut Co. v. Hart's Food Stores, Inc., 267 F.2d 358, 367, 121 U.S.P.Q. 430 (2d Cir. 1959). *Accord* Huntington Nat'l Mattress Co. v. Celanese Corp. of America, 201 F. Supp. 938, 132 U.S.P.Q. 395 (D. Md. 1962).

[FN4] Societe Comptoir de L'Industrie Cotonniere Etablessements Boussac v. Alexander's Dep't Stores, Inc., 299 F.2d 33, 132 U.S.P.Q. 475 (2d Cir. 1962).

[FN5] Barcamerica Intern. USA Trust v. Tyfield Importers, Inc., 289 F.3d 589, 62 U.S.P.Q.2d 1673, 52 Fed. R. Serv. 3d 415 (9th Cir. 2002) (affirming dismissal on summary judgment where plaintiff licensed mark for use on wine with no quality control provision in the license and plaintiff "played no meaningful role in holding the wine to a standard of quality - good, bad or

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

EXHIBIT O

Case 1:06-cv-01311-RJL-JMF   Document 64-3   Filed 09/12/2008   Page 5 of 10

MCCARTHY § 18:48                                                                 Page 5
3 McCarthy on Trademarks and Unfair Competition § 18:48 (4th ed.)

otherwise.").

[FN6] Kentucky Fried Chicken Corp. v. Diversified Packaging Corp., 549 F.2d 368, 193 U.S.P.Q. 649, 665 (5th Cir. 1977). See Haymaker Sports, Inc. v. Turian, 581 F.2d 257, 198 U.S.P.Q. 610 (C.C.P.A. 1978) ("The purpose of such a requirement is to protect the public from being misled.").

[FN7] "Retention of a trademark requires only minimal quality control, for in this context we do not sit to access the quality of products sold on the open market. We must determine whether Kentucky Fried has abandoned quality control; the consuming public must be the judge of whether the quality control efforts have been ineffectual." 193 U.S.P.Q. at 666 (the KFC licensing program passed inspection under this standard). See discussion of this case at § 18:57.

[FN8] Taco Cabana Int'l, Inc. v. Two Pesos, Inc., 932 F.2d 1113, 19 U.S.P.Q.2d 1253, 1259 (5th Cir. 1991), aff'd, 505 U.S. 763, 120 L. Ed. 2d 615, 112 S. Ct. 2753, 23 U.S.P.Q.2d 1081 (1992). See discussion at § 18:55.

[FN9]
**Second Circuit**
R. C. W., Supervisor, Inc. v. Cuban Tobacco Co., 220 F. Supp. 453, 138 U.S.P.Q. 441 (S.D.N.Y. 1963) ("Naked licensing, that is to say, licensing without the exercise of supervision by the licensor, … may constitute an abandonment.").

**Third Circuit**
Doeblers' Pennsylvania Hybrids, Inc. v. Doebler, 442 F.3d 812, 78 U.S.P.Q.2d 1509 (3d Cir. 2006) ("Failure to provide quality control may constitute naked licensing leading to abandonment of the mark.").

**Fifth Circuit**
Poole v. Kit Mfg. Co., 184 U.S.P.Q. 302, 1974 WL 20231 (N.D. Tex. 1974).

**Sixth Circuit**
Ritchie v. Williams, 395 F.3d 283, 73 U.S.P.Q.2d 1430 (6th Cir. 2005) (lack of control is a naked license that results in abandonment of the mark).

**Seventh Circuit**
Midwest Fur Producers Ass'n v. Mutation Mink Breeders Ass'n, 127 F. Supp. 217, 103 U.S.P.Q. 389, 104 U.S.P.Q. 144 (W.D. Wis. 1954) (naked licensing held abandonment and estoppel to assert trademark rights); AmCan Enterprises, Inc. v. Renzi, 32 F.3d 233, 31 U.S.P.Q.2d 1793 (7th Cir. 1994) ("If the licensor does not maintain adequate quality control, the mark may be deemed abandoned, or, equivalently, the licensor may be estopped to complain about infringement." (dictum)).

