

**Westlaw.**

192 U.S.P.Q. 327
1976 WL 21132, 192 U.S.P.Q. 327

Page 1

C

Kemin Industries, Inc.
v.
Watkins Products, Inc.

Patent and Trademark Office Trademark Trial and Appeal Board
Decided July 27, 1976

Released Sept. 25, 1976

United States Patents Quarterly Headnotes

TRADEMARKS
[1] Cancellation -- In general (§ 67.171)
Cancellation -- Pleading and practice -- Issues determined (§ 67.1815)

Lanham Act Section 14 governs cancellation proceedings; registration extant for five year period may be cancelled only on specific, enumerated grounds, none of which involves ownership of registered mark.

TRADEMARKS
[2] Cancellation -- Pleading and practice -- Issues determined (§ 67.1815)

Trademark Trial and Appeal Board lacks authority to resolve question of whether mark is owned by registrant or cancellation petitioner that filed petition more than five years after registration issued.

TRADEMARKS
[3] Defenses -- Fraud (§ 30.05)
Affidavits of use (§ 67.10)
Applications to register -- In general (§ 67.131)

Fraud signifies willful withholding from Patent and Trademark Office by applicant or registrant of material information that, if transmitted and disclosed to examiner, would have resulted in disallowance of registration sought; person seeking registration is under duty not to make any knowingly misleading or incorrect statement in affidavits forming part of application for registration; allegations of ownership and exclusive use contained in declaration or verification accompanying application are made on "belief" or "information and belief," precluding definitive statement by affiant that could be ordinarily used to support fraud charge.

TRADEMARKS
[4] Defenses -- Fraud (§ 30.05)
Applications to register -- In general (§ 67.131)

Registrant's honest and good faith belief that it owned mark when it filed application negates any inference of fraud on Patent and Trademark Office in obtaining registration.

TRADEMARKS
[5] Cancellation -- Mark and use of parties -- In general (§ 67.1771)

Mark whose registration issued more than five years before cancellation petition was filed was not used so as to misrepresent source of goods by registrant that expressed not altogether unsupported belief that it always owned mark, rather than cancellation petitioner that alleged public was unaware that source of marked product was changed from it to registrant, used its name on labels in conjunction with mark although labels also indicated that product was manufactured for and/or distributed by registrant, produced marked product that was not shown to be in any way inferior to that manufactured by cancellation petitioner and offered under mark, or shown to be source of any discontent voiced by purchasing public, and for time used Roman numeral II in conjunction with mark, assertedly to distinguish formula from product purchased from cancellation petitioner.

Trademark cancellation No. 10,563 by Kemin Industries, Inc., against Watkins Products, Inc., Registration No. 855,561, issued Aug. 27, 1968. Petition dismissed.

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

EXHIBIT T

192 U.S.P.Q. 327                                                  Page 2
1976 WL 21132, 192 U.S.P.Q. 327

Michael G. Voorhees, and Zarley, McKee, Thomte & Voorhees, both of Des Moines, Iowa, for Kemin Industries, Inc.

Alan G. Carlson, and Merchant, Gould, Smith, Edell, Welter & Schmidt, both OF *328 MINNEAPOLIS, Minn., for Watkins Products, Inc.

Before Lefkowitz, Rice, and Kera, Members.
Lefkowitz, Member.

A petition has been filed to cancel the registration of "KROP KEEP" and design as a trademark for preservatives for the control of enzymes in hay, silage and grain which are used as livestock feeds issued to Watkins Products, Inc. on August 27, 1968. FN1

Petitioner is Kemin Industries, Inc., which alleges that it has long been engaged in the manufacture and sale in interstate commerce of preservatives for the control of enzymes in hay, silage and grain which are used as livestock feeds and has, since prior to March 15, 1966, continuously used the designation "KROP KEEP" as a trademark for such goods; that petitioner has so extensively used and advertised the mark "KROP KEEP" on or in connection with its preservatives in interstate commerce throughout the United States and foreign commerce that the mark has become distinguished and associated in the trade and in the minds of the purchasing public with petitioner and goods originating with it; that respondent's registered mark "KROP KEEP" and its use thereof for preservatives so resembles petitioner's trademark "KROP KEEP" for identical goods as to be likely to cause confusion or to cause mistake or to deceive the public in that the origin of respondent's products "* * * is likely to be attributed erroneously by the trade and the public to the petitioner's great, substantial and irreparable damage;" that, on information and belief, respondent's registration or the incontestable right to use the mark in said registration was obtained fraudulently by respondent; and that
"The registered mark is being used by or with the permission of respondent or a person in privity with respondent so as to misrepresent the source of the goods in connection with which the mark is used."

