## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **JOHN C. FLOOD OF VIRGINIA, INC., et al.** | ) | |
| | ) | |
|    **Plaintiffs and Counter-Defendants,** | ) | |
| | ) | |
| **v.** | ) | **Judge Richard J. Leon** |
| | ) | **Case No.: 1:06CV01311** |
| **JOHN C. FLOOD, INC., et al.** | ) | **Deck Type:  General Civil** |
| | ) | |
|    **Defendants and Counter-Plaintiffs.** | ) | |

---

### STATEMENT OF MATERIAL FACTS NOT IN DISPUTE
### IN SUPPORT OF DEFENDANTS' RENEWED MOTION FOR PARTIAL SUMMARY
### JUDGMENT (WITH SUPPORTING DECLARATIONS, DEPOSITION TRANSCRIPTS, AND
### DOCUMENTS REFERENCED THEREIN, AND ADMISSIONS OF PLAINTIFFS-
### COUNTERCLAIM DEFENDANTS)

---

Pursuant to Local Rules of Civil Procedure LCvR 7(h) and LCvR 56,

Defendant/Counterclaim-Plaintiff John C. Flood, Inc., and Defendants John C. Flood of D.C.,

Inc. (collectively, "1996 Flood"), Robert Smiley, Joanne Smiley (collectively, "the Smileys"),

Mark Crooks ("Crooks"), Mel Davis ("Davis") and J.C. Flood, Inc., J.C. Flood Company, and

JCF, Inc., (all collectively, "Defendants") hereby respectfully submit the following Statement of

Material Facts Not In Dispute in Support of their Renewed Motion for Partial Summary

Judgment ("Defendants' SMF").

This Statement is supported by:  (a) the Declaration of Mel Davis, dated September 12,

2008 ("Davis Dec." ¶ __ ), the Declaration of Robert Smiley, dated September 12 , 2008

("Smiley Dec." ¶ __ ), and the Declaration of Michael G. Rinn, dated July 16, 2007 ("Rinn Dec."

¶ ___ ), all appended hereto, and the documents referenced in each of those Declarations,

appended as attachments thereto (referred to in this SMF as "Attachments" or "Att."); (b)

Transcripts of the June 3, 2008, Deposition of Clinton Haislip ("Haislip Dep," p. __: ln. ___),

Deposition of James Seltzer ("Seltzer Dep.," p. __: ln. __), Deposition of Mel Davis ("Davis

Dep.," p. __: ln. __ ), Deposition of Mark Crooks ("Crooks Dep.," at p. __: ln. __) Deposition

of Robert Smiley, ("Smiley Dep.," at p. __: ln. __ ), and certain exhibits referenced in such

testimony, appended hereto (referred to in this SMF as "Exhibit," or "Ex."); and (c) certain

admissions in the pleadings of the Plaintiffs/Counterclaim Defendants (denoted by the Court's

docket numbers for filed pleadings) "[#__"].

### I. *Use of JOHN C. FLOOD From 1984-1996*

#### A. *First Use of JOHN C. FLOOD By Companies Owned and Controlled by Davis/Crooks*

1. In 1984, Davis and Crooks formed a Maryland corporation called "John C. Flood,

Inc." ("1984 Flood") and at that time began engaging in the plumbing heating, and air

conditioning business in the Washington, D.C. metropolitan area, trading under various names

containing the dominant term JOHN C. FLOOD and FLOOD. *See Answer and Counterclaims of*

*Defendant-Counterclaim Plaintiff John C. Flood, Inc.* ("1996 Flood Counterclaim") [# 7], ¶ 11

and *Answers of Counter-Defendant John C. Flood of Virginia, and Third-Party Counterclaim*

*Defendants John C. Flood, Inc., John C. Flood Contractors, Inc.* [#11], and *Answer by*

*Individual Third Party Defendants Clinton Haislip and James Seltzer* ("Answers to

Counterclaim") [#17], Seventh Defense, ¶ 11(allegation of Paragraph 11 of Counterclaim

admitted); *Plaintiff's First Amended Complaint* [#28], ¶ 20 and *Answer and Affirmative Defenses*

*of Defendant/Counterplaintiff John C. Flood, Inc. and of Additional Defendants to First*

*Amended Complaint,* [#35] ¶ 20 (allegation of Paragraph 20 of Plaintiff's First Amended

Complaint admitted)

2. Between 1984 and June 1991, 1984 Flood, owned and controlled by Davis and

Crooks, continuously traded under and used the name JOHN C. FLOOD, INC. and other

variations containing the dominant elements JOHN C. FLOOD or FLOOD as trade names and

service marks, in the Washington D.C., metropolitan area, including in Maryland, Virginia and the District of Columbia, in connection with plumbing, heating, and air conditioning services. Davis Dep., 8:9-17, 34:16-22 & 35:1-23, 50;18-22, 52-53 & 54:1-4; Crooks Dep., 5-8; Seltzer Dep., 10:5-8, 12:7-11; Haislip Dep., 8-9, 23:1-14; Davis Dec. ¶¶ 3-5. During this period, 1984 Flood displayed continuously the name and mark JOHN C. FLOOD and similar names and marks, and the phrase WE DO IT ALL, on service trucks, on contracts, invoices, in telephone directory listings and ads, and/or in mass market advertising. Davis Dec. ¶¶ 4-5, and Att. A-1 thereto, (telephone directory listings and advertisements showing use of JOHN C. FLOOD, FLOOD and WE DO IT ALL from 1985 to 1991); *1996 Flood Counterclaim [#7]*, ¶ 12; *Answers to 1996 Flood Counterclaim,* [#11] & [#17], Seventh Defense, ¶ 12, at 5 (admitted in part; admitted as to 1984 Flood, and admitted that Davis/Crooks owned and controlled 1984 Flood until June 1991, when bankruptcy petitions filed).

**B.     *Formation of Virginia Flood in 1989; Common Ownership of Davis/Crooks***

3.  In late 1989, some four years after they and 1984 Flood began using JOHN C. FLOOD and similar variants, and WE DO IT ALL, Davis and Crooks formed John C. Flood of Virginia, Inc., now the Plaintiff in this case ("Virginia Flood"). Davis and Crooks formed the company for the purpose of expanding in Virginia the operations of 1984 Flood's JOHN C. FLOOD plumbing, heating and air conditioning business they already owned and controlled. Davis Dep. 53:10-22 & 54:1-4; Crooks Dep. 7:4-22 & 8:1-19; Seltzer Dep. 9:7-22 & 10:1-4; Haislip Dep., 10:4-21, 12:1-5, 12:10-22,13, & 14:1-12; Davis Dec. ¶ 6.