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

EXHIBIT O

Case 1:06-cv-01311-RJL-JMF   Document 64-3   Filed 09/12/2008   Page 6 of 10

MCCARTHY § 18:48                                                              Page 6
3 McCarthy on Trademarks and Unfair Competition § 18:48 (4th ed.)

**Eighth Circuit**
Robinson Co. v. Plastics Research & Development Corp., 264 F. Supp. 852, 153 U.S.P.Q. 220 (W.D. Ark. 1967).

**Ninth Circuit**
First Interstate Bancorp v. Stenquist, 16 U.S.P.Q.2d 1704, 1990 WL 300321 (N.D. Cal. 1990) (uncontrolled license held a naked license resulting in abandonment of the mark); Barcamerica Intern. USA Trust v. Tyfield Importers, Inc., 289 F.3d 589, 62 U.S.P.Q.2d 1673, 52 Fed. R. Serv. 3d 415 (9th Cir. 2002) (naked licensing is "inherently deceptive and constitutes abandonment" of the trademark); Halo Management, LLC v. Interland, Inc., 76 U.S.P.Q.2d 1199, 64 Fed. R. Evid. Serv. 1077 (N.D. Cal. 2004) (mark held abandoned by naked licensing through license with vague quality standards, no right to inspect and no right to terminate where the parties had an "acrimonious" relationship).

**Tenth Circuit**
Stanfield v. Osborne Industries, Inc., 52 F.3d 867, 34 U.S.P.Q.2d 1456 (10th Cir. 1995) (uncontrolled license resulted in abandonment of mark; licensor cannot prevail in trademark infringement claim against nonpaying licensee).

**Eleventh Circuit**
CNA Financial Corp. v. Brown, 922 F. Supp. 567, 574 (M.D. Fla. 1996), aff'd in part on point, rev'd in part on other grounds, 162 F.3d 1334, 49 U.S.P.Q.2d 1209 (11th Cir. 1998) (parent corporation that licensed mark to subsidiaries without any quality control. "Accordingly, [plaintiff] lacks the requisite control over the services connected with its marks and therefore forfeits its rights in the mark.").

**Federal Circuit**
Haymaker Sports, Inc. v. Turian, 581 F.2d 257, 198 U.S.P.Q. 610, 613 (C.C.P.A. 1978) ("Uncontrolled licensing of a mark results in abandonment of the mark by the licensor.").

**Trademark Board**
Electro-Coatings, Inc. v. Precision National Corporation, 204 U.S.P.Q. 410, 1979 WL 24893 (T.T.A.B. 1979); Heaton Enterprises of Nevada Inc. v. Lang, 7 U.S.P.Q.2d 1842, 1988 WL 252375 (T.T.A.B. 1988) (uncontrolled licensing of a mark for restaurant services results in an abandonment of any exclusive rights that the licensor had; those who bought service mark rights from that licensor could obtain no greater exclusive right to use (none at all) than the licensor owned).

**Mass.**
Broeg v. Duchaine, 319 Mass. 711, 67 N.E.2d 466, 69 U.S.P.Q. 627 (1946).

**N.Y.**

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Case 1:06-cv-01311-RJL-JMF    Document 64-3    Filed 09/12/2008    Page 7 Page 7 of 10 of 10

MCCARTHY § 18:48                                                                              Page 7
3 McCarthy on Trademarks and Unfair Competition § 18:48 (4th ed.)

Ritz Associates, Inc. v. Ritz-Carlton Hotel Co., 35 Misc. 2d 425, 230 N.Y.S.2d 408, 134 U.S.P.Q. 86 (Sup 1962), aff'd, 19 A.D.2d 522, 240 N.Y.S.2d 439, 138 U.S.P.Q. 404 (1st Dep't 1963), aff'd, 14 N.Y.2d 670, 249 N.Y.S.2d 873, 198 N.E.2d 905, 141 U.S.P.Q. 757 (1964). *See* Annotation, "Granting of 'Naked' or Unsupervised License to Third Party as Abandonment of Trademark," 118 A.L.R.2d 211 (1993).