Respondent's answer to the petition is essentially a general denial of the allegations contained therein.

The record consists of the pleadings, respondent's registration file, portions of the discovery depositions of two officials of petitioner corporation taken and relied on by respondent, testimony-in-chief by both parties, rebuttal testimony by petitioner, and portions of the same discovery depositions of the officials noted above relied on by petitioner during its rebuttal period "* * * only to the extent necessary to respond to Respondent's use of the portions of said transcripts * * *."

This controversy arose out of a business relationship between the parties which began in 1964 and continued until late 1973 or early 1974.

Both parties have briefed what they believe to be the issue in this case, and orally presented their respective viewpoints on this issue at the hearing conducted on this matter.

[1] When this proceeding was reached for decision, it was noted that, notwithstanding the issues of fraud and the misuse of the registered mark raised in the pleadings, the parties in their oral arguments before the Board argued primarily the question of ownership of the registered mark. A perusal of the respective briefs of the parties at that time confirmed the fact that the parties treated the issue herein solely as one involving the question as to which of the parties is the owner of the registered mark "KROP KEEP". Petitioner, in its brief, sets forth the issue as "Whether or not KEMIN is the rightful legal owner of the mark "KROP KEEP" when usage of the mark arose out of a manufacturer-distributor relationship between KEMIN and WATKINS wherein KEMIN was manufacturer and WATKINS was distributor."Respondent, in turn, has posed the issue as "The issue to be determined in this cancellation proceeding is whether Kemin or Watkins is the rightful owner of the trademark

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

EXHIBIT T

'Krop Keep' and associated goodwill."In view of the declaration of the issue herein by the parties, a question arose as to whether the Board had the jurisdiction to entertain and determine this issue because the registration in question issued on August 27, 1968 and the petition was not filed until March 13, 1974. Thus, a period of more than five years had elapsed between the issuance of the registration and the filing of the petition. Under Section 14 of the Act, which governs cancellation proceedings in the Patent and Trademark Office, and in particular under subsection (c) thereof, a registration extant for a period of five years may be cancelled only on the specific grounds enumerated therein, none of which involves ownership of the registered mark, the question strenuously argued by the parties to this proceeding. Accordingly, a letter outlining these facts was sent to the parties, and they were placed under an order to show cause why this proceeding should not *329 be dismissed without prejudice for lack of jurisdiction by the Board over the subject matter of this controversy; we cited FRCP 12(h)(3) which provides that
"Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action."

Both parties responded to the order and, on the basis of their comments, the Board assumed jurisdiction of this proceeding, but only with respect to a determination of the following issues provided for in Section 14(c):
(1) A determination as to whether Watkins' registration was obtained fraudulently.
(2) A determination as to whether Watkins has used the registered mark to misrepresent to the public the source of the goods with which the mark is used.

[2] Subsequently, the hundreds of pages of testimony and the hundreds of exhibits offered by the parties were carefully read and examined by the Board along with an exhaustive reading of the respective briefs of the parties to determine both the facts adduced by the parties and their interpretation thereof in light of the foregoing issues. This confirmed our basis for questioning the jurisdiction of the Board in this matter because the entire record and the briefs are directed to the question of ownership of the mark "KROP KEEP". It would be a useless expenditure of time and effort to detail the record of each party as to the question of ownership because nothing can be accomplished thereby since the Board is without authority to resolve this question.

The only reference in this entire proceeding to the question of fraud or even the word "fraud" and to asserted misuse of the registered mark "KROP KEEP" by Watkins, apart from the pleadings, can be found in the briefs filed by the parties in response to the question of the Board's jurisdiction over the subject matter of this proceeding.