4. Davis and Crooks invited Third Party Counterclaim Defendants Clinton Haislip ("Haislip") and James Seltzer ("Seltzer") to join Virginia Flood as shareholders. Davis Dec. ¶ 7; Crooks Dep. 7:4-22 & 8:1-19. From the inception of the company in 1989, to and including October 1995, Haislip and Seltzer owned only a non-controlling equity interest in Virginia

3

Flood. Davis Dep. 86:22 & 87:1-17; Haislip Dep., 16:7-22 & 17:1-19, 27 & 28:1-4, 46:13-22, 47-59, 60:1-4 & Haislip Dep. Exhibits 1-5 (correspondence between Haislip/Seltzer and Trustee's counsel relating to Haislip/Seltzer's purchase of Davis/Crooks' Flood of Virginia stock); Seltzer Dep., 10:9-22 & 11:1-9, 21:11-14; Davis Dec. ¶ 7. From some point in 1989 to October 1995, when Haislip and Seltzer acquired from the bankruptcy Trustee Davis and Crooks' stock in Virginia Flood, Davis and Crooks (and later their bankruptcy estates) owned a 50% interest collectively, and Haislip and Seltzer owned collectively the other 50% interest. Davis Dep. 83: 9-22 & 84:1-6, 94:2-13; Haislip Dep., 16:2-22 & 17:1-7; 58:12-22 & 59:10-20 & Haislip Dep. Exhibits 4 & 5 (final stock purchase agreement, executed by Haislip & Seltzer in October 1995, and check for initial payment dated October 11, 1995); Davis Dec. ¶ 7.

    5. From about 1989 through and including March 1993, 1984 Flood and Virginia Flood were related companies, in which Davis and Crooks had substantial ownership interests, and Davis and Crooks exercised control over the use of the FLOOD marks by both companies. Davis Dep.70:9-22 & 71-73, 86:22 & 87:1-17, 88-89; Davis Dec. ¶ 8. During this period, 1984 Flood used JOHN C. FLOOD, FLOOD and similar variants as trade names and service marks on trucks, business forms, and in advertising and promotional materials, subject to Davis' and Crooks' control and approval. Davis Dec. ¶ 8 and Att. A-2 thereto (materials from 1990-91) & ¶ 11 and Att. A-3 thereto (materials from 1991- March 1993).

### C. 1991-1993 – The Chapter 11 - Davis and Crooks Continue to Operate, as Debtors-in-Possession, 1984 Flood, Trade and Use JOHN C. FLOOD, and to Hold Stock in 1984 Flood and Virginia Flood

    6. On June 21, 1991, 1984 Flood, Davis, Crooks and their wives each filed petitions for relief and reorganization under Chapter 11 of the U.S. Bankruptcy Code in the U.S. Bankruptcy Court for the District of Maryland. Rinn Dec. & Att. B-1 thereto (Adversary Proceeding

4

Complaint) ¶¶ 5-10. Davis Dec. ¶ 9. They hoped and intended to reorganize and to continue the JOHN C. FLOOD business. Davis Dec. ¶ 9.

7. From June 21, 1991 through and including March 1993, Davis and Crooks continued to control and operate 1984 Flood, which continued to conduct business and trade under and use JOHN C. FLOOD and FLOOD names and marks, and Davis and Crooks continued to hold their stock in 1984 Flood and Virginia Flood, as debtors-in-possession for the Chapter 11 bankruptcy estate. Davis Dep. 43:20-22 & 44:1-7; Haislip Dep. 32-34, 36-38, & 39:19-22 & 40:1-15; Seltzer Dep. 15:2-22 & 16-17:1-6; Davis Dec. ¶ 10; Rinn Dec. ¶ 4. The bankruptcy curtailed 1984 Flood's ability to operate and advertise, among other reasons because vendors would not extend credit to the bankrupt entity. Davis Dep. 97:11-22 & 98. During the early stages of the Chapter 11 case, Virginia Flood assisted 1984 Flood, by paying for equipment 1984 Flood used to operate its business, and paying for certain advertising for 1984 Flood along with its own ads. Haislip Dep. 32-34, 36-38, 39:19-22 & 40:1-15; Seltzer Dep.15:2-22, 16-17:1-6.

8. During the period between June 1991 and March 1993, 1984 Flood, under Davis' and Crooks' day-to-day direction and control as Chapter 11 debtors-in-possession, continued to use JOHN C. FLOOD and FLOOD to advertise and promote plumbing, heating and air conditioning business in the Washington D.C. metropolitan area. Davis Dec. at ¶ 11. They continued to display JOHN C. FLOOD on service trucks, signage, business forms, brochures and advertising. *Id.* & Att. A-3 (telephone directory ads and listings from June 1991 to September 1993); 1991-92 *Washington Post* ad proof Bates 00710;1992-93 back cover *Washington Post TV Week* ads Bates 0711-0716 & 0548; and work orders, invoices, contracts, etc.) thereto.

9. On March 22, 1993, a Chapter 11 Trustee was appointed for 1984 Flood, Davis and Crooks, and Davis and Crooks ceased to be debtors-in-possession. On September 21, 1993, each

1984 Flood's, Davis', Crooks' and their wives' cases were converted to proceedings under

Chapter 7 of the Bankruptcy Code, and all of the cases were consolidated and administered under

the Chapter 7 case styled *John C. Flood, Inc, et alia*, 91-4-3011SD, Rinn Dec. ¶ 4.

**D.    The Chapter 7 1993-1995: Debtors Crooks and Davis and Their Relatives Continue Business Under Various Entities Trading and Advertising Under Variations of the JOHN C. FLOOD Name**

10.    After the Chapter 11 Trustee was appointed for 1984 Flood in March 1993, the

Trustee at the time, Mr. Francis Hunt, was unable to reach agreement with Davis on how the

business of 1984 Flood was to be operated, and took physical possession of the premises, books

and records, and tangible assets of 1984 Flood. Davis Dep. 44:3-22 & 45:1-14; Crooks Dep.,

10:16-21. Davis refused to work for Hunt, and surrendered 1984 Flood's premises, books and

records, and tangible assets to Hunt. *Id.* The bankrupt debtor 1984 Flood ceased operations at

that time. Davis Dep. 104:13-22, 105, 111:16-21.

11.    However, after Mr. Hunt's taking possession of 1984 Flood's premises, records, and

tangible assets, the individual debtors, Davis and Crooks, and the Smileys (who were members

of Davis' family) continued to carry on the same type of plumbing, heating and air conditioning

business of 1984 Flood in the Washington D.C. metropolitan area. They traded and advertised

under various corporations and trade names, using variations of JOHN C. FLOOD and FLOOD,

including Flood, Inc., J.C.F., Inc., trading as J.C. Flood, John C. Flood of D.C, Inc., and John C.