[FN10] *See* §§ 17:9 to 17:15.

[FN11] *Compare* E. I. Du Pont de Nemours & Co. v. Celanese Corp. of America, 167 F.2d 484, 77 U.S.P.Q. 364 (C.C.P.A. 1948) (where the court confused intent to abandon with involuntary abandonment caused by uncontrolled licensing).

[FN12] *Author's Comment:* An argument can be made that because Lanham Act § 5, 15 U.S.C.A. § 1055, states that licensing "shall not affect the validity of such mark" if the mark is not used to "deceive the public," then *if* the mark *is* being used to deceive the public through a lack of quality control, the mark is invalidated even though the elements of "abandonment" have not been proven. However, no court has embraced such an argument, perhaps because it would make trademarks too vulnerable to challenges of naked licensing.

[FN13] Westco Group, Inc. v. K.B. & Associates, Inc., 128 F. Supp. 2d 1082, 58 U.S.P.Q.2d 1068, 1075 (N.D. Ohio 2001) (even if defendant succeeded in proving that one of several licensees was not sufficiently controlled by the mark owner, it would not prove that the mark was "abandoned" or lost its significance in the territorial area of the uncontrolled licensee.).

[FN14] American Foods, Inc. v. Golden Flake, Inc., 312 F.2d 619, 136 U.S.P.Q. 286 (5th Cir. 1963); Edwin K. Williams & Co. v. Edwin K. Williams & Co.-East, 542 F.2d 1053, 191 U.S.P.Q. 563 (9th Cir. 1976), cert. denied, 433 U.S. 908, 53 L. Ed. 2d 1092, 97 S. Ct. 2973, 195 U.S.P.Q. 93 (1977); Kentucky Fried Chicken Corp. v. Diversified Packaging Corp., 549 F.2d 368, 193 U.S.P.Q. 649 (5th Cir. 1977); Winnebago Industries, Inc. v. Oliver & Winston, Inc., 207 U.S.P.Q. 335 (T.T.A.B. 1980) (clear and convincing proof needed); U. S. Jaycees v. Philadelphia Jaycees, 639 F.2d 134, 140, 209 U.S.P.Q. 457 (3d Cir. 1981) ("[T]he proponent of a claim of insufficient control must meet a high burden of proof."); Stanfield v. Osborne Indus., 52 F.3d 867, 34 U.S.P.Q.2d 1456 (10th Cir. 1995), cert. denied, 516 U.S. 920, 133 L. Ed. 2d 217, 116 S. Ct. 314 (1995) ("high burden of proof" of abandonment was required and met).

[FN15] Exxon Corp. v. Oxxford Clothes, Inc., 109 F.3d 1070, 42 U.S.P.Q.2d 1417 (5th Cir. 1997). *Accord,* Creative Gifts, Inc. v. UFO, 235 F.3d 540, 57 U.S.P.Q.2d 1321, 48 Fed. R. Serv. 3d 621 (10th Cir. 2000) ("[A]nyone at-

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

EXHIBIT O

Case 1:06-cv-01311-RJL-JMF    Document 64-3    Filed 09/12/2008    Page 8 of 10

MCCARTHY § 18:48                                                          Page 8
3 McCarthy on Trademarks and Unfair Competition § 18:48 (4th ed.)

tempting to show such abandonment via naked licensing faces a stringent burden of proof."); Doeblers' Pennsylvania Hybrids, Inc. v. Doebler, 442 F.3d 812, 78 U.S.P.Q.2d 1509 (3d Cir. 2006) (party seeking to invalidate a mark on the ground of naked licensing "faces a stringent burden of proof" and the "burden is high").

[FN16] Yocum v. Covington, 216 U.S.P.Q. 210 (T.T.A.B. 1982). See §§ 17:1 to 17:4, 17:9 to 17:15.