[3] Before proceeding to a discussion of petitioner's assertions in this regard, it should be noted that fraud, within its overall connotation, implies some intentional deceitful practice or act designed to obtain something that the party practicing such deceit would clearly not otherwise have been entitled. To relate this to the concept of fraud upon the Patent and Trademark Office, it signifies a willful withholding from the Office by an applicant or registrant of material information which, if transmitted and disclosed to the Examiner, would have resulted in the disallowance of the registration sought. To state it another way, a person seeking registration is under a duty not to make any knowingly misleading or incorrect statement in affidavits forming a part of the application for registration. See: Rogers Corporation v. Fields Plastics & Chemicals, Inc., 176 USPQ 280 (TT&A Bd., 1972) and cases cited therein and Bart Schwartz International Textiles, Ltd. v. The Federal Trade Commission, 129 USPQ 258 (CCPA, 1961). There is, however, a material legal distinction between a "false" representation and a "fraudulent" one, the latter involving an intent to deceive, whereas the former may be occasioned by a misunderstanding, an inadvertence, a mere negligent omission, or the like. See: The Rieser Company, Inc. v. Munsingwear, Inc., 128

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

192 U.S.P.Q. 327  Page 4
1976 WL 21132, 192 U.S.P.Q. 327

USPQ 452 (TT&A Bd., 1961) and the cases cited therein. Additionally, the allegations of ownership and exclusive use contained in the declaration or verification accompanying an application are made upon "belief" and/or "information and belief" and, as such, are couched in such a manner as to preclude a definitive statement by the affiant that could be ordinarily used to support a charge of fraud.

With this in mind, we turn to a consideration of petitioner's "evidence" of fraud on the part of Watkins in obtaining the subject application outlined in its brief in support of the Board's assuming jurisdiction in this case. This "evidence" comprises (1) testimony by Kemin's president that, in a meeting in which he attended with another official of Kemin corporation and a number of Watkins' officials held in 1966 before the application that matured into the registration was filed, he asserted that the trademark "KROP KEEP" belonged to Kemin; and (2) testimony by the then product manager of Watkins' "KROP KEEP" program to the effect that he could not have executed the declaration accompanying the subject application because, in essence, "* * * the name came from their -- from Kemin and that is what we are talking about, is the name Krop Keep."

Before discussing this "evidence", it must be pointed out that this testimony was adduced and relied on by petitioner in support of its claim of ownership of the "KROP KEEP" mark and did not assume the significance or specter of fraud until the Board questioned its authority to determine ownership in this case. But, be that as it may, with regard to (1), Kemin's vice-president, who was also present at this meeting, recalled the meeting which was called apparently *330 because Watkins was attempting to break the "KROP KEEP" formula, but he testified that he could not recall whether or not there were any statements as to ownership or the right to use the mark "KROP KEEP". Additionally, Kemin's president prepared a memorandum recapping the meeting, but it is devoid of any discussion or reference to an assertion by Kemin of ownership of the "KROP KEEP" mark. As to (2), the probative value of this testimony is suspect because this witness, when he testified in this manner, had left Watkins' employ and was an employee or an official of Kemin corporation. His testimony, moreover, was somewhat inconsistent with his statements and activities while with Watkins relative to Watkins' policy that all of its products that it sells must bear its corporate name and its product marks. Additionally, his opinion concerning the declaration as to ownership of the mark "KROP KEEP" with appreciation is certainly at odds with the opinions of other Watkins' employees connected with the "KROP KEEP" program concerning ownership thereof and with that of the person who executed the application.