Flood of MD, Inc. Smiley Dep. 11-13, 14-23, 25-35; Davis Dep. 78-81, 86, 110:8-19, 111&

112:1-14, 122:20-22 & 123-124:1-6; Haislip Dep. 43:22 & 44:1-10; Davis Dec. ¶ 13. These

entities displayed FLOOD names and marks and on service trucks, signage, business forms,

brochures and advertising, continuously, through and after June 1995, when a receiver was

appointed by the Bankruptcy Court to take control of the entities. *Id.* & Davis Dec. ¶ 14 & Att.

A-3 through A-4 (3/93-6/95 ads, ad copy, phone book listings, work orders, invoices); Rinn Dec.

¶ 5-8 & Att. B-2 Exhibit A (J.C. Flood *Merchandiser* ad).

12. In establishing and operating these entities, the Smileys, Davis and Crooks sought to

continue the same business as 1984 Flood, to use FLOOD names that were recognizable to the

consuming public, and to operate using 1984 Flood's goodwill, regardless of what occurred in

the bankruptcy with respect to 1984 Flood and its operations. Davis Dec. ¶ 13; Smiley Dep. 10:

10-22, 11-12:1-3, 13-14:1-4, 33-34, & 35:1-13; Seltzer Dep. 36:14-20, 39:15-22.

13. Principals of Virginia Flood were aware of this use of the FLOOD names and marks,

and assumed that Davis, Crooks and the Smileys were using the names and marks without the

permission of the Trustee. Haislip Dep. 43:14-22, 44-46:1-3 & 55:4-7.

E.    ***Trustee Rinn's Sale of Davis/Crooks' Interest in Virginia Flood
to Haislip and Seltzer in October 1995***

14. As of March 1995, Haislip and Seltzer had filed certain claims against the estates of

1984 Flood, Davis and Crooks. *Virginia Flood First Amended Complaint* [#28] ¶ 26.

15. Virginia Flood and its principals had knowledge of the bankrupt debtors' and their

family members' use of the FLOOD name, derived from reviewing print and telephone directory

ads. Haislip Dep. 43:14-22- 44-46:1-9, 55:4-7. Rinn Dec. ¶ 9. Michael G. Rinn, Esquire, at

that time the successor Chapter 7 Trustee of 1984 Flood, Davis and Crooks' bankruptcy estates

("Rinn," or "Trustee") planned to elicit the testimony of Haislip and Seltzer and subpoened their

appearance and documentation of such use in proceedings against the debtors arising from such

use. Rinn Dec. ¶ 9 & Att. B-3 & B-5 thereof (subpoenas).  At his deposition, Seltzer recalled

having discussions with Paul Sweeny, Rinn's counsel, but testified that he did not recall whether

those conversations included the conduct of Davis and Crooks in connection with the "new"

Flood. Seltzer Dep. 38:7-22 & 39:1. Likewise, Haislip did not recall reporting Davis' and

Crooks' use of the Flood names with the Trustee. Haislip 46:4-9. Neither, however, denied that such conversations took place. *Id.*

16. In or about March 1995, Haislip and Seltzer, and the Trustee reached a settlement in principle of Haislip's and Seltzer's claims. The Trustee agreed to sell to them Davis' and Crooks' 50% interest in Virginia Flood stock held by the estates. Seltzer Dep. 30-31:1-6.

17. The basic terms of the settlement were memorialized in a letter from the Trustee's counsel, Sweeney, to Haislip/Seltzer's counsel, Weltmann. Rinn Dec. ¶ 24 & Att. B-14 (March 16, 1995, Letter from Sweeny to Weltmann re terms of Sale of Virginia Flood stock, Bates No. DCDC 2437-38, 2442-43 *n.b.*, this letter is also Haislip Dep. Exhibit 3, and attached to the transcript thereof). As part of the consideration for the sale, the Trustee agreed to release Haislip, Seltzer and Virginia Flood from claims, causes of action or disputes the Trustee may hold against them, and Virginia Flood agreed to release the bankruptcy debtors and their estates, and assign to the Trustee any claims, causes of action or disputes Virginia Flood had with respect to the consolidated bankruptcy cases. *Id.*; *First Amended Complaint* [#28] ¶ 27. However, the settlement was subject to bankruptcy court approval. Seltzer Dep. 30-31:1-6, 32:3-6 & Att. B-14 to Rinn Dec. & Haislip Dep. Ex. 3 (March 16, 1995, Sweeney to Weltmann Letter).

18. Notice of the settlement was given to creditors on March 28, 1995, and the deadline for objections to the settlement described in the Notice ran without any being filed on April 20, 1995. Rinn Dec. ¶ 24 & B-15 (April 20, 1995, Clerk's Certificate of No Objections and March 25, 1995, Notice of Settlement). However, the formal Stock Purchase Agreement transferring the stock was not fully executed until October 1995, as Rinn signed it in September 1995, and Haislip and Seltzer in mid-October, 1995. Rinn Dec. ¶ 24 & Att. B-14 (signed and notarized Stock Purchase Agreement, Bates Nos. Flood DCDC 2132-36).

**F.**    *May 1995 Trustee Rinn's Adversary Proceeding Seeking Control of Successors to 1984 Flood's Business Operated by Debtors Davis and Crooks, to Preserve and Protect Value of Estate's JOHN C. FLOOD and FLOOD Tradenames and Goodwill; Appointment of Receiver and Charge to Continue Operating Business and to Protect Names and Goodwill for Sale*

19. On May 17, 1995, Rinn, Trustee of the consolidated bankruptcy estates of 1984 Flood, Davis and Crooks, commenced an adversary proceeding in the bankruptcy case (the "Adversary Proceeding") against JCF, Inc. t/a J.C. Flood, John C. Flood of MD, Inc., John C. Flood of DC, Inc., MDMC, Inc. a/k/a Mel Davis and Mark Crooks, Inc. and the persons operating and controlling those entities, namely Davis, Crooks and the Smileys. Rinn Dec. ¶ 6 & Att. B-1 thereto (Verified Adversary Proceeding Complaint).

20. In the Adversary Proceeding, the Trustee exercised his powers to avoid transfers and compel turnover of estate assets to the Trustee pursuant to the Bankruptcy Code. Among his grounds was that the foregoing "New Flood" entities (as he called them) were the successors of 1984 Flood. He sought to compel the defendants to deliver to the estate, account for, refrain from further use, and to have the Court appoint a receiver to take control of, assets rightfully belonging to the estate, to preserve them for the creditors of the estate. He also sought appointment of a receiver immediately, *ex parte*, to take control of the assets and administer them for the benefit of the bankruptcy estate. The assets specifically included the FLOOD trade names and goodwill, which the Trustee alleged were being infringed and misappropriated by the individual debtors and their family members. Rinn Dec. ¶ 6 & Att. B-1 thereto (Verified Adversary Proceeding Complaint), *passim* & ¶ 7 & Att. B-2 thereto (Verified Motion and Memorandum in Support of Verified Motion for Appointment of a Receiver), at pp.12-13.