[FN17] Acme Valve & Fittings Co. v. Wayne, 386 F. Supp. 1162, 183 U.S.P.Q. 629 (S.D. Tex. 1974). See Cartier, Inc. v. Three Sheaves Co., 465 F. Supp. 123, 204 U.S.P.Q. 377 (S.D.N.Y. 1979); Yamamoto & Co. (America), Inc. v. Victor United, Inc., 219 U.S.P.Q. 968 (C.D. Cal. 1982) (alleged quality control efforts found "infrequent, irregular, superficial and uninformed," resulting in a naked license, which is void; "licensee" cannot rely on any rights from the license as a defense against infringement of another's rights).

[FN18] Sheila's Shine Products, Inc. v. Sheila Shine, Inc., 486 F.2d 114, 179 U.S.P.Q. 577 (5th Cir. 1973) (licensor estopped from challenging licensee's uncontrolled use in product and geographic markets licensee developed); Ex parte Teca Corp., 117 U.S.P.Q. 367 (Comm'r Pat. 1958). See Ritz Associates, Inc. v. Ritz-Carlton Hotel Co., 35 Misc. 2d 425, 230 N.Y.S.2d 408, 134 U.S.P.Q. 86 (1962), aff'd, 19 A.D.2d 522, 240 N.Y.S.2d 439, 138 U.S.P.Q. 404 (1st Dep't 1963), aff'd, 14 N.Y.2d 670, 249 N.Y.S.2d 873, 198 N.E.2d 905, 141 U.S.P.Q. 757 (1964); Stanfield v. Osborne Indus., 52 F.3d 867, 34 U.S.P.Q.2d 1456 (10th Cir. 1995), cert. denied, 516 U.S. 920, 133 L. Ed. 2d 217, 116 S. Ct. 314 (U.S. 1995) (uncontrolled license resulted in abandonment of mark; licensor cannot prevail in trademark infringement claim against nonpaying licensee); Miller v. Glenn Miller Productions, 318 F. Supp. 2d 923, 945-946 (C.D. Cal. 2004), aff'd on other grounds, 454 F.3d 975, 79 U.S.P.Q. 2d 1545 (9th Cir. 2006) (Because plaintiffs failed to supervise or control defendant's use of the mark, under the Sheila's Shine rule, plaintiffs "are estopped from enforcing the terms of any trademark license" that was given to defendants.).

[FN18.50] Department of Parks and Recreation for State of California v. Bazaar Del Mundo Inc., 448 F.3d 1118, 78 U.S.P.Q.2d 1887 (9th Cir. 2006) ("Here, however, the State [which alleged it was a licensor] points to no evidence revealing any effort to monitor or sample the quality of Bazaar del Mundo's food and service.").

[FN19] Restatement Third, Unfair Competition § 33, comment b (1995).

[FN20] Lanham Act § 14(c), 15 U.S.C.A. § 1064(c). See §§ 20:55 to 20:63.

[FN21] Lanham Act § 45, 15 U.S.C.A. § 1127 ("Abandonment of Mark").

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

EXHIBIT O

Case 1:06-cv-01311-RJL-JMF   Document 64-3   Filed 09/12/2008   Page 9 of 10

MCCARTHY § 18:48                                                                                         Page 9
3 McCarthy on Trademarks and Unfair Competition § 18:48 (4th ed.)

[FN22] Land O'Lakes Creameries, Inc. v. Oconomowoc Canning Co., 221 F. Supp. 576, 139 U.S.P.Q. 11 (E.D. Wis. 1963), aff'd, 330 F.2d 667, 141 U.S.P.Q. 281 (7th Cir. 1964) (denial of cancellation of registration: sufficient control over licensee found); Taffy Original Designs, Inc. v. Taffy's, Inc., 161 U.S.P.Q. 707 (N.D. Ill. 1966) (denial of cancellation of registration: sufficient control found); Barcamerica Intern. USA Trust v. Tyfield Importers, Inc., 289 F.3d 589, 62 U.S.P.Q.2d 1673, 52 Fed. R. Serv. 3d 415 (9th Cir. 2002) (trademark registration cancelled for naked licensing).