To this must be added the facts, as disclosed by the record, that, as previously indicated, Watkins informed Kemin that Watkins' name must appear on the "KROP KEEP" label; that this label did not carry any mention of Kemin and, in fact, all of the "KROP KEEP" labels and promotional and advertising literature contained the legend, "Watkins Krop Keep"; that, on numerous occasions, Kemin's employees and/or officials made reference in communications to Watkins to "your Silage Guard label," [FN2] "Watkins' Krop Keep", or the like; that, after Watkins obtained its registration in 1969 it informed Kemin of the fact and indicated that "We will require a capital 'R' in a circle on our 1969 production" -- to which Kemin offered no objection; that Watkins sent Kemin product literature for the "KROP KEEP" product with the letter "R" within a circle with no objection from Kemin; that Kemin, in 1970 or thereabout, had a search conducted relative to the availability of the mark "KROP KEEP" which unearthed the registration in question, again with no action by Kemin; and that, after the parties served their business relationship, Watkins officials declared their ownership of the "KROP KEEP" mark at meetings with and in correspondence with Kemin.

[4] The detailing of these facts is not, in any way, conclusive on the question of ownership of the

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

EXHIBIT T

192 U.S.P.Q. 327  
1976 WL 21132, 192 U.S.P.Q. 327

Page 5

mark, as between Kemin and Watkins; but it does serve to establish that Watkins had an honest and good faith belief that it was the owner of the mark "KROP KEEP" when it filed the application that matured into the registration and that this "belief" is sufficient to negate any inference of fraud upon the Patent and Trademark Office in obtaining the registration.

[5] Kemin has also argued that when Watkins began to manufacture its requirements of "KROP KEEP" silage preservative after termination of the business relationship between the parties, the registered mark was being used by, or with the permission of, the registrant, Watkins' so as to misrepresent the source of the goods, and, consequently, the registration should be cancelled under Section 14(c). In support of its contention, Kemin urges, again in its brief on the question of jurisdiction, that the original formula for the "KROP KEEP" product was proprietary information of Kemin; Watkins was never aware of the formula; and when Watkins began manufacturing and selling its own product under the "KROP KEEP" mark, "it was representing to the public the source of the product. The public believed that the product was coming from the same source as the original Krop Keep, when in fact it was not. The fact unknown to the public was that the source had been changed from Kemin to Watkins."

The Board, as Kemin, has been unable to find any cases dealing with this particular portion of Section 14(c) so as to set forth certain definitive criteria for its application in any particular situation. But, in light of the fact situation herein, it is not believed applicable. In this particular case, one must start with the fact that Watkins expressed a not altogether unsupported belief that it has always been the owner of the "KROP KEEP" mark and that the labels always referred to "Watkins Krop Keep", although they also indicated that the product was manufactured for and/or distributed by Watkins. To this, there must be added the realistic fact of the marketing world that vendors often change their manufacturing sources without abandoning the trademark. The key, of course, is the function of a trademark to guarantee consistency of the product sold thereunder. In this regard, there is nothing to show that Watkins' "KROP KEEP" product was, in any way, *331 inferior to that manufactured by Kemin and offered under the mark or that the purchasing public voiced any discontent with the Watkins product. In fact, Watkins made of record a number of testimonials relative to the "KROP KEEP" product that it has received over the years including a number praising the performance of the "KROP KEEP II" product. When Watkins began to manufacture its own product, it utilized the Roman numeral II in connection with the "KROP KEEP" mark assertedly to distinguish that formula from the "KROP KEEP" product purchased from Kemin. Subsequently, Watkins dropped the numeral II.

We are therefore not persuaded, on the record before us, that Watkins obtained the registration in question fraudulently or that the mark "KROP KEEP" has been used by Watkins to misrepresent the source of the goods; or that petitioner is entitled to any other relief provided for in Section 14(c) under which the Board has jurisdiction to cancel an existing registration when the petition is filed more than five years after the date of registration.

### Decision

The petition is dismissed.

> FN1 Reg. No. 855,561, Sec. 8 affidavit accepted.
>
> FN2 "SILAGE GUARD" was the name used on the product until a possible conflict with a third party necessitated the change to "KROP KEEP".

P.T.O. T.T.A.B.

Kemin Industries, Inc. v. Watkins Products, Inc.

1976 WL 21132, 192 U.S.P.Q. 327

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

EXHIBIT T

192 U.S.P.Q. 327  Page 6
1976 WL 21132, 192 U.S.P.Q. 327

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.