21. On or about June 5, 1995, the Bankruptcy Court entered Stipulated and Consent Order for a preliminary injunction and temporary appointment of a receiver. Roman Fedirka, still the temporary receiver, was appointed to serve as temporary receiver, to operate, preserve

and protect the New Flood assets, including the JOHN C. FLOOD and FLOOD names and related goodwill during the bankruptcy proceeding. Rinn Dec. ¶ 10 & Att. B-4 (June 1995 Temporary Receivership Order). Among the powers and duties the Court expressly conferred on the receiver were to: "take and retain immediate possession and charge of all the right, title, and interest of all tangible and intangible property, wherever located . . . . and assets of every kind a nature (collectively the "Assets") of New Flood . . . and to manage, operate, maintain, secure, and control same so as to protect and preserve New Flood as ongoing business entities until further Order of this Court." *Id.* On August 17, 1995, the Court entered a Second Stipulated and Consent Order continuing the receivership under Mr. Fedirka, and charging him with the identical powers and duties. Rinn Dec. ¶ 12 & Att. B-6 (August 1995 Second Temporary Receivership Order).

> **G.** *Motion for Approval of Settlement of Adversary Proceeding; Section 363 Sale; Notice to Va. Flood; Active Participation of Va. Flood and Haislip/Seltzer; Competing Bid; Failure to Assert Claim of Exclusive Ownership of JOHN C. FLOOD*

22. By September 7, 1995, after lengthy negotiations, Rinn and the Adversary Proceeding defendants reached a settlement agreement in principal whereby the estate would, after due notice to all creditors, sell the stock in certain of the New Flood corporations and the JOHN C. FLOOD, INC. and FLOOD, INC. trade names and goodwill, to Davis, Crooks, and Joanne and Robert Smiley on certain terms, including a release of the claims against them. Pending resolution of the details, grant or denial of the motion approving the sale after an opportunity for creditors to object or to submit higher and better bids, and a sale of the assets, the parties consented that Mr. Fedirka would be appointed permanent receiver, with powers similar to those granted in the previous Temporary Receivership Orders. Rinn Dec. ¶13.

23. A hearing on the consent motion for permanent appointment of a receiver before the Bankruptcy Court was held on September 7, 1995, at which a court reporter was present. Rinn Dec. ¶14 & Att. B-7. The transcript summarizes the details of the contemplated settlement as proposed at the time. A lawyer, Mr. Gary Weltmann, appeared for John C. Flood of Virginia, Inc., and attended the hearing. *Id.* & Att. B-7, (transcript cover, showing Weltmann's appearance and client).

24. On September 7, 1995, the Bankruptcy Court entered a Consent Order Appointing Permanent Receiver and Granting Permanent Injunctive Relief. Rinn Dec. ¶16 & Att. B-8 thereto. ("Permanent Receivership Order"). Among the powers and duties the Court expressly conferred on the receiver were: "take and retain immediate possession and charge of the right title and interest and and to all tangible and intangible property, wherever located . . . . and assets of every kind a nature (collectively the "Assets") of New Flood . . . and to manage, operate, maintain, secure, and control same so as to protect and preserve New Flood as ongoing business entities until consummation of sale to a purchaser, subject to further Order of this Court." Rinn Dec. Att. 8, Permanent Receivership Order, ¶ 1. He was also charged expressly "[t]o prohibit any confusingly similar or otherwise infringing uses of the common law tradename JOHN C. FLOOD, INC., by any individual or entity. . . ." *Id.* ¶ 3.

25. During the entire period of the temporary and permanent receiverships, from June 1995 through and after the sale of the names and goodwill in 1996, the businesses in receivership never ceased trading and advertising under the JOHN C. FLOOD and FLOOD names and marks. The companies continued to perform plumbing, heating and air conditioning services throughout the Metropolitan Washington, D.C. area, and to use variations of JOHN C. FLOOD and FLOOD, on service trucks, on business forms, and in advertisements, and the like. Smiley Dec. ¶¶ 4-5 &

11

Att. C-1 thereto (representative samples of business forms and ads used during the receivership). The Smileys continued to work in the business, under the supervision of the receiver. *Id.* ¶ 4.

26. The Adversary Proceeding settlement proposal contemplated that the ultimate asset sale would be pursuant to 11 U.S.C. § 363, which permits the Trustee to sell estate assets free and clear of all adverse liens, claims, and encumbrances, after due notice to all creditors and parties in interest and an opportunity to object and submit higher and better bids. Rinn Dec. ¶ 15 & Att. B-7, Permanent Receiver Motion Hearing Transcript, at 5-17. On September 15, 1995, the Trustee gave formal notice of the appointment of a permanent receiver, to all creditors and parties in interest. Rinn Dec. ¶ 17 & Att. B-9 (Notice of Permanent Receivership). The Notice provided that: "all creditors will receive additional notice prior to any sale and the notice of the sale will provide for a period of time for creditors and parties in interest to respond and also provide for a hearing to be held." *Id.* & Att. B-9.

27. Early in October, 1995, Rinn reached a settlement with the Adversary Proceeding defendants, whereby the trade names and goodwill in and to JOHN C. FLOOD, INC. and FLOOD, INC., and the stock of John C. Flood of MD, Inc. and John C. Flood of DC, Inc. were to be sold, along with the operating assets and liabilities of those companies, pursuant to 11 U.S.C. § 363, free and clear of all adverse liens, claims and interests, to Davis, Crooks, and the Smileys, for $300,000 on terms. Rinn Dec. ¶ 18. To effectuate the settlement, on October 5, 1995, Rinn filed in the Bankruptcy Court a Motion for Entry of Order Authorizing Private Sale of Stock and Other Assets Free and Clear of Liens and For Approval of Settlement. *Id.* & Att. B-10 (with Exhibits A and B) ("Motion for Approval of Sale Free and Clear of Liens").

28. On October 6, 1995, Rinn caused to be served all creditors and parties in interest with a Notice of the Motion for Approval of Sale Free and Clear of Liens, to which was attached

the Motion, and exhibits thereto identifying the operating assets and liabilities of the New Flood

entities whose stock was be sold. Gary Weltmann, counsel to Haislip, Seltzer and John C. Flood

of Virginia, Inc., was served with a copy. Rinn Dec. ¶ 19 & Att. B-11 (Motion for Approval of

Sale Free and Clear of Liens, including Certificate of Service on Weltmann, *et alia*).