[FN23] Waltham Watch Co. v. Federal Trade Comm'n, 318 F.2d 28, 138 U.S.P.Q. 165 (7th Cir. 1963), cert. denied, 375 U.S. 944, 11 L. Ed. 2d 274, 84 S. Ct. 349, 139 U.S.P.Q. 566 (1963) (FTC Act violation); Scotch Whiskey Ass'n v. Barton Distilling Co., 338 F. Supp. 595, 170 U.S.P.Q. 455 (N.D. Ill. 1971), aff'd in part and rev'd in part, 489 F.2d 809, 179 U.S.P.Q. 712 (7th Cir. 1973) (false advertising in violation of Lanham Act § 43(a)).

[FN24] E. F. Prichard Co. v. Consumers Brewing Co., 136 F.2d 512, 58 U.S.P.Q. 362 (6th Cir. 1943), reh'g denied, 60 U.S.P.Q. 52 (6th Cir. 1943), cert. denied, 321 U.S. 763, 88 L. Ed. 1060, 64 S. Ct. 486, 60 U.S.P.Q. 578 (1944) (abandonment only of rights in geographic area where uncontrolled licensing); Sheila's Shine Products, Inc. v. Sheila Shine, Inc., 486 F.2d 114, 124, 179 U.S.P.Q. 577 (5th Cir. 1973) ("[W]e deem it consistent with general principles of trademark law to hold that a user may abandon a trademark in certain states without abandoning it in others."); Winnebago Industries, Inc. v. Oliver & Winston, Inc., 207 U.S.P.Q. 335 (T.T.A.B. 1980) (dictum that uncontrolled licensing would result in abandonment only of market of licensed use); Tumblebus Inc. v. Cranmer, 399 F.3d 754, 73 U.S.P.Q.2d 1561 (6th Cir. 2005), cert. denied, 126 S. Ct. 361, 163 L. Ed. 2d 68 (U.S. 2005) ("[T]here is considerable support for the concept that rights in a mark may be abandoned in certain geographic areas but not others (i.e., 'partial geographic abandonment.'" Possible abandonment in territories other than that where the accused use is made is irrelevant). See Treece, "Trademark Licensing and Vertical Restraints in Franchising Arrangements," 116 U. Pa. L. Rev. 435, 459 (1968).

[FN25] Dawn Donut Co. v. Hart's Food Stores, Inc., 267 F.2d 358, 121 U.S.P.Q. 430 (2d Cir. 1959) (Lumbard, J., dissenting). See Lanham Act § 37, 15 U.S.C.A. § 1119 (judicial cancellation "in whole or in part"). But compare Selfway, Inc. v. Travelers Petroleum, Inc., 579 F.2d 75, 198 U.S.P.Q. 271 (C.C.P.A. 1978), with Weiner King, Inc. v. Wiener King Corp., 615 F.2d 512, 204 U.S.P.Q. 820 (C.C.P.A. 1980). See Snuffer & Watkins Management, Inc. v. Snuffy's, Inc., 17 U.S.P.Q.2d 1815 (T.T.A.B. 1990) (partial cancellation under § 18 as to a defined territory is not permitted).

[FN26] Ditri v. Coldwell Banker Residential Affiliates, 954 F.2d 869, 21 U.S.P.Q.2d 1530, 1534 (3d Cir. 1992) (customer allegedly defrauded by a

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Case 1:06-cv-01311-RJL-JMF   Document 64-3   Filed 09/12/2008   Page 10 of 10

MCCARTHY § 18:48                                                                Page 10
3 McCarthy on Trademarks and Unfair Competition § 18:48 (4th ed.)

franchisee as a result of a lack of control by the franchisor cannot sue for cancellation of the franchisor's service mark registration on the sole ground of failure to police the conduct of franchisees). *See* § 30:110.

[FN27] Exxon Corp. v. Oxxford Clothes, Inc., 109 F.3d 1070, 42 U.S.P.Q.2d 1417 (5th Cir. 1997) ("Even were we to construe [defendant's] pleadings to allege the unlikely proposition that Exxon's registered marks, due to these third party phase out agreements, have lost their distinctiveness as indicators of origin, [defendant] has offered absolutely no evidence to substantiate such a claim.").

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

MCCARTHY § 18:48

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

EXHIBIT O