29. On October 16, 1995, Haislip/Seltzer's lawyer, Weltmann wrote a letter to Rinn's

offering to purchase from the Trustee for $225,000, on terms, the names and telephone numbers

of the FLOOD entities in receivership. Haislip Dep. 69-72:1-12 & Haislip Dep. Exhibit 7

(October 16, 1995 Letter from Weltmann to Sweeney).

30. On October 20, 1995, Haislip and Seltzer, through their counsel, Mr. Weltmann,

filed in the Bankruptcy Court an objection to the Motion to Approve Sale Free and Clear of

Liens. They objected on the grounds that the Trustee should not settle the case or sell the assets

to the proposed purchasers, Davis, Crooks and Joanne and Robert Smiley, because they had

engaged in fraud, and diverted and concealed assets of the estate. Rinn Dec. ¶ 20 & Att. B-12

(Haislip/Seltzer Objection to Sale, hereafter, "Objection").

31. As part of their Objection to Sale, Haislip and Seltzer made an offer to purchase only

the names and telephone numbers for $225,000, on terms, but not the stock, of the New Flood

entities, similar to their offer to the Trustee memorialized in Weltmann's October 16, 1995 letter.

They noted that, according to the proposed terms of sale, the purchasers' operation of the

business had to be monitored by the Trustee until the purchase price was paid due to their past

history, causing an expense that would cause the estate to derive a lower net recovery than under

Haslip/Seltzer's counteroffer. Rinn Dec. ¶¶ 20-21 & Att. B-12, Objection, ¶ 9.

32. Haislip and Seltzer's objection did not claim or assert that the bankrupts' estate

lacked the right to sell, or lacked title and interest in and to the JOHN C. FLOOD, INC. and

13

FLOOD, INC., trade names and associated goodwill the Trustee proposed to sell in his Motion. Nor did their objection claim or assert that the sale was invalid because, previously in 1995, the Trustee had settled their claim against the estates of Davis and Crooks by selling to Haislip and Seltzer the 50% Virginia Flood interests owned by debtors Davis and Crooks, thereby conferring on Virginia Flood exclusive rights to use JOHN C. FLOOD and similar names and marks, as Virginia Flood now claims here. Seltzer Dep. 77:15 -79 & Exhibit 14 thereto (Objection); *Virginia Flood's Answer to Counterclaim*, ¶ 22 (admission that objection did not take that position); Rinn Dec. ¶¶ 20, 23 & Att. B-12 (Objection).

33.  Davis and Crooks withdrew from the proposed bid, and the Smileys increased their offer from $300,000 to $425,000, on terms.  Rinn Dec. ¶ 22; Smiley Dec. ¶¶ 6-7.

34.  A hearing was held before Judge Keir on October 26, 1995.  Rinn Dec. ¶ 22.  Mr. Weltmann appeared at the hearing.  *Id.*  On October 28, 1995, after considering Haislip's and Seltzer's Objection and counteroffer, the Court entered an Order approving the sale of the Flood stock and trade name including the trade names JOHN C. FLOOD, INC and FLOOD, INC. and goodwill, to the Smileys and the corporations they were to operate, for the sum of $425,000, on the terms set forth in the Order and the instruments recited therein.  *Id.* & Att. B-13 thereto. (October 28, 1995, Order authorizing Sale Free and Clear).

35.  In their depositions in this case, Virginia Flood's principals and officers, Haislip and Seltzer, testified that, in their view, they acquired the exclusive rights to use the name JOHN C. FLOOD and FLOOD and similar variations when they purchased from the bankruptcy Trustee Davis' and Crooks' 50% interest in Virginia Flood, leaving them with 100% ownership of Virginia Flood.  Seltzer Dep. 13:11-22 & 14:1-15; Haislip Dep. 27-28.  Prior to that acquisition, Seltzer acknowledged in his testimony, they did not have exclusive rights. Seltzer Dep.14:9-15,

Haislip testified that they did not regard uses of the FLOOD name by Davis, Crooks and the Smileys in 1993 and 1994 without the permission of the Trustee as violating Virginia Flood's rights. Haislip Dep. 45:20-22 & 46:1-4, 55:4-11. Haislip further testified that the stock purchase documents do not expressly mention purchase of the exclusive use of the name JOHN C. FLOOD and variations, and that he recalled no transaction other than the stock purchase whereby any marks, much less all similar variations and goodwill of JOHN C. FLOOD and FLOOD, were conveyed to Haislip and Seltzer. Haislip Dep. 60:1-16, 66:4-22 & 67-68:1-6. Seltzer also admitted in his testimony that he did not believe there was another transaction whereby Haislip, Seltzer or Virginia Flood specifically purchased Virginia Flood's marks and similar variations and all goodwill symbolized thereby, and he and his counsel that the stock purchase agreement did not explicitly mention such assets. Seltzer Dep. 66:10-22 & 67-68:1-17.

36. While an agreement in principle was reached earlier in March of that year, Haislip and Seltzer's purchase and sale of Virginia Flood's stock, in fact, occurred not earlier than October 1995, when the Trustee, Haislip and Seltzer executed a formal Stock Purchase Agreement, and Haislip/Seltzer made an initial payment to the Trustee of $50,000. Haislip Dep. 58-60 & Haislip Dep. Ex. 4 (Virginia Flood Stock Purchase Agreement signed and notarized by Seltzer, Haislip and Rinn in October 1995, also appended as Att. B-14 to Rinn Dec.) and Haislip Dep. Ex. 5 ($50,000 check dated October 11, 1995).

37. As recited above, by October 11, 1995, the Bankruptcy Court had, some six months previously, in connection with the Trustee's adversary proceeding against Davis, Crooks and the Smileys, and at the request of the Trustee, appointed Mr. Fiderka, a receiver, to bring back within the control of the bankruptcy estate the JOHN C. FLOOD and FLOOD names and goodwill, and to operate the "new" Flood entities formed by Davis, Crooks and the Smileys, as

going concerns so that they could be sold. Haislip Dep. 116:19-22 & 117:1-8 (admitting that one
of prime functions of receiver was to bring the operations set up by Davis, Crooks and others
using Flood marks back into the bankruptcy estate) and Seltzer Dep. 39:2-22 (Seltzer admitting
his belief that, as of September 1995, Trustee had put a receiver in place and sought to bring
back into the bankruptcy estate assets including 1984 Flood name and goodwill that had been
used by "new" Flood entities). *See also, supra,* § F. The sale of the Virginia Flood stock to
Haislip and Seltzer occurred *after* the Court entered the Bankruptcy Court's September 7, 1995
order making permanent the receivership, and *after* October 5, 1995, when the Trustee, Rinn,
gave all creditors and parties in interest notice of his intention to sell estate assets, which
specifically included the JOHN C. FLOOD and FLOOD names and goodwill, to Davis, Crooks,
and the Smileys. The sale of the Virginia Flood stock to Haislip and Seltzer through which they
claim exclusive rights in the FLOOD and JOHN C. FLOOD names and marks occurred weeks
*before* Haislip and Seltzer filed with the Bankruptcy Court their objections to the sale of the
"new" Flood assets, including the names and goodwill. That objection, filed on October 20,
1995, also contained a counteroffer, whereby Haislip and Seltzer offered to purchase the New
Flood names and phone numbers only for $225,000. *See supra* ¶¶ 29-32.

    38. At their depositions, despite multiple attempts to examine them on the subject,
Haislip and Seltzer professed a failure of memory as to the positions taken by them in connection
with their objection and counteroffer, stating that they did not recall whether or not they or their
counsel ever took the position on their behalf that the Trustee could not sell the Flood names
because Haislip/Seltzer and/or Virginia Flood already owned and/or had the exclusive rights to
use them. Haislip Dep.118:19-22 & 119:1-18; Seltzer Dep. 49:15-22 & 50:1-5, 72:22 & 73:1-7,
77:15 – 79. Eventually, after being confronted with the Objection itself, Seltzer admitted that he

did not see any such position in the Objection filed on their behalf. Seltzer Dep. 77:15 -79 & Haislip Dep. Ex. 14 (October 20, 1995, Objection).

39. When asked why they would offer $225,000 for assets including tradenames they thought they already owned, Seltzer testified that he was uncertain why his counsel would have done so, but admitted that his counsel's actions were authorized. Seltzer Dep. 33-34:1-14, 46:7 16. Seltzer offered by way of explanation a vague hope on his counsel's part that buying the names "would sort of clear the air in the metropolitan area of the bankruptcy issue and how it was dragging everything down," *id.* 35:1-6, and "that [Crooks and Davis] would go away and the bad will that went with it," *id.* 44:6-22, but conceded that, if their counteroffer had been accepted, and if Haislip and Seltzer had purchased the names and phone numbers, it probably would not have made Davis and Crooks go away. *Id.* 45:19-22.

40. Haislip or Seltzer did not deny or contradict in their depositions the facts shown by the documents filed on their behalf in the bankruptcy court -- *viz,* that they did not object to the sale of the JOHN C. FLOOD and FLOOD names and goodwill to others beside themselves on the grounds that the Trustee could not sell them because Haislip/Seltzer and/or Virginia Flood owned or had exclusive rights thereto. Nor did they deny that the Objection they filed on October 20, 1995, *did not* take the position that Haislip/Seltzer or Virginia Flood had acquired exclusive rights to JOHN C. FLOOD and similar marks, by virtue of their purchase of Virginia Flood stock from the Trustee weeks previously (on or about October 11, 1995). Haislip Dep.118:19-22 & 119:1-18; Seltzer Dep.77:15 -79 & Haislip Dep. Ex 14 (Objection).

41. At no time during or after the sale approval process did Mr. Weltmann, Haislip, Seltzer, or anyone else acting for or on behalf of John C. Flood of Virginia, Inc., ever claim or assert before or in connection with the bankruptcy case that the estate lacked the right to sell, or

lacked title and interest in and to the JOHN C. FLOOD, INC. and FLOOD, INC., trade names and associated goodwill, despite notice and opportunity to do so. Nor did they ever claim or assert there that the sale was invalid because of the Trustee sale to Haislip and Seltzer the 50% ownership interest of Davis and Crooks in Virginia Flood somehow conferred upon Hailsip and Seltzer exclusive rights to use JOHN C. FLOOD and similar variants. Virginia Flood's Answer to Counterclaim, ¶ 22; Rinn Dec. ¶¶ 20, 23 & Att. B-12 (Objection). Insofar as the Trustee is concerned, they acted in a manner contrary to such contentions in offering $225,000 for the very same assets. Rinn Dec. ¶ 23.

**H.**      *October 1995 Trustee Demands that Virginia Flood Trade Desist Use of JOHN*
            *C. FLOOD Without Distinguishing Geographic Designator*

42. On October 4, 1995, the day before he filed the Motion for Approval of Sale Free and Clear of Liens, the Trustee sent a letter to Mr. Weltmann demanding that his clients cease and desist using JOHN C. FLOOD in certain telephone directory advertising without the distinguishing designator "of Virginia." Rinn wrote: "[w]ithout belaboring the point, I consider your client's use of the name without the clarification as John C. Flood of Virginia in the same category as the issues which led to litigation of the received entities." Rinn Dec. Att. B-16. (October 4, 1995 Rinn to Weltmann letter)

43. In his deposition testimony, Haislip admitted that the letter was addressed to his counsel, and that, in it, the Trustee was saying that he, Seltzer and Virginia Flood were using variations of the Flood name that, in the opinion of the Trustee, they were not entitled to use. Haislip Dep. 82:6-22 & 83:1-11 & Haislip Dep. Ex. 8.(October 4, 1995 Rinn to Weltmann letter). However, he testified that he did not remember what, if anything, was done in response to the letter. *Id.* 83:11. Seltzer, in his deposition, also agreed that the letter reflected a view by the Trustee that Virginia Flood did not, as of October 4, 1995, when the letter was written, have

18

the exclusive right to use the trademark Flood and all variations, but he, too, testified that he did

recall if or how the letter was responded to. Seltzer Dep. 53:6-22 & 54:1-17.

44. Several weeks after the date of the Trustee's "cease and desist" letter to Weltmann,

on November 30, 1995, in a letter produced in discovery to the Defendants by the Virginia Flood

parties, Weltmann, on behalf of Virginia Flood, wrote to Joyce Collier of Bell Atlantic,

complaining that Bell Atlantic had run a Virginia Flood Yellow Pages ad in Maryland using

older copy, instead of a newly designed ad. This letter averted to a dispute with a "competitor

with a similar name." In the letter, Weltmann stated:

> Lastly, my client, for years, has been embroiled in legal battles with a competitor
> with a similar name. Prior to the designing of the advertisement, that company
> began threatening legal action as a result of certain appearances and/or omissions
> from the old advertisement. Though my client disputes that there was anything
> wrong with the old advertisement in this context, it nonetheless changed it so that
> this latest issue would disappear. It now remains in danger that legal action shall
> commence.

Smiley Dec. ¶ 14 & Att. C-6 thereto  (November 30, 1995, letter from Weltmann to Collier).,

**I.      *Sale to 1996 Flood; Continuation of Operation of JOHN C. FLOOD
        Businesses for Over Ten Years Prior to Virginia Flood's Filing of This Case***

45. In or about February 1996, the Smileys, John C. Flood, Inc., a newly-formed

Maryland corporation (Defendant and Counterclaim Plaintiff here), and the "New Flood" entities

in receivership (collectively, "1996 Flood") entered into a Settlement and Forbearance

Agreement. Certain of them executed and delivered a number of associated debt and security

instruments with the Trustee (including a Bill of Sale) effectuating, and memorializing the terms

of, the court-approved purchase of the JOHN C. FLOOD, INC. and FLOOD, INC. tradenames

and goodwill, and the stock of the New Flood entities John C. Flood of DC, Inc. and John C.

Flood of MD, Inc.  Smiley Dec. ¶ 6 & Att. C-2. The instruments obliged each of the Smileys

and those entities to pay the estate the purchase price of $425,000, in monthly installments of $6,666.66 each, and a balloon payment at maturity in December 2000. *Id.*

46.    The Smileys and 1996 Flood entered into the Settlement and Forbearance Agreement, and executed and delivered the associated debt and security instruments, in reliance on the Court's approval of the purchase. Smiley Dec. ¶ 8. They also relied on the Trustee's right to sell the FLOOD trade names and goodwill free and clear of adverse claims and interests, including any claims and interests which could have been asserted and litigated before the Bankruptcy Court by parties in interest who had received notice of the proposed sale. *Id.* Their expectation in agreeing to buy the assets was that there were no such claims or adverse interests that had not been resolved by the Court. *Id.*

47.    They agreed to buy the assets with the understanding that no one, including Haislip and Seltzer or Virginia Flood, had objected on the grounds that the Trustee lacked the right to sell or did not own the trade names and goodwill, and that they would acquire the trade names and goodwill free and clear of adverse claims and interests other than those set forth in the purchase documents. *Id.* ¶¶ 7-8.

48.    After execution and delivery of the Settlement and Forbearance Agreement and associated debt and security instruments, Defendants continued engaging in the plumbing, heating and air conditioning business in the Washington D.C. metropolitan area under the JOHN C. FLOOD and FLOOD tradenames substantially as it had been conducted under the auspices of the receiver. *Id.* ¶¶ 9 & 11 & Smiley Dec. Att. C-4 (advertising material using JOHN C. FLOOD marks). As required in the settlement, until the purchase price was paid in full, Defendants' operations were monitored by and conducted under the supervision of the receiver, Roman Fedirka. *Id.*

49. From 1996 through early 2001, 1996 Flood made the monthly payments as required, and, as of early 2001, had paid the $425,000 purchase price in full. *Id.* ¶ 10 & Smiley Dec. Att. C-3 (checks and statement of account)

50. From 1996 to and including the present date, 1996 Flood has at all times actively traded under and used JOHN C. FLOOD and variations of FLOOD as trade names and servicemarks to promote their business, through a variety of means, including on service trucks, signage, business forms, in telephone directory ads and listings, in periodical and cable television ads, and on the Internet, and Virginia Flood is and has been aware of these facts. Smiley Dec. ¶ 11 & Att. C-; *1996 Flood Counterclaim* [#7] and *Virginia Flood's Answer to 1996 Flood Counterclaim* [# 11] ¶ 29 (admitted by Virginia Flood); *Virginia Flood's First Amended Complaint* [#28] ¶¶ 47, 57 (alleged and admitted).

51. 1996 Flood spends substantial sums for advertising using the JOHN C. FLOOD and FLOOD marks, and has advertised continuously since 1996. Smiley Dec. ¶ 12.

52. Virginia Flood was aware in 1996 that the Smileys and 1996 Flood purchased the JOHN C. FLOOD and FLOOD tradenames and goodwill in a sale approved by the Bankruptcy Court, and planned to use them, because Virginia Flood's principals and officers participated actively in the proceedings. *See supra* § G. Also, in November 1995, a month after the Bankruptcy Court approved the sale of the names and goodwill to the Smileys, and about two months after Trustee Rinn complained to Virginia Flood's counsel about use by Virginia Flood of JOHN C. FLOOD omitting the distinguishing geographic designator, "of Virginia" (*see supra,* § H), Gary Weltmann, counsel for Virginia Flood, wrote to Bell Atlantic, to complain that Bell Atlantic's failure to run a newly designed phone directory ad that would have corrected "an

omission" exposed his client to the danger of "legal action" by a "competitor with a similar name." Smiley Dec. ¶ 14 & Att. C-6 (November 30, 1995 Weltmann to Collier letter).

53. Further, on June 11, 1996, John P. Morrissey, counsel for 1996 Flood wrote to Haislip and Seltzer complaining that Virginia Flood was infringing the tradenames 1996 Flood had purchased from the Trustee, by using "John C. Flood" in telephone directory advertising, on service trucks, on signage, and in other advertising. Smiley Dec. ¶13 & Att. C-5 (June 11, 1996 Morrissey to Haislip/Seltzer letter). He demanded, as the Trustee had in October 1995, before him (*see supra,* § H), that Virginia Flood stop using "John C. Flood" without the distinguishing designator "of Virginia," to avoid confusion.

54. On August 21, 1996, Virginia Flood, through Mr. Weltmann, wrote a letter to Mr. Morrissey essentially acceding to Mr. Morrissey's demands. In particular, Weltmann wrote that he had personally seen the newest telephone directory ads, and "they contain the words 'of Virginia, Inc.' after 'John C. Flood.'" He also agreed that his client would have the words "of Virginia, Inc., "added to building and service truck signage. *Id.* & Att. C-5 (August 21, 1996, Weltmann to Morrissey letter).

55. Weltmann did not in this letter, or in any other communication with 1996 Flood about the issue, take the position that 1996 Flood's use infringed Virginia Flood's rights. *Id.* ¶ 13. When confronted with this exchange of correspondence at his deposition, Haislip testified that, at the time (June 1996), it was his view that, when the Trustee sold the JOHN C. FLOOD name to the Smileys, the Trustee had nothing to sell because Haislip and Seltzer already owned exclusive rights to the name, but he did not recall whether or when Haislip or Seltzer asserted that position in any connection in the bankruptcy case, or in response to Morrissey's June 11, 1996, letter. Haislip Dep. 84-85, 92:7-20 & Haislip Dep. Ex. 9 (June 11, 1996 Morrissey to

Haislip/Seltzer letter). However, when confronted with Weltmann's response of August 21,

1996, after again professing a memory lapse, Haislip conceded that the response did not include

the position that Morrissey had no right to make any such demands because Haislip and Seltzer

had the exclusive rights to use all variations of the Flood name, and that Weltmann's response

did, in fact, offer to add the words "of Virginia" to various signs and advertisements. Haislip

Dep. 92-95, & Haislip Dep. Exs. 9, 10 & 11 (June 11, 1996 and August 14, 1996 Letters from

Morrissey to Weltmann and Weltmann's August 21, 1996 reply). Seltzer's deposition testimony

was similar, and he also conceded that Weltmann's response did not, in response to Morrissey's

demands, inform Morrissey that his clients had no right to make such demands, nor did he take

the position that Haislip/Seltzer and/or Virginia Flood had the exclusive rights to the JOHN C.

FLOOD name and marks. Seltzer Dep. 54:18-22 - 63:1-4 & Haislip Dep. Ex. 11 (August 21,

1996 Weltmann to Morrissey reply)

     56. Since 1996, Virginia Flood has been aware or, at least, on constructive notice that

1996 Flood has used and continues to use JOHN C. FLOOD names and marks in connection

with directly competitive services in the same geographic areas in the same lines of trade and

business as those offered by Virginia Flood. *Plaintiff's First Amended Complaint* [#28] ¶¶ 43,

59. During the course of the bankruptcy, Virginia Flood and its principals had knowledge of the

bankrupt debtors' and their family members' use of the FLOOD name, derived from reviewing

print and telephone directory ads. Haislip Dep. 43:22 & 44-46:1-9. In his deposition, Seltzer

testified that, from 1996, after the Trustee sold the assets to the Smileys, onward, both he and

Haislip, and the Smileys, operated businesses that used some variation of the name JOHN C.

FLOOD, "and its been like that ever since." Seltzer Dep. 50:6-22 & 51:1-3. Morrissey's June

1996 letter to Virginia Flood's counsel on behalf of 1996 Flood expressly references the

bankruptcy sale and Haislip/Seltzer's active participation in it, and takes the position that Virginia Flood's use of JOHN C. FLOOD without the "of Virginia" geographic designator infringes 1996 Flood's rights in the tradenames it acquired from the Trustee, placing Haislip and Seltzer on notice of 1996 Flood's claim to ownership of and the right to use the JOHN C. FLOOD and FLOOD names and goodwill. Far from denying 1996 Flood's use or claimed rights to use JOHN C. FLOOD or variations thereof, Haislip and Seltzer's counsel in essence acceded to Morrissey's demands. *See supra* ¶ 55.

57. In a number of telephone directory listings and ads going back many years, including ads and listings placed in 1996-97, 1997-98 and 1999 metropolitan D.C. area telephone directories, 1996 Flood's listings and ads appear in the same directories and sections of directories as Virginia Flood's ads and listings. *See, e.g.,* Smiley Dec. ¶ 11 & Att. C-4, exemplars of "side-by-side" 1996 Flood and Virginia Flood advertising in the same directories from 1997, 1998, and 1999 telephone directories: 5/96-4/97 D.C. Bell Atlantic Directory, Bates 00582 & 00584 (ads of Virginia Flood) and Bates 00583, (1996 Flood "J.C. Flood Company of DC" ad); 10/97-9/98 Maryland Suburban Bell Atlantic Directory, Bates 00587 & 00588 (Virginia Flood ads) and Bates 00588 (1996 Flood "John C. Flood, Inc." ad); 1999 D.C. One Book Directory, Bates 001926 (Flood of Virginia ad) and Bates 001927 (1996 Flood "John C. Flood of DC" ad). In his deposition, Haislip testified that, after the Smileys purchased the assets from the Trustee, the Smileys used different variations of JOHN C. FLOOD, but that he did not recall exactly what variations they used in and after 1996. Haislip Dep., 79 & 80:1-7. Haislip did acknowledge, however, that whatever the advertising documents of record show, "then that's what they were using," "before and after the bankruptcy and after the purchase as well." *Id.* 81:15-22 & 82:1-2.

58. For his part, Seltzer testified that he may, in 1997 or 1998, have placed phone book advertising for Virginia Flood, and that, from time to time, he checked phone books to confirm that ads placed for his company were in the books. Seltzer Dep., 91:5-22 & 92:1-8.   However, when asked whether he had seen any 1996 Flood phone book ads in or around 1999 (when Virginia Flood filed its applications to register JOHN C. FLOOD on the U.S. Principal Register of Trademarks, and Seltzer averred under penalty of perjury that he was aware of no one else using the same or similar marks), Seltzer responded "I don't recall what ads I saw in the Yellow Pages, no." *Id.* 85:15-19. He also testified that he did not recall in either 1997 or 1998 looking in phone books and seeing ads for a Flood or a Flood company that was not his company. *Id.* 92: 9-12. He testified that, in 1999 when he signed the trademark registration applications, he believed that 1996 Flood was not using any names with the word Flood in them, but when asked for the basis of that belief, Seltzer testified that he did not recall any basis. *Id.* 85:5-14.

59.   Virginia Flood did not commence or file any suit or action at law or in equity against any of Defendants seeking injunctive, monetary or declaratory relief arising from their allegedly infringing use of JOHN C. FLOOD and/or FLOOD until it commenced this action, on July 25, 2006. Complaint for Trademark Infringement and Unfair Competition, Case No. 1:06CV01311, dated July 25, 2006.

Respectfully submitted,

**COUNTERCLAIM PLAINTIFF/DEFENDANT
JOHN C. FLOOD, INC., & DEFENDANTS
JOHN C. FLOOD OF D.C., INC., ROBERT
SMILEY, JOANNE SMILEY,  MARK
CROOKS AND MEL DAVIS, J.C. FLOOD,
INC., J.C. FLOOD COMPANY, & JCF, INC.**

By their attorneys:    /s/  Benjamin J. Lambiotte
Benjamin J. Lambiotte
D.C. Bar No. 421288

25

blambiotte@gsblaw.com
Robert A.W. Boraks
D.C. Bar No. 72132
rboraks@gsblaw.com
**GARVEY SCHUBERT BARER**
1000 Potomac Street, Fifth Floor
Washington, D.C. 20007
(202) 965-7880

## CERTIFICATE OF SERVICE

I certify that I served a copy of this STATEMENT OF MATERIAL FACTS NOT IN DISPUTE IN SUPPORT OF DEFENDANTS' RENEWED MOTION FOR PARTIAL SUMMARY JUDGMENT upon counsel for the Virginia Flood Parties via ECF and electronic mail, on this 12th day of September, 2008.

Stephen J. Zralek, *appearing pro hac vice*
BONE McALLESTER NORTON PLLC
511 Union Street, Suite 1600
Nashville, TN 37219
Tel: (615) 238-6300
Fax: (615) 238-6391
szraleck@bonelaw.com

Lisa Dunner, DC Bar #452004
DUNNER LAW
1010 Wisconsin Avenue, N.W.
Washington, DC 20007
Tel: (202) 298-2002
Fax: (202) 403-3030
ldunner@dunnerlaw.com
Counsel for Clinton Haislip &
James L. Seltzer, Jr.

/s/  Benjamin J. Lambiotte